# PLAINTIFFS' EXHIBIT 5

_____

In The Case Of

*James Rutherford; and, The Association 4 Equal Access, Individually and on Behalf of All Others Similarly Situated,*

v.

*Evans Hotels, LLC,*

**18-cv-435 JLS (MSB)**

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420
(805) 335−8455

```
 1                  UNITED STATES DISTRICT COURT
 2                  SOUTHERN DISTRICT OF CALIFORNIA
 3
 4     _____
 5     JAMES RUTHERFORD; AND, THE )
 6     ASSOCIATION 4 EQUAL        )
 7     ACCESS,                    )
 8              Plaintiffs,       )
 9              VS.               ) Case No. 18-cv-435-JLS(BGS)
10     EVANS HOTELS, LLC,         )
11              Defendants.       )
12     _____)
13
14
15
16     DEPOSITION OF:
17                    KIMBERLEY GUILLERMO
18                    TUESDAY, OCTOBER 23, 2018
19                    3:00 P.M.
20
21
22     Reported by:
23     GINA M. CLOUD
24     CSR No. 6315
25     PAGES 1 - 85
```

Page 1

```
 1            Deposition of KIMBERLEY GUILLERMO, the
 2   witness, taken on behalf of the Plaintiffs, on
 3   Tuesday, October 23, 2018, 3:00 P.M. at 500 West C
 4   Street, Suite 800, San Diego, California 92101,
 5   before GINA M. CLOUD, CSR No. 6315, pursuant to
 6   NOTICE.
 7
 8   APPEARANCES OF COUNSEL:
 9
10   FOR PLAINTIFFS: (VIA TELECONFERENCE)
11               KAZEROUNI LAW GROUP
12               BY:  MATTHEW M. LOKER, ESQ.
13               245 Fischer Avenue
14               Suite D1
15               Costa Mesa, California 92626
16               (800) 400-6808
17               ml@kazlg.com
18               - and -
19               MANNING LAW, APC (VIA TELECONFERENCE)
20               BY:  JOSEPH R. MANNING, ESQ.
21               4667 MacArthur Boulevard
22               Suite 150
23               Newport Beach, California 92660
24               (949) 200-8755
25               joe@manninglawoffice.com
```

```
 1   APPEARANCES: (CONTINUED)
 2
 3   FOR DEFENDANTS:
 4              KLINEDINST PC
 5              BY:  NADIA P. BERMUDEZ, ESQ.
 6              501 W. Broadway
 7              Suite 600
 8              San Diego, California 92101
 9              (619) 239-8131
10              nbermudez@klinedinstlaw.com
11   ALSO PRESENT:
12              ANDREW PULS
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                       I N D E X
 2
 3   WITNESS              EXAMINATION          PAGE
 4   KIMBERLEY GUILLERMO
 5                        (By Mr. Loker)        6
 6
 7
 8
 9
10                       E X H I B I T S
11   NO.              DESCRIPTION               PAGE
12   Exhibit 2   Plaintiff James                 10
13               Rutherford's Amended Notice
14               of Taking Deposition of
15               Kimberly Guillermo
16   Exhibit 3   Evans Hotels Initial            17
17               Disclosures
18   Exhibit 4   Evans Hotels Responses to       27
19               Plaintiff's James
20               Rutherford's First Set Of
21               Request For Admissions
22   Exhibit 5   Evans Hotels' Responses to      37
23               Plaintiff The Association
24               4 Equal Access's First
25               Set of Interrogatories
```

```
 1   Exhibit 6    Evans Hotels's Responses to         43
 2                fendant James
 3                   Rutherford's First Set of
 4                Interrogatories
 5   Exhibit 8    Bates Nos. EH1-EH96                 62
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1    process.  But we recently have added even more
 2    information to our websites overall just to make
 3    them more user friendly for anyone that's using the
 4    website, including our ADA guests.
 5    BY MR. LOKER:
 6         Q.   You mentioned some changes.  Can you think
 7    of any examples of those changes?
 8         A.   To the best of my knowledge, one thing that
 9    is new is at the very bottom, which is as an Internet
10    user myself I probably wouldn't notice it, but a lot
11    more people are more savvy in technology.  At the
12    bottom there is a nice link that says, I believe it
13    says "ADA services" or something along those lines
14    and, if you click it, it pulls up an entire page with
15    the phone number of how you can reach us, if you have
16    any questions, and it does give some other details
17    other than clicking on the rooms or other information
18    that's labeled in there.
19         Q.   So if you click that link, is it possible
20    to book a room once you're on that page?
21         A.   That particular page is not a booking area
22    and it's very clear if you want reservations you can
23    click "book now" or "reservations" or when you're in
24    rooms, you can click something.  But on this it's
25    particularly informational.  It's clear that it's an
```

```
 1   informational piece.
 2       Q.   Is an accessible room a room type, a suite
 3   type, for example?
 4            MS. BERMUDEZ:  Objection, vague, overbroad.
 5            THE WITNESS:  The hotel has many different
 6   rooms that we utilize for guests with disabilities.
 7   As I mentioned, we do have specific fully functional
 8   accessible rooms.  We have some that may be
 9   partially accommodating, depending on what needs
10   they have.  A guest could choose that, and we also
11   have some rooms that we don't really require any
12   hard items in there such as a grab bar.  As I
13   mentioned before we have equipment that we can add
14   to any room that we have at the hotel.
15   BY MR. LOKER:
16       Q.   So if I'm understanding you correctly,
17   there is a type of room that is designated
18   accessible, but other rooms you can add certain
19   accessible features; is that accurate?
20       A.   Yes.
21       Q.   In general, and again I'll have examples
22   later in Exhibit 8, is it possible to reserve a
23   specific room type?
24            MS. BERMUDEZ:  Objection, vague, overbroad.
25            THE WITNESS:  At The Lodge at Torrey Pines,
```

Page 23

1  you can book a specific room type.  They are a newer
2  resort.  They've been around for just over 15, 16
3  years now.  The Catamaran and Bahia we've been
4  around for a very long time, so we do have specific
5  rooms that are designated for accessible, but in
6  order to accommodate our guests, we really want to
7  make sure that their needs are met and they do need
8  those accommodations, so they can book a room and
9  use the comments section for whatever their specific
10 needs are, so we can reach out to them.
11 BY MR. LOKER:
12     Q.   What do you mean by the comments section?
13     A.   You just asked about the website, so to book
14 on the website, that's one thing that they would need
15 to do is to add a comment because I have just a few
16 select number of those.  They are last room
17 availability.
18          I would not sell that room to a regular
19 leisure guest who doesn't have a need for that unless
20 it was the very last room I had in the hotel.  We
21 want to make those rooms ready and accessible for all
22 our guests that have those needs, and if someone is
23 calling us, which the majority of our guests do, we
24 ask specific questions to find out what their needs
25 are and how we can best assist them, so we can

1  accommodate them with the room that works for their
2  needs.  And then if it is fully accessible, we would
3  hard block that room to insure that they get that
4  room.
5       Q.   So in that description was about the Bahia
6  hotel; is that right?
7       A.   That would be the same for the Bahia and the
8  Catamaran, yes.
9       Q.   So if I wanted to book a bayfront room at
10 the Bahia hotel, would I list a comment asking for
11 the bayfront room?
12      A.   You can book a bayfront room and then in
13 your comment if you have a special need or request,
14 you can note that need or request in and we will get
15 back to you pretty quickly.  Usually within 24 hours
16 or less.
17      Q.   Without leaving a comment is it possible to
18 book a bayfront room?
19      A.   Of course.
20      Q.   How so?
21      A.   As long as there is rooms available, anyone
22 can book whatever available room types are available
23 to our guests.
24      Q.   How do you specify a room type?
25      A.   If you go on the website, they list out on

Page 25

```
 1   the screen whether it's a garden room or bayfront
 2   room, if it's a suite or studio.  If it has any
 3   special like one bedroom or just standard room that
 4   has just the sleeping area only.  All those things
 5   are listed online and it will give you a description
 6   of the room that you're choosing.
 7       Q.   In those descriptions of the rooms, is that
 8   conveyed to the consumer by a dropdown menu, or how
 9   do they click to decide on a specific room?
10       A.   They can -- they'll see some of the
11   information on the screen and then there is a small
12   bar that might ask you if you want to see more, see
13   less, and you can see more and it will describe more.
14       Q.   I see.  In that description would be
15   bayfront or garden, for example?
16       A.   Yes.
17       Q.   And then sticking with bayfront, if a
18   bayfront room was picked, how does the consumer see
19   the notification or confirmation?
20       A.   That would come to their e-mail.  If they
21   book through us directly on the phone, then we would
22   still send them an e-mail confirmation, and if they
23   booked online, they would receive an online
24   confirmation, and if they booked through a third
25   party, oftentimes they get a third party
```

Page 26

1  confirmation.
2     Q.   How is the Torrey Pines process different,
3  or The Lodge at Torrey Pines?
4     A.   They have a considerable amount of
5  accessible rooms and The Lodge has basically two room
6  types for the entire property and some specialty
7  suites, so many of our specialty suites cannot be
8  booked online.  For any guest.  Because there is only
9  one and we don't want to overbook it.  It's a five
10 diamond resort and we want to make sure we're
11 providing seamless service to our guests and we don't
12 have to call them up and tell them a room has been
13 overbooked at a five diamond resort.
14    Q.   Understood.  If you go to Exhibit 4,
15 please.
16         (The document referred to was marked
17 by the reporter as Exhibit 4 for identification
18 and is attached hereto).
19 BY MR. LOKER:
20    Q.   Exhibit 4 is Evans Hotels Responses to
21 Plaintiff's James Rutherford's First Set Of Request
22 For Admissions.  You assisted with responding to
23 discovery; is that right?
24    A.   Yes.
25    Q.   Look at request for admission No. 9,

Page 27

```
 1   please.  That's on page 10 of Exhibit 4.  I'll read
 2   the question into the record so you know what we're
 3   talking about.  As noted before, your counsel had
 4   legal objections.  I'm not here to discuss those but
 5   obviously they're preserved for the record.  I just
 6   want to get a feel, additional information about the
 7   facts in that corresponding answer.
 8           So request No. 9, as I stated:  "Admit that
 9   as of the time the complaint was filed individuals
10   with a disability were not able to reserve
11   accessible hotel rooms at the Bahia Resort Hotel
12   through Bahiahotel.com with the same efficiency,
13   immediacy and convenience as those who do not need
14   accessible rooms."  Like I said there are
15   objections.
16           And the answer is:  "Responding party
17   admits that yes, reserving rooms at the Bahia with
18   accessible features through the website must wait
19   for a second e-mail confirming that an accessible
20   room has been hard blocked."
21           And then to kind of rephrase so I know I'm
22   following you properly, the first e-mail would book
23   a specific room type like Bay Area and garden room
24   like we discussed.  Can you explain what the second
25   e-mail is doing for me?
```

```
 1        A.   Yes.  When someone books a room in an
 2   example, say they book a bayfront room at the Bahia
 3   and they have noted that they may have some specific
 4   need, and this could be any guest.  It could be an
 5   accessible need, a personal need and they say that
 6   they need something.
 7             The second e-mail goes out when the request
 8   is the clear.  We know exactly what they want.  We
 9   have it.  We'll confirm it and send them a second
10   e-mail that what they've requested is being
11   confirmed, and sometimes we'll even go as far as to
12   call to make sure they got the e-mail and that the
13   need has been fulfilled if there is anything else
14   that we can help them with.
15        Q.   To skip a couple questions, your answer
16   would be the same for the Catamaran but not Torrey
17   Pines?
18        A.   It would be the same for the Catamaran.  As
19   for Torrey Pines, generally we don't have people
20   asking for anything above and beyond what they've
21   already reserved.  If we did, we would reach out to
22   them.  We would call them.  They've already been
23   confirmed an accessible room.
24        Q.   I see.  Sorry, I spoke over you.  So Torrey
25   Pines confirms accessible rooms with a single
```

```
 1   BY MR. LOKER:
 2      Q.   And you mentioned earlier the phrase "hard
 3   block."  Do you remember that?
 4      A.   Yes.
 5      Q.   What does that mean again?
 6      A.   That is when we assign a specific room
 7   number to a guest to insure that they get the
 8   particular room that has been assigned to them, and
 9   that is generally done with our ADA rooms, and if we
10   have maybe a VIP guest or someone in particular that
11   we're wanting to make sure that their room is
12   available and ready for them to meet certain requests
13   or needs that they have.
14      Q.   At what point would the specific room be
15   assigned to a reservation?
16           MS. BERMUDEZ:  Vague, overbroad.
17           THE WITNESS:  I guess are you referring to
18   any guests at the hotel?  Or --
19   BY MR. LOKER:
20      Q.   Yes, first with regard to any guests, more
21   typical reservation, when would a room be assigned?
22      A.   Any guest would be when they check in at the
23   hotel.  We don't assign rooms until they actually
24   check in.
25      Q.   For accessible rooms though they're
```

Page 48

```
 1   assigned at some point prior to check in?
 2        A.   The moment a reservation is booked and we've
 3   determined with the customer on the phone, the guests
 4   on the phone, once we've determined what their needs
 5   are and what their specific request is, if they need
 6   the fully accessible rooms, then we do insure that we
 7   hard block those to make sure they get what they
 8   need.
 9        Q.   When would the hard block occur?
10        A.   At the time of their booking.
11        Q.   Am I understanding a hard block for an
12   accessible room would require a second follow up
13   e-mail; is that right?
14        A.   That's correct.
15        Q.   What would be an average length of time
16   between the first e-mail and the second e-mail?
17        A.   That would really depend on how the booking
18   is made.  If someone is speaking with an agent on the
19   phone, it wouldn't require a second e-mail.  We would
20   immediately hard block that reservation.
21             If someone was booking online and there is a
22   particular room type they want, we don't -- we have
23   so many rooms and areas that a person can stay, we
24   like to reach out to the guest via phone, try to find
25   out what their specific needs are and let them know
```

Page 49

```
 1            If someone books online and they say that
 2   they are a wheelchair user, for example, we will
 3   make a phone call to find out if they do need an
 4   accessible room or if they have other needs or
 5   requests and, at that point, we will send them out
 6   another e-mail if it is fully accessible, and if
 7   not, then we won't, but we try to reach out to them
 8   to accommodate all our guests the best we can.
 9   BY MR. LOKER:
10        Q.   Is there a policy with regard to the timing
11   of the phone call from the receipt of the
12   information?
13            MS. BERMUDEZ:  Vague, overbroad.
14   BY MR. LOKER:
15        Q.   By the information I mean the request for
16   an accessible room?
17            MS. BERMUDEZ:  Vague, overbroad.
18            THE WITNESS:  Would this be a phone
19   reservation or with one of the online bookings.
20   BY MR. LOKER:
21        Q.   Online booking.
22        A.   We don't really have a specific policy with
23   regard to the timing.  It would really vary, based
24   upon if an online booking was made at midnight when
25   the departments close, or when it was -- if it was
```

Page 51

1  made at 12:00 in the afternoon when we're open.
2      Q.   Which department is responsible for the
3  follow-up telephone call?
4      A.   That would be my department reservations.
5      Q.   Does your department provide training with
6  regard to those follow-up communications?
7      A.   When somebody is hired into our department,
8  it is part of their initial onboarding that we insure
9  that they understand what we have available, what
10 questions not to ask and how to handle each of these
11 requests as they come in to insure we're being
12 helpful and supportive of all our guests.
13     Q.   Is there training specifically with regard
14 to the follow-up telephone calls that you've
15 mentioned?
16     A.   That would be part of it with regard to
17 receiving Internet bookings that interface through
18 our department, and that is part of the protocol.
19     Q.   Is the training that's provided regarding
20 the follow-up telephone calls written down anywhere?
21     A.   We don't have a manual or something that we
22 go off from for our training.  It's usually hands on
23 training and we talk to them about it.
24     Q.   Are the employees that receive the training
25 required to pass any sort of quizzes or exams to

Page 52

```
 1            I, GINA M. CLOUD, a certified shorthand
 2   reporter for the State of California, do hereby
 3   certify:
 4            that prior to being examined, the
 5   witness named in the foregoing deposition, was by me
 6   duly sworn to testify the truth, the whole truth,
 7   and nothing but the truth pursuant to Section No.
 8   2093 of the Code of Civil Procedure;
 9            That said deposition was taken before
10   me pursuant to notice, at the time and place therein
11   set forth, and was taken down by me in shorthand and
12   thereafter reduced to typewriting via computer-aided
13   transcription under my direction;
14            I further certify that I am neither
15   counsel for, nor related to, any party to said
16   action, nor in anywise interested in the outcome
17   thereof.
18            IN WITNESS WHEREOF, I have hereunto
19   subscribed my name this 31st day of October, 2018.
20
21
22
23                      _____
24                      GINA M. CLOUD
25                      CSR No. 6315
```

Page 85