Nadia P. Bermudez, Bar No. 216555
Patrick J. Goode II, Bar No. 299697
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
nbermudez@klinedinstlaw.com

Lindsay N. Casillas, Bar No. 269688
KLINEDINST PC
801 K Street, Ste. 2100
Sacramento, CA 95814
Phone: 916/444-7573

Attorneys for Defendant
EVANS HOTELS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,<br><br>Plaintiffs,<br><br>v.<br><br>EVANS HOTELS, LLC, a California limited liability company and DOES 1 to 50,<br><br>Defendants. | Case No. 18-CV-00435-JLS (MSB)<br><br>**DEFENDANT EVANS HOTELS, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: February 21, 2019<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Judge: Hon. Janis L. Sammartino<br>Magistrate Judge: Hon. Michael S. Berg<br>Complaint Filed: 2/26/18<br>Trial Date: None set |

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................... 1

II.   RELEVANT FACTUAL BACKGROUND.................................... 1

    A.   The Hotel Properties At Issue ........................ 1

    B.   Information on the Accessible Features Offered Through Evans Hotels' Reservations Service ............................ 2

    C.   Reservations Policies and Process.................................... 4

    D.   Plaintiff Rutherford History of Litigation Abuse and Contradictory Deposition Testimony About His Alleged Disability ........................................ 6

III.  THE COURT SHOULD DISMISS RUTHERFORD AND A4EA'S CLAIMS SUA SPONTE FOR LACK OF JURISDICTION ..................... 7

IV.   THE COURT SHOULD DISMISS PLAINTIFFS' RUTHERFORD AND A4EA'S CLAIMS AS UPDATES TO THE WEBSITES MOOT PLAINTIFFS' WEBSITE VIEWING CLASSES ........................ 9

V.    THE COURT SHOULD DENY CLASS CERTIFICATION .................... 10

    A.   Plaintiffs' Claims are Not Typical of Any of the Classes He Seeks To Represent........................................ 10

        1.   Plaintiffs Cannot Represent All Disabled Individuals. ........... 11

        2.   Plaintiffs Cannot Represent The Website Viewing Class ....... 11

        3.   Plaintiffs Cannot Represent the Online Booking Class .......... 12

    B.   Rutherford Is Not An Adequate Class Representative Under Rule 23(a)(4) ........................................ 12

    C.   Numerosity Factor Is Not Met Under Rule 23(a)(1)........................ 14

    D.   Plaintiffs Cannot Establish Commonality Under Rule 23(a)(2) or Predominance Under 23(b)(3) For Any Class Because Individualized Issues Overwhelm Common Issues ..................... 15

        1.   Individual Issues Prevent Certification of the Website Viewing Class................................... 16

        2.   Individual Issues Prevent Certification of the Online Booking Class................................... 18

        3.   Individual Issues Prevent Certification Damages Classes Under Unruh................................... 20

    E.   A Class Action is Not Superior to Other Available Methods For Fairly and Efficiently Adjudicating the Controversy ....................... 22

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F.   Plaintiffs Cannot Certify A Class Under Rule 23(b)(2) .................... 24

VI.   CONCLUSION .......................................................................................... 25

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
18-CV-00435-JLS (MSB)

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
  2012 U.S. Dist. LEXIS 123102 (S.D. Cal. 2012) ...............................21

5

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises*, Inc.,
6   603 F.3d 666 (9th Cir. 2010) ..........................................................16

7

*Bartlett v. Hawaiin Village, Inc.,*
  87 Cal.App.3d 435 (1978) ...............................................................21

8

*Bateman v. Am. Multi-Cinema, Inc.,*
9   623 F.3d 708 (9th Cir. 2010) ..........................................................22

10

*Briseno v. ConAgra,*
  844 F.3d 1121 (9th Cir. 2017) .........................................................23

11

*Brooke v. Pac. Gateway Ltd., LP,*
12   No. 3:17-CV-0796-CAB-WVG, 2017 U.S.Dist.LEXIS 70957
     (S.D. Cal. May 9, 2017.)................................................................ 9

13

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
14   631 F.3d 939, 954 (9th Cir. 2011)................................................... 8

15

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ........................................................................ 9

16

*David Trujillo, etc., et al. v. UnitedHealth Grp., Inc., et al.,*
17   2018 U.S. Dist. LEXIS 220840, (C.D. Cal. 2018) ............................19

18

*Doran v. 7-Eleven, Inc.,*
  509 F.App'x 647, (9th Cir. 2013)....................................................20

19

*Erica P. John Fund, Inc. v. Halliburton Co.,*
20   563 U.S. 804 (2011) ......................................................................15

21

*Estate of Stern v. Tuscan Retreat, Inc.,*
  725 F. App'x 518 (9th Cir. 2018)....................................................10

22

*Etzelsberger v. Fisker Auto., Inc.,*
23   300 F.R.D. 378 (C.D. Cal. 2013) ....................................................11

24

*Gatto v. Cty. of Sonoma,*
  98 Cal.App.4th 744 (2002) .............................................................10

25

*Hanlon v. Chrysler Corp.,*
26   150 F.3d 1011 (9th Cir. 1998) .........................................................12

27

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ..........................................................11

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Hansberry v. Lee*,
311 U.S. 32 (1940) ................................................................12

*Hubbard v. 7-Eleven, Inc.*,
433 F. Supp. 2d 1134 (S.D. Cal. 2006) .................................10

*In re SFPP Right-Of-Way Claims*,
2017 U.S. Dist. LEXIS 85973 (CD CA 2017) .......................24

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ................................................ 7

*Konik v. Time Warner Cable*,
2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ......................15

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718, 724 (9th Cir. 2007)........................................10

*Lymburner v. U.S. Financial Funds, Inc.*,
263 F.R.D. 534 (N.D. Cal. 2010) ..........................................11

*Marsh v. First Bank of Delaware*,
2014 WL 554553, (N.D. Cal. Feb. 7, 2014)..........................12

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................19

*Moeller v. Taco Bell Corp.*,
2012 U.S. Dist. LEXIS 104454  (N.D. Cal. 2012) ...............21

*Mundy v. Pro-Thro Enterprises*,
192 Cal.App.4th Supp. 1 (2011) ...........................................20

*Parr v. L & L Drive-Inn Restaurant*,
 96 F. Supp. 2d 1065 (2000) ................................................. 9

*Reycraft v. Lee*,
177 Cal.App.4th 1211 (2009) ................................................20

*Schellenbach v. GoDaddy Inc.*,
2017 U.S. Dist. LEXIS 138765 (AZ 2017) ...........................23

*Schwartz v. Upper Deck Co.*,
183 F.R.D. 672 (S.D. Cal. 1999) ..........................................14

*Shields v. Walt Disney Parks & Resorts*
*US, Inc.* 279 F.R.D 529 .........................................................14

*Spacone v. Sanford, L.P.*,
No. 2:17-CV-02419-AB-MRW, 2018 U.S.Dist.LEXIS 153916
(C.D. Cal. Aug. 9, 2018.)....................................................... 7

*Tourgeman v. Collins Fin. Servs.*,
No. 08-CV-1392 JLS NLS, 2011 U.S.Dist. LEXIS 122422
(S.D. Cal. Oct. 21, 2011) ......................................................14

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Tucker v. Phyfer*,
 819 F.2d 1030 (8th Cir. 1987) ........................................................... 9

*Urhausen v. Longs Drug Stores California, Inc.*,
 155 Cal.App.4th 254 (2007) ...............................................................20

*Valentine v. Sec'y of HHS*,
 542 F. Supp. 76, 78 (N.D. Cal. 1982) ............................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541, 2551-52 (2011) ................................................10, 20

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .............................................................15, 24, 25

*Wang v. Chinese Daily News, Inc.*,
 737 F.3d 538 (9th Cir. 2013) .............................................................24

*Weaver v. Pasadena Tournament of Roses*,
 32 Cal.2d 833 (1948) .........................................................................21

**Statutes**

28 C.F.R. 36.105(a)(1) ...........................................................................16

28 C.F.R. 36.105(a)(2)(iii) .....................................................................16

28 C.F.R. 36.105 (b)(2) ..........................................................................11

28 C.F.R. § 36.105(d)(1)(vi) ..................................................................16

28 C.F.R. 36.302(e)(1)(ii) .......................................................................17

42 U.S.C. §12188(a) .............................................................................. 9

Cal. Civ. Code §55.56...........................................................................20

Civ. Code § 55.56(f) ..............................................................................21

Cal. Code Civ. Proc. § 335.1 .................................................................10

Fed. R. Civ. P. 23(a)(4) .........................................................................12

Fed. R. Civ. Proc. 23(b)(3).............................................................15, 22

**Other Authorities**

8 Newberg on Class Actions, § 24.17 (4th ed. 2008).............................23

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
18-CV-00435-JLS (MSB)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

## I.   INTRODUCTION

Plaintiffs Rutherford and his alter ego, A4EA, are serial ADA litigants who have brought over 100 individual cases and now seek to represent a putative class of disabled persons who navigated some or all of the Defendant's websites.   As explained below, class certification must be denied. First, the named Plaintiffs' claims have been rendered moot, mandating dismissal of the claims.   Second, Plaintiffs failed to meet the exacting requirements of Rule 23 of the Federal Rules of Procedure.   Moreover, individualized issues requiring proof of a claimant's standing to seek damages overwhelm any common questions of fact--a situation starkly presented in Rutherford's own deposition testimony concerning the websites.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The Hotel Properties At Issue

Evans Hotels is a management company operating three unique hotel properties.   The **Bahia Resort Hotel** is a beach front resort on a 14-acre peninsula of waterfront property. (Declaration of Andy Thomas ["Thomas Dec."], ¶ 4.)   It first opened on Mission Bay in 1953 with 52 rooms. (*Id.*)   The resort was expanded over time: 20 rooms were added by 1955, and an additional 40 rooms were added thereafter. (*Id.*)   The Bahia was again expanded in the early 1970s, resulting in the current room total of 312 rooms. (*Id.*)   Because the Bahia is an older hotel that was built organically over time, it has at least 15 different room types. (*Id.*)   Even though all of its rooms were built before the 1991 ADA Standards were adopted,[1] the Bahia has seven rooms with built-in accessible features, including, for example, roll-in showers or permanent bathtub grab rails (rooms with built-in accessible features are

---

[1] When passed in 1990, the ADA did not require that all existing buildings be retrofitted for accessibility immediately. Instead, it relies on planned alterations and barrier removal to improve accessibility in older buildings over time. Title III of the ADA requires the removal of structural and programmatic barriers in existing public accommodations where such removal is readily achievable, and in newly altered or constructed buildings. See, 42 U.S.C.S. §1281(9).

referred to hereafter as "Accessible Rooms"). (*See,* Declaration of Nadia P. Bermudez, filed concurrently, Ex. B, Deposition of Kimberley Guillermo ["Guillermo Depo."] 31:17-32:8].)[2]  However, nearly every other room at the Bahia can have accessible features added to it depending on the nature of a guest's disability.  For example, the Bahia has bed shakers, visual notification devices, bath chairs, additional grab bars, and the ability to lower beds. (Thomas Dec. ¶ 4*; Ex. J.)

The **Catamaran Resort Hotel and Spa** is a Polynesian themed 8-acre resort located on San Diego's Mission Bay. (Thomas Dec. ¶ 5.)  The Catamaran opened in 1958 with 82 rooms.  Rooms were added in 1969 (150 rooms) and 1982 (78 rooms), for a current total of 310 hotel rooms.  The Catamaran has 9 room types. (*Id.*)  The Catamaran is an older hotel, also built long before the 1991 ADA standards.  The Catamaran has two Accessible Rooms. (Ex. B, 32:10-19.) The Catamaran also has bed shakers, visual notification devices, bath chairs, and the ability to lower beds, which it can utilize in any room. (Thomas Dec. ¶5*; Ex. J.)

The **Lodge at Torrey Pines** was purchased in 1995. (Thomas Dec. ¶ 6.)  The existing structure was essentially demolished, and a new luxury AAA 5-diamond property reopened in 2002. (*Id.*) The Lodge has 170 guest rooms, and has only 4 room types. (*Id.*) The Lodge was built to the 1991 ADA Standards, and has 8 Accessible Rooms.  (Ex. B, 31:5-15.) The Lodge also has additional accessibility features it can utilize in all rooms such as bed shakers, visual notification devices, bath chairs, and the ability to lower beds.  (Thomas Dec. ¶6*; Ex. J.)

**B.** **Information on the Accessible Features Offered Through Evans Hotels' Reservations Service**

Information on the accessible features of the Bahia, Catamaran, and the Lodge at Torrey Pines as well as the specific layout of the rooms is available via:

- **Reservations Agents** are trained to answer questions about Evans Hotels' properties, including the different rooms at each property (especially at the older

_____

[2] All references to "Ex." are exhibits attached to the Bermudez Dec.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

properties), where Accessible Rooms are located, and the accessibility features either built-in to or that can be added to room. (Thomas Dec. ¶ 7.)  Agents are available by phone from 6:30 a.m. to 11 p.m. on weekdays and 7 a.m. to 10 p.m. on weekends. (*Id.*)  A potential guest who calls reservations after hours can leave a message, which is returned when the department re-opens in the morning. (*Id.*)

- **"LiveChat"** application is available 24 hours a day and is located on the homepage of each property's website. (*Id.*)   Via LiveChat, guests can obtain information about accessibility in real time by chatting online with Agents. (*Id.*) "LiveChats" initiated after approximately 9 p.m. are responded to the next day. (*Id.*)

- **Front Desk Agents,** who are available at each property to provide detailed information.  Some guests are "walk-ins" and do not have reservations before they visit. (*Id.*) Like reservations agents, the front desk personnel at each property are trained about room types, locations, and accessibility features. (*Id.*)

- **Each Property's Website.** Accessibility information was previously located in multiple places on each property's website. (Declaration of Diane Koczur, [Koczur Dec.] ¶4.)   In February 2018, Evans Hotels updated the websites for all three properties to centralize information about room accessibility. (*Id.*)  Now, each site has one page devoted to room accessibility ("Accessibility Pages")[3] which includes even more information on the accessibility of the properties, accessibility features built in to some rooms and accessibility features that can be added to any room. (*Id.*) Given the multitude of potential disabilities it is impossible for any business to anticipate every need a guest may have, which is why the ADA requires only what is

---

[3]   The Accessibility Page can be accessed by: (1) clicking on a link titled "ACCESSIBILITY" or "ACCESSIBLE ROOMS" that is prominently located on the "accommodations" or "rooms" portion of each property's website; (2) a Google search using the property's name and a phrase such as "accessible rooms" or "ADA rooms." (Koczur Dec. ¶ 5.) There is an accessibility link at the bottom of each property's homepage, which pertains to the accessibility of the website itself (i.e., WCAG 2.0), not the accessibility of the rooms. The Accessibility Pages' urls are: lodgetorreypines.com/ accessible-rooms; catamaranresort.com/ accessible-rooms; and bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (*Id.*)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  reasonable. (Thomas Decl. ¶ 8; Ex. F, Heath Pitts Deposition ["Pitts Depo"], 26:10-

2  27:7.) Evans Hotels continuously upgrades and updates its websites to improve user

3  experience. (Ex. D, Diane Koczur Deposition ["Koczur Depo."], 27:1-19.)

4        These mechanisms ensure that guests can obtain information about

5  accessibility features that are specific to their needs. (Thomas Dec. ¶ 8.)  There are

6  an unlimited number of questions or requests that a guest may have regarding

7  accessibility, and those requests vary significantly depending on the nature and

8  degree of the disability. (*Id.*)  For example, a mobility-impaired guest may require a

9  room that is both near an elevator and has a roll-in shower, and have a preference for

10  a certain room view. (*Id.*)  A different guest may not have any mobility issues, but

11  instead require a refrigerator in the room to store medication. (*Id.*)

12      **C.**    **Reservations Policies and Process**

13        When a guest requests a room with specific features at Evans Hotels, the

14  process to reserve that room is the same for all guests. (Ex. I, Andy Thomas

15  Deposition ["Thomas Depo"], 24:10-15; 25:7-17, 26:14-24, 36:20-37:10, 64:4-12;

16  Ex. F, Pitts Depo. 48:8-50:2.) Generally, when a guest makes a reservation without

17  any specific requests other than room type, a hotel does not reserve a specific room.

18  (Ex. B, Guillermo Depo. 48:20-24.)  The guest is merely reserving a room type at a

19  given price. (*Id.*)  At check in, the guest is assigned a specific room within the room

20  type.  (*Id.*)  This practice does not pose a problem if there are many available rooms

21  of a given type. (Guillermo Dec., ¶ 4.)  However, some room types or specific room

22  features are of limited inventory. (*Id.*)  For example, there may be only one or two

23  specialty suite type rooms at a luxury resort or only two rooms containing roll-in

24  showers at a hotel built before the ADA was enacted.  (*Id.*)  Therefore, Evans

25  Hotels' utilizes a different process to ensure limited quantity rooms, such as Suites

26  or Accessible Rooms, are held for use by guests specifically requesting those

27  features until all other rooms of that type have been booked.  (*Id.*; Ex. C, Deposition

28  of Scott Hartman ["Hartman Depo."] 31:24-33:8; Ex. E, Deposition of Thomas

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  Mohrlock ["Mohrlock Depo."] 18:14-19:8.)

2      There are several different ways a guest can book a room at any of the

3  properties. (Guillermo Dec., ¶ 5.)   First, a guest can **call the reservations**

4  department and speak with an agent, which is the most common way for a guest with

5  accessibility needs to make a reservation at one of the properties.  (*Id.*; Ex. B,

6  Guillermo Depo. 56:4-9.)  Second, a guest can **"walk-in,"** which means to show up

7  in person in the lobby and reserve a room by speaking with a front desk agent.

8  (Guillermo Dec. ¶5.)  Third, a guest can utilize the **LiveChat** application described

9  above. (*Id.*)   Each of the foregoing methods allows real time communication

10 between hotel staff and the guest in order to identify whether the guest has any

11 specific preferences, requests, or accessibility needs. (*Id.*)  In cases where only a

12 specific room will meet a guest's particular needs, the hotel employee

13 communicating with the guest can assign that guest to a specific room and remove it

14 from inventory—a process referred to as "hardblocking"—in order to prevent

15 double-booking of that room.  (*Id.*; Ex. B, Guillermo Depo. 48:2-13.)  A fourth way

16 guests can book a room is **online**.  Upon clicking "book now" on one of the

17 websites, a guest is taken to SynXis, which is the third party online booking engine

18 all three properties use.  (Ex. I, Thomas Depo. 20:1-18.)  On SynXis, an individual

19 can then see which room types are available on specific dates. (*Id.*)

20     During the online reservation process, guests who require assistance or have

21 questions are invited to contact reservations by phone, email, or LiveChat. (Ex. K, at

22 31:1-3.) Rutherford did not use LiveChat or call because "sometimes you don't feel

23 like it." (Ex. G, 159:10-160:10.)  When a guest directly books via SynXis, it can take

24 several hours for SynXis to remove that room from inventory in the hotel's property

25 management system. (Thomas Dec., ¶ 11.) Thus, to prevent double booking of

26 limited inventory rooms and to ensure Evans Hotels' ability to comply with the

27 ADA, not all room types are listed on SynXis. (*Id.;* Guillermo Dec., ¶ 6.)  By

28 example, there are two Accessible Rooms at the Catamaran, and the seven

5

Accessible Rooms at the Bahia are unique and spread out across various room types. (*Id.*; Ex. H, Farley Depo. 27:15-24 ["no two are the same"].)

Because those Accessible Rooms are *not* interchangeable, they are not listed on SynXis as a separate room type. (Ex. I., Thomas Depo. 22:8-17; Ex. B, Guillermo Depo. 24:12-25:8; Ex. E, Mohrlock Depo. 18:14-19:8.)   If they were listed on SynXis, Evans Hotels would *not* be able to ensure that the limited inventory of Accessible Rooms were held for the guests who request the built in accessibility features. (Ex. B, 30:3-23.)   Similarly, at the Lodge, unique rooms of limited inventory, such as specialty suites, cannot be booked directly online through SynXis due to risk of double-booking. (Ex. B, 27:2-13.)   In contrast, where there are multiple interchangeable rooms, such as Accessible Rooms at the Lodge, they are listed as a separate room type and may be booked directly via SynXis without a risk of double booking due to the delay between SynXis and the property management system. (Thomas Dec., ¶11; Guillermo Dec., ¶6; Ex. I, 22:8-12; Ex. B, 30:3-23.)

Even though a guest cannot book a unique or limited inventory rooms, including the Bahia and Catamaran Accessible Rooms, directly through SynXis, a guest may still reserves those rooms online by utilizing the request field which allows a guest to make any request, including for accessibility features request.  (Ex. E, Thomas Depo. 20:25-21:15; 22:18-23:2; Ex. B, Guillermo Depo. 28:24-29:14.) An agent reviews that request, identifies if an available specific room fulfills it, "hardblocks" that room to ensure it is not double-booked, and then sends the guest an email to confirm the reservation.  (Ex. B, 28:24-29:14, 57:1-16.)   Again, when any guest requests a room with specific features, including accessible features, the process to reserve that room is the same for all guests. (Ex. E, Thomas Depo. 24:10-15; 25:7-17, 26:14-24, 36:20-37:10, 64:4-12; Ex. F, Pitts Depo. 48:8-50:2.)

**D.** **Plaintiff Rutherford History of Litigation Abuse and Contradictory Deposition Testimony About His Alleged Disability**

When questioned about his litigious history, Rutherford knows he has been

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1 | involved in prior lawsuits, but cannot recall how many (not even an estimate), who

2 | he sued, what ADA violations he has sued for, if the cases are still pending, what the

3 | resolutions of any of them were, or how much settlement money he has received as a

4 | result. (Ex. G, 12:13-20; 13:7-16; 15:10-20; 13:23-14:4; 43:2-11; 43:12-13 45:10-

5 | 16; 47:2-18; 49:24-50:14; 51:18-52:11; Ex., L, ["Plaintiff does not remember the

6 | case number and venue of any and all lawsuits…"].[4])  He has filed lawsuits against

7 | other hotel companies, but does not know when or against whom. (*Id.* at 73:11-20.)

8 | In fact, within a few days last week, he filed at least 11 ADA lawsuits in Southern

9 | California with his same counsel. (Bermudez Decl. ¶ 15, Exs. M-P.)

10 |      In this case, Rutherford claims to be a disabled individual who suffers from

11 | spinal stenosis aggravated by a herniated disc. (ECF 21, 5:11-12; Ex. G, 34:14-

12 | 35:8.)   He may also suffer from an arthritic condition in his thumbs, but only

13 | remembers that ailment when attorneys prepare documents on his behalf.[5]  (ECF 21,

14 | 5:12-13; ECF 45-2, 1:13-14.)  His physical impairments may impact his ability to

15 | walk and stand (and maybe to grab, twist and turn objects). (Ex. G, 132:2-25; ECF

16 | 21, 5:12-13; ECF 45-2, 1:13-14.)

### III.   THE COURT SHOULD DISMISS RUTHERFORD AND A4EA'S CLAIMS SUA SPONTE FOR LACK OF JURISDICTION

"Federal Courts are required *sua sponte* to examine jurisdictional issues such as standing.  Article III standing is not subject to wavier.  It must be demonstrated at the successive stages in the litigation, and if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Chapman v.*

---

[4] His listing of ADA cases (Ex. L) includes only federal cases, but he has admitted filing state cases, (including this matter which initiated in state court) as well as three additional state actions in the last 10 days. (Bermudez Decl. ¶ 15, Exs. M-P.)

[5] Evans Hotels urges this Court to disregard Rutherford's declaration under the sham affidavit rule. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").  *See also Spacone v. Sanford, L.P.*, 2018 U.S.Dist.LEXIS 153916 at *14 (C.D. Cal. Aug. 9, 2018.) applying the sham affidavit rule to class certification motions.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Pier 1 Imports, Inc.*, 631 F.3d 939, 953-954 (9th Cir. 2011) (internal cites omitted). To allege and prove the elements of standing in the ADA context, a plaintiff must: (1) specify how alleged barriers encountered "relate" to their particular disability, and (2) demonstrate that they are either deterred from returning or intend to return to the particular establishment at issue. *Id.* Rutherford fails to meet either element.

**First,** Rutherford cannot articulate what alleged barrier he encountered related to his disability. Rutherford cannot identify when he visited the websites, or how many times, or what device he used, or what information he accessed or what he found to be deficient about any of the aforementioned websites. (Ex. G., 73:24-74:3, 87:7-10, 80:24-81:5, 92:1-9, 80:9-11, 153:19-23, 154:14-16, 155:4-10, 156:4:13, 156:20-157:5, 158:4-10, 73:21-23, 87:3-6, 80:16-23, 92:10-12, 80:5-8,165:14-18, 85:1-4, 74:4-6, 87:11-14, 81:6-9, 92:13-15, 80:12-15, 172:22-173:1, 174:3-5.) Nor can Rutherford offer any evidence supporting the barriers he encounter in the booking process as he cannot recall ever attempting to access it. (Rutherford Depo. 162:16-163:2.) **Second,** Rutherford's deposition testimony makes clear he had no actual intention to visit San Diego at all, much less genuine intent to return in the future. (Ex. G, Rutherford 72:21-23.) Rutherford could not recall when, if *ever*, he had been to San Diego, and could only recall staying at one hotel in the last year in Norco, CA. (*Id.* at 52:20-25; 54:2-21) Rutherford testified that as of the date of the deposition, he had no plans to stay at *any* San Diego hotel. (*Id*. at 72:21-23.)

While Rutherford testified that he was looking to visit San Diego based on his fiancé's desire to visit San Diego,[6] they never made such a trip. If he had really been researching hotels in 2017 for his upcoming birthday in January of 2018, he should have visited San Diego prior to his deposition? (*Id.* at 74:17-75:3, 75:4-16, 75:17-76:3, 20:7-8.) He also could not identify any other hotels he considered when planning the non-existing visit. (*Id.* at 76:18-23, 77:3-8.) As for A4EA, Rutherford who was the PMQ on all subjects, testified that he could not identify  affected

---

[6] See Footnote 5 regarding sham affidavits.

members. (*Id.* at 10:7-10; 26:23-27:21; 30:9-11; 96:19-21; 100:24-101:9; Ex. Q.) Thus, Plaintiff's claims must be dismissed sua sponte for lack of Article III standing. *Brooke v. Pac. Gateway Ltd., LP*, No. 3:17-CV-0796-CAB-WVG, 2017 U.S.Dist. LEXIS 70957 at *4 (S.D. Cal. 2017) (finding no standing when tester explored a hotel's accessibility features remotely, found them wanting, and failed to provide any evidence establishing concrete plans, past or present, to visit San Diego or to stay at the offending hotel if not for the accessibility issues).

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' RUTHERFORD AND A4EA'S CLAIMS AS UPDATES TO THE WEBSITES MOOT PLAINTIFFS' WEBSITE VIEWING CLASSES

Mootness is an absolute defense to class certification. *Valentine v. Sec'y of HHS*, 542 F. Supp. 76, 78 (N.D. Cal. 1982); *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (8th Cir. 1987) (dismissing moot claims *sua sponte* in response to class certification motion).  The only remedy available for a violation of the ADA under a private right of action is injunctive relief. 42 U.S.C. §12188(a); see also, *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1086 (2000) ("injunctive relief is an available remedy for violations of [48 U.S.C.] section 12182(b)(2)(A)(iv)").  If no barriers exist at the time the court is asked to provide injunctive relief, the ADA claim is moot because there is nothing for the court to order. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (requests for injunctive relief are moot if the activity to be enjoined has already ceased).  The Court cannot take jurisdiction over a claim "to which no effective relief can be granted." *Id.*[7]

Here, Evans Hotels' reservations services already comply with the ADA (see, this Opposition pp. 3:113-4:10) and the websites have been updated to provide even more information addressing Plaintiffs' concerns.  Accordingly, the fact that any

_____

[7] In *McNeil v. Time Ins. Co.* (5th Cir. 2000) 205 F.3d 179, 187, the court noted that while "it is literally possible, though strained, to construe 'full and equal enjoyment' to suggest that the disabled must be able to enjoy every good and service offered to the same and identical extent as those who are not disabled... such a reading is plainly unrealistic, and surely unintended, because it makes an unattainable demand."

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  alleged barrier has been remedied renders the issue moot under the ADA and state

2  law. *Hubbard v. 7-Eleven, Inc.,* 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006).

3  ## V.  THE COURT SHOULD DENY CLASS CERTIFICATION

4  "Rule 23 does not set forth a mere pleading standard. A party seeking class

5  certification must affirmatively demonstrate… compliance with the Rule—that is,

6  [the party] must be prepared to prove that there are in fact sufficiently numerous

7  parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564

8  U.S. 338, 350 (2011).  Plaintiffs bear the burden of "demonstrating that [they have]

9  met each of the four requirements of Rule 23(a) and at least one of the requirements

10  of Rule 23(b)" for each of the proposed classes and sub-classes. *Lozano v. AT&T*

11  *Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  This rigorous analysis "will

12  entail some overlap with the merits of the plaintiff's underlying claim.  That cannot

13  be helped.  "[T]he class determination generally involves considerations that are

14  enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"

15  *Wal-Mart*, 564 U.S. 338, 351.

16  Plaintiffs request certification of four classes.  The first two are a nationwide

17  and California subclass of all legally disabled persons who visited one of the

18  Accessibility Pages ("Website Viewing" Putative Class).  The second two are a

19  nationwide and California subclass of all legally disabled persons who reserved,

20  attempted to reserve, or will reserve an accessible room through one of the three

21  websites ("Online Booking" Putative Class).[8]  Each proposed class is fatally flawed.

22  ### A.  Plaintiffs' Claims are Not Typical of Any of the Classes He Seeks
      To Represent.

23

24  "The class representative 'must be part of the class and possess the same

25  interest and suffer the same injury as the class members.'" *Lymburner v. U.S.*

---

26  [8] While plaintiffs assume a three-year statute of limitations by defining the conduct as
27  occurring during the three years prior to filing the complaint, the California subclasses
     are subject to a 2-year period of limitations. *Estate of Stern v. Tuscan Retreat, Inc.*, 725
28  F. App'x 518, 525 (9th Cir. 2018) (citing Cal. Civ. Proc. Code § 335.1.)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Financial Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010); see also *Etzelsberger v. Fisker Auto., Inc.*, 300 F.R.D. 378, 383 (C.D. Cal. 2013); Fed. R. Civ. P. 23(a)(3). A representative's claims are typical if other members have the same or similar injury, if the action is based on conduct which is not unique to the named plaintiffs, and if other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985).

### 1.   Plaintiffs Cannot Represent All Disabled Individuals.

In light of Rule 23(a)(3), Plaintiffs' proposed classes are absurd. By its definition, any person visiting one of the three websites who has asthma, diabetes, alcoholism, dyslexia or any other countless impairments would be a class member. 28 C.F.R. 36.105 (b)(2). *What accessible features does Rutherford contend should be on the website for them?* Rutherford, who does not have impairments beyond mobility, is simply not typical of these potential class members.[9]

### 2.   Plaintiffs Cannot Represent The Website Viewing Class

Plaintiffs claim Evans Hotels failed to adequately describe the accessibility features of any of Evans Hotels accommodations because it did not provided dimensions or measurements for each accessible room on the website. (Ex. G, 107:4-6.)  First, Plaintiffs have not and cannot show any legal authority that describing dimensions or measurements is the level of detail required by the ADA. (*See*, Motion generally.)  Next, Rutherford has not offered any evidence that the lack of dimensions or measurements is a barrier encountered by *all legally disabled* individuals such as those with diabetes, depression, asthma, dyslexia or any other

---

[9] Rutherford cannot represent all mobility impaired individuals either. (*See* Ex. G, 61: 18-20 (testifying he has not used wheelchair in last 12 months), 99:2-100:25, 102:3-5 (after being asked what more information is necessary to determine whether room meets his needs, Rutherford asked—"are we talking about me now, or are we talking about [Ms. Filardi] and me both?), 58:1-60:13 (testifying that room accessibility needs for wheelchair [roll-in shower and height appropriate sink and mirror] differ from his needs with cane [non-skid floors].)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   innumerable impairments.  Plaintiffs have not shown they possess the same interest

2   and suffer the same injury as other class members so as to be typical of the class.

### 3.   Plaintiffs Cannot Represent the Online Booking Class

3

4          Rutherford has not reserved or even attempted to reserve a room through any

5   of the three websites. (Ex. G, Rutherford Depo. 162:16-163:2.) Also, he cannot plan

6   to reserve an accessible room in the future when he has no intention to visit San

7   Diego. (*Id.* at 72:21-23.) Thus, as Rutherford is not part of the Online Booking class

8   (i.e., a legally disabled persons who reserved, attempted to reserve, or will reserve an

9   accessible room) he cannot satisfy the requirements of Rule 23(a)(3).

### B.   Rutherford Is Not An Adequate Class Representative Under Rule 23(a)(4)

10

11  Rule 23(a)(4) requires that "the representative parties will fairly and

12  adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy

13  constitutional due process concerns, "absent class members must be afforded

14  adequate representation before entry of a judgment which binds them." *Hanlon v.*

15  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee*, 311

16  U.S. 32, 42-3 (1940)).   A putative class representative's "credibility may be a

17  relevant consideration with respect to the adequacy analysis" and courts "must be

18  concerned with the integrity of individuals it designates as representatives for a large

19  class of plaintiffs." *Marsh v. First Bank of Delaware*, 2014 WL 554553, at *9 (N.D.

20  Cal. Feb. 7, 2014).   Where a representative plaintiff lacks credibility on a matter

21  critical to the litigation, courts have denied motions for class certification based on

22  inadequate representation. See, e.g., *Jovel v. Boiron, Inc.*, 2014 U.S. Dist. LEXIS

23  35908, *9 (C.D. Cal. 2014); *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346

24  (E.D.N.Y. 1997), aff'd 164 F.3d 81 (2d Cir. 1998); *Searcy v. eFunds*, 2010 U.S. Dist.

25  LEXIS 31627, *4 (N.D. Ill. 2010).   Rutherford is an inadequate class representative

26  because he cannot remember any of the conduct which led to this action.

27         Other significant testimony belie the allegations in the SAC.   Rutherford

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  claims to suffer from self-diagnosed short and long term memory loss.  (Ex. G, 9:9-

2  17; 17:4:21; 18:4-6.)  Rutherford cannot recall attempting to engage in the booking

3  process at any of the hotel websites. (Ex. G, 162:16-163:2.)  He cannot remember

4  why he was looking to go to San Diego or what hotels he researched.[10] (Ex. G, 20:7-

5  8, 74:17-75:3, 75:4-16, 75:17-76:3, 76:18-23,77:3-8; ECF 21, ¶24; ECF 42-2, 1:21.)

6  Rutherford cannot recall when he visited the websites, how many times, what device

7  he used to access them, what information he accessed, or what he found to be

8  deficient about any of the Evans Hotels properties' websites. (Ex. G, 73:24-74:3,

9  87:7-10, 80:24-81:5, 92:1-9, 80:9-11, 153:19-23, 154:14-16, 155:4-10, 156:4:13,

10  156:20-157:5, 158:4-10, 73:21-23, 87:3-6, 80:16-23, 92:10-12, 80:5-8,165:14-18,

11  85:1-4, 74:4-6, 87:11-14, 81:6-9, 92:13-15, 80:12-15, 172:22-173:1, 174:3-5.)

12       Additionally, A4EA is an inadequate class representative because it is a sham

13  organization devoid of credibility.  A4EA is an unincorporated organization created

14  and governed by James Rutherford. (*Id.* at 180:22-23; Ex. A, A4EA Depo. 19:7-9;

15  30:3-11.) The only other currently active member Rutherford is aware of is his

16  fiancé, Patricia Filardi, though exactly what makes one a member is unclear to

17  Rutherford. (Ex. A, A4EA Depo. 27:8-21; 51:15-21.)  A4AE does not collect dues

18  or hold regular meetings. (*Id.* at 27:22-24; 29:23-25.) Rutherford claims A4EA

19  interacts and engages with people to provide them information and education, but he

20  has no records documenting any of those activities. (Ex. A, A4AE 27:25-29:22.)

21  Rutherford's testimony on interests or contacts with alleged members is devoid of

22  credibility.  (*Id.* at 10:7-10; 26:23-27:21; 30:9-11; 96:19-21; 100:24-101:9; Ex. Q.)

23  A4AE has a bank account and Rutherford is a signatory on behalf of A4AE. (*Id.* at

24  181:10-11, 181:19-21.)  Rutherford does not know if A4EA files taxes, but he has

25  not personally filed a tax return on its behalf. (*Id.* at 184:7-15.)  A4AE has collected

26  ***at least*** $80,000-$90,000 in settlement funds for ADA litigation in the last two years.

27  (*Id.* at 37:22-38:5.)   A4AE has no business registrations, licenses, or other

28  ---
[10] See Footnote 5 regarding sham affidavits.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  documents formally acknowledging its legal existence other than an employer ID

2  number sought in 2011. (*Id.* at 14:4-13.)

3      **C.**    <u>**Numerosity Factor Is Not Met Under Rule 23(a)(1)**</u>

4      To meet Rule 23(a)(1)'s numerosity requirement, Plaintiff must demonstrate

5  some evidence or reasonable estimate of the number of purported class members.

6  *See Tourgeman v. Collins Fin. Servs.*, 2011 U.S.Dist. LEXIS 122422 at *25. (S.D.

7  Cal. 2011), citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal.

8  1999). Plaintiffs attempt to mislead this Court to believe there are at least 100 class

9  members by severely mischaracterizing 100 online reservations between January 1,

10  2015 and September 28, 2018. Plaintiffs argue these reservations were made by

11  *legally disabled* persons seeking an accessible room.[11] (ECF 45-1, 9:22-25.) Their

12  entire argument is based on Defendant's responses to interrogatory numbers 19-21,

13  but those responses only identify the online bookings of individuals (not legally

14  disabled persons) who ended up staying in an Accessible Room. (ECF 45-7.)

15  Plaintiffs cannot determine whether these guests are legally disabled or suffered any

16  injury related to the class claims. And, it is likely that many of the guests referred to

17  in the interrogatory responses would not have been disabled or even desired an

18  Accessible Room, but only ended up in an Accessible Room because it was the last

19  available room of the room type that the guest selected, or one of the last available

20  rooms in inventory regardless of room type. (Thomas Dec., ¶ 10.) Plaintiffs cannot

21  meet their numerosity burden by speculating and citing the number of guests who

22  booked online and stayed in Accessible Rooms, when it does not necessarily follow

23  that those guests are disabled or sought Accessible Rooms.

---

24  [11] Plaintiffs also disingenuously contend the class exceeds 100 members because

25  "persons with disabilities do more planning and booking of accommodations via the
Internet than persons in the general population." (ECF 45-1, 9:25-10:2.) That is not a

26  statement of law but rather a citation to evidence in *Shields v. Walt Disney Parks & Resorts US, Inc.* 279 F.R.D 529, 549, which is not before this Court. In fact, the

27  evidence that is before this Court is contrary, showing more than twice as many

28  Accessible Rooms booked by phone than online. (ECF 45-7.)

Even more ruinous to Plaintiffs' numerosity argument is that 83 of the 100 individuals identified in the interrogatory responses booked rooms directly online at the Lodge, where the process of booking an Accessible Rooms is identical to the process of booking of non-accessible rooms.  (Thomas Depo. 22:8-12; Pitts Depo. 30:7-15.)  Because Plaintiffs have not and cannot point to any evidence that those 83 guests of The Lodge were discriminated against, they are left with a mere 17 guests of the Bahia and Catamaran who may or may not have been disabled and who may or may not have sought an Accessible Room.  As Plaintiffs cannot establish numerosity, their certification request must fail.

**D.**  **Plaintiffs Cannot Establish Commonality Under Rule 23(a)(2) or Predominance Under 23(b)(3) For Any Class Because Individualized Issues Overwhelm Common Issues**

"[T]he rule requiring a plaintiff to show 'there are questions of law or fact common to the class" is easy to misread… 'What matters to class certification… is not the raising of common 'questions'–even in droves–but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349.  Plaintiffs must show that there is an issue "of such a nature that… determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* At 350.  Under Rule 23(b)(3), even if there are common questions, no class can be certified unless they predominate over individual questions.  This predominance inquiry is far more stringent than the "commonality" requirement of Rule 23(a)(2).  *See Konik v. Time Warner Cable*, 2010 WL 8471923, at *4 (C.D. Cal. 2010).   To avoid repetition, this brief discusses the commonality and predominance tests together.  Plaintiffs' cannot certify a class under either standard.  This analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Plaintiffs allege violations of Title III of the ADA and with dependent state law claims for money damages under the Unruh Act.  SAC ¶ 60 (Title III), ¶48 (violation of the ADA constitutes a violation of the Unruh Act).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    To prevail on these claims (and recover requested statutory damages under the

2    Unruh Act) each putative class member must prove he is disabled within the

3    meaning of the ADA. *Arizona ex rel. Goddard v. Harkins Amusement Enter., Inc.*,

4    603 F.3d 666, 670 (9th Cir. 2010). Disability is defined as "a physical or mental

5    impairment that substantially limits one or more of the major life activities of such

6    an individual." 28 C.F.R. 36.105(a)(1).[12]   Impairments such as cancer, diabetes,

7    deafness, blindness, partially or completely missing limbs, and mobility impairments

8    requiring the use of a wheelchair easily fall within this definition. *Id.* at

9    36.105(d)(2)(iii). The ADA, however, covers a much broader range of impairments.

10   *Id.* at (b)(1). Evaluating whether any person that visited one of three websites has a

11   physical or mental impairment and whether such impairment substantially limit a

12   major life activity requires is by regulatory mandate, ***an individualized assessment***.

13   28 C.F.R. § 36.105(d)(1)(vi). This assessment includes a comparison of the

14   individual's performance of a major life activity to the same activity by those in the

15   general population, evaluation of the conditions under which the individual performs

16   the major life activity, and even an evaluation of the duration it takes to perform the

17   major life activity. *Id.* at (d)(1)(vii).

18       Even Rutherford, the proposed class representative, is required to undergo

19   such an individualized assessment. The other element that Plaintiffs must prove to

20   prevail on their ADA claim is that each class member was denied public

21   accommodation by the Defendant due to his or her disability. *Arizona*, 603 F.3d at

22   670. This also implicates individual issues for all the proposed classes.

23       **1.    Individual Issues Prevent Certification of the Website Viewing Class.**

24   As to the "Website Viewing Class," Rutherford contends that as to each class

25

_____

26   [12] The regulation at issue here, section 36.302, requires a plaintiff to prove an "actual

27   disability" or a "record of such an impairment." 28 C.F.R. 36.105(a)(2)(iii). Putative class members cannot be made solely under the "regarded as" prong on the definition.

28   *Id.*

16

member, Defendant failed to:

> Identify and describe accessible features in the hotels and guest rooms offered through its ***reservations service*** in enough detail to reasonably permit ***individuals*** with disabilities to assess independently whether a given hotel or guest room meets ***his or her accessibility needs***;…

28 C.F.R. 36.302(e)(1)(ii).

Plaintiffs' argument for class certification on the "Website Viewing Class" is based on the mistaken contention that this regulation requires information to be provided exclusively through a website. The regulation requires, however, that this information be made available through "reservations services." *Id.*, see also DOJ Title III Regulations Supplementary Information Guidance and Analysis, page 99-100 (explaining that the "reservations service… should include [] information and provide a way for guests to contact the appropriate hotel staff for additional information and that "many individuals with disabilities may wish to contact… reservations service for more detailed information.) Indeed, the obligation to provide information (and in how much detail) is tied to the *individual* person with a disability and their individual accessibility needs. Thus, class member eligibility would depend require individualized inquiries about their personalized user experience on the websites, disabled status, and use/non-use of additional communication methods such as the telephone, chat feature or other service. [13] Rutherford's own experiences are illustrative of that fact.

The original website description designated specific guest rooms as "accessible." For some individuals, that information is sufficient. Rutherford, however, wanted information about non-skid floors. (Ex. G, 60:2-13.) An individual with cancer may be interested in the availability of an in-room mini-fridge for medication. A wheelchair user may be interest in a higher bed height (to

---

[13] Because of the "wide variations in level of accessibility that travelers will encounter, the [DOJ] cannot specify what accessibility information must be included in every instance." 28 C.F.R. Pt. 36, App. A. The DOJ specifically states that that "…a reservations system is not intended to be an accessibility survey." (*Id.*)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

accommodate a Hoyer lift) or a lower bed height to facilitate self-transfer from a wheelchair to the bed. To evaluate whether a violation of section 36.302(e)(1)(ii) occurred, the Court must consider, which information was available through the reservations service (phone, live chat, and website) and whether that information gave the individual person enough detail to reasonably decide whether a hotel or guest room will meet their needs.

### 2.     Individual Issues Prevent Certification of the Online Booking Class.

To prevail in this action, the Online Booking class members must establish that they were unable to reserve Accessible Rooms in the same manner as guests who do not need accessible rooms. 28 C.F.R. § 36.302(e)(1)(i) (See, Motion at 6:9-7:3). Even if Plaintiffs are correct that the two-step booking process required at the Bahia and Catamaran due to the low inventory of Accessible Rooms violates Section 36.302(3)(1)(i)[14] —a contention that Defendant vigorously disputes[15] —there is no

_____

[14] Troublingly, the relief Plaintiff seeks—direct online booking of the limited inventory of Accessible Rooms at the Catamaran and Bahia—would result in violations of 28 C.F.R. § 36.302(e)(1). Those properties would not be able to "ensure that accessible guest rooms are held for use by individuals with disabilities" (see § 36.302(e)(1)(iii)) because, for example, a guest with no accessibility needs would be able to book an Accessible Room simply because it was listed at an inexpensive rate. (Ex. B, Guillermo Depo. 54:19-55:18.) Also, there would be a risk of double-booking Accessible Rooms in violation of 36.302(e)(1)(iii)-(v) due to the delay from the time a room is booked directly online and the time it is removed from inventory. (Thomas Dec., ¶ 9.) While that delay is not problematic at The Lodge because the Accessible Rooms are largely the same room type, it would be problematic at the Catamaran where there are only two Accessible Rooms or at the Bahia where the seven Accessible Rooms are spread across a variety of room types. (*Id.*) Ironically, double booking is the main problem 36.302(e)(1) was intended to prevent. (See 28 C.F.R. Pt. 36, App. A [most complaints involve individuals who reserve an accessible room only to discover on arrival that the room they reserved is not available].)

[15] When a guest specifically requests a room with certain features, whether those features are related to accessibility or otherwise, the process to reserve that room is the same for all guests. (Thomas Depo. 24:10-15; 25:7-17, 26:14-24, 36:20-37:10, 64:4-12; Pitts Depo. 48:8-50:2.) That is all the law requires. (See, 28 C.F.R. Pt. 36, App. A ["The regulation does not require reservations services to create new methods for reserving hotel rooms…; instead, covered entities must make the modifications needed to ensure that individuals who need accessible rooms are able to reserve them in the same manner as other guests."].)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    dispute that the Lodge allows guests to directly book Accessible Rooms online in a

2    manner that is identical the non-accessible rooms.  (Ex. I, Thomas Depo. 22:8-12

3    ["For The Lodge at Torrey Pines, that is a room type that's online so a consumer can

4    actually take it out of our inventory by booking it online."]; Ex. F, Pitts Depo. 30:7-

5    15 [Q. "And then for The Lodge, you can actually reserve accessible rooms through

6    their booking engine; is that correct?"  A. "If the inventory is available, yes."])

7        In Plaintiffs' Motion, the discussion of online booking inexplicably fails to

8    distinguish the process for booking Accessible Rooms online at the Lodge.  (Motion

9    at 3:14-4:7.)  And, by sweepingly defining the Online Booking putative class as

10   those who reserved rooms "through *Evans Hotels' Websites*," Plaintiffs lump all

11   three properties together.  (Motion at 8:10-16.)  As defined, the Online Booking

12   putative class is fatally over inclusive because it includes any members who directly

13   booked an Accessible Room at the Lodge and were never subjected to the alleged

14   discriminatory treatment. See, *Trujillo v. UnitedHealth Grp., Inc.,* 2018 U.S. Dist.

15   LEXIS 220840, *17-18 (C.D. Cal. 2018) (commonality and typicality requirements

16   ensures class is neither over-inclusive nor under-inclusive).  Were Plaintiffs to limit

17   the Online Booking putative class to the Bahia and Catamaran, the commonality and

18   predominance flaws would remain.  Plaintiffs' own argument makes clear that there is

19   no common answer to the allegedly common question of whether the putative class

20   members have suffered the same injury (i.e., whether they were able to reserve Bahia or

21   Catamaran accessible rooms online in the same manner as others).

22       Plaintiffs argue that the time individuals wait for a second email confirming

23   an accessible room reservation could be "either minutes or hours."  (Motion at 4:1-

24   4.)  So, to determine whether any given class member's experience resulted in unfair

25   discrimination would require an individualized assessment of any delay.  Thus, the

26   Online Booking putative class lacks commonality and predominance.  *Mazza v. Am.*

27   *Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (common questions of fact do

28   not predominate where individualized case must be made for each member showing

1    they were treated differently from non-disabled person).

2           **3.    Individual Issues Prevent Certification Damages Classes**
3                  **Under Unruh.**

4          Unlike the ADA which only allows a private individual to recover injunctive

5    relief (barrier removal), attorney's fees and litigation costs, California's Unruh Act

6    permits private plaintiffs to recover damages (three times actual damages or $4,000,

7    or $1,000 per offense). Like similar remedial statutes, the Unruh Act provided for

8    super-compensatory damages, ranging from a minimum of $4,000 to a maximum of

9    three times actual damages. Where each class member's individualized claim for

10   money is an issue, Rule 23(b)(3) requires findings about predominance and

11   superiority before allowing the class. *Wal-Mart,* 564 U.S. 338, 362.

12         In order to have standing to pursue an action for statutory damages under the

13   Unruh Act, a disabled plaintiff must show that he "actually presented himself to a

14   business or public accommodation with the intent of purchasing its products or

15   utilizing its services in the manner in which those products and/or services are

16   typically offered to the public and was actually denied equal access on a particular

17   occasion." *Reycraft v. Lee*, 177 Cal.App.4th 1211, 1224 (2009). "The phrase 'denied

18   equal access' necessarily implies that either the structure of the public facility, or

19   some policy of its operator, precluded equal access." *Urhausen v. Longs Drug Stores*

20   *California, Inc.*, 155 Cal.App.4th 254, 263 (2007). Furthermore, a plaintiff must

21   prove that he suffered "embarrassment, humiliation, or discomfort" as a result of the

22   inaccessible facility. Cal. Civ. Code §55.56; *Mundy v. Pro-Thro Enter.*, 192

23   Cal.App.4th Supp. 1, *5 (2011) (plaintiff alleging a violation of either Unruh Act or

24   the DPA may recover statutory damages only if he proves embarrassment,

25   humiliation or discomfort as a result of the violation); *Doran v. 7-Eleven, Inc.*, 509

26   F.App'x 647, 648 (9th Cir. 2013) (plaintiff's claims under the Unruh Act and the

27   DPA properly dismissed because he did not prove that he "experienced difficulty,

28   discomfort, or embarrassment because of the violation").

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    Due to the inherently individualized inquiries necessary to prove liability, *i.e.*

2 that a plaintiff presented him or herself to the public accommodation with the intent

3 of utilizing its services and experienced a violation resulting in embarrassment,

4 humiliation or discomfort from the violation, it is well established that Unruh Act

5 claims, like this one, are not amenable to class certification.   For Plaintiffs'

6 purported inadequate descriptions class, each class member would need to

7 demonstrate  that he or she attempted to utilize at least one of the Evans Hotels'

8 websites to gain information about accessibility features of the property and was

9 unable to review descriptions which provided enough detail for them to assess

10 whether the hotel property or rooms would meet his or her accessibility needs and,

11 thus, experienced embarrassment, humiliation or discomfort from the violation.[16]

12    For Plaintiffs' purported discriminatory booking practices class, each class

13 member would need to demonstrate that he or she attempted to book an accessible

14 room at one of the Evans Hotel properties online and was unable to do so in the

15 same manner and during the same hours as individuals who do not need an

16 accessible room.  Furthermore, class members in either class would also be subject

17 to individualized defenses, such as the obligation to mitigate damages. Civ. Code §

18 55.56(f).  Finally, counting visits to accessibility pages is not an appropriate shortcut

19 into: (1) the individualized thought process of website visitors or (2) determining

20

21 [16] *See Weaver v. Pasadena Tournament of Roses*, 32 Cal.2d 833 (1948) (denying class
certification because statutory recovery required the determination of each person's right to
22 recover on his statutory claim); *Bartlett v. Hawaiian Village, Inc.*, 87 Cal.App.3d 435
(1978) (denying class certification because Unruh damages required individual inquiry);
23 *Moeller v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 104454 *12 (N.D. Cal. 2012) (denying
class certification and holding "issues of classwide damages cannot be separated under
24 Rule23(b)(3)…because damages for California disability claims are inextricably
25 intertwined with individualized liability questions, and it is thus impossible to make an
across-the-board conclusion as to the recovery of damages…"); *Antoninetti v. Chipotle*
26 *Mexican Grill, Inc.*, 2012 U.S. Dist. LEXIS 123102 (S.D. Cal. 2012) (finding both 1.) no
advantage with respect to judicial economy to be gained from certifying issues of whether
27 class members are entitled to statutory damages under Unruh and 2.) that Unruh's damages
28 provide individuals with a significant monetary incentive to file individual lawsuits).

1   their disabled/non-disabled status.[17]

2   **E.   A Class Action is Not Superior to Other Available Methods For Fairly and Efficiently Adjudicating the Controversy**

3

4   The predominance of common questions does not alone justify use of a class

5   action, "for another method of handling the [case] may be available which has

6   greater practical advantages." Fed. R. Civ. P. 23(b)(3) advisory committee's note to

7   1966 amendment. Rule 23 requires a court find that the class action is the "superior"

8   method of resolution. *Id.* District courts are "in the best position to consider the

9   most fair and efficient procedure for conducting any given litigation," and so must

10  be given "wide discretion" to evaluate superiority." *Bateman v. Am. Multi-Cinema,*

11  *Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (internal citations omitted). The likely

12  difficulties in managing a class action is a factor to consider. Fed. R. Civ. Proc.

13  23(b)(3). The putative class identified by the Plaintiffs are unmanageable. Plaintiffs

14  seek to represent "all legally disabled persons in the United States who have

15  *accessed, attempted to access, or will access*" defendant's websites and all legally

16  disabled persons in the United States who have reserved, attempted to reserve, or

17  will reserve an accessible room" through the websites." (*See,* Notice of Mot. at 1.)

18  Not only are both definitions inexcusably vague (as to time, what constitutes

19  an "attempt" to access or visit, whether an "attempt" was for the purpose of

20  reserving an accessible room, whether class members are those whose "attempts" to

---

[17] Through third party software, Google Analytics, Evans Hotels can run reports for the number of unique visitors to its websites, ***but not*** the identity of those users. (Koczur Dec. ¶6.) Even then, the number of unique visitors to each property's Accessibility Page was extremely low overall: 0.59% (Bahia); 0.24% (Catamaran); and 0.26% (Lodge) of each property's respective total traffic. (*Id.*) Certain limitations of Google Analytics mean that the number of "unique visitors" to a given webpage is greater than the number of actual people (including Evans Hotels employees and the lawyers in this case) who visit that page, if they are using multiple devices. (*Id.*) Evans Hotels has no way to determine the identity of the unique visitors to the Accessibility Pages (or any other webpage), nor can it determine whether a unique visitor is legally disabled. (*Id.*) Further, the potential invasive nature of such an inquiry into a hotel guest's stay could implicate privacy issues about the stay, the guests in the reservation and the nature of the disability involved.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    reserve an accessible room actually failed (in some regard), and whether such actual

2    failed attempts resulted in cognizable harm that Evans Hotels is liable for), but

3    reliably identifying the members Plaintiffs' describe necessarily requires a liability

4    determination before a trial on the merits.  In other words, to determine who could

5    be included as member of either class, this Court would have to know what, if any,

6    actual harm was suffered by each putative class member that merely "attempted" to

7    access or visit any of the subject websites (for some unstated purpose), without

8    limitation, including whether such attempts were successful or not. Courts routinely

9    find such unruly class definitions unascertainable and "self-defeating" because of the

10   substantial burden of conducting mini-trials on the merits for each putative class

11   member's case, effectively negating the efficiencies of proper class actions. *See* 8

12   Newberg on Class Actions, § 24.17 (5th ed. 2008).

13       Even providing notice to the putative class members (required for due process

14   in Rule 23(b)(3) cases) would require a proverbial needle-in-the-haystack search to

15   find a hundred or so putative class members among the United States web-browsing

16   population.  Indeed, it is unclear how Plaintiffs would provide notice to any class

17   member—especially because he has been unable to today's date been able to identify

18   any other such individual or a plan of identifying others. [18]  Contrary to Plaintiffs'

19

20   [18] Even though the Ninth Circuit has approved the use of questionnaires in *Briseno v.
21   ConAgra*, 844 F.3d 1121, 1130 (9th Cir. 2017) in the claims-administration process at
     the end of a small-claim consumer class action, such an administrative process here
22   robs Evans Hotels of due process. In *Schellenbach v. GoDaddy Inc.*, 2017 U.S. Dist.
     LEXIS 138765, *11, 2017 WL 3719883 (AZ 2017), the court denied class certification
23   arising from a similar situation in which class members' particularized experience on a
     website was necessary to show liability.  The *Schellenbach* court agreed that it "could
24   not require GoDaddy to accept a class member's simple assertion in a questionnaire that
     she did not visit the /servers webpage or receive information regarding the virtual
25   nature of the server through other means." Further, "[t]his issue lies at the heart of
     Plaintiffs' liability claim, and GoDaddy certainly would be entitled to test a class
26   member's assertion on such a central fact, conducting discovery and presenting
27   evidence regarding the webpages visited by the class member and other information the
28   class member received…" *Id.* at *10-11; see also, *In re SFPP Right-Of-Way Claims*,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   contention, the merits issues on which class membership cannot be identified by any

2   existing evidence.  Review of accessibility pages, does not mean an individual was

3   "denied equal access" – indeed, it suggests the very opposite, which is that such

4   individuals were informed about Evans Hotels' accessibility features and services

5   for disabled guests and potential guests.  Again, counting visits to accessibility pages

6   is not an appropriate shortcut into this individualized inquiry.  Here, putative class

7   members, especially those in California – have more than enough incentive to bring

8   individual cases.  California permits private plaintiffs to recover damages and

9   attorney's fees and costs.  Rutherford and A4EA have themselves brought many

10  such cases, proving that individual plaintiffs have the incentive to bring such claims.

11       **F.    Plaintiffs Cannot Certify A Class Under Rule 23(b)(2)**

12       Plaintiffs' claims do not fit within Rule 23(b)(2) because "individualized

13  monetary claims belong in Rule 23(b)(3)" rather than Rule 23(b)(2).  *Wang v.*

14  *Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).  Claims for monetary

15  relief may not be certified under Rule 23(b)(2).  See, *Wal-Mart*, 564 U.S. 338, 360.

16  Tellingly, Plaintiffs title their operative pleading: "Second Amended Complaint **for**

17  **Damages"** (SAC, p. 1.)  Plaintiffs' Motion spends six pages on Rule 23(b)(3), which

18  is applicable to actions primarily for money damages (*see* Motion 18:16-24:11), but

19  only one-and-a-half pages on Rule 23(b)(2) (*see* id. 24:12-25:22).  Plaintiffs clearly

20  view the primary relief in this case to be monetary, so certification under Rule

21  23(b)(2) is not appropriate.   Even if certification under Rule 23(b)(2) was

22  appropriate, it only permits the Court to certify a class if the defendant "has acted or

23  refused to act on grounds that apply generally to the class, so that final injunctive

24  relief or corresponding declaratory relief is appropriate respecting *the class as a*

25  *whole*."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  In other words, "claims for

26  *individualized* relief… do not satisfy [Rule 23(b)(2)]." *Wal-Mart,* 564 U.S. 338, 360

27

28  2017 U.S. Dist. LEXIS 85973, *39-40 (CD CA 2017) (identity of class members could
    not be adequately performed by administrative claim handlers).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    (2011).  "Rule 23(b)(2) applies only when a single injunction or declaratory

2    judgment would provide relief to each member of the class." *Id.*

3           Plaintiffs cannot certify a Rule 23(b)(2) class because the effect of the relief

4    sought upon individual members would vary by person.  Plaintiffs seek injunctive and

5    declaratory relief related to Defendant's "reservation services" allowing "persons with

6    mobility impairments" to independently identify accessible features of Defendant's

7    hotels and reserve accessible rooms. (SAC, 16:1-16.)  But, Rutherford's testimony

8    shows the accessible features relevant to a mobility impaired guest vary significantly by

9    guest. (*See*, Footnote 9, *supra*).  Rutherford's testimony belies Plaintiffs' statement

10   that "the experience of individuals visiting these websites are uniform." (Motion,

11   25:3-5.)  Rather, the relevant accessibility features on a website or information

12   necessary to determine which room meets the needs of a mobility-impaired person

13   will vary by guest.  Thus, in this case, no declaratory or injunctive relief is

14   appropriate for a class of mobility impaired individuals "as a whole."

15          Even more problematic for Plaintiffs is that—unlike the relief sought in the

16   SAC, which is expressly limited to "persons with mobility impairments"—Plaintiffs

17   now vastly overreach, and ask this Court to certify classes of "*all legally disabled*

18   *persons*."  Plaintiffs' overinclusive class definitions also remove this case from the

19   purview of the Rule 23(d)(2) authority in their Motion.  Plaintiffs rely heavily on

20   *National Fed. of the Blind v. Target Corp.*, but there, the class was limited to

21   "legally blind individuals" and the issue to whether the class could even access the

22   website.  *Id.*, at 1191.  Here, it is adequacy of website *content* for *all disabled*

23   *individuals*.  It is difficult, if not impossible, to imagine what declaratory or

24   injunctive relief would be appropriate for all disabled persons "as a whole."  In

25   conclusion, Rule 23(b)(2) is inapplicable to Plaintiffs' remedies and putative class.

26   **VI.   CONCLUSION**

27          For all the foregoing reasons, Evans Hotels respectfully requests this Court

28   deny Plaintiffs' motion for class certification.

1

2  DATED: February 7, 2019

3

4

5  17526239v1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
By:  /s/ Nadia P. Bermudez
     Nadia P. Bermudez
     Attorneys for Defendant
     EVANS HOTELS, LLC

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
18-CV-00435-JLS (MSB)