1  Nadia P. Bermudez, Bar No. 216555
   Patrick J. Goode II, Bar No. 299697
2  KLINEDINST PC
   501 West Broadway, Suite 600
3  San Diego, California 92101
   (619) 239-8131/FAX (619) 238-8707
4  nbermudez@klinedinstlaw.com

5  Lindsay N. Casillas, Bar No. 269688
   KLINEDINST PC
6  801 K Street, Ste. 2100
   Sacramento, CA 95814
7  Phone: 916/444-7573

8  Attorneys for Defendant
   EVANS HOTELS, LLC

9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS, | Case No. 18-CV-00435-JLS (MSB) |
| Plaintiffs, | **DECLARATION OF NADIA P. BERMUDEZ IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| EVANS HOTELS, LLC, a California limited liability company and DOES 1 to 50, | Date: February 21, 2019<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Judge: Hon. Janis L. Sammartino<br>Magistrate Judge: Hon. Michael S. Berg<br>Complaint Filed: 2/26/18 |
| Defendants. | Trial Date: None set |

I, Nadia P. Bermudez, do hereby declare:

1.    I am an attorney at law duly licensed to appear before all courts in the State of California and am a shareholder with the law firm of Klinedinst PC, attorneys of record for Defendant EVANS HOTELS, LLC, in the above-captioned action.

2.    I have personal knowledge of the following facts and, if called upon as a witness, could competently testify thereto.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

3.      Attached hereto as Exhibit A are true and correct copies of excerpts from the deposition of Association 4 Equal Access taken on October 19, 2018

4.      Attached hereto as Exhibit B are true and correct copies of excerpts from the deposition of Kimberly Guillermo taken on October 23, 2018.

5.      Attached hereto as Exhibit C are true and correct copies of excerpts from the deposition of Scott Hartman taken on November 9, 2018.

6.      Attached as Exhibit D are true and correct copies of excerpts from the deposition of Diane Koczur taken on October 26, 2018.

7.      Attached hereto as Exhibit E are true and correct copies of excerpts from the deposition of Thomas Mohrlock taken on October 31, 2018.

8.      Attached hereto as Exhibit F are true and correct copies of excerpts from the deposition of Heath Pitts taken on October 31, 2018.

9.      Attached hereto as Exhibit G are true and correct copies of excerpts from the deposition of James Rutherford taken on October 16, 2018.

10.      Attached hereto as Exhibit H are true and correct copies of excerpts from the deposition of Thomas Farley taken on October 23, 2018.

11.      Attached hereto as Exhibit I are true and correct copies of excerpts from the deposition of Andy Thomas taken November 2, 2018.

12.      Attached hereto as Exhibit J are true and correct copies of excerpts Evans Hotels' Responses to Rutherford's Interrogatory, No. 4.

13.      Attached as Exhibit K are true and correct copies of excerpts from Evans Hotels' Responses to The Association 4 Equal Access Interrogatory No. 18.

14.      Attached as Exhibit L is a true and correct copies of Plaintiff James Rutherford's Supplemental Responses to Defendant's First Set of Interrogatories.

15.      On February 6, 2018, I conducted a search of ADA related lawsuits in Southern California having been filed by Mr. James Rutherford and his counsel Joseph Manning or Manning Law APC on January 24, 27, and January 28, 2019. Attached as Exhibit M is a true and correct copy of those search results, which

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

include 15 lawsuits. The list includes three ADA cases recently filed in the Southern District of California: Case Nos. 19cv182 (Bashant); 19cv183 (Lorenz); and 19cv184 (Sabraw), and three lawsuits filed in the San Diego Superior Court.

16.    Rutherford's San Diego County Superior Court cases include virtually identical claims that Defendant's online hotel reservation service is not accessible to plaintiff and other mobility-impaired individuals in violation of the ADA:

- *James Rutherford v. Grand Pacific Resorts Inc.;* (1/24/2019) 37-2019-4599-CU-CR-CTL Bacal (a true and correct copy of the Complaint is attached as Ex. N);

- *James Rutherford v. Bandy Canyon Ranch Corp.*; (1/24/2019) 37-2019-4597-CU-CR-CTL Strauss (a true and correct copy of the Complaint is attached as Ex. O);  and

- *James Rutherford v. Inn by the Sea La Jolla*; (1/24/2019) 37-2019-4611-CU-CR-CTL Styn (a true and correct copy of the Complaint is attached as Ex. P).

17.    Attached hereto as Exhibit Q is a true and correct copy of the Second Amended Notice of Deposition of Person Most Knowledgeable for Association 4 Equal Access and Request for Production of Documents.  Plaintiff James Rutherford Appeared as the only person in response to the various categories sought in the deposition.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at San Diego, California on February 7, 2019.

By:  /s/Nadia P. Bermudez
Nadia P. Bermudez

17458422v1

DECLARATION OF NADIA P. BERMUDEZ IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (18-CV-00435-JLS (MSB)

# EXHIBIT A

1            UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4 _____

5 JAMES RUTHERFORD, an      )

6 individual, THE ASSOCIATION  )

7 4 EQUAL ACCESS,          )

8        Plaintiffs,      )

9    vs.              ) Case No. 18-CV-00435-JLS(BGS)

10 EVANS HOTELS, LLC, a     )

11 California limited liability )

12 company and DOES 1 to 50,   )

13       Defendants.      )

14 _____)

15

16    VIDEOTAPED DEPOSITION OF JAMES RUTHERFORD

17       Person Most Knowledgeable for

18        Association 4 Equal Access

19          San Diego, California

20         Friday, October 19, 2018

21             Volume I

22 Reported by:

23 ELAINE SMITH, RMR

24 CSR No. 5421

25 PAGES 1 - 113

Veritext Legal Solutions
866 299-5127

1    binding as against The Association 4 Equal Access?          10:10:28

2         A   Yes, ma'am.

3         Q   Did you speak to anyone in connection with

4    your -- outside of your attorneys, did you speak to

5    anyone in connection with your deposition today?          10:10:35

6         A   No, ma'am.

7         Q   Did you speak to any members of

8    The Association 4 Equal Access in connection with

9    your appearance today?

10        A   No, ma'am.                                       10:10:48

11        MR. HASHEMI:  Just for the record, let's

12   clarify the witness does reside with Patricia

13   Filardi, who is also a member, so outside from that.

14   I just wanted to make the record clear that there may

15   have been discussions as, I'm sure, domestic partners    10:11:04

16   have.

17   BY MS. BERMUDEZ:

18        Q   The first document I'm going to hand to you

19   is Exhibit 18, which is a copy of the second amended

20   notice for your appearance today.                         10:11:16

21        (Exhibit 18 was marked for identification by

22        the court reporter and is attached hereto.)

23   BY MS. BERMUDEZ:

24        Q   Mr. Rutherford, have you seen this document

25   before?                                                   10:11:39

                                              Page 10

```
 1              MS. BERMUDEZ:  -- not right now.          10:15:32

 2              MR. HASHEMI:  Very good.

 3    BY MS. BERMUDEZ:

 4         Q    Let me hand you Exhibit 19.  Can you please

 5    describe what Exhibit 19 is.                          10:15:39

 6         A    It's a federal government Form SS-4

 7    Application for Employer Identification Number.

 8         Q    And did you, in fact, receive a employer

 9    identification in connection with that form?

10         A    Yes.                                        10:15:58

11         Q    And when was it filed?

12         A    Well, the date on here is January the 11th,

13    2011.

14         Q    2011.  And was it yourself that filed that

15    form?                                                 10:16:07

16         A    Yes.

17         Q    Okay.  At any point in time, has

18    The Association 4 Equal Access had any employees?

19         A    No.

20         Q    What was the purpose of obtaining a tax ID  10:16:22

21    number?

22              MR. HASHEMI:  Calls for legal conclusion.

23              THE WITNESS:  Somewhere along the line I

24    came to believe that I needed one, and it sounded

25    reasonable.  So, you know, they're free, so -- so we  10:16:35
```

                                              Page 14

```
 1        Q    Are there any documents between the        10:30:27

 2   association and Mr. Aguilar, to your knowledge?

 3        A    I looked, and I couldn't find any.

 4        Q    Okay.

 5        A    I -- at one point I -- we had membership    10:30:36

 6   forms to fill out.  You know, name, address, contact

 7   information.  I couldn't find anything.

 8        Q    Okay.  And with respect to Mr. Shelton, what

 9   was his involvement with the association?

10        A    Tye was actually a woman.  The same thing.   10:30:53

11   She was someone who was interested in disability-

12   related information.  I have met with her on several

13   occasions.  She filed a couple complaints regarding

14   some businesses that she had issues with.  We tried

15   to help her resolve them in the best way we could.     10:31:11

16        Q    And when is the last time you spoke to

17   Ms. Shelton?

18        A    Years.  Between five and ten years ago.

19        Q    So besides Mr. Aguilar and Ms. Shelton, can

20   you identify any current, active member of the        10:31:24

21   association beside yourself?

22        A    And Patricia.  I'd say no.

23        Q    To your knowledge, are there any current

24   active members of The Association 4 Equal Access

25   other than yourself and Ms. Filardi?                   10:31:55
```

Page 26

```
 1        A    Could you please rephrase, repeat the        10:31:58

 2   question.

 3             MS. BERMUDEZ:   Madam Court Reporter, if you

 4   are to able to.   Thank you.

 5             (Record read.)                                10:32:15

 6             THE WITNESS:   Can you define active.

 7   BY MS. BERMUDEZ:

 8        Q    Yes, I will.   Do you consider

 9   The Association 4 Equal Access as having members?

10        A    Yes, ma'am.                                   10:32:30

11        Q    And how do you define members?

12        A    I define a member as someone who is

13   interested in having a relationship and plans on

14   having some type of relationship with myself and/or

15   the association.                                        10:32:42

16        Q    So using that definition, do you have

17   currently members, current members, other than

18   yourself and Ms. Filardi?

19        A    Yes, ma'am.

20        Q    Okay.   And who are those people?             10:32:52

21        A    I don't know.

22        Q    At any point, has The Association 4 Equal

23   Access collected dues?

24        A    No, ma'am.

25        Q    Can you describe to me the kinds of           10:33:05
```

Page 27

```
 1    thing, an assistance sort of thing.                    10:35:02

 2            And it's a very grassroots process.  I'm out

 3    there with a lot of people on the street.  And so,

 4    you know, and I give them contact information for

 5    myself and tell them that if they -- if they have any  10:35:21

 6    questions or would like more information, to get

 7    ahold of me, look at our website.  Unfortunately, a

 8    lot of people that are, you know, out on the street

 9    are not -- they don't have a lot of resources to be

10    able to do that.                                       10:35:40

11            But just in the past year, I've received

12    several queries in response to my efforts, you know,

13    looking for assistance.  And, I mean, I hate to say

14    it like this, but these people kind of come and go.

15    I mean, they're like ghosts.  One minute they're      10:36:02

16    there, and you try to get ahold of them and they're

17    not there anymore.  And so I -- half the time I don't

18    remember their names.

19        Q   Do you keep any records regarding your

20    activities in educating or interacting with people as  10:36:15

21    you've just described?

22        A   Not really.

23        Q   Does The Association 4 Equal Access hold any

24    kind of regular meetings?

25        A   No.                                            10:36:28
```

Page 29

```
 1              MR. HASHEMI:  Assumes facts not in evidence.      10:36:30
 2    BY MS. BERMUDEZ:
 3         Q    Does The Association 4 Equal Access have any
 4    kind of governing body?
 5         A    Just myself.                                      10:36:45
 6         Q    And what would you consider your title to
 7    be?
 8         A    I guess, director.
 9         Q    Are there any other members of the governing
10    body of The Association 4 Equal Access?                    10:36:58
11         A    No, ma'am.
12         Q    Do you have an understanding that
13    Ms. Filardi has filed lawsuits on behalf of herself
14    as a plaintiff?
15              MR. HASHEMI:  Objection.  Calls for              10:37:24
16    speculation.
17              THE WITNESS:  Yes, ma'am.
18    BY MS. BERMUDEZ:
19         Q    Yes?
20         A    Yes.                                              10:37:33
21         Q    Okay.  Have you ever had a conversation with
22    Ms. Filardi about her filing as an individual versus
23    as a plaintiff on behalf of The Association 4 Equal
24    Access?
25              MR. HASHEMI:  Objection.  Vague.                 10:37:48
```

Veritext Legal Solutions
866 299-5127

```
1    generally filed as myself and the association as        10:45:32

2    being plaintiffs, and so, with that in mind, it goes

3    under the association's account.

4         Q    What kind of expenses does The Association 4

5    Equal Access have?                                       10:45:57

6         A    Business-related items.  Nothing

7    substantial, really.  A little overhead type of

8    business, you know, copy machines.  I might have

9    expensed the computer.  I'm not sure about that.

10   But, certainly, car-related expenses.  A lot of         10:46:11

11   traveling, a lot of driving.  You know, very

12   miscellaneous stuff.  I mean, you know, what do you

13   call it?  Business cards, that type of thing.  It's,

14   you know, business licenses.  The website, that kind

15   of thing.                                                10:46:30

16        Q    Have you undertaken any formal accounting of

17   proceeds from settlement funds?

18        A    No.

19             MR. HASHEMI:  Objection.  Vague.

20             THE WITNESS:  Sorry.                           10:46:39

21   BY MS. BERMUDEZ:

22        Q    Can you estimate, within the last two years,

23   how much The Association 4 Equal Access has received

24   in settlement proceeds?

25             MR. HASHEMI:  Assumes facts not in evidence.   10:46:49
```

Veritext Legal Solutions
866 299-5127

```
 1    Calls for speculation.                              10:46:50

 2              THE WITNESS:  I can estimate.

 3    BY MS. BERMUDEZ:

 4         Q    Please.

 5         A    Okay.  Between 80- and 90,000.            10:47:01

 6         Q    And that's within the last two years?

 7         A    Yes.

 8         Q    Are you the only person who has control over

 9    The Association 4 Equal Access bank account?

10         A    I'm not sure.  Patty is involved in that  10:47:20

11    somehow, and I forgot exactly what way.  She might be

12    set up as a beneficiary.  She might be set up as a

13    signer.  And, again, that's one of the things I don't

14    recall standing right here.

15         Q    Was Ms. Filardi with you when you set up the  10:47:39

16    bank account for The Association 4 Equal Access?

17         A    I believe she was.  She banks at the same

18    bank and goes there often, so we probably went there

19    together.

20         Q    To your knowledge, is she a signatory on   10:47:50

21    The Association 4 Equal Access bank account?

22         A    No.  I'm sorry.  No, she's not, to my

23    knowledge.

24         Q    Is The Association 4 Equal Access' account a

25    savings account or checking account?  Do you know    10:48:07
```

Page 38

```
 1   with the association or filing a complaint, something     11:15:51

 2   along those lines.  Becoming a member, something

 3   along those lines.

 4        Q    Did you draft that document?

 5        A    I believe I did.                                 11:16:00

 6        Q    Okay.  Did anyone else assist you in

 7   drafting that document?

 8        A    Not that I recall, no.

 9        Q    When is the last time that you utilized this

10   document?                                                  11:16:08

11        A    Again, years ago.  Maybe eight years ago.

12        Q    Do you have copies of any of these documents

13   that are filled out?

14        A    No.  This is all I could find.

15        Q    For a person that's involved with             11:16:36

16   The Association 4 Equal Access, how would they prove

17   that they're a member?

18        A    We don't issue a membership card or anything

19   of that nature, so they would -- you know, I don't

20   know how they would prove it.  I guess they would       11:16:49

21   say, well, call Mr. Rutherford and ask him.

22        Q    Other than the -- well, let me -- strike

23   that.

24             Does The Association 4 Equal Access have a

25   website?                                                   11:17:08
```

Veritext Legal Solutions
866 299-5127

```
 1        Q   Anyone else?                              12:25:20

 2        A   No.

 3            MS. BERMUDEZ:  I'm just going to ask for a

 4    five-minute break.  I'm going to review my notes and

 5    go back on the record.                             12:25:34

 6            THE VIDEOGRAPHER:  We're off the record.

 7    The time is 12:25 p.m.

 8            (Recess.)

 9            THE VIDEOGRAPHER:  We're back on the record.

10    The time is 12:38 p.m.                             12:38:23

11    BY MS. BERMUDEZ:

12        Q   Mr. Rutherford, to your knowledge, has

13    The Association 4 Equal Access ever been approved as

14    a class representative?

15            MR. HASHEMI:  Objection.  Calls for a legal  12:38:34

16    conclusion.

17            THE WITNESS:  To my knowledge, no.

18    BY MS. BERMUDEZ:

19        Q   On behalf of The Association 4 Equal Access,

20    have you reached out to any potential class members?   12:38:45

21        A   No.  No, ma'am.

22        Q   Do you know what a class action is?

23        A   Kind of, sort of.

24        Q   What's your understanding of what a class

25    action is?                                         12:38:59
```

Veritext Legal Solutions
866 299-5127

```
 1   assumes facts not in evidence.  Compound.          12:44:00

 2          THE WITNESS:  Yes.

 3   BY MS. BERMUDEZ:

 4      Q   Is that through yourself?

 5      A   Yes, ma'am.                                  12:44:12

 6      Q   Has The Association 4 Equal Access ever

 7   visited the Evans Hotels website other than through

 8   yourself?

 9          MR. HASHEMI:  Objection.  Vague.  Compound.

10   Assumes facts not in evidence.                      12:44:25

11          THE WITNESS:  Yes.

12   BY MS. BERMUDEZ:

13      Q   Okay.  Who?

14      A   Patricia.

15      Q   Has Patricia visited The Association 4 Equal  12:44:33

16   Access website?  It's not a follow-up.

17      A   I don't know.

18      Q   Has Patricia Filardi visited the Evans

19   Hotels websites?

20          MR. HASHEMI:  Calls for speculation.         12:44:55

21   BY MS. BERMUDEZ:

22      Q   If you know.

23      A   I do know, and she did.

24      Q   There's an allegation in the second amended

25   complaint that Plaintiff A4EA's members are being    12:45:04
```

```
1    deterred from patronizing the Defendants' hotels on          12:45:09

2    particular occasions.  Who are those members?

3              MR. HASHEMI:  Calls for speculation.

4              THE WITNESS:  Well, certainly, Patricia.

5    BY MS. BERMUDEZ:                                             12:45:21

6         Q   Anyone else?

7         A   Myself.

8         Q   Anyone else?

9         A   Not that I know of.

10        Q   Does The Association 4 Equal Access ever            12:45:30

11   make hotel reservations?

12        A   No, not that I know of.

13        Q   If any hotel reservations were made on

14   behalf of the association, would you be the

15   individual making those reservations?                       12:45:53

16        A   Yes.

17        Q   Has The Association 4 Equal Access ever

18   planned an activity?

19             MR. HASHEMI:  Objection.  Vague.

20             THE WITNESS:  Well, yeah.                          12:46:11

21   BY MS. BERMUDEZ:

22        Q   What kind of activities?

23        A   Well, we -- the association had a couple

24   of -- what would you call them? -- informational-type

25   seminars at the Rehab Institute of Chicago years ago.       12:46:26
```

Veritext Legal Solutions
866 299-5127

```
1          I, the undersigned, a Certified Shorthand Reporter
2    of the State of California, do hereby certify:
3          That the foregoing proceedings were taken before
4    me at the time and place herein set forth; that any
5    witnesses in the foregoing proceedings, prior to testifying,
6    were administered an oath; that a record of the proceedings
7    was made by me using machine shorthand which was thereafter
8    transcribed under my direction; that the foregoing
9    transcript is a true record of the testimony given.
10          Further, that if the foregoing pertains to the
11   original transcript of a deposition in a federal case,
12   before completion of the proceedings, a review of the
13   transcript was requested.
14          I further certify I am neither financially
15   interested in the action nor a relative or employee of any
16   attorney or any party to this action.
17          IN WITNESS WHEREOF, I have this date subscribed my
18   name.
19
20   Dated: October 31, 2018
21
22
23          _Elaine Smith_
24          ELAINE SMITH, RMR
25          CSR No. 5421
```

Page 113

# EXHIBIT B

1               UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF CALIFORNIA

3

4  _____

5  JAMES RUTHERFORD; AND, THE)

6  ASSOCIATION 4 EQUAL     )

7  ACCESS,              )

8        Plaintiffs,    )

9        VS.           ) Case No. 18-cv-435-JLS(BGS)

10  EVANS HOTELS, LLC,     )

11        Defendants.    )

12  _____)

13

14

15

16  DEPOSITION OF:

17               KIMBERLEY GUILLERMO

18               TUESDAY, OCTOBER 23, 2018

19               3:00 P.M.

20

21

22  Reported by:

23  GINA M. CLOUD

24  CSR No. 6315

25  PAGES 1 - 85

Veritext Legal Solutions
866 299-5127

```
 1    you can book a specific room type.  They are a newer

 2    resort.  They've been around for just over 15, 16

 3    years now.  The Catamaran and Bahia we've been

 4    around for a very long time, so we do have specific

 5    rooms that are designated for accessible, but in

 6    order to accommodate our guests, we really want to

 7    make sure that their needs are met and they do need

 8    those accommodations, so they can book a room and

 9    use the comments section for whatever their specific

10    needs are, so we can reach out to them.

11    BY MR. LOKER:

12        Q.   What do you mean by the comments section?

13        A.   You just asked about the website, so to book

14    on the website, that's one thing that they would need

15    to do is to add a comment because I have just a few

16    select number of those.  They are last room

17    availability.

18             I would not sell that room to a regular

19    leisure guest who doesn't have a need for that unless

20    it was the very last room I had in the hotel.  We

21    want to make those rooms ready and accessible for all

22    our guests that have those needs, and if someone is

23    calling us, which the majority of our guests do, we

24    ask specific questions to find out what their needs

25    are and how we can best assist them, so we can
```

Veritext Legal Solutions
866 299-5127

1    accommodate them with the room that works for their

2    needs.  And then if it is fully accessible, we would

3    hard block that room to insure that they get that

4    room.

5        Q.   So in that description was about the Bahia

6    hotel; is that right?

7        A.   That would be the same for the Bahia and the

8    Catamaran, yes.

9        Q.   So if I wanted to book a bayfront room at

10   the Bahia hotel, would I list a comment asking for

11   the bayfront room?

12       A.   You can book a bayfront room and then in

13   your comment if you have a special need or request,

14   you can note that need or request in and we will get

15   back to you pretty quickly.  Usually within 24 hours

16   or less.

17       Q.   Without leaving a comment is it possible to

18   book a bayfront room?

19       A.   Of course.

20       Q.   How so?

21       A.   As long as there is rooms available, anyone

22   can book whatever available room types are available

23   to our guests.

24       Q.   How do you specify a room type?

25       A.   If you go on the website, they list out on

```
 1    please.  That's on page 10 of Exhibit 4.  I'll read
 2    the question into the record so you know what we're
 3    talking about.  As noted before, your counsel had
 4    legal objections.  I'm not here to discuss those but
 5    obviously they're preserved for the record.  I just
 6    want to get a feel, additional information about the
 7    facts in that corresponding answer.
 8         So request No. 9, as I stated:  "Admit that
 9    as of the time the complaint was filed individuals
10    with a disability were not able to reserve
11    accessible hotel rooms at the Bahia Resort Hotel
12    through Bahiahotel.com with the same efficiency,
13    immediacy and convenience as those who do not need
14    accessible rooms."  Like I said there are
15    objections.
16         And the answer is:  "Responding party
17    admits that yes, reserving rooms at the Bahia with
18    accessible features through the website must wait
19    for a second e-mail confirming that an accessible
20    room has been hard blocked."
21         And then to kind of rephrase so I know I'm
22    following you properly, the first e-mail would book
23    a specific room type like Bay Area and garden room
24    like we discussed.  Can you explain what the second
25    e-mail is doing for me?
```

Veritext Legal Solutions
866 299-5127

1      A.   Yes.  When someone books a room in an

2   example, say they book a bayfront room at the Bahia

3   and they have noted that they may have some specific

4   need, and this could be any guest.  It could be an

5   accessible need, a personal need and they say that

6   they need something.

7           The second e-mail goes out when the request

8   is the clear.  We know exactly what they want.  We

9   have it.  We'll confirm it and send them a second

10  e-mail that what they've requested is being

11  confirmed, and sometimes we'll even go as far as to

12  call to make sure they got the e-mail and that the

13  need has been fulfilled if there is anything else

14  that we can help them with.

15     Q.   To skip a couple questions, your answer

16  would be the same for the Catamaran but not Torrey

17  Pines?

18     A.   It would be the same for the Catamaran.  As

19  for Torrey Pines, generally we don't have people

20  asking for anything above and beyond what they've

21  already reserved.  If we did, we would reach out to

22  them.  We would call them.  They've already been

23  confirmed an accessible room.

24     Q.   I see.  Sorry, I spoke over you.  So Torrey

25  Pines confirms accessible rooms with a single

Veritext Legal Solutions
866 299-5127

```
 1            I, GINA M. CLOUD, a certified shorthand
 2   reporter for the State of California, do hereby
 3   certify:
 4                that prior to being examined, the
 5   witness named in the foregoing deposition, was by me
 6   duly sworn to testify the truth, the whole truth,
 7   and nothing but the truth pursuant to Section No.
 8   2093 of the Code of Civil Procedure;
 9                That said deposition was taken before
10   me pursuant to notice, at the time and place therein
11   set forth, and was taken down by me in shorthand and
12   thereafter reduced to typewriting via computer-aided
13   transcription under my direction;
14                I further certify that I am neither
15   counsel for, nor related to, any party to said
16   action, nor in anywise interested in the outcome
17   thereof.
18                IN WITNESS WHEREOF, I have hereunto
19   subscribed my name this 31st day of October, 2018.
20
21
22                _____
23
24                GINA M. CLOUD
25                CSR No. 6315
```

Veritext Legal Solutions
866 299-5127

# EXHIBIT C

1　　　　　　　　　UNITED STATES DISTRICT COURT

2　　　　　　　　SOUTHERN DISTRICT OF CALIFORNIA

3　———————————————————————

4　JAMES RUTHERFORD; AND, THE)

5　ASSOCIATION 4 EQUAL　　　 )

6　ACCESS,　　　　　　　　　　)

7　　　　　　Plaintiffs,　　 )

8　　　　　　VS.　　　　　　　) Case No. 18-cv-435-JLS(BGS)

9　EVANS HOTELS, LLC,　　　　)

10　　　　　 Defendants.　　 )

11　———————————————————————)

12

13

14　DEPOSITION OF:

15　　　　　　　　　SCOTT HARTMAN

16　　　　　　　　　FRIDAY, NOVEMBER 9, 2018

17　　　　　　　　　10:00 A.M.

18

19

20

21

22　Reported by:

23　GINA M. CLOUD

24　CSR No. 6315

25　PAGES 1 - 46

Veritext Legal Solutions
866 299-5127

```
 1              MS. OXMAN:  Objection, vague.  The question

 2      is what is hard blocking?  Is that right?

 3              MS. WAGNER:  If the witness needs me to

 4      clarify the question, I can clarify the question.

 5      If you have an objection, please just limit it to        10:53:21

 6      the objection, counsel.

 7              THE WITNESS:  Clarify the question for me,

 8      please.

 9      BY MS. WAGNER:

10          Q.   What is hard blocking?                          10:53:29

11          A.   Hard blocking is the process by which we

12      secure a specific room number to satisfy a specific

13      need.  To do that, we assign a room number for an

14      arriving reservation, and then we assign that same

15      room number to other reservations, end to end to end,   10:53:44

16      leading up to the arrival of that reservation.  That

17      way we know that there is departure from that

18      specific room on the specific day that we need it.

19          Q.   And you do that for every reservation?

20          A.   No, we do not do that for every reservation.   10:54:05

21          Q.   When do you do that?

22          A.   When we need a specific room number to

23      satisfy a particular request or need.

24          Q.   Do you hard block for accessible rooms?

25              MS. OXMAN:  Objection, vague, lacks             10:54:24
```

Page 31

1   foundation, calls for speculation, if you know you

2   can answer.

3         THE WITNESS:   Depends how you use the term

4   "accessible room."   Are you referring to our

5   specific like rooms that are designed for a person          10:54:40

6   that is a wheelchair user, a mobility impairment?

7   BY MS. WAGNER:

8       Q.   Sure, let's go with that.

9       A.   So there are seven rooms that are

10  specifically designed for a wheelchair user that are          10:54:57

11  identified as accessible rooms.   Those ones don't

12  necessarily need at the Bahia to be hard blocked,

13  because they are their own room types, so as long as

14  the room types were not over sold, which we don't do

15  as a policy, there's no need to actually hard block          10:55:20

16  it.   We know that we're going to have them available

17  for the guest on the day that they need it.

18         The only time we would need to hard block it

19  is, for example, if a person that had reserved an

20  accessible, say one of our accessible suites on the          10:55:38

21  bay front wanted to be close to another person that

22  was traveling with them, we might go through and hard

23  block the specific accessible suite and the rooms

24  adjacent to it for the person to be close by.

25      Q.   So as a rule you don't hard block every          10:55:57

1   accessible room when the reservation is made?

2           MS. OXMAN:  Objection, misstates the

3   witness' testimony, asked and answered, you can

4   answer again.

5           THE WITNESS:  It's not necessary to hard        10:56:09

6   block every single one of the accessible rooms at

7   the Bahia.  Since they have their own specific room

8   types, there is no conflict so there's no need.

9   BY MS. WAGNER:

10      Q.  When you say they have their own specific       10:56:24

11  room type, what do you mean by that?

12      A.  There are three room types for our mobility

13  impaired accessible rooms.  There's one for garden

14  view, two double beds, standard room.  There's one

15  for bay front standard room, one king bed, and there  10:56:46

16  is a room type for bay front, one king bed, deluxe

17  suite.  So those are the three room types for them.

18      Q.  And those are listed online?

19      A.  I don't know.

20      Q.  Do you know if the specifications for those     10:57:19

21  rooms are listed online?

22      A.  I don't know.

23          MS. OXMAN:  Objection, vague and ambiguous,

24  calls for speculation, lacks foundation.

25          THE WITNESS:  I don't know.                      10:57:31

                                                    Page 33

```
 1           I, GINA M. CLOUD, a certified shorthand
 2    reporter for the State of California, do hereby
 3    certify:
 4                that prior to being examined, the
 5    witness named in the foregoing deposition, was by me
 6    duly sworn to testify the truth, the whole truth,
 7    and nothing but the truth pursuant to Section No.
 8    2093 of the Code of Civil Procedure;
 9                That said deposition was taken before
10    me pursuant to notice, at the time and place therein
11    set forth, and was taken down by me in shorthand and
12    thereafter reduced to typewriting via computer-aided
13    transcription under my direction;
14                I further certify that I am neither
15    counsel for, nor related to, any party to said
16    action, nor in anywise interested in the outcome
17    thereof.
18                IN WITNESS WHEREOF, I have hereunto
19    subscribed my name this 27th day of November, 2018.
20
21
22                    _Gina Cloud_
23                    _____
24                    GINA M. CLOUD
25                    CSR No. 6315
```

Page 46

# EXHIBIT D

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |
| 3 | |
| 4 | _____ |
| 5 | JAMES RUTHERFORD; and      ) |
| 6 | THE ASSOCIATION 4 EQUAL   ) |
| 7 | ACCESS,                   ) |
| 8 |        Plaintiffs,        ) |
| 9 |     vs.                   )  No. 18-cv-435 JLS (BGS) |
| 10 | EVANS HOTELS, LLC,        ) |
| 11 |         Defendant.        ) |
| 12 | _____) |
| 13 | |
| 14 | |
| 15 | VIRTUAL/VIDEOTAPED DEPOSITION OF DIANE M. KOCZUR |
| 16 | San Diego, California |
| 17 | Friday, October 26, 2018 |
| 18 | Volume I |
| 19 | |
| 20 | |
| 21 | Reported By: |
| 22 | CATHERINE A-M GAUTEREAUX |
| 23 | CSR No. 3122 |
| 24 | Job No. 3065518 |
| 25 | PAGES 1 - 36 |

Page 1

```
 1        A    Oh, thank you.  Websites:  Building them        10:25:00

 2   out, getting them up and running, securing the            10:25:04

 3   servers to make sure that, you know, our sites don't      10:25:10

 4   go down and that they're safe and secure and they         10:25:12

 5   don't get corrupted or hacked.                            10:25:14

 6             Emails:  Updating those systems, cleaning       10:25:18

 7   up our -- our database on our list to make sure that      10:25:22

 8   we're sending our emails out to the most viable           10:25:25

 9   lists.                                                    10:25:30

10             Also looking at SEO, making sure that our       10:25:30

11   SEO is update to date and gets us higher in the           10:25:34

12   search engines, as well as social media.                 10:25:38

13             When I came three years ago, all of these       10:25:40

14   systems really needed a complete overhaul.  Our           10:25:43

15   websites were very volatile.  They were old, built        10:25:46

16   on old systems.  And my focus was to bring them up        10:25:49

17   into the latest technologies to make sure that they       10:25:53

18   were secure and that the user experience was              10:25:55

19   optimized.  So that really has been my focus.             10:25:58

20        Q    Just those things?                              10:26:05

21        A    Yeah.                                           10:26:07

22        Q    Okay.  Do you know who generates the            10:26:09

23   content for the websites?                                 10:26:14

24        A    Oh.  It depends.  I mean, we have a lot of      10:26:15

25   content generators.  We have writers within the          10:26:19
```

Veritext Legal Solutions
866 299-5127

1

2          I, the undersigned, a Certified Shorthand

3    Reporter of the State of California, do hereby

4    certify:

5          That the foregoing proceedings were

6    reported by me at the time and place herein set

7    forth; that any witnesses in the foregoing

8    proceedings, prior to testifying, were placed under

9    oath; that a verbatim record of the proceedings was

10   made by me using machine shorthand which was

11   thereafter transcribed under my direction; further,

12   that the foregoing is an accurate transcription

13   thereof.

14         Review and signature were requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney of any of the parties.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20   Dated:  November 8, 2018.

21

22

23                    _____

24                    CATHERINE A-M GAUTEREAUX

25                    CSR NO. 3122

                                        Page 36

Exhibit E

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    _____

4    JAMES RUTHERFORD; and    )    Case No. 18-cv-435 JLS (BGS)

5    THE ASSOCIATION 4 EQUAL )

6    ACCESS,                  )

7          Plaintiffs,    )

8       vs.                )

9    EVANS HOTELS, LLC,       )

10          Defendant.     )

11    _____)

12

13

14

15

16          DEPOSITION OF THOMAS MOHRLOCK

17          San Diego, California

18          Wednesday, October 31, 2018

19              Volume 1

20

21    Reported by:

22    LESLIE JOHNSON

23    RPR, CCRR, CSR No. 11451

24    Job No.: 3065526

25    PAGES 1 - 24

Veritext Legal Solutions
866 299-5127

```
 1    legal conclusion and expert testimony.

 2              You can answer.

 3              THE WITNESS:  Accessible rooms are reflected

 4    as a room type, yes.

 5    BY QUESTIONER:

 6        Q    Okay.  So I guess the distinction is, it's

 7    possible to reserve a room type, but hard-blocking just

 8    assigns an exact room number.

 9              Is that the distinction?

10              MS. BERMUDEZ:  Vague.  Compound.  Overbroad.

11              THE WITNESS:  Are you talking in reference to

12    accessible rooms or all rooms?

13    BY MR. LOKER:

14        Q    Well, just to go back, you know.  So I

15    understand there's room types, and it sounds like

16    accessible rooms would be one type, and then you have,

17    like, the bay front room, for example, garden room,

18    those types of things, and other types.

19              What I'm trying to understand is the

20    distinction between just reserving a type of room and

21    hard-blocking is that, when you hard-block that type of

22    room, you get a specific room number, and that's where

23    the customer will be.

24              Is that the distinction?

25              MS. BERMUDEZ:  Vague.  Overbroad.  Compound.
```

Veritext Legal Solutions
866 299-5127

```
 1              THE WITNESS:  The way you're describing it

 2    isn't accurate because you can have a reservation for a

 3    room type that is not hard-blocked.  You can have a

 4    reservation that is hard-blocked.

 5              Hard-blocking is basically done out of

 6    necessity.  For instance, if you reserve an accessible

 7    room, it must be hard-blocked.  So you cannot reserve an

 8    accessible room without it being hard-blocked.

 9    BY MR. LOKER:

10         Q    I see.  Okay.  I understand now.  I appreciate

11    it.

12              Let's see.  I'm just flipping through my notes

13    here.

14              My understanding is that you did not receive

15    training for the hard-blocking process; is that right?

16              MS. BERMUDEZ:  Objection.  Misstates

17    testimony.

18              You can answer.

19              THE WITNESS:  I have plenty of -- received

20    plenty of training regarding hard-blocking.

21    BY MR. LOKER:

22         Q    Oh, okay.

23              Is there a particular -- one of the three

24    Evans Hotels that you're, I guess, based at or assigned

25    to?
```

Veritext Legal Solutions
866 299-5127

REPORTER'S CERTIFICATION

I, Leslie Johnson, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested. I further certify I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  November 13, 2018

LESLIE JOHNSON, CSR No. 11451, RPR, CCRR

Veritext Legal Solutions
866 299-5127

Exhibit F

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3    _____

4    JAMES RUTHERFORD; and    )    Case No. 18-cv-435 JLS (BGS)

5    THE ASSOCIATION 4 EQUAL  )

6    ACCESS,                  )

7              Plaintiffs,    )

8         vs.                 )

9    EVANS HOTELS, LLC,       )

10             Defendant.     )

11   _____)

12

13

14

15

16          DEPOSITION OF HEATH PITTS

17            San Diego, California

18         Wednesday, October 31, 2018

19                  Volume 1

20

21   Reported by:

22   LESLIE JOHNSON

23   RPR, CCRR, CSR No. 11451

24   Job No.: 3065526

25   PAGES 1 - 80

```
 1              MS. BERMUDEZ:  Objection.  Vague.  Overbroad.
 2    Lacks personal knowledge.  Calls for speculation.
 3              THE WITNESS:  To be specific to what's in
 4    there, since I've been here, we do not sell accessible
 5    rooms to those who do not need accessible in advance.
 6    We hold those for people who need accessible rooms.
 7    BY MS. WAGNER:
 8         Q    Well, there is a part of -- I'm looking at
 9    page 12.  And the second paragraph on the page that
10    starts with "Subject to and without waiving."
11         A    Uh-huh.
12         Q    The sentence I'm looking at is, "As of
13    February 25th, 2018, individuals with disabilities could
14    make reservations for accessible guest rooms at the
15    Bahia Resort Hotel, at the Catamaran Resort Hotel and
16    Spa, and at The Lodge at Torrey Pines during the same
17    hours and in the same manner as individuals who did not
18    need accessible rooms."
19         A    They can call in to make their reservations
20    just like everybody else.
21         Q    However, they cannot do the online
22    reservations at the Bahia or at the Catamaran, correct?
23              MS. BERMUDEZ:  Objection.  Argumentative.
24    Misstates testimony.  Vague.  Overbroad.  Lacks personal
25    knowledge.  Calls for speculation.  Incomplete
```

```
1    hypothetical.
2              THE WITNESS:  I don't remember the exact date
3    that we put the accessible rooms for The Lodge online,
4    but like I said, people book accessible rooms online by
5    requesting them.  So they could do the same thing, and
6    it's just the same as any other request.
7    BY MS. WAGNER:
8         Q    But you did say previously that the Bahia and
9    the Catamaran do not -- you cannot book those through
10   the booking engine online?
11             MS. BERMUDEZ:  Objection.  Misstates
12   testimony.  Incomplete hypothetical.  Overbroad.
13             THE WITNESS:  The exact room type, accessible,
14   is not available at the Bahia and the Catamaran, but
15   they can book any room type and request it, and it is
16   taken care of for them.
17   BY MS. WAGNER:
18        Q    But they have to go through a different avenue
19   to achieve that result?
20             MS. BERMUDEZ:  Objection.  Argumentative.
21   Calls for speculation.  Incomplete hypothetical.
22             THE WITNESS:  Just like if a guest wanted
23   another specific room type that we don't offer online,
24   they would go through the same processes.  So if a guest
25   wants a limited room type that we don't offer, guests
```

Page 49

1  will book that online and say "I need this specific room

2  number.  I need this specific location."

3  BY MS. WAGNER:

4      Q    Okay.  But what about for people who do want

5  rooms that you have plenty of?  The process for them is

6  different than the people who want accessible rooms?

7           MS. BERMUDEZ:  Vague.  Overbroad.  Incomplete

8  hypothetical.  Argumentative.

9           THE WITNESS:  Not necessarily.  As far as --

10  we may be sold out of a room type, and the guest will

11  just book a reservation to get a reservation with a

12  request for a specific room that they know we've offered

13  in the past.

14           But to answer your question, that specific

15  room type is not -- accessible room type is not

16  available on the Bahia and the Catamaran.

17  BY MS. WAGNER:

18      Q    Okay.  We're going to skip several pages here

19  and go to page 30 of Exhibit 6.

20           And I'm looking at Interrogatory No. 18.  And

21  the interrogatory says, "Identify the software and/or

22  reservations technology used by the hotels to accept

23  reservations through the websites for the last four

24  years to the present."

25           Are you familiar with the software?

Veritext Legal Solutions
866 299-5127

```
 1                  REPORTER'S CERTIFICATION

 2            I, Leslie Johnson, a Certified Shorthand

 3    Reporter of the State of California, do hereby certify:

 4            That the foregoing proceedings were taken

 5    before me at the time and place herein set forth; that

 6    any witnesses in the foregoing proceedings, prior to

 7    testifying, were administered an oath; that a record of

 8    the proceedings was made by me using machine shorthand

 9    which was thereafter transcribed under my direction;

10    that the foregoing transcript is a true record of the

11    testimony given.

12            Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [ ] was [ ] was not requested.

16    I further certify I am neither financially interested in

17    the action nor a relative or employee of any attorney or

18    any party to this action.

19            IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21    Dated:  November 13, 2018

22

23

24    _____

25            LESLIE JOHNSON, CSR No. 11451, RPR, CCRR
```

Page 80

```
 1              UNITED STATES DISTRICT COURT
 2             SOUTHERN DISTRICT OF CALIFORNIA
 3
 4   _____
                                 )
 5   JAMES RUTHERFORD, an        )
     individual, THE ASSOCIATION )
 6   4 EQUAL ACCESS,             )
                                 )
 7           Plaintiffs,         )
                                 )
 8      vs.                      ) Case No. 18-CV-00435-JLS(BGS)
                                 )
 9   EVANS HOTELS, LLC, a        )
     California limited liability )
10   company and DOES 1 to 50,  )
                                 )
11           Defendants.         )
     _____)
12
13
14
15        VIDEOTAPED DEPOSITION OF JAMES RUTHERFORD
16                San Diego, California
17              Tuesday, October 16, 2018
18                     Volume I
19
20
21
22   Reported by:
     ELAINE SMITH, RMR
23   CSR No. 5421
24   Job No. 3030875
25   PAGES 1 - 209
```

Veritext Legal Solutions
866 299-5127

```
 1                    EXAMINATION                    09:13:46

 2   BY MS. BERMUDEZ:

 3        Q   Good morning, Mr. Rutherford.

 4        A   Good morning.

 5        Q   Have you ever had your deposition taken    09:14:03

 6   before?

 7        A   I'm not -- I believe so, yeah.

 8        Q   When was that?

 9        A   It was a while back.  You know what, I have

10   to tell you I had a colonoscopy a few years ago, and    09:14:19

11   it went bad, so I had to have it redone, like,

12   several times within a few days.  And I had

13   anesthesia, like, over and over again all in the

14   course of one week.  That was a couple years ago.

15   And ever since then, my memory is not -- it's not    09:14:39

16   pinpoint, so if I don't seem to recall things that

17   seem like I probably should, I hope you'll excuse me.

18        Q   Did you file a lawsuit related to that

19   issue?

20        A   You know what, I contacted an attorney's    09:14:53

21   office, the attorney Paul Ankin in Chicago.  He does

22   medical malpractice.  And they had said that

23   because -- because there was nothing that -- you

24   know, there's nothing that -- it wasn't good enough

25   to pursue is basically what they ...    09:15:10
```

Veritext Legal Solutions
866 299-5127

```
 1    review and make any changes to.  I have the ability      09:17:25

 2    to make any comment or make any kind of legal

 3    argument related to any kind of change that you make

 4    to the deposition transcript.

 5          Do you understand that?                            09:17:35

 6     A   Yes.

 7     Q   Okay.  In the prior time that you had your

 8    deposition taken, did you go through that process of

 9    reviewing a transcript and signing it?

10     A   No, I don't recall.                                 09:17:45

11     Q   You don't recall?

12     A   No.

13     Q   Okay.  In the prior lawsuit that you had

14    your deposition taken, were you a party to the

15    lawsuit, or were you a witness?                          09:17:55

16     A   I believe I was a party to the lawsuit.

17     Q   Were you the plaintiff in the case?

18     A   I believe so.

19     Q   And who was the defendant?

20     A   That, I don't recall.                               09:18:07

21     Q   Did you have a lawyer?

22     A   Yes.

23     Q   Who was your lawyer?

24     A   It would have probably been Manning, the

25    Manning law firm.                                        09:18:19
```

Page 12

```
 1    can't tell you.                                    09:23:20

 2         Q    You don't know?

 3         A    I don't know.

 4         Q    Okay.   A few minutes ago you indicated that

 5    you have issues with your memory?                  09:23:27

 6         A    Yes.

 7         Q    Can you please tell me what those issues

 8    are.

 9         A    It's very frustrating.   Once -- not --

10    not -- soon after this episode that I had in the   09:23:49

11    hospital, about a week after that, I realized I just

12    wasn't remembering things well at all.   And, you

13    know, my memory has always been very good.   And I

14    attributed it to the anesthesia.   I mean, I had

15    multiple bouts of anesthesia because of these       09:24:13

16    numerous colonoscopies that all occurred during a

17    period of one week that should have been spread out

18    over 20 years.

19              And it didn't seem to -- it didn't seem to

20    get any better to the point where -- you know, I    09:24:30

21    thought, well, it will wear off, but it didn't.   And

22    then at some point I think, you know, like 60 days

23    down the road, somewhere along those lines, I called

24    the attorney.   I mean, it was, you know -- and, you

25    know, I spoke with an attorney there, and I don't   09:24:51
```

                                                    Page 17

```
 1   remember their name, an attorney or paralegal or      09:24:54

 2   something.  I didn't -- you know, I wasn't top on

 3   their list or whatever, so ...

 4       Q   Has any doctor ever diagnosed you with

 5   memory loss?                                          09:25:05

 6       A   No.

 7       Q   And how long ago was this medical issue

 8   related to the colonoscopy?

 9       A   It was about three years ago.

10       Q   And at the time, did you reside in           09:25:21

11   California?

12       A   Part-time in California.

13       Q   So the issue related to your memory loss is

14   self-diagnosed?

15           MR. HASHEMI:  Argumentative.                  09:25:37

16           THE REPORTER:  I'm sorry?

17           MR. HASHEMI:  The objection was

18   argumentative.

19   BY MS. BERMUDEZ:

20       Q   You can answer.                               09:25:45

21       A   Self-diag- -- I wasn't -- I guess, yeah.

22   Once I came to that conclusion, yeah.

23       Q   Yes?

24       A   Yes.

25       Q   Is your memory loss -- does your memory loss  09:25:59
```

```
 1      Q   I'm sorry?                              09:27:19

 2      A   I never use my middle name.

 3      Q   Where were you born?

 4      A   Chicago.

 5      Q   Illinois?                               09:27:24

 6      A   Yes.

 7      Q   What is your birth date?

 8      A   January the 19th, 1952.

 9      Q   How long did you reside in Illinois?

10      A   Well, on and off for 60 years.          09:27:45

11      Q   Have you ever gone by any other names?

12      A   I think you asked me that already.

13      Q   Have you ever gone by any other names?

14      A   No.  I answered you before.  No.

15      Q   No.  Okay.  Have you ever gone by the name  09:28:05

16   James Robinson?

17      A   No, not that I recall.

18      Q   Do you recognize that name?

19      A   No.

20      Q   Do you know who registered the website www.  09:28:22

21   A4EA.com?

22      A   Who registered it?  No, I don't know who

23   registered it.

24      Q   Are you familiar with that website?

25      A   I am.                                   09:28:36

                                          Page 20
```

```
 1        Q    So you haven't checked it in a year?  Is         09:41:50
 2    that your testimony?
 3        A    That's correct.
 4        Q    When is the last time you made a payment for
 5    that P.O. box?                                            09:41:56
 6        A    I thought I made a payment recently, like
 7    within the past few months.
 8        Q    And you have no other P.O. boxes, to your
 9    knowledge?
10        A    I might have one in California, and I'm not      09:42:14
11    sure.  I don't recall if I still have that box or
12    not.  I certainly haven't checked any boxes in
13    California for quite some time.
14        Q    Mr. Rutherford, do you consider yourself an
15    individual with a disability?                             09:42:48
16        A    Yes, I do.
17        Q    And what is your disability?
18        A    Well, I presume you're referring to my
19    physical disability.
20        Q    Any disability.                                  09:43:01
21        A    Well, with regards to my physical
22    disability, what is it?  When you say what is it, can
23    you -- could you rephrase the question?
24        Q    Has a doctor ever or any kind of medical
25    professional ever diagnosed you with any kind of         09:43:28
```

Veritext Legal Solutions
866 299-5127

medical condition?                                      09:43:31

2        A    Yes.

3        Q    What is that medical condition?

4        A    Well, there's a couple.   There is a spinal

5   stenosis with a -- I have a herniated disc.   I have     09:43:37

6   arthritis in my spine.   And I have two fractured

7   heels.   And there was something else wrong with my

8   spine that I -- I think I blocked it out.

9        Q    Do you receive treatment for these

10  disabilities?                                            09:44:11

11       A    Yes.

12       Q    When is the last time you had medical

13  treatment?

14       A    About a month ago.

15       Q    And where did you go to get that medical      09:44:16

16  treatment?

17       A    Eisenhower Hospital.

18       Q    What city is that located in?

19       A    Rancho Mirage.

20       Q    And who is the doctor that treated you?       09:44:30

21       A    Dr. Smith.

22       Q    Does Dr. Smith have a first name?

23       A    Yes, of course, he does, but I don't

24  remember his first name.   He's -- what do you call

25  it?  A DO, doctor.                                       09:44:57

```
 1    question.                                          10:04:16

 2          MS. BERMUDEZ:  Madam Reporter, are you able

 3    to read back the question?

 4          (Record read.)

 5          THE WITNESS:  Probably.                       10:04:35

 6    BY MS. BERMUDEZ:

 7       Q   Do you know what that might be?

 8       A   No.

 9       Q   Do you have a rough estimate as to the

10    amount?                                             10:04:42

11       A   No.

12       Q   Do you have any idea of the source?

13          MR. HASHEMI:  Objection.  Vague.

14          THE WITNESS:  No.

15    BY MS. BERMUDEZ:                                    10:04:53

16       Q   With respect to the lawsuits filed in

17    Illinois, do you know if they were filed in federal

18    court or state court?

19       A   Both.

20       Q   Before today's date, when is the last time   10:05:34

21    that you were in San Diego, California?

22       A   Yeah.  Well, I don't recall.

23       Q   Have you ever been to San Diego, California,

24    before today's date?

25       A   I thought so, but I don't recall when.        10:06:06

                                               Page 52
```

```
1       A   Yes.                                        10:07:56

2       Q   In 2018, other than your stay at the Hampton

3   Inn Norco, have you stayed at any other hotel or

4   place of lodging?

5           MR. HASHEMI:  Objection.  Overbroad and     10:08:08

6   compound.

7           THE WITNESS:  In san Diego or just --

8   BY MS. BERMUDEZ:

9       Q   In any hotel anywhere.

10      A   Any hotel anywhere.  Within the past year?   10:08:18

11      Q   In the year of 2018.

12      A   2018.  Okay.  I would have to check.  I

13  don't recall sitting here.

14      Q   Okay.  And you indicated you stayed at a

15  Hampton in Norco, California; is that correct?       10:08:35

16      A   Yes.

17      Q   Okay.  That's the only one you can recall in

18  2018 --

19      A   Yes, that's correct.

20      Q   -- is that correct?                          10:08:42

21      A   Correct.

22      Q   Okay.  What was your purpose of your visit

23  to Norco, California?

24      A   Patty wanted to go out there.

25      Q   I'm sorry.  Who did you say?                  10:08:54
```

```
 1    room in the room to move a wheelchair next to a bed        10:14:59

 2    and transfer someone out of the wheelchair into the

 3    bed.  And then just is there enough room in the room

 4    to move around.  Is it a spacious enough room?

 5    Suites are usually pretty nice.  They usually have        10:15:22

 6    more room than just a room.

 7            And then it's the restroom, bathroom.  And

 8    then, in the bathroom, there's various things like

 9    the shower and the water closet and the sink.  I

10    mean, everything that's in the bathroom has to be        10:15:41

11    accessible for someone who is disabled.  So it would

12    be grab bars and a roll-in shower and a sink that she

13    can use that's height-appropriate for a person in a

14    wheelchair, that the mirror is a certain height.

15    That type of thing.                                       10:16:06

16        Q   With respect to the room accessibility

17    features, I understood from your response that these

18    are things that Ms. Filardi would require.

19            MR. HASHEMI:  Objection.

20    BY MS. BERMUDEZ:                                          10:16:20

21        Q   Is that correct?

22            MR. HASHEMI:  The objection is

23    argumentative.  Misstates prior testimony.

24            THE WITNESS:  In addition to myself.

25    ///                                                       10:16:25
```

Veritext Legal Solutions
866 299-5127

```
 1    anything.  You know, again, when you're in a shower,      10:17:54
 2    you know, you're using a cane -- you know, when
 3    you're disabled, the last thing you want to do is
 4    fall in a shower and break something.  You're in a
 5    bad enough situation already.  It's not something --    10:18:07
 6    so you want to take whatever precautions you can.  So
 7    it's nice when you have that available to be able to
 8    use.
 9              So the roll-in shower is nice even though
10    I'm not in a wheelchair.  There's plenty of room in a   10:18:20
11    roll-in shower to move around and to get in and out
12    of.  It's very easily accessible.
13              And I would say those are the major things.
14    I'm sure if I got into the room and started moving
15    around, I might be able to find something else that     10:18:42
16    would work well for me, but those are the major
17    things.
18         Q    Have you used a wheelchair in the prior
19    12 months?
20         A    Not in the past 12 months, no.               10:18:55
21         Q    Have you used a wheelchair in the prior 24
22    months?
23         A    Yes.  You know, I think it was 24 months.
24    I'm estimating.  Okay.
25         Q    When is the last time that you used a        10:19:10
```

```
 1        A    If I had paid for it, yes.  If she had paid        10:58:33

 2   for it, yes.

 3        Q    And what was the purpose of your stay at the

 4   Pelican Hill?

 5        A    Just to get away.                                   10:58:49

 6        Q    Have you ever stayed at any of the Evans

 7   Hotels properties?

 8        A    I don't know.

 9        Q    Have you ever stayed at a hotel called the

10   Catamaran?                                                    10:59:05

11        A    Stayed there, no.

12        Q    Have you ever visited a hotel called the

13   Catamaran?

14        A    I believe so.

15        Q    Have you ever visited a hotel called the           10:59:15

16   Bahia?

17        A    No.

18        Q    Have you ever visited a hotel known as

19   The Lodge at Torrey Pines?

20        A    No.                                                 10:59:27

21        Q    After today's date, do you have any plans to

22   stay at any San Diego hotel?

23        A    No.

24        Q    Mr. Rutherford, what is your understanding

25   as to what the lawsuit is about against Evans Hotels?        11:00:36

                                                         Page 72
```

```
 1        A    My understanding is that it's based on ADA          11:00:42
 2   compliance.
 3        Q    Do you know what specifically is alleged in
 4   the complaint related to ADA compliance?
 5        A    The issues are the accessibility of the            11:01:07
 6   website.  Let me rephrase that.  It's not the
 7   accessibility of the website.  It's the
 8   accessibility -- it's the opportunity to get
 9   information which is disability-related from the
10   websites.                                                     11:01:27
11        Q    Have you filed suit against any other hotel
12   companies other than against Evans Hotels, to your
13   knowledge?
14        A    Yes.
15        Q    Which hotels?                                       11:01:57
16        A    No.  Can you give me a minute?
17        Q    Sure.
18        A    I'm sorry.  I'd have to check.
19        Q    You don't know?
20        A    I don't know.                                       11:02:30
21        Q    When is the first time that you visited the
22   Catamaran Hotel's website?
23        A    I don't recall.
24        Q    When is the first time that you visited the
25   Bahia Hotel's website?                                        11:02:59
```

Page 73

```
 1      A    I don't recall that either.                    11:03:05

 2      Q    You don't recall?

 3      A    No, ma'am.

 4      Q    When is the first time that you visited

 5  The Lodge at Torrey Pines' website?                      11:03:09

 6      A    I don't recall.

 7      Q    With respect to the present lawsuit that you

 8  have against Evans Hotels, do you believe that

 9  anything on the Catamaran website was deficient?

10          MR. HASHEMI:  Objection.  Calls --             11:03:40

11          MS. BERMUDEZ:  At any point in time.

12          MR. HASHEMI:  Calls for expert testimony and

13  vague.

14  BY MS. BERMUDEZ:

15      Q    You can answer.                                 11:03:44

16      A    Yes.

17      Q    On what date did you come to that

18  understanding?

19      A    Ha-ha.  Sorry.  I don't even remember what

20  date it was that I looked at the website, so the date   11:04:01

21  that I came to -- it would probably be the same date

22  that I looked at the website, which I don't remember.

23  So, I'm sorry, the answer is I don't know.

24      Q    Was it in 2018?

25      A    I thought it was actually at the end of        11:04:22
```

```
 1   2017.                                                    11:04:24

 2        Q    Is that an estimate?

 3        A    That's an estimate.

 4        Q    And with respect to the Bahia's website, at

 5   any point in time did you believe that the hotel's      11:04:45

 6   website was deficient?

 7        A    Yes, ma'am.

 8        Q    When did you come to that understanding?

 9        A    The same -- I don't recall, ma'am.

10        Q    Do you have any estimate as to when you       11:04:58

11   would have come to that understanding?

12        A    Yes.  That would have been the same day that

13   I originally looked at the website.

14        Q    And do you have any estimate or time frame

15   for when that occurred?                                 11:05:13

16        A    I believe it was at the end of 2017.

17        Q    Have you ever visited The Lodge at Torrey

18   Pines' website?

19        A    Yes.

20        Q    At any point in time, have you viewed the     11:05:32

21   website and found it to be deficient?

22        A    Yes.

23        Q    And when did you arrive at that conclusion?

24        A    That would have been the same day that I

25   looked at it, but I don't recall what date, so I        11:05:51
```

```
1    don't know.                                          11:05:55

2         Q   Do you have an estimate?

3         A   It was probably around the end of last year.

4         Q   During that time period, did you look at any

5    other hotel websites?                                11:06:11

6         A   I'm sure I did.

7         Q   Was there a particular reason you were

8    looking at the Catamaran, the Bahia, and The Lodge?

9         A   Yes.

10        Q   And what was that reason?                   11:06:27

11        A   Well, the Catamaran and the Bahia, by

12   reputation, one of them I had heard it was a very --

13   it was a great place to stay, a resort.  And the

14   other one Pat -- Patricia had heard of.  And then The

15   Lodge at Torrey Pines, Patricia had relatives that   11:06:49

16   had stayed there and played golf some time ago, and

17   they had spoke of it.

18        Q   As you sit here today, can you recall any

19   specific reason as to why you were looking to visit

20   San Diego?                                           11:07:18

21        A   Yes.

22        Q   And what is that reason?

23        A   That's where Patricia wanted to go.

24        Q   And when you say that's where Patricia

25   wanted to go, do you mean the city or the location?  11:07:34
```

Veritext Legal Solutions
866 299-5127

```
1    What do you mean by that?                          11:07:38

2        A   Both.

3        Q   During that time period, did you look at any

4    other hotels or places of lodging to stay?

5        A   I believe so.                              11:08:00

6        Q   As you sit here today, can you recall the

7    names of any other locations that you looked at?

8        A   Recall, no.  I'm sorry.

9        Q   With respect to your visit to the

10   Catamaran's website, what computer did you use?    11:08:33

11       A   Okay.  That's not that simple of an answer.

12   Either my computer and/or Patty's computer and/or

13   Patty's iPad.

14       Q   How many computers do you have access to?

15       A   We'll call the iPad a computer?            11:09:02

16       Q   Let's just talk about computers first.

17       A   Okay.  How many -- well, at home, I have

18   access to two.  Even though, excuse me, I do have

19   access to one back in Illinois.

20       Q   Where is the computer that's located in    11:09:30

21   Illinois?

22       A   That's a good question.  It should be at

23   Park Ridge, 1073 Bonita in Park Ridge.

24       Q   And where is that computer maintained?

25       A   Maintained?                                11:09:54
```

Page 77

```
 1        Q   Other than two computers, the iPad, and      11:12:13

 2   another similar device, do you have any other

 3   equipment where you can access the Internet?

 4        A   Telephone.  And Patricia's telephone.

 5        Q   With respect to your visit to the Catamaran    11:12:30

 6   Hotel's website, do you recall what device you used

 7   to access the website?

 8        A   No.  I'm sorry, I don't.

 9        Q   With respect to your visit to the Bahia

10   Hotel website, do you know what device you used?      11:12:42

11        A   No.

12        Q   With respect to the website for The Lodge at

13   Torrey Pines, do you know what device you used to

14   access that website?

15        A   No.                                           11:13:05

16        Q   How many times did you visit the Catamaran's

17   website?

18        A   I don't know.  I don't recall.

19        Q   How many times have you visited the

20   Catamaran's website, can you estimate, within the     11:13:32

21   last two years?

22        A   The last two years.  I'm sorry.  I don't

23   recall.

24        Q   How many times did you visit the Bahia

25   Hotel's website within the last two years, if you can  11:13:54
```

Veritext Legal Solutions
866 299-5127

```
 1   recall?                                              11:13:59

 2        A   Once at least.

 3        Q   Do you have any other estimate further than

 4   that?

 5        A   No, ma'am.                                  11:14:03

 6        Q   With respect to The Lodge at Torrey Pines,

 7   how many times have you visited that website in the

 8   last two years?

 9        A   Yeah.  The same answer.  One at least.

10        Q   In the complaint that you filed against     11:14:20

11   Evans Hotels, you've indicated there were certain

12   deficiencies in the website; is that correct?

13        A   Yes, ma'am.

14        Q   What steps, if any, did you take to

15   memorialize any perceived deficiencies on those      11:14:34

16   websites?

17        A   What steps did I take?

18            MR. HASHEMI:  I'm going to instruct my

19   client or advise him to refrain from disclosing any

20   attorney-client privileged communication.            11:14:55

21            Aside from that, you're free to answer.

22            THE WITNESS:  Whatever -- yeah, I mean,

23   whatever it was that I had discovered, I gave the

24   information to the attorney.

25   ///                                                   11:15:12
```

1      Q    As you sit here today, do you have an                11:19:26

2    understanding as to what you perceived as deficient

3    in the Catamaran Hotel's website?

4          A    Actually, no.

5          Q    In general, do you have any recollection of        11:19:44

6    any deficiencies?

7          A    In general, yes.

8          Q    Okay.  And what is that?

9          A    Well, I kind of get the websites confused.

10   I mean, I didn't, like, memorize them.  So I believe   11:20:06

11   one website had rooms that were available which were

12   described as being handicapped-accessible.  But there

13   was really no definition of what that meant, so it

14   was difficult to discern from the text exactly what

15   was meant by handicapped-accessible.                    11:20:26

16          In another case, I don't think there was

17   anything on the website at all regarding handicapped

18   access.  And then, on another website, I think one of

19   the room types was described as being

20   handicapped-accessible in some detail, but only that   11:20:48

21   particular room, and not the room that we wanted.

22   Quite honestly, I didn't go back and memorize

23   everything for today so I would have everything all

24   lined up for you.  I just can't.

25         Q    When did you draw the conclusion that you        11:21:08

```
 1              THE WITNESS:  I don't recall that.         11:22:56

 2    BY MS. BERMUDEZ:

 3         Q    For the Catamaran, do you have a

 4    recollection of what time of day you would have

 5    visited the website?                                 11:23:00

 6         A    No.  It was a long time ago.  Sorry.

 7         Q    For the Bahia Hotel, do you have a

 8    recollection of when you might have visited that

 9    website?

10         A    I'm sorry.  No.                            11:23:11

11         Q    For The Lodge, do you have a recollection of

12    when you might have visited those websites?  Or that

13    website.

14         A    No.

15         Q    Do you have a general recollection of having 11:23:19

16    done it during the daytime, nighttime, anything like

17    that?

18         A    No.

19         Q    Have you ever called a hotel before to

20    determine the hotel's accessibility?                 11:23:41

21         A    Yes.

22         Q    Is that a common practice of yours?

23         A    Is it common?  I haven't really kept track.

24    I mean, sometimes I do; and sometimes I don't.

25         Q    Have you ever used the chat feature on any  11:24:02
```

Veritext Legal Solutions
866 299-5127

```
 1        Q    Since that time, have you had any subsequent    11:29:58

 2   visits to the Bahia Hotel's website?

 3        A    I don't recall.

 4        Q    Have you visited the Bahia Hotel's website

 5   in 2018?                                                  11:30:06

 6        A    I don't recall.

 7        Q    Have you visited the Bahia Hotel's website

 8   within the last month?

 9        A    I don't believe so.

10        Q    Have you visited the Catamaran Hotel's          11:30:23

11   website in 2018?

12        A    Not that I recall.

13        Q    Have you visited The Lodge at Torrey Pines

14   Hotel website in 2018?

15        A    Not that I recall.                              11:30:37

16        Q    Do you have any understanding as to any

17   expansion of the website for the Bahia Hotel in 2018

18   with respect to accessibility issues?

19        A    No.

20             MR. HASHEMI:  Objection.  Vague.                11:31:06

21   BY MS. BERMUDEZ:

22        Q    Do you have any understanding as to the

23   expansion of information on the Catamaran website

24   with respect to accessibility?

25             MR. HASHEMI:  Same objection.                   11:31:17
```

```
 1       A   Yes, ma'am.                                    11:52:48

 2       Q   And you testified earlier today that it's

 3   important for you be informed and to be able to make

 4   intelligent decisions about where you stay for

 5   lodging purposes; is that right?                        11:52:58

 6       A   Generally.

 7       Q   And is it your usual practice to look at a

 8   hotel's website for reasons of seeking information on

 9   accessibility before you stay at the hotel?

10       A   Is it my general -- I'm sorry.  Please         11:53:20

11   repeat the question.

12       Q   Okay.  When you make the decision or have

13   the need to stay at a hotel or a place of lodging, do

14   you always look at the website first?

15       A   Always.  Always.  Yeah, more likely than       11:53:35

16   not.  I mean, yeah, I'd say so.

17       Q   And are there some exceptions to that rule?

18       A   Only if I have experience or Patricia has

19   experience, she was there before and there's no

20   sense -- there's no point in checking the website.     11:53:53

21       Q   The document that I have in front of you,

22   the header is "Accessible Rooms," and it provides

23   some information about hotel amenities as well as

24   in-room accessibility on the first two pages of the

25   document.                                              11:54:12
```

Page 99

```
 1        A   Yes, ma'am.                              11:54:13

 2        Q   Okay.  There's also an accessibility map on

 3   those first two documents in front of you.  Do you

 4   see that?

 5        A   Oh, boy.  I could see that there's one    11:54:25

 6   there.  I think I need even better glasses.  Sorry.

 7        Q   And on the second page, under the

 8   accessibility map, do you see that it says, "Download

 9   ADA map (PDF)"?

10        A   Yes, ma'am.                              11:54:53

11        Q   Okay.  And there's information related to

12   accessible rooms on those -- both those first pages

13   in front of you.  Continuing on to the third page,

14   that describes bathroom accessibility.  Do you see

15   that?                                              11:55:05

16        A   Yes.

17        Q   With respect to the room features, is there

18   anything that you would require beyond what was --

19   what is indicated in those three pages?

20        A   I'd have to take a look at them.          11:55:15

21        Q   Okay.  Please do.

22        A   Okay.  Okay.  So the bathroom -- did you say

23   just the room or just the bathroom?

24        Q   I'm just talking about the room itself at

25   this point.                                       11:56:02
```

Page 100

```
 1          So if I -- if I read, for example,          11:58:00
 2    accessible-height door viewers, I don't know if -- or
 3    accessible light switches, okay -- now, are we
 4    talking about me now, or are we talking about Patty
 5    and me both?                                         11:58:16
 6        Q   Just you.
 7        A   Just me.  Okay.  Okay.  Well, all right.
 8    Okay, let's go back.  Widened doorways.  Widened is
 9    good.  Widened how much?  It would be nice to know
10    how much widened.  Removal of obvious obstacles.  I   11:58:29
11    don't know.  What's an obvious obstacle?  It would be
12    better if I knew that there was, you know, 36 inches
13    of clear width for me to walk down as opposed to
14    removal of obvious obstacle.  Again, that's subject
15    to interpretation.                                   11:58:53
16          Bell hop-assisted door opening service, I'm
17    not sure why I would need a bell hop door-opening
18    service, and I -- so I would question that.  But I
19    don't know.  That's -- that's kind of weird to me.
20          Okay.  Accessible rooms.  Now we're going     11:59:09
21    bathroom accessibility.  So there's not -- okay.  So
22    that's my answer with regards to the room itself.
23    Accessible is subject to interpretation.  With
24    regards to the bathroom accessibility, I think we're
25    back to the same answer.  A roll-in shower, you know, 11:59:37
```

Page 102

```
 1      A    Compliance.  ADA compliance.              12:38:39

 2      Q    Does your current physical impairment impact

 3   your ability to walk?

 4      A    Yes, ma'am.

 5      Q    How so?                                    12:38:59

 6      A    Well, I'm trying to describe this in a way

 7   that makes sense.  So in between the fractured heels

 8   and the spine problem, it makes balancing difficult.

 9   I have to be careful where I walk.  I trip easily.  I

10   guess the phrase you would use is unsteady on your    12:39:35

11   feet.  It can make walking long distances very

12   painful, you know, from a little painful to really

13   painful to not even possible, really.  I don't know.

14   How's that?

15      Q    Does your physical impairment impact your    12:39:57

16   ability to stand?

17      A    It does.

18      Q    And in the same fashion?

19      A    Yeah.

20      Q    You said that you have issues with your      12:40:08

21   balance?

22      A    Yes.

23      Q    And that you might trip?  You have a concern

24   that you might trip?

25      A    Yes.                                         12:40:18
```

Veritext Legal Solutions
866 299-5127

```
 1              (Exhibit 3 was marked for identification by       02:09:43

 2         the court reporter and is attached hereto.)

 3              MS. BERMUDEZ:  As well as a copy to your

 4    counsel.  Sorry.

 5    BY MS. BERMUDEZ:                                            02:09:54

 6         Q   Exhibit 3 I'll also represent to you was

 7    provided by your counsel.  It has the time stamp on

 8    the top of that document as well.  Do you see that?

 9         A   Yes.

10         Q   Is this a document that you created?             02:10:11

11         A   I did not.

12         Q   Have you ever seen this before?

13         A   The document, I have not seen the document

14    before, no.

15         Q   This particular printout of the web page         02:10:22

16    indicates that the tab for Rooms is accessed.  Do you

17    see that?

18         A   Yes.

19         Q   As you look at this document, do you have

20    any recollection of having reviewed the Rooms -- the    02:10:31

21    Rooms tab?

22         A   The Rooms tab.  Specifically the rooms tab,

23    no.

24         Q   Do you know if you would have visited the

25    Rooms tab page?                                           02:10:46
```

Page 153

```
 1        A   Yes, absolutely, I would have.              02:10:49

 2        Q   Okay.  Are there any other tabs that you

 3   would have accessed on that hotel website?

 4        A   Well, looking here, I would have looked at

 5   Welcome.  Welcome often, you know, gives information   02:10:58

 6   on the hotel.  Rooms, of course.  Perhaps Activities.

 7   Meetings and Weddings, no.  Dining and Events, yes.

 8   Mission Bay, I may have.  It sounds like -- I mean, I

 9   may have.  And San Diego, I don't know.  I don't

10   know.                                                  02:11:28

11        Q   The last tab, Contact?

12        A   Contact.  I don't recall.  I may have, and I

13   don't recall having contact.

14        Q   Do you have a specific recollection

15   accessing any of those tabs as you sit here today?     02:11:41

16        A   No.

17        MS. BERMUDEZ:  The next document I will hand

18   over to you is Exhibit 4.

19            (Exhibit 4 was marked for identification by

20        the court reporter and is attached hereto.)       02:12:05

21   BY MS. BERMUDEZ:

22        Q   And, Mr. Rutherford, just so you know, all

23   of the documents in front of you that have been

24   marked with the pink tabs are exhibits, so we just

25   need to make sure that those stay in the room,         02:12:19
```

```
 1   because they will be part of the transcript.        02:12:21

 2        A   Okay.

 3        Q   In your review of Exhibit 4, does that

 4   reflect -- excuse me.  Does that refresh your

 5   recollection as to anything you may have reviewed on  02:12:34

 6   the Bahia Resort Hotel website?

 7        A   Do I recollect seeing any of this?  Yes.

 8   The kids look familiar on the front page.  The very

 9   first page, No. 4.  What else?  That's it at this

10   moment.                                              02:13:26

11        Q   Okay.  But this page does not refresh your

12   recollection as to any particular tab or order of

13   viewing the website that you may have taken?

14            MR. HASHEMI:  Objection.  Argumentative.

15   BY MS. BERMUDEZ:                                     02:13:39

16        Q   If you know.

17        A   Yeah, I mean, this looks like -- you know,

18   it's the Welcome page, so I probably would have

19   looked at this first.  I probably would have.  Do I

20   recollect looking at it first?  No.  Like I say, the  02:13:51

21   page does look familiar.

22        Q   The next document I will hand to you is

23   Exhibit 5, which consists of two pages.  And I'll

24   represent to you it's a document that was provided by

25   your counsel.                                        02:14:08
```

```
 1              (Exhibit 5 was marked for identification by
 2         the court reporter and is attached hereto.)
 3    BY MS. BERMUDEZ:
 4         Q    Mr. Rutherford, do you have a recollection
 5    of having looked at this document?                02:14:39
 6         A    At the document, no.
 7         Q    Okay.  Do you have a recollection of having
 8    visited this tab on the website?
 9         A    No, I do not.
10         Q    Do you have a recollection of having called  02:15:12
11    the Bahia Hotel in connection with your review of
12    these website pages that are in front of you?
13         A    I do not.
14              MS. BERMUDEZ:  The next document I'll show
15    you is Exhibit 6, which I'll also represent to you   02:15:43
16    was provided by your counsel.
17              (Exhibit 6 was marked for identification by
18         the court reporter and is attached hereto.)
19    BY MS. BERMUDEZ:
20         Q    Mr. Rutherford, is the contact page a page   02:16:13
21    you would have looked at on the Bahia Resort Hotel
22    website?
23         A    I'm sorry.  What was your question, ma'am?
24    I'm sorry.  I wasn't --
25              MS. BERMUDEZ:  Could you read that question   02:16:23
```

1    back, Madam Reporter.                                    02:16:24

2          (Record read.)

3          THE WITNESS:  Yeah, I don't think so.

4    BY MS. BERMUDEZ:

5          Q   Why not?                                       02:16:39

6          A   Well, I'm looking for information about the

7    hotel.  In the context that I'm looking to reserve a

8    room, it wouldn't specifically help me.

9          Q   Why don't you think that would help you?

10         A   The contacts -- why would the contact page     02:17:02

11   help me?  I mean, unless they had a director of

12   accessibility.  I don't think I would see the need to

13   know the name of the food and beverage director.

14         Q   So before visiting the Bahia Resort Hotel

15   website, had you ever called a hotel regarding          02:17:29

16   accessibility of a particular room?

17             MR. HASHEMI:  Vague and overbroad.

18             THE WITNESS:  Before I visited the Bahia

19   website, did I ever call?  I don't recall.

20             MS. BERMUDEZ:  The next document I will show    02:18:02

21   you is Exhibit 7.

22             (Exhibit 7 was marked for identification by

23         the court reporter and is attached hereto.)

24   BY MS. BERMUDEZ:

25         Q   Mr. Rutherford, does this document look        02:18:22

                                                    Page 157

1    familiar to you?

2        A    The document, no.  The document doesn't.

3        Q    As you look at this document, does this

4    particular tab of -- for contact refresh your

5    recollection that you may have accessed it?        02:18:44

6        A    No, ma'am.

7        Q    Did you fill out a form like this, by any

8    chance, with respect to the Bahia Resort Hotel that

9    you can recall?

10       A    I don't believe so, no.                  02:18:54

11       Q    Why not?

12       A    Well, you're asking me to give you the

13   reason that I may have had at the time to not request

14   further information.  And I don't recall what that

15   reason would have been.                           02:19:26

16       Q    It's your testimony, though, that you look

17   to a hotel website to ascertain whether or not you

18   can make an intelligent decision as to whether or not

19   you can stay there; correct?

20       A    Yes, ma'am.                              02:19:40

21       Q    And do you avail yourself to all information

22   on the website to try to get that information?

23       A    All the information on a website.  I will --

24   I look to see if the information is there.  You know,

25   I don't expect to find it, for example, in the       02:19:57

```
1    my understanding, what do you mean, booking page?        02:24:46

2           MS. BERMUDEZ:  It's going to be based on

3    what his understanding is.

4           THE WITNESS:  My understanding would be -- a

5    booking page.  A booking page which was part of this     02:24:55

6    website?

7    BY MS. BERMUDEZ:

8      Q   Yes.

9      A   Okay.  And what about that page?

10     Q   So I'm trying to understand what you recall,        02:25:06

11   because no one else knows in the world --

12     A   Sure.

13     Q   But your experience interfacing with this

14   website, I want to know how you accessed it, what

15   pages you may have accessed.  That's what I'm trying     02:25:22

16   to get at here.  So with respect to this particular

17   website for the Bahia Hotel, do you have any

18   recollection of having gotten to a booking page?

19     A   No.

20     Q   Do you have a recollection as to hitting a         02:25:38

21   button for reserve?

22     A   No.  And I would not -- I don't think I

23   would have reserved anything based on the information

24   that I was able to glean.

25     Q   And is that also true for The Lodge at           02:25:50
```

Veritext Legal Solutions
866 299-5127

1    Torrey Pines' website?                                     02:25:52

2         A    Yes, ma'am.  I don't think I reserved a

3    room.

4         Q    Or that you would have hit the button to

5    reserve the room?                                          02:26:03

6         A    Well, hitting the button, see, that's a good

7    question.  Now, if hitting the button, the reserve

8    button, means that I'm going to be opened up into a

9    page where I have the option of reserving an

10   accessible room or not, then, yeah, I might have hit       02:26:14

11   the reserve button.  So, you know, yeah.  I mean, I

12   don't know sitting here what happens when you hit the

13   reserve button.

14           I think, to make -- to answer your question,

15   I'm going to try to reserve an accessible room.  And       02:26:30

16   oftentimes, even if there's no information on the

17   website, you'll get to the page where you can reserve

18   a room and, bingo, there it is.  So did I do that?  I

19   don't remember.  I know it's there if I -- if I --

20   since I know it's there if I -- I probably would have      02:26:49

21   tried to, yeah, because oftentimes you can get what

22   you're looking for or a lot more of what you're

23   looking for on that page.

24        Q    So you have -- you think -- just so I

25   understand your testimony, you believe you may have        02:27:02

```
 1    last year.                                        02:28:20

 2        Q   Did you take notes of that date?

 3        A   No, ma'am.

 4        Q   Were they already representing you in other

 5    litigation?                                        02:28:34

 6        A   Yes.

 7        Q   You allege in the complaint that you visited

 8    the Catamaran Resort Hotel website; correct?

 9        A   Yes, ma'am.

10        Q   Does this document refresh your recollection  02:29:08

11    as to how you may have visited various tabs on the

12    Catamaran Resort Hotel website?

13        A   No, ma'am.

14        Q   As you sit here today, do you have a

15    specific recollection of what pages that you actually  02:29:20

16    visited and didn't visit on the Catamaran Resort

17    Hotel website?

18        A   Specific recollection, no, I do not.

19        Q   So if I ask you questions about which pages

20    and tabs you visited, would you be basing that     02:29:32

21    testimony on what you think you may have visited as

22    opposed to what you know you visited?

23        A   Yes, I would be basing it on what I think I

24    would have.

25        Q   So on the Catamaran Resort Hotel website,   02:29:53
```

Veritext Legal Solutions
866 299-5127

```
1              (Exhibit 13 was marked for identification by    02:41:56

2         the court reporter and is attached hereto.)

3    BY MS. BERMUDEZ:

4         Q    Mr. Rutherford, does this document look

5    familiar to you?                                          02:42:14

6         A    The document does not.

7         Q    And is this a document that you created?

8         A    It is not.

9         Q    Again, I'll represent to you that this is a

10   document that was provided by your counsel.               02:42:25

11        A    Okay.

12        Q    As you sit here today, are you able to

13   confirm or verify that this is what the website

14   looked like when you looked at it in 2017?

15        A    Can I confirm?  No.  I can't confirm that --    02:42:53

16   no.

17        Q    For any of the documents in exhibits that

18   have been put before you, can you confirm that any of

19   them look like what they looked like in 2017 when you

20   visited the website?                                      02:43:17

21        A    I cannot confirm that.

22        Q    Mr. Rutherford, as you review Exhibit 13 in

23   front of you, are you able to recall what specific

24   tabs you accessed on The Lodge at Torrey Pines

25   website?                                                  02:43:45
```

1      A    Am I able to recall?  No, I'm not.        02:43:48

2      Q    For The Lodge at Torrey Pines, did you

3  memorialize any steps that you took to look at

4  individual tabs on the website?

5      A    I don't recall doing that.               02:44:20

6      Q    For the Bahia Hotel, did you memorialize in

7  any way the tabs that you accessed on that website?

8      A    I don't recall doing that.

9      Q    For the Catamaran Hotel, did you take any

10 steps to memorialize the tabs that you accessed on    02:44:36

11 the website?

12     A    I don't recall doing that.

13     Q    What tabs do you think you may have

14 accessed?

15     A    That would be Accommodations, Dine, Spa, and  02:44:55

16 Resort.

17          MS. BERMUDEZ:  I'll show you Exhibit 14 now.

18          (Exhibit 14 was marked for identification by

19      the court reporter and is attached hereto.)

20 BY MS. BERMUDEZ:                                      02:45:23

21     Q    Mr. Rutherford, does this page look familiar

22 to you?

23     A    It does.

24     Q    And is this a page you would have accessed?

25     A    Is it a page I would have accessed?  It      02:45:55

Page 173

Veritext Legal Solutions
866 299-5127

```
1    looks like it's the Rooms page, so, yes, I would have        02:45:58

2    accessed this.

3        Q   Do you have a specific recollection of

4    having reviewed this particular page?

5        A   Specifically, no.  When you say "page,"        02:46:06

6    you're talking about just the first page of these --

7    the whole thing or -- this whole thing in its

8    entirety is one page?  What are we talking about?

9        Q   So I'll represent to you that this is a

10   printout from your counsel --        02:46:46

11       A   Okay.

12       Q   -- as to that particular web page on that

13   particular day.

14       A   Okay.  So the whole thing in its entirety is

15   one page?        02:46:56

16       Q   Yes.

17       A   Okay.  Then let me take a look at the whole

18   thing and see if I remember accessing any of them.  I

19   thought we were referring to just the first page

20   here.  Yeah, I mean, I vaguely remember -- you know,        02:47:02

21   bayfront, bayfront, bay view, that sounds very

22   familiar.  They begin to all look the same after a

23   while.  So, I'm sorry, I can't recall specifically

24   other than what I've said already.

25       Q   With respect to Exhibit 13, if you could        02:48:28
```

Page 174

```
 1      A   Yes, ma'am.                                    02:59:03

 2      Q   What is the legal entity of Association 4

 3  Equal Access?

 4      A   It's an unincorporated --

 5          MR. HASHEMI:  Calls for legal conclusion.      02:59:10

 6  BY MS. BERMUDEZ:

 7      Q   I'm sorry.  Go ahead.

 8      A   As far as I know, it's an unincorporated

 9  association.

10      Q   Does it hold any bank accounts?                02:59:18

11      A   It does.

12      Q   Where are the bank accounts located?

13          MR. HASHEMI:  Calls for speculation.

14  BY MS. BERMUDEZ:

15      Q   If you know.                                   02:59:31

16      A   California.

17      Q   Which bank?

18      A   Chase Bank.

19      Q   Are you the signatory on behalf of The

20  Association 4 Equal Access?                            02:59:39

21      A   I am.

22      Q   Have you personally ever withdrawn funds

23  from The Association 4 Equal Access bank accounts?

24      A   I have.

25      Q   Have you ever deposited funds into that        02:59:56
```

Veritext Legal Solutions
866 299-5127

```
 1      A   No.                                          03:02:02

 2      Q   Does it have any employees?

 3      A   It does not.

 4      Q   When did you found The Association 4 Equal

 5  Access?                                              03:02:15

 6      A   I don't recall.

 7      Q   Does The Association 4 Equal Access file

 8  taxes?

 9      A   I don't recall that either.

10      Q   Have you personally filed tax returns on     03:02:25

11  behalf of The Association 4 Equal Access?

12      A   Have I personally filed tax returns?

13  Personally?

14      Q   On behalf of the --

15      A   On behalf of the association.  I have not.   03:02:36

16      Q   You have not?

17      A   I have not.

18      Q   Do you know if Ms. Filardi has?

19      A   I don't know.

20      Q   When you make cash withdrawals from          03:02:46

21  The Association 4 Equal Access bank accounts, are

22  those withdrawals for personal use?

23      A   You have to define personal.

24      Q   For what purpose -- when you withdraw cash

25  from the bank accounts of the association, what do   03:03:09
```

Veritext Legal Solutions
866 299-5127

```
 1              I, the undersigned, a Certified Shorthand Reporter
 2    of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken before
 4    me at the time and place herein set forth; that any
 5    witnesses in the foregoing proceedings, prior to testifying,
 6    were administered an oath; that a record of the proceedings
 7    was made by me using machine shorthand which was thereafter
 8    transcribed under my direction; that the foregoing
 9    transcript is a true record of the testimony given.
10              Further, that if the foregoing pertains to the
11    original transcript of a deposition in a federal case,
12    before completion of the proceedings, a review of the
13    transcript was requested.
14              I further certify I am neither financially
15    interested in the action nor a relative or employee of any
16    attorney or any party to this action.
17              IN WITNESS WHEREOF, I have this date subscribed my
18    name.
19    Dated: October 30, 2018
20
21
22              _Elaine Smith_
23              ELAINE SMITH, RMR
                CSR No. 5421
24
25
```

Veritext Legal Solutions
866 299-5127

Exhibit "H"

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4    _____

5    JAMES RUTHERFORD; AND, THE)

6    ASSOCIATION 4 EQUAL        )

7    ACCESS,                    )

8            Plaintiffs,        )

9            VS.                ) Case No. 18-cv-435-JLS(BGS)

10   EVANS HOTELS, LLC,         )

11           Defendants.        )

12   _____)

13

14

15   DEPOSITION OF:

16                   TOM FARLEY

17                   TUESDAY, OCTOBER 23, 2018

18                   9:05 A.M.

19

20

21

22   Reported by:

23   GINA M. CLOUD

24   CSR No. 6315

25   PAGES 1 - 31

                                        Page 1

```
 1   what would you be referring to that we haven't
 2   discussed?
 3        A.   We provide an accessible path of travel so I
 4   can get you through the door, but once you're through
 5   the door, we rearrange the furniture, etcetera, so
 6   that if in fact you are in a wheelchair, you can
 7   navigate through the room, and if you get into the
 8   bathroom, you can turn around and get out because it
 9   has sufficient clearances and the door swings out
10   instead of in.  There's quite a bit of that that
11   isn't called out here, but the ADA is a big rule.
12        Q.   Anything else you can think of that isn't
13   in this slide?
14        A.   Not off the top of my head.
15        Q.   Is there something you could refer to, any
16   document you could refer to that had the entire
17   list?
18        A.   Each specific room would have its own set of
19   documents.
20        Q.   So by each room number, it's potentially
21   built differently, is that what you mean?
22        A.   Absolutely.  You should say no two are the
23   same.  They might be close, but no, each one is a
24   standalone.
25        Q.   What would be different from each room, is
```

Veritext Legal Solutions
866 299-5127

```
 1           I, GINA M. CLOUD, a certified shorthand
 2   reporter for the State of California, do hereby
 3   certify:
 4               that prior to being examined, the
 5   witness named in the foregoing deposition, was by me
 6   duly sworn to testify the truth, the whole truth,
 7   and nothing but the truth pursuant to Section No.
 8   2093 of the Code of Civil Procedure;
 9               That said deposition was taken before
10   me pursuant to notice, at the time and place therein
11   set forth, and was taken down by me in shorthand and
12   thereafter reduced to typewriting via computer-aided
13   transcription under my direction;
14               I further certify that I am neither
15   counsel for, nor related to, any party to said
16   action, nor in anywise interested in the outcome
17   thereof.
18               IN WITNESS WHEREOF, I have hereunto
19   subscribed my name this 31st day of October, 2018.
20
21
22
23   _____
24   GINA M. CLOUD
25   CSR No. 6315
```

Page 31

Exhibit "I"

1               UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF CALIFORNIA

3

4   _____

5   JAMES RUTHERFORD; AND, THE)

6   ASSOCIATION 4 EQUAL     )

7   ACCESS,                )

8        Plaintiffs,    )

9        VS.            ) Case No. 18-cv-435-JLS(BGS)

10  EVANS HOTELS, LLC,     )

11       Defendants.    )

12  _____)

13

14

15

16  DEPOSITION OF:

17             ANDY THOMAS

18             FRIDAY, NOVEMBER 2, 2018

19             2:00 P.M.

20

21

22  Reported by:

23  GINA M. CLOUD

24  CSR No. 6315

25  PAGES 1 - 73

Veritext Legal Solutions
866 299-5127

```
 1        Q.   And could you describe for me the process

 2   for reserving a room on any one of these websites?

 3             MS. BERMUDEZ:  Vague, overbroad, calls for

 4   a narrative.  Go ahead.

 5             THE WITNESS:  It's basically like any other      02:23:31

 6   hotel website where you once you hit the website and

 7   go to book a room, you click a button and it says

 8   "book now" and it takes you to our Synxis booking

 9   engine, where we have rates and inventory loaded

10   that allows the consumer to view, select and          02:23:49

11   purchase a room, and then it's transmitted back to

12   us electronically and goes through interface and

13   into our property management system.

14   BY MS. WAGNER:

15        Q.   Can you book any type of room on these        02:24:07

16   websites?

17        A.   Yes, you can book pretty much anything on

18   our website.

19        Q.   Can you book accessible rooms on these

20   websites?                                             02:24:16

21        A.   All of our rooms can be made accessible, so

22   when you say accessible, what are you meaning?

23        Q.   I mean rooms that would comply with the

24   ADA -- that's an example of a bad question.  I'm

25   talking about rooms that have special requirements,    02:24:35
```

Page 20

1   as in an extra wide door or a special shower or a

2   different bed height, those types of things.  Are

3   those rooms -- did you reserve those on these

4   websites?

5               MS. BERMUDEZ:  Vague, overbroad, calls for          02:24:51

6   expert opinion, calls for a legal conclusion.  Go

7   ahead.

8               THE WITNESS:  Yes, because you can

9   always -- there's the ability for the guest to

10  request something on any room type of ours, so if a       02:25:04

11  guest needs a bed that's a certain elevation, they

12  can request that.  The only room types that we keep

13  in a separate category would be those with roll-in

14  showers.  Everything else we pretty much consider

15  can be modified for accessibility.                        02:25:26

16  BY MS. WAGNER:

17      Q.  Can you go into more detail on the roll-in

18  shower rooms.  What do you mean there is a special

19  process for that?

20      A.  We have a limited number of roll-in showers,       02:25:39

21  so we identify those as unique so that we can

22  maintain and monitor the sale of those as requested.

23      Q.  How would one go about -- I apologize, what

24  was that?

25      A.  So they're not hidden in a room category, so        02:26:02

                                                              Page 21

```
 1   to speak.

 2        Q.   So how would you go about booking one of

 3   those rooms?

 4            MS. BERMUDEZ:  Vague, overbroad.

 5            THE WITNESS:  For any of the hotels or        02:26:13

 6   which hotel?

 7   BY MS. WAGNER:

 8        Q.   For the roll-in shower, let's stick with

 9   that one for now?

10        A.   For The Lodge at Torrey Pines, that is a    02:26:22

11   room type that's online so a consumer can actually

12   take it out of our inventory by booking it online.

13   For Bahia and Catamaran, because the inventory is

14   lower by volume than we have The Lodge, we hold those

15   on request basis only, so as a guest would request to  02:26:43

16   be on the first floor, they would also be able to

17   request an ADA room if it was a roll-in shower.

18        Q.   How would they request that?

19        A.   We have a couple different methods in the

20   booking process, just like any guest would request    02:27:01

21   any request, there's the ability to put the request

22   on the room as you're purchasing it, so if you

23   purchase a standard room, you can request that that

24   standard room is a standard room on the first floor

25   and is ADA accessible, and when we get that           02:27:19
```

Veritext Legal Solutions
866 299-5127

1    reservation, we would confirm it and block it into

2    that room type.

3          For The Lodge they're actually a larger

4    number of the rooms, so that inventory is put online

5    for anybody to take it and buy it.                    02:27:35

6       Q.   When you say that they put in a comment,

7    can you complete the booking process from start to

8    finish then if you need to have a roll-in shower?

9       A.   Yes.

10      Q.   Do you need to do it that way?              02:28:01

11           MS. BERMUDEZ:  Vague, overbroad, compound.

12           THE WITNESS:  Yes, you can.

13   BY MS. WAGNER:

14      Q.   Are you aware of any policies and

15   procedures for what's listed on line at the resort?   02:28:37

16           MS. BERMUDEZ:  Vague, overbroad.

17           THE WITNESS:  Not for what's put online.

18   I'm not aware of any.

19   BY MS. WAGNER:

20      Q.   Who decides how the rooms are posted on the   02:28:51

21   website?

22      A.   Our marketing team who builds the website.

23      Q.   And who would be in charge of that?

24      A.   Diane Kozcur is our digital marketing

25   manager, I believe.                                   02:29:10

```
 1       Q.   Could you spell that name?

 2       A.   I would have to get it, I don't know.

 3            MS. BERMUDEZ:  It's K-o-z-c-u-r.

 4  BY MS. WAGNER:

 5       Q.   Other than the ADA rooms that require a        02:29:37

 6  roll-in shower, is there a different process for any

 7  other special accommodation that may be needed?

 8            MS. BERMUDEZ:  Vague and ambiguous,

 9  overbroad.

10            THE WITNESS:  Are they a different booking     02:29:47

11  process?

12  BY MS. WAGNER:

13       Q.   Yes.

14       A.   No, everything gets booked pretty much the

15  same way.                                               02:29:55

16       Q.   What sort of amenities are offered for

17  individuals who do require accessible rooms?

18       A.   I don't know the complete list, but some of

19  the items I do know is that we've got mobile bar

20  systems that can be clamped to tubs.  We have shower    02:30:16

21  stools.  We have hearing equipment for electronic

22  door knocks that flashlights, a whole arsenal of

23  adaptability equipment that we can take and outfit

24  any room with.

25       Q.   Would all of those items be listed on the     02:30:43
```

Page 24

```
 1    website?

 2        A.   I don't know.

 3            MS. BERMUDEZ:  Lacks personal knowledge.

 4    Go ahead.

 5            THE WITNESS:  I don't know.              02:30:50

 6    BY MS. WAGNER:

 7        Q.   When you book online, is there an option to

 8    request all of those items?

 9            MS. BERMUDEZ:  Vague, overbroad.

10            THE WITNESS:  Yes.  You can request        02:31:04

11    anything on our booking engine.

12    BY MS. WAGNER:

13        Q.   How does someone do that?

14            MS. BERMUDEZ:  Vague, overbroad.

15            THE WITNESS:  There's a special request     02:31:16

16    field in the process as you're completing your

17    booking that you can message us.

18    BY MS. WAGNER:

19        Q.   Are you always able to make those

20    accommodations from the special request?          02:31:31

21            MS. BERMUDEZ:  Vague and ambiguous.  Go

22    ahead.

23            THE WITNESS:  I've never not known us to be

24    able to handle that, because with three hotels near

25    each other we can borrow and share equipment so I'm   02:31:42
```

Page 25

```
 1    not aware of us not ever being able to meet

 2    someone's needs.

 3    BY MS. WAGNER:

 4        Q.   Is there ever a situation where the guest

 5    was to call to reserve an accessible room because        02:31:59

 6    there's not a way to book it online?

 7            MS. BERMUDEZ:  Vague, overbroad, incomplete

 8    hypothetical.

 9            THE WITNESS:  The only time that would be

10    is if the Internet is down for some reason or            02:32:10

11    they're having computer problems, but no, there

12    should not be.

13    BY MS. WAGNER:

14        Q.   Can you describe to me the difference

15    between booking a regular room and booking a room        02:32:26

16    where you do need it to be accessible?

17            MS. BERMUDEZ:  Vague, overbroad, incomplete

18    hypothetical.

19            THE WITNESS:  There is no difference.  It's

20    the same booking agent.  The only difference is that     02:32:39

21    they would request whatever their disability needs

22    are, whether they would need hearing equipment,

23    roll-in shower, extra bars, shower stool, things of

24    that sort.

25    BY MS. WAGNER:                                           02:33:12
```

Veritext Legal Solutions
866 299-5127

```
 1        A.   Yes.

 2        Q.   Can you describe that to me?

 3        A.   Hard blocking is when you assign an actual

 4   physical room number to a reservation.

 5        Q.   Can accessible rooms be hard blocked?          02:34:57

 6        A.   Yes, and often are because people are very

 7   particular about what they want and they are very

 8   particular about their view or first floor versus

 9   second floor, things of that sort.  So when somebody

10   has a particular need, desire or want, we'll go ahead   02:35:17

11   and hard block that so that we can meet their

12   expectations.

13        Q.   Do you hard block every booking for an

14   accessible room or does it vary?

15             MS. BERMUDEZ:  Objection, vague, overbroad,    02:35:36

16   incomplete hypothetical.

17             THE WITNESS:  No, we don't.  Only when

18   there is a special need.

19   BY MS. WAGNER:

20        Q.   So that would be a special request in the      02:35:49

21   comments section when they're booking online?

22        A.   Correct.

23        Q.   When an accessible room is booked online,

24   is there an e-mail confirmation?

25        A.   There is.  All reservations have e-mail        02:36:12
```

Veritext Legal Solutions
866 299-5127

```
 1   confirmations.

 2       Q.   Is there ever a need to call the guest

 3   after the booking?

 4           MS. BERMUDEZ:   Vague, overbroad, incomplete

 5   hypothetical.                                        02:36:30

 6           THE WITNESS:   Only if they made an error or

 7   have requested something that is not something we

 8   carry.

 9           So in other words, if they've requested say

10   a roll-in shower but want to be on a high floor and    02:36:46

11   our roll-in showers are on first floors, we might

12   call them to clarify their request and to better

13   serve them as to what -- if somebody puts two

14   uncomplimentary items together in a request, we may

15   call them for clarification.                         02:37:09

16   BY MS. WAGNER:

17       Q.   Are those descriptions of the accessible

18   rooms listed online though?

19           MS. BERMUDEZ:   Vague, lacks personal

20   knowledge, calls for speculation.                    02:37:20

21           THE WITNESS:   I would have to look at our

22   website.

23   BY MS. WAGNER:

24       Q.   If you could turn to Plaintiff's Exhibit 4.

25           (The document referred to was marked          02:38:00
```

Page 29

```
 1            MS. BERMUDEZ:  Objection as to RFA No. 9

 2   and the objections that are cited therein for

 3   defendants which has not been ruled upon by a court,

 4   but you can answer if you can.

 5            THE WITNESS:  I really can't answer that          02:49:15

 6   because that would be more of a question for our

 7   director of reservations on that, because I don't

 8   actually book the reservations myself.

 9   BY MS. WAGNER:

10       Q.   So outside of how you actually book on the        02:49:29

11   website, you don't have knowledge as to how

12   reservations are finalized for individuals with

13   specific needs to certain rooms?

14       A.   They're done the same way as all requests,

15   so somebody requesting a room once again by an          02:49:48

16   elevator or away from an elevator is the same process

17   as somebody who could request bars to be added to the

18   bathroom or hearing devices or whatnot.  They're all

19   done the same way.

20       Q.   What about what's the difference between           02:50:10

21   booking a room when you have no special requests and

22   booking a room if you need bars in the shower?

23            MS. BERMUDEZ:  Vague, overbroad, calls for

24   speculation, incomplete hypothetical, compound.

25            THE WITNESS:  If anybody has a special need        02:50:33
```

Veritext Legal Solutions
866 299-5127

1    that's not part of a standard hotel room like the

2    door knocker that's the strobe light for hearing

3    impaired and whatnot, we don't have that equipment

4    in every single room, so there are certain things

5    that we add to rooms when we're asked for them, even        02:50:55

6    things such as somebody who wants a second

7    refrigerator in the room.  Not all of our rooms come

8    with two refrigerators, but if someone requests two

9    refrigerators, we'll put an extra one in for them.

10   So it's done the same way as any requests.               02:51:14

11   BY MS. WAGNER:

12       Q.   How do you submit that request to the

13   hotel?

14            MS. BERMUDEZ:  Objection, vague, overbroad,

15   calls for speculation.                                   02:51:24

16            THE WITNESS:  The reservation is coded with

17   an indicator that comes up on reports and flags the

18   front office for arrival.

19   BY MS. WAGNER:

20       Q.   Is the booking process different for any of     02:52:12

21   these three resorts?

22            MS. BERMUDEZ:  Vague, overbroad.

23            THE WITNESS:  No, we use the same booking

24   engine on all three.

25   BY MS. WAGNER:                                           02:52:28

Veritext Legal Solutions
866 299-5127

```
 1          I, GINA M. CLOUD, a certified shorthand
 2   reporter for the State of California, do hereby
 3   certify:
 4              that prior to being examined, the
 5   witness named in the foregoing deposition, was by me
 6   duly sworn to testify the truth, the whole truth,
 7   and nothing but the truth pursuant to Section No.
 8   2093 of the Code of Civil Procedure;
 9              That said deposition was taken before
10   me pursuant to notice, at the time and place therein
11   set forth, and was taken down by me in shorthand and
12   thereafter reduced to typewriting via computer-aided
13   transcription under my direction;
14              I further certify that I am neither
15   counsel for, nor related to, any party to said
16   action, nor in anywise interested in the outcome
17   thereof.
18              IN WITNESS WHEREOF, I have hereunto
19   subscribed my name this 15th day of November, 2018.
20
21
22
23   _____
24   GINA M. CLOUD
25   CSR No. 6315
```

Page 73

Exhibit "J"

Nadia P. Bermudez, Bar No. 216555
Patrick J. Goode II, Bar No. 299697
Charles E.H. Gulley III, Bar No. 314073
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
nbermudez@klinedinstlaw.com
pgoode@klinedinstlaw.com
cgulley@Klinedinstlaw.com

Attorneys for Defendant
EVANS HOTELS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,<br><br>Plaintiffs,<br><br>v.<br><br>EVANS HOTELS, LLC, a California limited liability company and DOES 1 to 50,<br><br>Defendants. | Case No.   18CV0435 JLS BGS<br><br>**DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF JAMES RUTHERFORD'S FIRST SET OF INTERROGATORIES**<br><br>Judge:      Janis L. Sammartino<br>Magistrate Judge: Bernard G. Skomal<br>Complaint Filed:  2/26/18<br>Trial Date:   None set |

PROPOUNDING PARTY:    JAMES RUTHERFORD

RESPONDING PARTY:    EVANS HOTELS, LLC

SET NUMBER:    ONE

COMES NOW Defendant EVANS HOTELS, LLC ("Responding Party"), and hereby responds to Plaintiff JAMES RUTHERFORD's ("Propounding Party") Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

As to each and every request contained in Propounding Party's Interrogatories, Set One, Responding Party states the following:

///

- 1 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

invited to contact the hotel or reservations via telephone, email, or the live chat application. This list is non-exhaustive.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 4:**

DESCRIBE ACCESSIBLE ROOMS OR SUITES found in the HOTELS.

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. With respect to Propounding Party's use of the prefatory definition "ACCESSIBLE," Responding Party incorporates by reference General Objection (I), *supra*. Responding Party further objects to this request to the extent it calls for the description of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy. Last, Responding Party objects to this discovery request because it has, in substance, been previously propounded . (See Interrogatories Nos. 1-3, *supra* [seeking descriptions of the "ACCESSIBLE features" of rooms available at each of the subject hotels].)

Subject to and without waiving these objections, Responding Party understands this request as seeking information regarding accessible room features as referenced throughout the FAC and responds as follows:

(1) Accommodations for guests requesting accessible rooms or suites at the Bahia Hotel include, but are not limited to, those listed publicly at http://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia hotel accessible room"). Such additional amenities include accessible parking, accessible common areas (indicated in ADA map for accessible routes), accessible elevator, hot tub lift, pool lift, visual emergency lighting, braille signage. Accessible rooms and suites include low bed height, one king, or two double size beds, accessible

- 9 -

height door viewers, widened doorways, under bed space for Hoyer lift, power chair space, lever type door handles, accessible light switches, controls, and power outlets, removal of obstacles and bellhop opening service (upon request), TV closed captioning, visual notification devices for door and phone (upon request), roll-in shower, shower chair, grab rails, adjustable height shower wand, and accessible bathroom vanity. Furthermore, guests who require any additional information or have questions are invited to contact the hotel or reservations via telephone, email, or the live chat application. This list is non-exhaustive.

(2) Accommodations for guests requesting accessible rooms or suites at the Lodge Torrey Pines include, but are not limited to, those listed publicly at https://www.lodgetorreypines.com/accessible-rooms (accessible from the lodgetorreypines.com landing page or by Google searching "lodge torrey pines accessible room"). Such additional amenities include Signature and Palisade rooms, one king bed or two queen beds, adjoining rooms for assistant, low bed height, under bed space for Hoyer Lift, modified closet areas, accessible height door viewer, lever type door handles, accessible light switches, controls, and power outlets, TV closed captioning, visual notification devices for door and phone (upon request), bellhop door opening service (upon request), bellhop assisted room tour (upon request), roll-in shower with fold down seating, accessible bathtub with grab rails, shower chair (upon request), adjustable height handheld shower wand, accessible bathroom vanity, accessible parking, accessible common areas and business center, accessible elevator, pool and hot tub lift, visual emergency lighting, and braille signage. Furthermore, guests who require any additional information or have questions are invited to contact the hotel or reservations via telephone, email, or the live chat application. This list is non-exhaustive.

(3) Accommodations for guests requesting accessible rooms at the Catamaran Resort include, but are not limited to, those listed publicly at https://catamaranresort.com/accessible-rooms (accessible from the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

catamaranresort.com landing page or by Google searching "catamaran resort accessible room"). Such additional amenities include accessible parking, accessible common areas, accessible elevator, hot tub lift, pool lift, visual emergency lighting, braille signage, Bay View Studio and Garden View room types, low bed height, two queen beds, accessible bathrooms with roll-in shower, modified closet areas, accessible height door viewers, under bed space for Hoyer Lift, automatic entry door with remote control, lever type door handles, accessible light switches, controls, and power outlets, TV closed captioning, visual notification devices for door and phone (upon request), roll-in shower, shower chair, transfer bench (upon request), adjustable height handheld shower wand, and accessible bathroom vanity. Furthermore, guests who require any additional information or have questions are invited to contact the hotel or reservations via telephone, email, or the live chat application. This list is non-exhaustive.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 5:**

DESCRIBE your HOTEL RESERVATIONS POLICY OR POLICIES prior to the filing of the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 5:**

Objection. Responding Party objects to this request to the extent it calls for the description of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy. Responding Party further objects to the proportionality of this request, relative to the needs of the case. (Fed. R. Civ. P. 26(b)(1).)

Describing all reservation practices during the seemingly limitless time period implicit in the phrase "prior to the filing of the COMPLAINT," has too

doctrine, and the duty of confidentiality, including third party rights to privacy. Responding Party notes that the total number of interrogatories served totals 44, as of this point. (Fed. R. Civ. P. Rule 33.)

KLINEDINST PC

DATED: July _19_, 2018      By: _____

Nadia P. Bermudez
Patrick J. Goode II
Charles E.H. Gulley III
Attorneys for Defendant
EVANS HOTELS, LLC

## VERIFICATION

I, Kimberley Guillermo, hereby declare and state as follows:

I am an authorized representative of EVANS HOTALS, LLC, a Defendant, in this action. I have read the foregoing DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF JAMES RUTHERFORD'S FIRST SET OF INTERROGATORIES and know the contents thereof. The same is true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2018 in San Diego, California.

EVANS HOTELS, LLC

By: _____
Kimberley Guillermo
Its Director of Reservations, Evans Hotels

17299548v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Exhibit "K"

Nadia P. Bermudez, Bar No. 216555
Patrick J. Goode II, Bar No. 299697
Charles E.H. Gulley III, Bar No. 314073
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
nbermudez@klinedinstlaw.com
pgoode@klinedinstlaw.com
cgulley@Klinedinstlaw.com

Attorneys for Defendant
EVANS HOTELS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS, <br><br> Plaintiffs, <br><br> v. <br><br> EVANS HOTELS, LLC, a California limited liability company and DOES 1 to 50, <br><br> Defendants. | Case No. 18CV0435 JLS BGS <br><br> **DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF THE ASSOCIATION 4 EQUAL ACCESS' FIRST SET OF INTERROGATORIES** <br><br> Judge: Janis L. Sammartino <br> Magistrate Judge: Bernard G. Skomal <br> Complaint Filed: 2/26/18 <br> Trial Date: None set |

PROPOUNDING PARTY:     THE ASSOCIATION 4 EQUAL ACCESS

RESPONDING PARTY:     EVANS HOTELS, LLC

SET NUMBER:     ONE

COMES NOW Defendant EVANS HOTELS, LLC ("Responding Party"), and hereby responds to Plaintiff THE ASSOCIATION 4 EQUAL ACCESS' ("Propounding Party") Interrogatories, Set One, as follows:

## **PRELIMINARY STATEMENT**

As to each and every request contained in Propounding Party's Interrogatories, Set One, Responding Party states the following:

1.     These responses are made pursuant to the Federal Rules of Civil

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Procedure and are based upon information presently known by Responding Party. It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions. Responding Party reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these responses as warranted thereby. These responses are made in a good faith effort to supply as much information and specification as is presently known, but shall not prejudice Responding Party in relation to further discovery, research, or analysis.

2. Each response herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

3. No incidental or implied admissions are intended by the responses made herein. The fact that Responding Party has answered or objected to any interrogatory is not an admission that Responding Party admits the existence of any "facts" set forth or assumed by such request:

## GENERAL OBJECTIONS

A. Responding Party objects to all interrogatories that attempt to require Responding Party to provide information not within its possession, custody, or control, or within the possession, custody, or control of any of its representatives, employees, agents, or attorneys.

B. The absence of an objection that an interrogatory is irrelevant is not intended to be a waiver of that objection and Responding Party reserves the right to object on relevancy grounds at any stage of these proceedings.

C. Responding Party has responded to these interrogatories to the extent of its current knowledge and available information. However, Responding Party's discovery and investigation in preparation for trial of this matter has not been completed as of the date of these responses, and therefore Responding Party does

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

not purport to state anything more than the information presently known to or discovered by it. Responding Party specifically reserves the right to supplement, modify, or amend its responses or to present additional information at a later date.

D.     Responding Party has based its responses upon the assumption that Propounding Party did not intend to seek information protected against discovery by the attorney-client privilege or the attorney work product doctrine. To the extent any interrogatory or any part thereof is intended to elicit such information, Responding Party objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

E.     Responding Party objects to Propounding Party's interrogatories which attempt to require Responding Party to identify "each and every" fact, conversation, agreement, person, or any other things, and "all" persons with knowledge and documents, on the grounds that such interrogatories are unduly burdensome, oppressive, and overbroad.

F.     Responding Party objects to these interrogatories to the extent they utilize the word "identify" in such a manner as to render the interrogatory unduly burdensome, oppressive, and overbroad.

G.     Responding Party objects to these interrogatories on the grounds they are unduly burdensome and oppressive to the extent the interrogatories require Responding Party to state specific facts, documents, conversations, agreements, meetings, and personal knowledge upon which Responding Party bases a denial of an abstract, vague, general and incomprehensible assertion by Responding Party. In many cases, it is difficult, if not impossible, to prove a negative or a nonexistence, particularly when Responding Party is given no specific facts to refute. Accordingly, Responding Party reserves its right to introduce any additional information when and if Propounding Party makes specific supported assertions.

H.     Responding Party further objects to the interrogatories on the grounds

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

they are unduly burdensome and oppressive in that they are repetitive. Therefore, when Propounding Party has requested that this Responding Party provide the same information in numerous interrogatories, this Responding Party has occasionally referred Propounding Party to prior interrogatory responses.

I.     Responding Party objects to Propounding Party's definition of the terms "ACCESSIBLE," "ACCESSIBILITY," or "ACCESS" to the extent any refers to anything other than reasonable accommodation(s) made available to address a physical or mental impairment which substantially limits one or more major life activities. As defined in Propounding Party's interrogatories, the terms "ACCESSIBLE," ACCESSIBILITY," and "ACCESS" fail to specify, with reasonable particularity, what is meant by "accessibility for persons with disabilities as that term is used" throughout the ADA. Interpretation of this term, as defined, improperly calls for an analysis of the term "accessible," "accessibility," and "access," as used throughout the ADA, to determine an appropriate response. Such an analysis is not proportional to the allegations set forth in the operative complaint.

J.     Responding Party objects to Propounding Party's definition of the term "DOCUMENTS," to the extent it seeks any information exceeding the scope of Fed. R. Civ. P. Rules 26 and 34. Consistent with the Federal Rules, Responding Party agrees only to produce or permit Propounding Party's authorized representative to inspect, copy, test, or sample the following items in Responding Party's possession, custody or control: "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form;" or "any designated tangible things;" or "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." (Fed. R. Civ. P. Rule 34(a).)

K.    Responding Party objects to Propounding Party's definition of the term "DISABILITY ACCESS LAWS," as it is impermissibly compound and seeks to expand individual questions in an unreasonable manner.  As defined in Propounding Party's interrogatories, the term "DISABILITY ACCESS LAWS" means "all federal, state, and local laws and implementing regulations relating to access of the disabled, including but not limited to, Title III of the ADA, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) , *et seq*., and Unruh Civil Rights Act ("UCRA") Cal. Civ. Code §51, *et seq*."  Responding Party further objects to use of the term "relating to" in the above definition.  As drafted, this entire definition fails to identify, with reasonably particularity or specificity, which authorities are meant by "DISABILITY ACCESS LAWS."  Consequently, this term is hopelessly vague, ambiguous and, in effect, undefined.

L.    Responding Party generally objects to Propounding Party's enumerated "INSTRUCTIONS" to the extent they demand information, descriptions, identifications, and/or productions exceeding the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. Rules 26 and 34.

Referencing and expressly incorporating each of these general objections, Responding Party hereby responds as follows:

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

State all facts that support YOUR EIGHTH AFFIRMATIVE DEFENSE (FUNDAMENTAL ALTERATION OF ACTIVITIES).

## RESPONSE TO INTERROGATORY NO. 1:

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    third party rights to privacy; and to the extent it seeks to violate the expert

2    disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

3         Subject to and without waiving these objections, Responding Party interprets

4    this request as referring to the accessible rooms referenced throughout the First

5    Amended Complaint ("FAC") and responds as follows: relevant authorities

6    governing reasonable accommodations in the hospitality industry, online and

7    offline, are not limitless.  Prospective and actual guests interested in reserving

8    accessible rooms at the Bahia Resort Hotel, the Lodge at Torrey Pines, and the

9    Catamaran Resort, respectively, are provided access to information, resort

10   personnel, live chat access, and room/common area amenities intended to

11   accommodate the challenges that mobility-impaired guests, and others, face.

12   Available amenities for guests requesting accessible rooms include, but are not

13   limited to those listed publicly at https://www.lodgetorreypines.com/accessible-

14   rooms (accessible from the lodgetorreypines.com landing page or by Google

15   searching "lodge torrey pines accessible room");

16   https://catamaranresort.com/accessible-rooms (accessible from the

17   catamaranresort.com landing page or by Google searching "catamaran resort

18   accessible room"); and https://bahiahotel.com/san-diego-hotel-

19   rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page

20   or by Google searching "bahia resort accessible room"). Each website provides a

21   detailed explanation of the accessible room features available at each resort, along

22   with instructions (including contact information) for anyone requiring additional

23   information or a room tour before reserving a room online, over the phone, or in

24   person.  Plaintiffs seek injunctive relief (additional modifications to Responding

25   Party's business practices), but they provide no specifics. Accordingly, it is

26   foreseeable that the modifications Plaintiffs intend may include, in whole or in

27   part, fundamental alterations.

28        To the extent Propounding Party believes it is entitled to additional types of

-6-

information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 2:**

IDENTIFY all PERSONS with knowledge of any facts that support YOUR EIGHTH AFFIRMATIVE DEFENSE (FUNDAMENTAL ALTERATION OF ACTIVITIES).

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy, and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: furnishing an exhaustive list of all individuals with such knowledge over the entire period that the subject hotels have operated would include in-house and outside counsel, consultants, architects, construction personnel, web designers, coders, and webmasters, among others. Such an interpretation of this request would produce results disproportionate to the needs of this case. (Fed. R. Civ. P. 26(b)(1).) Thus, Responding Party interprets the scope of this request, reasonably, to include the following personnel familiar with hotel operations: Andy Thomas (Senior VP of Business Development), Kimberley Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom Farley (Facilities Contracting and Compliance Manager).

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 3:**

DESCRIBE all DOCUMENTS that support YOUR EIGHTH AFFIRMATIVE DEFENSE (FUNDAMENTAL ALTERATION OF ACTIVITIES).

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of guidelines for employees regarding ADA guests and emergency procedures, locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts, guidelines for boarding the Bahia Sternwheelers, accessible routes by resort, available equipment for the physically impaired and guests with sight and hearing impairments, and maps of each resort;

(2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms, and (c) https://www.lodgetorreypines.com/accessible-rooms. Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour; and

(3) Publicly available websites discussing web accessibility: (a) http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-

-8-

accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement.

Each website discusses Responding Party's commitment with respect to website

accessibility, along with instructions (including contact information) for anyone

having trouble accessing the resort websites.

To the extent Propounding Party believes it is entitled to additional types of

information, Responding Party welcomes Propounding Party to explain its position

in writing.

**INTERROGATORY NO. 4:**

State all facts that support YOUR NINTH AFFIRMATIVE DEFENSE

(UNDUE BURDEN OR HARDSHIP - COST).

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party objects to this request to the extent it calls for

the identification of documents and information protected by the attorney-client

privilege, the work product doctrine, and the duty of confidentiality, including

third party rights to privacy; and to the extent it seeks to violate the expert

disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets

this request as referring to the accessible rooms referenced throughout the FAC

and responds as follows: relevant authorities governing reasonable

accommodations in the hospitality industry, online and offline, are not limitless.

Prospective and actual guests interested in reserving accessible rooms at the Bahia

Resort Hotel, the Lodge at Torrey Pines, and the Catamaran Resort, respectively,

are provided access to information, resort personnel, live chat access, and

room/common area amenities intended to accommodate the challenges that

mobility-impaired guests, and others, face. Available amenities for guests

requesting accessible rooms include, but are not limited to those listed publicly at

https://www.lodgetorreypines.com/accessible-rooms (accessible from the

lodgetorreypines.com landing page or by Google searching "lodge torrey pines

-9-

DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF THE ASSOCIATION 4 EQUAL
ACCESS' FIRST SET OF INTERROGATORIES
18CV0435 JLS BGS

accessible room"); https://catamaranresort.com/accessible-rooms (accessible from the catamaranresort.com landing page or by Google searching "catamaran resort accessible room"); and https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia resort accessible room"). Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour before reserving a room online, over the phone, or in person. Plaintiffs seek injunctive relief (additional modifications to Responding Party's business practices), but they provide no specifics. Accordingly, it is foreseeable that the modifications Plaintiffs intend may impose, in whole or in part, undue financial burdens or cause hardships.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

## INTERROGATORY NO. 5:

IDENTIFY all PERSONS with knowledge of any facts that support YOUR NINTH AFFIRMATIVE DEFENSE (UNDUE BURDEN OR HARDSHIP - COST).

## RESPONSE TO INTERROGATORY NO. 5:

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: furnishing an exhaustive list of all individuals with such

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

knowledge over the entire period that the subject hotels have operated would include in-house and outside counsel, consultants, architects, construction personnel, web designers, coders, and webmasters, among others. Such an interpretation of this request would produce results disproportionate to the needs of this case. (Fed. R. Civ. P. 26(b)(1).) Thus, Responding Party interprets the scope of this request, reasonably, to include the following personnel familiar with hotel operations: Andy Thomas (Senior VP of Business Development), Kimberley Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom Farley (Facilities Contracting and Compliance Manager).

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 6:**

DESCRIBE all DOCUMENTS that support YOUR NINTH AFFIRMATIVE DEFENSE (UNDUE BURDEN OR HARDSHIP – COST).

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of guidelines for employees regarding ADA guests and emergency procedures, locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  guidelines for boarding the Bahia Sternwheelers, accessible routes by resort,

2  available equipment for the physically impaired and guests with sight and hearing

3  impairments, and maps of each resort;

4      (2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-

5  rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms,

6  and (c) https://www.lodgetorreypines.com/accessible-rooms.  Each website

7  provides a detailed explanation of the accessible room features available at each

8  resort, along with instructions (including contact information) for anyone requiring

9  additional information or a room tour; and

10      (3) Publicly available websites discussing web accessibility: (a)

11  http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-

12  accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement.

13  Each website discusses Responding Party's commitment with respect to website

14  accessibility, along with instructions (including contact information) for anyone

15  having trouble accessing the resort websites.

16      To the extent Propounding Party believes it is entitled to additional types of

17  information, Responding Party welcomes Propounding Party to explain its position

18  in writing.

19  **INTERROGATORY NO. 7:**

20      State all facts that support YOUR TWELFTH AFFIRMATIVE DEFENSE

21  (DECLARATORY RELIEF UNAVAILABLE).

22  **RESPONSE TO INTERROGATORY NO. 7:**

23      Objection. Responding Party objects to this request to the extent it calls for

24  the identification of documents and information protected by the attorney-client

25  privilege, the work product doctrine, and the duty of confidentiality, including

26  third party rights to privacy; and to the extent it seeks to violate the expert

27  disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

28      Subject to and without waiving these objections, Responding Party interprets

DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF THE ASSOCIATION 4 EQUAL
ACCESS' FIRST SET OF INTERROGATORIES
18CV0435 JLS BGS

this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: relevant authorities governing reasonable accommodations in the hospitality industry, online and offline, are not limitless. Prospective and actual guests interested in reserving accessible rooms at the Bahia Resort Hotel, the Lodge at Torrey Pines, and the Catamaran Resort, respectively, are provided access to information, resort personnel, live chat access, and room/common area amenities intended to accommodate the challenges that mobility-impaired guests, and others, face. Available amenities for guests requesting accessible rooms include, but are not limited to those listed publicly at https://www.lodgetorreypines.com/accessible-rooms (accessible from the lodgetorreypines.com landing page or by Google searching "lodge torrey pines accessible room"); https://catamaranresort.com/accessible-rooms (accessible from the catamaranresort.com landing page or by Google searching "catamaran resort accessible room"); and https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia resort accessible room"). Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour before reserving a room online, over the phone, or in person. Plaintiffs seek declaratory relief regarding whether Responding Party's current and existing practices comply with California's Unruh Civil Rights Act and the federal Americans with Disabilities Act. Accordingly, it is foreseeable that the Court may find Responding Party's practices summarily compliant; rendering declaratory relief unnecessary, improper, or wholly unavailable.

Letter to Plaintiffs' counsel dated April 12, 2018, sent in anticipation of the telephonic meet and confer pertaining to the subject websites.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position

**INTERROGATORY NO. 8:**

IDENTIFY all PERSONS with knowledge of any facts that support YOUR TWELFTH AFFIRMATIVE DEFENSE (DECLARATORY RELIEF UNAVAILABLE).

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: furnishing an exhaustive list of all individuals with such knowledge over the entire period that the subject hotels have operated would include in-house and outside counsel, consultants, architects, construction personnel, web designers, coders, and webmasters, among others. Such an interpretation of this request would produce results disproportionate to the needs of this case. (Fed. R. Civ. P. 26(b)(1).) Thus, Responding Party interprets the scope of this request, reasonably, to include the following personnel familiar with hotel operations: Andy Thomas (Senior VP of Business Development), Kimberley Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom Farley (Facilities Contracting and Compliance Manager).

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 9:**

DESCRIBE all DOCUMENTS that support YOUR TWELFTH

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

AFFIRMATIVE DEFENSE (DECLARATORY RELIEF UNAVAILABLE).

**RESPONSE TO INTERROGATORY NO. 9:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of guidelines for employees regarding ADA guests and emergency procedures, locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts, guidelines for boarding the Bahia Sternwheelers, accessible routes by resort, available equipment for the physically impaired and guests with sight and hearing impairments, and maps of each resort;

(2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms, and (c) https://www.lodgetorreypines.com/accessible-rooms. Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour; and

(3) Publicly available websites discussing web accessibility: (a) http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement. Each website discusses Responding Party's commitment with respect to website accessibility, along with instructions (including contact information) for anyone

-15-

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

having trouble accessing the resort websites.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 10:**

State all facts that support YOUR FOURTEENTH AFFIRMATIVE DEFENSE (IMPRACTIBILITY).

**RESPONSE TO INTERROGATORY NO. 10:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:  relevant authorities governing reasonable accommodations in the hospitality industry, online and offline, are not limitless. Prospective and actual guests interested in reserving accessible rooms at the Bahia Resort Hotel, the Lodge at Torrey Pines, and the Catamaran Resort, respectively, are provided access to information, resort personnel, live chat access, and room/common area amenities intended to accommodate the challenges that mobility-impaired guests, and others, face. Available amenities for guests requesting accessible rooms include, but are not limited to those listed publicly at https://www.lodgetorreypines.com/accessible-rooms (accessible from the lodgetorreypines.com landing page or by Google searching "lodge torrey pines accessible room"); https://catamaranresort.com/accessible-rooms (accessible from the catamaranresort.com landing page or by Google searching "catamaran resort accessible room"); and https://bahiahotel.com/san-diego-hotel-

rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia resort accessible room"). Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour before reserving a room online, over the phone, or in person. Plaintiffs seek injunctive relief (modifications to Responding Party's business practices), but they provide no specifics. Accordingly, it is foreseeable that the modifications Plaintiffs intend may include, in whole or in part, impracticable ones.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 11:**

IDENTIFY all PERSONS with knowledge of any facts that support YOUR FOURTEENTH AFFIRMATIVE DEFENSE (IMPRACTIBILITY).

**RESPONSE TO INTERROGATORY NO. 11:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: Andy Thomas (Senior VP of Business Development), Kimberley Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom Farley (Facilities Contracting and Compliance Manager), and Diane Koczur (Digital Marketing Manager). To the extent Propounding Party believes it is entitled to additional types of information, Responding Party

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

welcomes Propounding Party to explain its position in writing.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 12:**

DESCRIBE all DOCUMENTS that support YOUR FOURTEENTH AFFIRMATIVE DEFENSE (IMPRACTIBILITY).

**RESPONSE TO INTERROGATORY NO. 12:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of guidelines for employees regarding ADA guests and emergency procedures, locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts, guidelines for boarding the Bahia Sternwheelers, accessible routes by resort, available equipment for the physically impaired and guests with sight and hearing impairments, and maps of each resort;

(2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms, and (c) https://www.lodgetorreypines.com/accessible-rooms. Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    additional information or a room tour; and

2          (3) Publicly available websites discussing web accessibility: (a)

3    http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-

4    accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement.

5    Each website discusses Responding Party's commitment with respect to website

6    accessibility, along with instructions (including contact information) for anyone

7    having trouble accessing the resort websites.

8          To the extent Propounding Party believes it is entitled to additional types of

9    information, Responding Party welcomes Propounding Party to explain its position

10   in writing.

11   **INTERROGATORY NO. 13:**

12          State all facts that support YOUR SIXTEENTH AFFIRMATIVE DEFENSE

13   (MOOTNESS).

14   **RESPONSE TO INTERROGATORY NO. 13:**

15          Objection. Responding Party objects to this request to the extent it calls for

16   the identification of documents and information protected by the attorney-client

17   privilege, the work product doctrine, and the duty of confidentiality, including

18   third party rights to privacy; and to the extent it seeks to violate the expert

19   disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

20          Subject to and without waiving these objections, Responding Party interprets

21   this request as referring to the accessible rooms referenced throughout the FAC

22   and responds as follows:  relevant authorities governing reasonable

23   accommodations in the hospitality industry, online and offline, are not limitless.

24   Prospective and actual guests interested in reserving accessible rooms at the Bahia

25   Resort Hotel, the Lodge at Torrey Pines, and the Catamaran Resort, respectively,

26   are provided access to information, resort personnel, live chat access, and

27   room/common area amenities intended to accommodate the challenges that

28   mobility-impaired guests, and others, face. Available amenities for guests

-19-

requesting accessible rooms include, but are not limited to those listed publicly at https://www.lodgetorreypines.com/accessible-rooms (accessible from the lodgetorreypines.com landing page or by Google searching "lodge torrey pines accessible room"); https://catamaranresort.com/accessible-rooms (accessible from the catamaranresort.com landing page or by Google searching "catamaran resort accessible room"); and https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia resort accessible room"). Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour before reserving a room online, over the phone, or in person. Plaintiffs seek injunctive relief (additional modifications to Responding Party's business practices), but they provide no specifics. Accordingly, it is foreseeable that the modifications Plaintiffs intend may include, in whole or in part, those already implemented by Responding Party.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

## INTERROGATORY NO. 14:

IDENTIFY all PERSONS with knowledge of any facts that support YOUR SIXTEENTH AFFIRMATIVE DEFENSE (MOOTNESS).

## RESPONSE TO INTERROGATORY NO. 14:

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets

-20-

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

this request as referring to the accessible rooms referenced throughout the FAC

and responds as follows: furnishing an exhaustive list of all individuals with such

knowledge over the entire period that the subject hotels have operated would

include in-house and outside counsel, consultants, architects, construction

personnel, web designers, coders, and webmasters, among others. Such an

interpretation of this request would produce results disproportionate to the needs of

this case. (Fed. R. Civ. P. 26(b)(1).) Thus, Responding Party interprets the scope

of this request, reasonably, to include the following personnel familiar with hotel

operations: Andy Thomas (Senior VP of Business Development), Kimberley

Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom

Farley (Facilities Contracting and Compliance Manager).

To the extent Propounding Party believes it is entitled to additional types of

information, Responding Party welcomes Propounding Party to explain its position

in writing.

**INTERROGATORY NO. 15:**

DESCRIBE all DOCUMENTS that support YOUR SIXTEENTH

AFFIRMATIVE DEFENSE (MOOTNESS).

**RESPONSE TO INTERROGATORY NO. 15:**

Objection. This discovery request may call for documents and information

protected by the attorney-client privilege, the work product doctrine, and the duty

of confidentiality, including third party rights to privacy. The attorney-client

privilege is broadly construed, and extends to factual information and legal advice.

The request includes prefatory definitions.

Subject to and without waiving these objections, Responding Party interprets

this request as referring to the accessible rooms referenced throughout the FAC

and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of

guidelines for employees regarding ADA guests and emergency procedures,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts, guidelines for boarding the Bahia Sternwheelers, accessible routes by resort, available equipment for the physically impaired and guests with sight and hearing impairments, and maps of each resort;

(2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms, and (c) https://www.lodgetorreypines.com/accessible-rooms. Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour; and

(3) Publicly available websites discussing web accessibility: (a) http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement. Each website discusses Responding Party's commitment with respect to website accessibility, along with instructions (including contact information) for anyone having trouble accessing the resort websites. To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 16:**

State all facts that support YOUR EIGHTEENTH AFFIRMATIVE DEFENSE (EQUIVALENT FACILITATION, EQUIVALENT SERVICE).

**RESPONSE TO INTERROGATORY NO. 16:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert

-22-

disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: relevant authorities governing reasonable accommodations in the hospitality industry, online and offline, are not limitless. Prospective and actual guests interested in reserving accessible rooms at the Bahia Resort Hotel, the Lodge at Torrey Pines, and the Catamaran Resort, respectively, are provided access to information, resort personnel, live chat access, and room/common area amenities intended to accommodate the challenges that mobility-impaired guests, and others, face. Available amenities for guests requesting accessible rooms include, but are not limited to those listed publicly at https://www.lodgetorreypines.com/accessible-rooms (accessible from the lodgetorreypines.com landing page or by Google searching "lodge torrey pines accessible room"); https://catamaranresort.com/accessible-rooms (accessible from the catamaranresort.com landing page or by Google searching "catamaran resort accessible room"); and https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/ (accessible from the bahiahotel.com landing page or by Google searching "bahia resort accessible room"). Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour before reserving a room online, over the phone, or in person. Plaintiffs seek injunctive relief (additional modifications to Responding Party's business practices), but they provide no specifics. Accordingly, it is foreseeable that the modifications Plaintiffs intend may include, in whole or in part, functionally equivalent solutions already implemented by Responding Party.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 17:**

IDENTIFY all PERSONS with knowledge of any facts that support YOUR EIGHTEENTH AFFIRMATIVE DEFENSE (EQUIVALENT FACILITATION, EQUIVALENT SERVICE).

**RESPONSE TO INTERROGATORY NO. 17:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows: furnishing an exhaustive list of all individuals with such knowledge over the entire period that the subject hotels have operated would include in-house and outside counsel, consultants, architects, construction personnel, web designers, coders, and webmasters, among others. Such an interpretation of this request would produce results disproportionate to the needs of this case. (Fed. R. Civ. P. 26(b)(1).) Thus, Responding Party interprets the scope of this request, reasonably, to include the following personnel familiar with hotel operations: Andy Thomas (Senior VP of Business Development), Kimberley Guillermo (Director of Reservations), Heath Pitts (Reservations Manager), Tom Farley (Facilities Contracting and Compliance Manager).

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing.

**INTERROGATORY NO. 18:**

DESCRIBE all DOCUMENTS that support YOUR EIGHTEENTH AFFIRMATIVE DEFENSE (EQUIVALENT FACILITATION, EQUIVALENT

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

SERVICE).

**RESPONSE TO INTERROGATORY NO. 18:**

Objection. Responding Party objects to this request to the extent it calls for the identification of documents and information protected by the attorney-client privilege, the work product doctrine, and the duty of confidentiality, including third party rights to privacy; and to the extent it seeks to violate the expert disclosure schedule established by Fed. R. Civ. P. 26(a)(2).

Subject to and without waiving these objections, Responding Party interprets this request as referring to the accessible rooms referenced throughout the FAC and responds as follows:

(1) Internal ADA slides document, which includes a non-exhaustive set of guidelines for employees regarding ADA guests and emergency procedures, locations of accessible areas at each resort (i.e. restrooms, guestrooms, and common areas), lists of accessible equipment installed throughout the resorts, guidelines for boarding the Bahia Sternwheelers, accessible routes by resort, available equipment for the physically impaired and guests with sight and hearing impairments, and maps of each resort;

(2) Publicly available webpages: (a) https://bahiahotel.com/san-diego-hotel-rooms/rooms/accessible-rooms/, (b) https://catamaranresort.com/accessible-rooms, and (c) https://www.lodgetorreypines.com/accessible-rooms. Each website provides a detailed explanation of the accessible room features available at each resort, along with instructions (including contact information) for anyone requiring additional information or a room tour; and

(3) Publicly available websites discussing web accessibility: (a) http://bahiahotel.com/web-accessibility/, (b) https://catamaranresort.com/web-accessibility, and (c) https://www.lodgetorreypines.com/accessibility-statement. Each website discusses Responding Party's commitment with respect to website accessibility, along with instructions (including contact information) for anyone

-25-

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

having trouble accessing the resort websites.

To the extent Propounding Party believes it is entitled to additional types of information, Responding Party welcomes Propounding Party to explain its position in writing

KLINEDINST PC

DATED: July _____, 2018        By: _____
                                    Nadia P. Bermudez
                                    Patrick J. Goode II
                                    Charles E.H. Gulley III
                                    Attorneys for Defendant
                                    EVANS HOTELS, LLC

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF THE ASSOCIATION 4 EQUAL ACCESS' FIRST SET OF INTERROGATORIES
18CV0435 JLS BGS

I, Kimberley Guillermo, hereby declare and state as follows:

I am an authorized representative of EVANS HOTALS, LLC, a Defendant, in this action. I have read the foregoing DEFENDANT EVANS HOTELS, LLC'S RESPONSES TO PLAINTIFF THE ASSOCIATION 4 EQUAL ACCESS' FIRST SET OF INTERROGATORIES and know the contents thereof. The same is true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2018 in San Diego, California.

EVANS HOTELS, LLC

By: _____
Kimberley Guillermo
Its Director of Reservations, Evans Hotels

17299600v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Exhibit "L"

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**MANNING LAW, APC**
Joseph R. Manning, Jr. Esq. (223381)
joe@manninglawoffice.com
Michael J. Manning, Esq. (286879)
mike@manninglawoffice.com
4667 MacArthur Boulevard, Suite 150
Newport Beach, CA 92660
Telephone: (949) 200-8755
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs,*
James Rutherford; and, The Association 4 Equal Access

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,<br><br>Plaintiffs,<br><br>v.<br><br>EVANS HOTELS, LLC, a California limited liability company, and Does 1 to 50 ,<br><br>Defendants. | Case No.: 18-cv-0435-JLS-BGS<br><br>**PLAINTIFF JAMES RUTHERFORD'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

1

| PROPOUNDING PARTY: | EVANS HOTELS, LLC |
|---|---|
| RESPONDING PARTY: | JAMES RUTHERFORD |
| SET NUMBER: | ONE |

## **PRELIMINARY STATEMENT**

Plaintiff James Rutherford ("Plaintiff") hereby serves his supplemental responses and objections to Evans Hotels, LLC's first set of Interrogatories. Plaintiff has not fully completed his investigation of the facts relating to this case, has not fully completed his discovery in this action, and has not fully completed his preparation for trial. All of the responses contained herein are based only upon such information and documents presently available to and specifically known to Plaintiff. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to the known facts, as well as establish entirely new factual and legal conclusions, all of which may lead to substantial additions to, changes and variations from the contentions set forth herein. Plaintiff, therefore, reserves his right to supplement or amend these discovery responses as discovery and investigation in this lawsuit progress.

The word usage and sentence structure may be that of the attorney assisting in the preparation of these discovery responses and, thus, do not necessarily purport to be the precise language of Plaintiff.

The objections asserted by Plaintiff below are asserted in good faith, based upon counsel's evaluation of Plaintiff's discovery obligations under the Federal Rules of Civil Procedure. Nevertheless, Plaintiff, through counsel, offers and stands ready to confer with the Propounding Party in an effort to resolve or narrow, to the greatest extent possible, any dispute between the parties concerning these objections and responses.

The responses contained herein are made solely for the purpose of this Action.

## GENERAL OBJECTIONS

1.     Each response given to the Interrogatories and any documents identified therein are subject to all objections including, but not limited to, privilege, relevancy, authenticity, and admissibility which would require exclusion for the evidence if it were offered in Court, all of which objections and grounds are hereby reserved.

2.     Plaintiff objects to each of the Interrogatories to the extent they seek information or documents which are not relevant to the subject matter of the pending action thereby expanding discovery beyond what is proportional to the needs of this case and the burden to Plaintiff of the proposed discovery outweighs its likely benefit.

3.     Plaintiff objects to each of the Interrogatories to the extent they are overly broad or unduly burdensome.

4.     Plaintiff objects to each of the Interrogatories to the extent they seek documents, tangible things or information which have been prepared in anticipation of litigation or for trial, or are otherwise subject to protection pursuant to the work-product doctrine.

5.     Plaintiff objects to each of the Interrogatories to the extent they seek documents or information subject to protection under the attorney-client privilege or any other applicable privilege or protection.

6.     Plaintiff objects to each of the Interrogatories to the extent they are unreasonably cumulative or duplicative, or that the information or documents requested therein are obtainable from some other source that is more convenient, less burdensome, or less expensive.

7.     Plaintiff objects to each of the Definitions and Instructions contained in the Interrogatories to the extent they are overly broad and unduly burdensome.

8.     Plaintiff objects to each of the Interrogatories to the extent that it may be construed as calling for information already in Defendant's possession, custody

3

or control, or that are available from public sources on the grounds that such Interrogatories are unduly burdensome and oppressive, and as such, exceed the bounds of permissible discovery.

9.     Plaintiff is continuing his investigation and analyses of the facts and law related to this case, and has not yet concluded his investigation, discovery and preparation for trial. Therefore, these responses are given without prejudice to Plaintiff's right to produce or use any subsequently discovered facts or writings or to add to, modify or otherwise change or amend the responses herein. These responses are based on writings and information currently available to Plaintiff. The information is true and correct to the best of Plaintiff's knowledge, as of this date, and is subject to correction, and supplementation for any inadvertent errors, mistakes, or omissions.

10.    Plaintiff objects to each of the Interrogatories to the extent that they are intended to harass and annoy Plaintiff.

11.    Plaintiff objects to each of the Interrogatories to the extent that they seek to violate third-party copyright protections and license agreements, and likewise seek private information and/or things protected by individual privacy rights as set forth in Art. 1, Sec. 1 of the California Constitution.

The preliminary statement and all general objections are hereby incorporated into each of the following Responses.

## RESPONSES TO DEFENDANT'S INTERROGATORIES

**Interrogatory No. 13:**

Describe and identify by case number and venue any and all lawsuits that YOU have filed in the 10 years before filing this lawsuit.

**Response to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, vague, and ambiguous as 10 years is not properly narrowed in scope. Plaintiff objects that this request is compound. Plaintiff objects to this request as it seeks

information that is disproportionate to the needs of the case as defined by Rule 26(b)(1) and further fails to seek information that is relevant to the subject matter of the action. Therefore, Defendant seeks to expand discovery beyond what is proportional to the needs of this case and the burden to Plaintiff of the proposed discovery outweighs its likely benefit. This request also seeks information that is equally available to Defendant.

Subject to and without waiving said objections, Plaintiff responds as follows: Plaintiff does not remember the case number and venue of any and all lawsuits in the 10 years before filing this lawsuit. Listed below are the case numbers and venues of the lawsuits before filing this lawsuit he was able to locate after a diligent search:

| | |
|---|---|
| 1:15-cv-00122 | N.D. Ill. |
| 1:15-cv-03611 | N.D. Ill. |
| 1:15-cv-00718 | N.D. Ill. |
| 5:15-cv-00846-JGB-DTB | C.D. CA |
| 5:16-cv-00498-CAS-DTB | C.D. CA |
| 5:17-cv-01775-JGB-SHK | C.D. CA |
| 3:17-cv-00819-DMS-JLB | S.D. CA |
| 8:17-cv-00801-DOC-JCG | C.D. CA |
| 8:17-cv-00848-AG-DFM | C.D. CA |
| 8:17-cv-00854-JVS-JCG | C.D. CA |
| 5:17-cv-00958-CAS-SP | C.D. CA |
| 5:17-cv-00954-SVW-KK | C.D. CA |
| 3:17-cv-01078-BAS-JLB | S.D. CA |
| 5:17-cv-01184-BRO-KK | C.D. CA |
| 5:17-cv-01207-DSF-KK | C.D. CA |
| 5:17-cv-01259-JFW-FFM | C.D. CA |
| 5:17-cv-01316-PA-SP | C.D. CA |
| 5:17-cv-01411-JGB-KK | C.D. CA |
| 5:17-cv-01425-JGB-SP | C.D. CA |
| 8:17-cv-01280-JLS-JCG | C.D. CA |
| 5:17-cv-01502-PSG-MRW | C.D. CA |
| 8:17-cv-01357-AG-JCG | C.D. CA |
| 8:17-cv-01355-JLS-KES | C.D. CA |
| 8:17-cv-01372-JLS-KES | C.D. CA |
| 3:17-cv-01645-BAS-BLM | S.D. CA |
| 8:17-cv-01407-JLS-JCG | C.D. CA |
| 8:17-cv-01498-JLS-DFM | C.D. CA |
| 8:17-cv-01497-CJC-JCG | C.D. CA |
| 5:17-cv-01888-GW-SHK | C.D. CA |
| 5:17-cv-01919-R-KK | C.D. CA |
| 5:17-cv-01942-PSG-SK | C.D. CA |
| 5:17-cv-01954-ODW-JPR | C.D. CA |
| 8:17-cv-01708-DFM | C.D. CA |

| | |
|---|---|
| 8:17-cv-01707-DOC-JCG | C.D. CA |
| 8:17-cv-01706-JVS-KES | C.D. CA |
| 5:17-cv-01999-JGB-SP | C.D. CA |
| 5:17-cv-01993-JGB-SHK | C.D. CA |
| 5:17-cv-01992-FMO-SHK | C.D. CA |
| 8:17-cv-01958-JLS-JDE | C.D. CA |
| 2:17-cv-08502-PA-AFM | C.D. CA |
| 8:17-cv-02049-CJC-KES | C.D. CA |
| 5:17-cv-02367-FMO-SP | C.D. CA |
| 5:17-cv-02384-RGK-SHK | C.D. CA |
| 8:17-cv-02065-JVS-E | C.D. CA |
| 5:17-cv-02383-R-SHK | C.D. CA |
| 5:17-cv-02382-RGK-KK | C.D. CA |
| 5:17-cv-02423-RGK-SHK | C.D. CA |
| 8:17-cv-02105-CJC-KES | C.D. CA |
| 5:17-cv-02417-VAP-SHK | C.D. CA |
| 5:18-cv-00007-JGB-SP | C.D. CA |
| 5:18-cv-00037-JGB-KK | C.D. CA |
| 5:18-cv-00167-JGB-SP | C.D. CA |
| 5:18-cv-00166-GW-SP | C.D. CA |
| 5:18-cv-00165-RGK-SHK | C.D. CA |
| 8:18-cv-00140-CJC-SK | C.D. CA |
| 8:18-cv-00139-AG-PLA | C.D. CA |
| 8:18-cv-00169-DOC-GJS | C.D. CA |
| 5:18-cv-00215-DOC-KK | C.D. CA |
| 5:18-cv-00214-DMG-SP | C.D. CA |
| 5:18-cv-00212-DSF-SP | C.D. CA |
| 5:18-cv-00211-JFW-SHK | C.D. CA |
| 5:18-cv-00239-JGB-KK | C.D. CA |
| 5:18-cv-00231-JGB-KK | C.D. CA |
| 8:18-cv-00234-CJC-DFM | C.D. CA |
| 5:18-cv-00317-JGB-SHK | C.D. CA |
| 5:18-cv-00314-JAK-SP | C.D. CA |
| 5:18-cv-00355-FMO-KK | C.D. CA |
| 5:18-cv-00388-DMG-KK | C.D. CA |

Dated: September 10, 2018        MANNING LAW, APC

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.

Exhibit "M"

| | | |
|---|---|---|
| James Rutherford v. Quality Inn; Fairway Nest; Does 1/28/2019 5: 19cv155 Real (Riverside) | Americans with Disabilities Act. Defendants' curb ramp at the accessible parking spaces serving the main entrance projects into the access aisle. | Joseph Manning Jr. |
| James Rutherford v. Budget Inn; Image Hospitality Group Inc.; Does 1/28/2019 5: 19cv157 Wright (Riverside) | Americans with Disabilities Act. Defendants' curb ramp at the accessible parking spaces serving the main entrance projects into the access aisle. | Joseph Manning Jr. |
| James Rutherford v. Corona HIlls Marketplace LP; Kiki Japanese Restaurant; Does 1/28/2019 5: 19cv158 Gutierrez (Riverside) | Americans with Disabilities Act. The slope of defendants' curb ramp flares at the curb ramp connecting the accessible parking spaces to the accessible route exceeds 10%. | Joseph Manning Jr. |
| James Rutherford v. La Mexicana Taqueria; Windtree LP; Does 1/28/2019 5: 19cv159 (Riverside) | Americans with Disabilities Act. The slope of defendants' curb ramp flares at the curb ramp connecting the accessible parking spaces to the accessible route exceeds 10%. | Joseph Manning Jr. |
| James Rutherford v. La Placita Party Time; Abseud Halum; Does 1/28/2019 5: 19cv162 Fitzgerald (Riverside) | Americans with Disabilities Act. Defendants' curb ramp at the accessible parking spaces serving the main entrance projects into the access aisle | Joseph Manning Jr. |
| James Rutherford v. Relax Zone Massage; Winchester Place LLC; Does 1/28/2019 5: 19cv164 (Riverside) | Americans with Disabilities Act. Defendants' premises lacks compliant accessible or van accessible parking signage. | Joseph Manning Jr. |
| James Rutherford v. RR San Dimas LLC; Does 1/28/2019 5: 19cv165 Snyder (Riverside) | Americans with Disabilities Act. Defendant's Red Roof Inn lacks compliant accessible or van accessible parking signage. | Joseph Manning Jr. |
| James Rutherford v. MSM Burger Corp,; Timothy A. Devine and Donna S. Devine, as Trustee of The T. and D. Revocable Trust Dated September 3, 1993; Does 1/27/2019 8: 19cv156 Guilford (Santa Ana) | Americans With Disabilities Act. Defendants' property does not comply with the minimum requirements of the ADA and is therefore not equally accessible to plaintiff or similarly situated persons with mobility disabilities. | Joseph Richard Manning Jr. Manning Law Apc |

| | | |
|---|---|---|
| James Rutherford v. Red Lobster Hospitality LLC, a Delaware limited liability company; Rainbow Investment Co.; Does 1/27/2019 3: 19cv182 Bashant | ADA. No wheelchair access was provided at defendants' Red Lobster restaurant in La Mesa, California. | Joseph Manning Jr. |
| James Rutherford v. Scrubmart of San Diego Inc.; George Galanoudes, as trustee of the Galanoudes Family Trust dated 8/1/12; Does 1/27/2019 3: 19cv183 Lorenz | ADA. Defendants' Scrubmart establishment in La Mesa, California, failed to provide access to disabled individuals, including plaintiff. | Joseph Manning Jr. |
| James Rutherford v. Denny's #6488; Donna J. Murill, sole trustee of the Murrill Living Trust dated July 12, 2010; Does 1/27/2019 3: 19cv184 Sabraw | ADA. Disabled plaintiff was denied access to defendants' Denny's restaurant in La Mesa, California. | Joseph Manning Jr. |
| James Rutherford v. Grand Pacific Resorts Inc.; Does 1/24/2019 37-2019-4599-CU-CR-CTL Bacal | ADA. Defendant's online hotel reservation service is not accessible to plaintiff and other mobility-impaired individuals. | Joseph Manning Jr. |
| James Rutherford v. Bandy Canyon Ranch Corp.; Does 1/24/2019 37-2019-4597-CU-CR-CTL Strauss | ADA. Defendant's online hotel reservation service is not accessible to plaintiff and other mobility-impaired individuals. | Joseph Manning Jr. |
| James Rutherford v. Inn by the Sea La Jolla; Does 1/24/2019 37-2019-4611-CU-CR-CTL Styn | ADA. Defendant's online hotel reservation service is not accessible to plaintiff and other mobility-impaired individuals. | Joseph Manning Jr. |

Exhibit "N"

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
Craig G. Côté, Esq. (State Bar No. 132885)
Osman M. Taher, Esq. (State Bar No. 272441)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/24/2019** at 09:58:05 PM

Clerk of the Superior Court
By Marc David,Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

|  |  |
|---|---|
| JAMES RUTHERFORD, an individual;<br><br>      Plaintiff,<br><br>vs.<br><br>GRAND PACIFIC RESORTS, INC., a California corporation; and DOES 1 to 50, inclusive,<br><br>      Defendants. | Case No.:  37-2019-00004599-CU-CR-CTL<br><br>**COMPLAINT** |

Plaintiff JAMES RUTHERFORD, an individual, ("Plaintiff"), brings this action against GRAND PACIFIC RESORTS, INC., a California corporation ("Defendant"), and DOES 1 to 50:

## INTRODUCTION

1.      Plaintiff is mobility impaired and requires information about the accessibility of hotels and hotel rooms to make reservations.  Defendant maintains its reservations service, including but not limited to that offered to the public on its website (hereinafter the "Website" which shall refer to carlsbadinn.com and any other website operated by, controlled by, or acting at the direction

of Defendant directly, or through contractual, licensing, or other arrangements, for the purposes described herein), in such a way that it contains access barriers preventing Plaintiff, and other mobility-impaired individuals, from gaining full and equal access to the reservations service offered by Defendant. Defendant's denial of full and equal access to its reservations service, and therefore its products and services offered thereby, is a violation of the rights of Plaintiff under the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, ("Unruh Act").

2.   The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible.

3.   Each of Defendant's violations of Title III of Americans With Disabilities Act, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) et seq. ("ADA") is likewise a violation of the Unruh Act. Indeed, the Unruh Act provides that any violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f) (the ADA and UCRA are referred to herein collectively as "Disability Access Laws").

4.   For more than 28 years, the ADA and the Unruh Act have required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

5.   However, the hospitality industry has been slow to respond, or has failed to respond, to the needs of disabled travelers. *See e.g.* Consent Decree in *United States of America v. Hilton Worldwide Inc., No. 10 1924* (entered November 29, 2010)(Resolving Complaint by the United States alleging in part that Hilton systemically, and across its various brands, "fails to provide individuals with disabilities the same opportunity to reserve accessible guestrooms using its on-line … reservations systems" and "failed to provide accurate, reliable information about its accessible sleeping rooms and amenities throughout its reservations system" and that "individuals with disabilities are unable to reserve, on-line, accessible sleeping accommodations with either a tub or a

roll-in shower"); Settlement Agreement *United States of America and Motel 6 Operating L.P., DJ# 202-73-5*(entered August 12, 2004 and extended January 19, 2006)(Resolving allegations the Motel 6 online reservation system was inadequate and securing in part the agreement of Motel 6 that it would, for its internet reservation systems, "provide service to individuals who request accessible rooms that is equivalent to that provided to individuals who seek to reserve standard rooms.").

6.     Eventually, in response to many complaints received by the Department of Justice, Civil Rights Division ("DOJ"), typically by individuals who reserved an accessible hotel room only to discover upon arrival that the room they reserved is not accessible, the DOJ took action, issuing its Notice of Proposed Rulemaking, 73 FR 34508 (June 17, 2008)("NPRM").

7.     After a notice and comment period, with input primarily from individuals with disabilities, hotels, resort developers, travel agencies and organizations commenting on their behalf, the DOJ published Section 36.302(e) with detailed requirements for hotel reservations services. In short, the DOJ required that hotels must make reasonable modifications to reservations policies, practices, or procedures when necessary to ensure that individuals with disabilities can make reservations for accessible guest rooms during *the same hours and in the same manner* as individuals who do not need accessible rooms and that they must identify and describe *accessible features in the hotels and guest rooms* offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently whether a given hotel or guest room* meets *his or her accessibility needs.* 28 CFR § 36.302(e)(1)(i)-(ii)(*emphasis added*).

8.     The Final Rule on Nondiscrimination on the Basis of Disability by Public Accommodations, including the hotel reservations requirements above, was published on September 15, 2010 in the Federal Register. While the Final Rule generally took immediate effect, the hotel reservations component did not. The DOJ observed: "As with hotels, the Department believes that within the 18-month transition period these reservations services should be able to modify their systems to ensure that potential guests with disabilities who need accessible rooms can make reservations during the same hours and in the same manner as those who do not need accessible rooms." Accordingly, to accommodate the needs of industry, the hotel reservations requirements of 28 CFR § 36.302(e)(1) did not become effective until after an 18-month transition period, or until

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

1 March 15, 2012. 28 CFR § 36.302(e)(3).

2     9.     The ADA's hotel reservations requirements were six years old on March 15, 2018.

3 Yet, the problem the DOJ sought to address through its reservations regulations is as bad as ever. So

4 bad, that in 2017 the private start-up company AbiliTrek launched. AbiliTrek describes its mission

5 as follows:

> "AbiliTrek, like many other companies, began as an innovative idea; AbiliTrek is geared
> toward bettering the travel experience for people with disabilities. **Currently, the travel
> industry lacks the information needed for travelers with disabilities. This makes
> traveling a daunting and exhausting task for many in the disability community**.
> AbiliTrek was created as a fundamental resource for any traveler with a disability.
> **AbiliTrek's goal is to counteract the current state of the travel industry** and make
> traveling with a disability a fulfilling experience" AbiliTrek Updates posted December 31,
> 2017. https://abilitrek.com/wrapping-up-2017-our-end-of-year-review-package/. (Emphasis
> added).

12     10.    Defendant is part of the problem addressed by the hotel reservations provisions of the

13 ADA and private firms like AbiliTrek.

14     11.    As a result of Defendant's violations of law, and to correct them, Plaintiff seeks

15 statutory damages where available, declaratory relief and injunctive relief establishing that

16 Defendant has engaged in violations of the ADA and the Unruh Act and requiring Defendant to

17 comply with the Unruh Act by providing individuals with disabilities the ability to independently

18 make reservations for accessible guest rooms in the same manner as individuals who do not need

19 accessible rooms including the identification and description of the accessible features in the

20 Defendant's hotel and the guest rooms offered through Defendant's service sufficient to ensure that

21 individuals with disabilities receive the information they need to benefit from the services offered by

22 Defendant.

## JURISDICTION AND VENUE

24     12.    This Court has subject matter jurisdiction over this action. This Court has personal

25 jurisdiction over Defendant because it conducted and continues to conduct substantial business and

26 Plaintiff's claims arose in the State of California and Defendant's offending website is available

27 throughout California. The access barriers described in this Complaint were experienced by Plaintiff

28 on his computer when he attempted to conduct a business transaction with Defendant and was then

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

denied equal access to the reservations service offered through Defendant's Website.

13.　Venue is proper in this Court because Defendant conducts substantial business in this County. Venue is also proper because a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

14.　Plaintiff JAMES RUTHERFORD is a Riverside County, California resident. Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects. As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate. At the time of Plaintiff's attempt to make room reservations at Defendant's hotel and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq..

15.　As a result of Plaintiff's disability he requires an accessible room to utilize the goods, services and facilities provided by Defendant.

16.　Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's good and services. Plaintiff is being deterred from patronizing the Defendant's hotel on particular occasions, but intends to return to the Website for the dual purpose of availing himself of the goods and services offered to the public and to ensure that Defendant ceases evading its responsibilities under federal and state law.

17.　Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is a California corporation with its Carlsbad Inn Beach Resort (the "Subject Property" and/or the "Hotel") located in Carlsbad, California. Defendant's hotel location constitutes a place of public accommodation. Defendant's location provides to the public important goods and/or services. Defendant also provides to the public the Website. The Website provides access to the array of services, including descriptions of its hotel, rooms and services, the ability to make room reservations, and many other benefits related to these facilities and services. The hotel location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) and is

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

likewise a "business establishment" within the meaning of the Unruh Act. The Website is a service, privilege, and advantage of Defendant's hotel locations and services. The Website is a service that is by and integrated with this location.

## FACTUAL ALLEGATIONS

18. As part of its operations, Defendant provides the public access to reservations services, including but not limited to the ability to make reservations online at the Website.

19. Within the applicable limitations period, on or about December 8, 2018, Plaintiff visited the Website, to view the accessible features in the hotel and guest rooms of the Defendant's hotel.

20. Plaintiff desired to visit a hotel in the San Diego County area, which he planned to visit on February 4, 2019 through February 6, 2019. As a result of his disabilities, Plaintiff required information about the features of the accessible rooms and the hotel to independently make a reservation. The information required by Plaintiff was unavailable so Plaintiff could not make a reservation for an accessible room or suite using the Website in the same manner as individuals who do not need accessible rooms.

21. Plaintiff was unable to independently identify the material accessible features of the hotel and guest rooms of the Subject Property owned and operated by Defendant. The description of the accessible rooms and features of the Subject Property is substantially limited to the following vague, ambiguous, cursory and inadequate (for Plaintiff's purposes) information:

    a. On the homepage of www.carlsbadinn.com, there is a general description of the Hotel's location and features; however, none of the information provided relates to accessibility as required by Disability Access Laws.

    b. There is a link labeled "Accommodations" which offers photos, a description, and a "Check Availability" link for each of the Hotel's four room options; however, none of the information provided relates to accessibility as required by Disability Access Laws.

    c. There is a link labeled "Amenities" which offers a list of the Hotel's various amenities; however, none of the information provided relates to accessibility as

required by Disability Access Laws.

d.  There is a link labeled "FAQs" which offers a list of the Hotel's frequently asked questions. One of the questions listed is "Do you have ADA rooms?" and provides the following response: "Yes, please contact the front desk for more information at cbireservations@gpresorts.com or (760) 434-7020;" however, this is inaccessible as it requires Plaintiff to contact the Hotel in order to obtain the information necessary to determine whether the Subject Property will meet his accessibility needs.

e.  Remaining links from the homepage do not contain information regarding accessibility as required by Disability Access Laws.

f.  When attempting to make a reservation, Plaintiff encountered a section labeled "Features" which provides the following description: "Disabled Access Rooms;" however, the information provided lacks specificity and does not provide sufficient detail for Plaintiff to determine whether the Subject Property will meet her accessibility needs.

g.  The Website, including the reservations aspect, does not indicate with any degree of detail whether the Subject Property offers accessible features, including but not limited to parking and/or accessible pathways to the accessible entrance(s), or accessible pathways to resort amenities.

h.  The Website does not permit reservation of accessible rooms in the same manner as other rooms including the identification of accessible features of rooms and of the Subject Property in enough detail to reasonably permit Plaintiff to assess independently whether a given hotel or guest room meets their accessibility needs.

22.  An investigation performed on Plaintiff's behalf confirmed the allegations made by Plaintiff above.

23.  On information and belief, Plaintiff also alleges Defendant currently has no policy to ensure that:

a.  Accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the

only remaining room of that type;

    b.   Accessible guest rooms or specific types of guest rooms may be reserved on request and ensuring that the guest rooms requested are blocked and removed from all reservations systems;

    c.   The specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others; and

    d.   The Subject Property provides the statutorily required minimum number of accessible rooms and accessible room types and that the accessible rooms available, if any, are distributed among the types of rooms available at the Subject Property so as to provide equal access to the Subject Property by persons with disabilities.

    24.    Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to make reasonable modifications to its reservations policies practices and procedures applicable to its reservations service offered online on the Website so as to allow individuals with disabilities the ability to make reservations for accessible guest rooms in the same manner as individuals who do not need accessible rooms including the identification and description of the accessible features in the Defendant's hotel and the guest rooms sufficient to ensure that individuals with disabilities receive the information they need to benefit from the services offered by Defendant.

    25.    Given the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that there are other violations of 28 CFR § 36.302(e), the ADA and the Unruh Act, that relate to Plaintiff's disabilities. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, after discovery. However, Defendant is hereby on notice that Plaintiff seeks to have all barriers related to their disabilities remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008).

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* (Injunctive Relief and Damages on Behalf of Plaintiff)**

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

**(By Plaintiff Against All Defendants)**

26.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

27.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

28.     The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

29.     Defendant through the Subject Property provides lodging to the general public in California is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the Unruh Act, California Civil Code §§ 51, et seq.

30.     The Unruh Act provides, inter alia, that a violation of the ADA, 42 U.S.C. §§ 12101, et seq., also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

31.     Defendant's discriminatory conduct alleged herein includes, inter alia, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

32.     The actions of Defendant were and are in violation of the Unruh Act, California Civil Code §§ 51, et seq. Plaintiff is aware of Defendant's unlawful actions, and this knowledge of discrimination has deterred Plaintiff from attempting to access and use Defendant's reservations service and hotel on several occasions. Therefore, Plaintiff is entitled to injunctive relief remedying the discrimination pursuant to California Civil Code § 52. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

33.     Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense in violation of the Unruh Act. Cal. Civ. Code § 52(a), and so Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION

### (Declaratory Relief on Behalf of Plaintiff)

34.    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

35.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to provide a reservations service through the Website that allows persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and to independently reserve accessible rooms in the hotel Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

36.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to comply in all respects with 28 CFR § 36.302(e)(1) et seq. Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

37.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly and so Plaintiff requests relief as set forth below.

### PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1.    A preliminary and permanent injunction enjoining Defendant from further violations of the Unruh Act, Civil Code § 51 *et seq.* requiring Defendant to take the steps necessary to ensure that Defendant's maintain and implement policies and procedures:

    a.    Allow persons with mobility impairments to independently identify accessible features of Defendant's hotel;

    b.    Allow persons with mobility impairments to independently reserve accessible

4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660

rooms in the hotel;

    c.  Hold reserved accessible rooms for use by persons with mobility impairments;

    d.  Block and remove reserved accessible rooms from all reservations systems;

    e.  Guarantee that the specific accessible guest room reserved is held for that reserving customer, regardless of whether a specific room is held in response to reservations made by others; and

    f.  Guarantee the Subject Property includes at least the minimum statutorily required number of accessible rooms and accessible room types and that those rooms are distributed throughout the Subject Property in compliance with applicable laws.

    g.  If any of the preceding conditions are not implemented within 120 days of service of the Summons and Complaint, Defendant shall cease accepting any and all reservations via the Website that are processed in an unlawful and discriminatory manner, including those that violate 28 CFR § 36.302 (e), until Defendant can show that its reservations service has been brought into compliance with applicable laws.

**Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disable Persons Act;**

2.    A declaration that since March 15, 2012, Defendant discriminated against persons with mobility impairments by failing to ensure that Defendant's reservations service offered through the Website allowed persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and independently reserve accessible rooms in the hotel, and that Defendant did not comply with the requirements of 28 CFR § 36.302(e)(1) et seq. in violation of Title III of the ADA, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) et seq., and California's Unruh Act, California Civil Code §§ 51-52.;

3.    Statutory damages pursuant to California Civil Code § 52(a), for each and every violation of law.

4.    For attorneys' fees and expenses pursuant to all applicable laws including, without

limitation, Civil Code § 52(a);

5.    An order awarding Plaintiff's post-judgment interest; and

6.    For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: January 24, 2019

**MANNING LAW, APC**

By: _____
Joseph R. Manning Jr., Esq.
Michael J. Manning, Esq.
Tristan P. Jankowski, Esq.
Craig G. Côté, Esq.
Osman M. Taher, Esq.
Attorneys for Plaintiff

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit "O"

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
Craig G. Côté, Esq. (State Bar No. 132885)
Osman M. Taher, Esq. (State Bar No. 272441)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**01/24/2019** at 09:52:41 PM
Clerk of the Superior Court
By Marc David,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

JAMES RUTHERFORD, an individual;

       Plaintiff,

vs.

BANDY CANYON RANCH CORP, a
California corporation; and DOES 1 to 50,
inclusive,

       Defendants.

Case No.: 37-2019-00004597-CU-CR-CTL

**COMPLAINT**

Plaintiff JAMES RUTHERFORD, an individual, ("Plaintiff"), brings this action against BANDY CANYON RANCH CORP, a California corporation ("Defendant"), and DOES 1 to 50:

## INTRODUCTION

1.     Plaintiff is mobility impaired and requires information about the accessibility of hotels and hotel rooms to make reservations. Defendant maintains its reservations service, including but not limited to that offered to the public on its website (hereinafter the "Website" which shall refer to bandycanyon.com and any other website operated by, controlled by, or acting at the

4667 MacArthur Blvd., Ste 150
Newport Beach, CA 92660

**COMPLAINT**
1

direction of Defendant directly, or through contractual, licensing, or other arrangements, for the purposes described herein), in such a way that it contains access barriers preventing Plaintiff, and other mobility-impaired individuals, from gaining full and equal access to the reservations service offered by Defendant. Defendant's denial of full and equal access to its reservations service, and therefore its products and services offered thereby, is a violation of the rights of Plaintiff under the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, ("Unruh Act").

2.     The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible.

3.     Each of Defendant's violations of Title III of Americans With Disabilities Act, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) et seq. ("ADA") is likewise a violation of the Unruh Act. Indeed, the Unruh Act provides that any violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f) (the ADA and UCRA are referred to herein collectively as "Disability Access Laws").

4.     For more than 28 years, the ADA and the Unruh Act have required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

5.     However, the hospitality industry has been slow to respond, or has failed to respond, to the needs of disabled travelers. *See e.g.* Consent Decree in *United States of America v. Hilton Worldwide Inc., No. 10 1924* (entered November 29, 2010)(Resolving Complaint by the United States alleging in part that Hilton systemically, and across its various brands, "fails to provide individuals with disabilities the same opportunity to reserve accessible guestrooms using its on-line … reservations systems" and "failed to provide accurate, reliable information about its accessible sleeping rooms and amenities throughout its reservations system" and that "individuals with disabilities are unable to reserve, on-line, accessible sleeping accommodations with either a tub or a

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

roll-in shower"); Settlement Agreement *United States of America and Motel 6 Operating L.P., DJ#* *202-73-5*(entered August 12, 2004 and extended January 19, 2006)(Resolving allegations the Motel 6 online reservation system was inadequate and securing in part the agreement of Motel 6 that it would, for its internet reservation systems, "provide service to individuals who request accessible rooms that is equivalent to that provided to individuals who seek to reserve standard rooms.").

6.     Eventually, in response to many complaints received by the Department of Justice, Civil Rights Division ("DOJ"), typically by individuals who reserved an accessible hotel room only to discover upon arrival that the room they reserved is not accessible, the DOJ took action, issuing its Notice of Proposed Rulemaking, 73 FR 34508 (June 17, 2008)("NPRM").

7.     After a notice and comment period, with input primarily from individuals with disabilities, hotels, resort developers, travel agencies and organizations commenting on their behalf, the DOJ published Section 36.302(e) with detailed requirements for hotel reservations services.  In short, the DOJ required that hotels must make reasonable modifications to reservations policies, practices, or procedures when necessary to ensure that individuals with disabilities can make reservations for accessible guest rooms during *the same hours and in the same manner* as individuals who do not need accessible rooms and that they must identify and describe *accessible features in the hotels and guest rooms* offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently whether a given hotel or guest room* meets *his or her accessibility needs.*  28 CFR § 36.302(e)(1)(i)-(ii)(*emphasis added*).

8.     The Final Rule on Nondiscrimination on the Basis of Disability by Public Accommodations, including the hotel reservations requirements above, was published on September 15, 2010 in the Federal Register.  While the Final Rule generally took immediate effect, the hotel reservations component did not.  The DOJ observed: "As with hotels, the Department believes that within the 18-month transition period these reservations services should be able to modify their systems to ensure that potential guests with disabilities who need accessible rooms can make reservations during the same hours and in the same manner as those who do not need accessible rooms."  Accordingly, to accommodate the needs of industry, the hotel reservations requirements of 28 CFR § 36.302(e)(1) did not become effective until after an 18-month transition period, or until

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

March 15, 2012. 28 CFR § 36.302(e)(3).

9.     The ADA's hotel reservations requirements were six years old on March 15, 2018. Yet, the problem the DOJ sought to address through its reservations regulations is as bad as ever. So bad, that in 2017 the private start-up company AbiliTrek launched. AbiliTrek describes its mission as follows:

> "AbiliTrek, like many other companies, began as an innovative idea; AbiliTrek is geared toward bettering the travel experience for people with disabilities. **Currently, the travel industry lacks the information needed for travelers with disabilities. This makes traveling a daunting and exhausting task for many in the disability community**. AbiliTrek was created as a fundamental resource for any traveler with a disability. **AbiliTrek's goal is to counteract the current state of the travel industry** and make traveling with a disability a fulfilling experience" AbiliTrek Updates posted December 31, 2017. https://abilitrek.com/wrapping-up-2017-our-end-of-year-review-package/. (Emphasis added).

10.     Defendant is part of the problem addressed by the hotel reservations provisions of the ADA and private firms like AbiliTrek.

11.     As a result of Defendant's violations of law, and to correct them, Plaintiff seeks statutory damages where available, declaratory relief and injunctive relief establishing that Defendant has engaged in violations of the ADA and the Unruh Act and requiring Defendant to comply with the Unruh Act by providing individuals with disabilities the ability to independently make reservations for accessible guest rooms in the same manner as individuals who do not need accessible rooms including the identification and description of the accessible features in the Defendant's hotel and the guest rooms offered through Defendant's service sufficient to ensure that individuals with disabilities receive the information they need to benefit from the services offered by Defendant.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action. This Court has personal jurisdiction over Defendant because it conducted and continues to conduct substantial business and Plaintiff's claims arose in the State of California and Defendant's offending website is available throughout California. The access barriers described in this Complaint were experienced by Plaintiff on his computer when he attempted to conduct a business transaction with Defendant and was then

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

denied equal access to the reservations service offered through Defendant's Website.

13.     Venue is proper in this Court because Defendant conducts substantial business in this County. Venue is also proper because a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

14.     Plaintiff JAMES RUTHERFORD is a Riverside County, California resident. Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects. As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate. At the time of Plaintiff's attempt to make room reservations at Defendant's hotel and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq..

15.     As a result of Plaintiff's disability he requires an accessible room to utilize the goods, services and facilities provided by Defendant.

16.     Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's good and services. Plaintiff is being deterred from patronizing the Defendant's hotel on particular occasions, but intends to return to the Website for the dual purpose of availing himself of the goods and services offered to the public and to ensure that Defendant ceases evading its responsibilities under federal and state law.

17.     Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is a California corporation with its The Ranch at Bandy Canyon (the "Subject Property" and/or the "Hotel") located in Escondido, California. Defendant's hotel location constitutes a place of public accommodation. Defendant's location provides to the public important goods and/or services. Defendant also provides to the public the Website. The Website provides access to the array of services, including descriptions of its hotel, rooms and services, the ability to make room reservations, and many other benefits related to these facilities and services. The hotel location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) and is

likewise a "business establishment" within the meaning of the Unruh Act. The Website is a service, privilege, and advantage of Defendant's hotel locations and services. The Website is a service that is by and integrated with this location.

## FACTUAL ALLEGATIONS

18.     As part of its operations, Defendant provides the public access to reservations services, including but not limited to the ability to make reservations online at the Website.

19.     Within the applicable limitations period, on or about December 8, 2018, Plaintiff visited the Website, to view the accessible features in the hotel and guest rooms of the Defendant's hotel.

20.     Plaintiff desired to visit a hotel in the San Diego area, which he planned to visit on January 14, 2019 through January 16, 2019. As a result of his disabilities, Plaintiff required information about the features of the accessible rooms and the hotel to independently make a reservation. The information required by Plaintiff was unavailable so Plaintiff could not make a reservation for an accessible room or suite using the Website in the same manner as individuals who do not need accessible rooms.

21.     Plaintiff was unable to independently identify the material accessible features of the hotel and guest rooms of the Subject Property owned and operated by Defendant. The description of the accessible rooms and features of the Subject Property is substantially limited to the following vague, ambiguous, cursory and inadequate (for Plaintiff's purposes) information:

   a.   On the homepage of www.bandycanyon.com, there is a general description of the Hotel's location and features; however, none of the information provided relates to accessibility as required by Disability Access Laws.

   b.   There is a link labeled "Cabins" which offers photos, a description, and a "Book here!" link for each of the Hotel's 15 cabin options; however, none of the information provided relates to accessibility as required by Disability Access Laws.

   c.   There is a link labeled "Amenities" which offers a list of the Hotel's various amenities; however, none of the information provided relates to accessibility as required by Disability Access Laws.

4667 MacARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

d.   Remaining links from the homepage do not contain information regarding accessibility as required by Disability Access Laws.

e.   When attempting to make a reservation, Plaintiff was unable to book a room because he was unable to find any information or room option pertaining to accessibility as required by Disability Access Laws.

f.   The Website, including the reservations aspect, does not indicate with any degree of detail whether the Subject Property offers accessible features, including but not limited to parking and/or accessible pathways to the accessible entrance(s), or accessible pathways to resort amenities.

g.   The Website does not permit reservation of accessible rooms in the same manner as other rooms including the identification of accessible features of rooms and of the Subject Property in enough detail to reasonably permit Plaintiff to assess independently whether a given hotel or guest room meets their accessibility needs.

22.   An investigation performed on Plaintiff's behalf confirmed the allegations made by Plaintiff above.

23.   On information and belief, Plaintiff also alleges Defendant currently has no policy to ensure that:

a.   Accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

b.   Accessible guest rooms or specific types of guest rooms may be reserved on request and ensuring that the guest rooms requested are blocked and removed from all reservations systems;

c.   The specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others; and

d.   The Subject Property provides the statutorily required minimum number of accessible rooms and accessible room types and that the accessible rooms available, if any, are

distributed among the types of rooms available at the Subject Property so as to provide equal access to the Subject Property by persons with disabilities.

24. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to make reasonable modifications to its reservations policies practices and procedures applicable to its reservations service offered online on the Website so as to allow individuals with disabilities the ability to make reservations for accessible guest rooms in the same manner as individuals who do not need accessible rooms including the identification and description of the accessible features in the Defendant's hotel and the guest rooms sufficient to ensure that individuals with disabilities receive the information they need to benefit from the services offered by Defendant.

25. Given the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that there are other violations of 28 CFR § 36.302(e), the ADA and the Unruh Act, that relate to Plaintiff's disabilities. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, after discovery. However, Defendant is hereby on notice that Plaintiff seeks to have all barriers related to their disabilities remedied. See *Doran v. 7-11,* 524 F.3d 1034 (9th Cir. 2008).

## FIRST CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* (Injunctive Relief and Damages on Behalf of Plaintiff)

### (By Plaintiff Against All Defendants)

26. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

27. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

28. The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

29. Defendant through the Subject Property provides lodging to the general public in California is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the Unruh Act, California Civil Code §§ 51, et seq.

30. The Unruh Act provides, inter alia, that a violation of the ADA, 42 U.S.C. §§ 12101, et seq., also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

31. Defendant's discriminatory conduct alleged herein includes, inter alia, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

32. The actions of Defendant were and are in violation of the Unruh Act, California Civil Code §§ 51, et seq. Plaintiff is aware of Defendant's unlawful actions, and this knowledge of discrimination has deterred Plaintiff from attempting to access and use Defendant's reservations service and hotel on several occasions. Therefore, Plaintiff is entitled to injunctive relief remedying the discrimination pursuant to California Civil Code § 52. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

33. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense in violation of the Unruh Act. Cal. Civ. Code § 52(a), and so Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION

### (Declaratory Relief on Behalf of Plaintiff)

34. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

35. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to provide a reservations service through the Website that allows persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and to independently

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

reserve accessible rooms in the hotel Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

36.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to comply in all respects with 28 CFR § 36.302(e)(1) et seq. Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

37.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly and so Plaintiff requests relief as set forth below.

## PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1.     A preliminary and permanent injunction enjoining Defendant from further violations of the Unruh Act, Civil Code § 51 *et seq.* requiring Defendant to take the steps necessary to ensure that Defendant's maintain and implement policies and procedures:

    a.  Allow persons with mobility impairments to independently identify accessible features of Defendant's hotel;

    b.  Allow persons with mobility impairments to independently reserve accessible rooms in the hotel;

    c.  Hold reserved accessible rooms for use by persons with mobility impairments;

    d.  Block and remove reserved accessible rooms from all reservations systems;

    e.  Guarantee that the specific accessible guest room reserved is held for that reserving customer, regardless of whether a specific room is held in response to reservations made by others; and

    f.  Guarantee the Subject Property includes at least the minimum statutorily required number of accessible rooms and accessible room types and that those rooms are distributed throughout the Subject Property in compliance with

applicable laws.

g. If any of the preceding conditions are not implemented within 120 days of service of the Summons and Complaint, Defendant shall cease accepting any and all reservations via the Website that are processed in an unlawful and discriminatory manner, including those that violate 28 CFR § 36.302 (e), until Defendant can show that its reservations service has been brought into compliance with applicable laws.

**Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disable Persons Act**;

2. A declaration that since March 15, 2012, Defendant discriminated against persons with mobility impairments by failing to ensure that Defendant's reservations service offered through the Website allowed persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and independently reserve accessible rooms in the hotel, and that Defendant did not comply with the requirements of 28 CFR § 36.302(e)(1) et seq. in violation of Title III of the ADA, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) et seq., and California's Unruh Act, California Civil Code §§ 51-52.;

3. Statutory damages pursuant to California Civil Code § 52(a), for each and every violation of law.

4. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Civil Code § 52(a);

5. An order awarding Plaintiff's post-judgment interest; and

6. For such other and further relief as this Court deems just and proper.

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: January 24, 2019

**MANNING LAW, APC**

By: _____

Joseph R. Manning Jr., Esq.
Michael J. Manning, Esq.
Tristan P. Jankowski, Esq.
Craig G. Côté, Esq.
Osman M. Taher, Esq.
Attorneys for Plaintiff

Exhibit "P"

1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   Michael J. Manning, Esq. (State Bar No. 286879)
2  Tristan P. Jankowski, Esq. (State Bar No. 290301)
   Craig G. Côté, Esq. (State Bar No. 132885)
3  Osman M. Taher, Esq. (State Bar No. 272441)
   **MANNING LAW, APC**
4  4667 MacArthur Blvd., Suite 150
   Newport Beach, CA 92660
5  Office: (949) 200-8755
   Fax: (866) 843-8308
6  ADAPracticeGroup@manninglawoffice.com

7  Attorneys for Plaintiff

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                IN AND FOR THE COUNTY OF SAN DIEGO

11  JAMES RUTHERFORD, an individual;        Case No.:  37-2019-00004611-CU-CR-CTL

12          Plaintiff,                      **COMPLAINT**

13  vs.

14

15  INN BY THE SEA LA JOLLA, a business
    of unknown form; and DOES 1 to 50,
16  inclusive,

17          Defendants.

18

19

20

21

22      Plaintiff JAMES RUTHERFORD, an individual, ("Plaintiff"), brings this action against INN

23  BY THE SEA LA JOLLA, a business of unknown form. ("Defendant"), and DOES 1 to 50:

24                          **INTRODUCTION**

25      1.      Plaintiff is mobility impaired and requires information about the accessibility of

26  hotels and hotel rooms to make reservations.  Defendant maintains its reservations service, including

27  but not limited to that offered to the public on its website (hereinafter the "Website" which shall

28  refer to www.innbytheseaatlajolla.com and any other website operated by, controlled by, or acting at

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**01/24/2019** at 10:06:16 PM
Clerk of the Superior Court
By Marc David, Deputy Clerk

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

the direction of Defendant directly, or through contractual, licensing, or other arrangements, for the purposes described herein), in such a way that it contains access barriers preventing Plaintiff, and other mobility-impaired individuals, from gaining full and equal access to the reservations service offered by Defendant. Defendant's denial of full and equal access to its reservations service, and therefore its products and services offered thereby, is a violation of the rights of Plaintiff under the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, ("Unruh Act").

2.     The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible.

3.     Each of Defendant's violations of Title III of Americans With Disabilities Act, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1)  et seq. ("ADA") is likewise a violation of the Unruh Act.  Indeed, the Unruh Act provides that any violation of the ADA constitutes a violation of the Unruh Act.  Cal. Civ. Code § 51(f) (the ADA and UCRA are referred to herein collectively as "Disability Access Laws").

4.     For more than 28 years, the ADA and the Unruh Act have required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

5.     However, the hospitality industry has been slow to respond, or has failed to respond, to the needs of disabled travelers. *See e.g.* Consent Decree in *United States of America v. Hilton Worldwide Inc., No. 10 1924* (entered November 29, 2010)(Resolving Complaint by the United States alleging in part that Hilton systemically, and across its various brands, "fails to provide individuals with disabilities the same opportunity to reserve accessible guestrooms using its on-line … reservations systems" and "failed to provide accurate, reliable information about its accessible sleeping rooms and amenities throughout its reservations system" and that "individuals with disabilities are unable to reserve, on-line, accessible sleeping accommodations with either a tub or a

4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660

roll-in shower"); Settlement Agreement *United States of America and Motel 6 Operating L.P., DJ# 202-73-5*(entered August 12, 2004 and extended January 19, 2006)(Resolving allegations the Motel 6 online reservation system was inadequate and securing in part the agreement of Motel 6 that it would, for its internet reservation systems, "provide service to individuals who request accessible rooms that is equivalent to that provided to individuals who seek to reserve standard rooms.").

6.    Eventually, in response to many complaints received by the Department of Justice, Civil Rights Division ("DOJ"), typically by individuals who reserved an accessible hotel room only to discover upon arrival that the room they reserved is not accessible, the DOJ took action, issuing its Notice of Proposed Rulemaking, 73 FR 34508 (June 17, 2008)("NPRM").

7.    After a notice and comment period, with input primarily from individuals with disabilities, hotels, resort developers, travel agencies and organizations commenting on their behalf, the DOJ published Section 36.302(e) with detailed requirements for hotel reservations services.  In short, the DOJ required that hotels must make reasonable modifications to reservations policies, practices, or procedures when necessary to ensure that individuals with disabilities can make reservations for accessible guest rooms during *the same hours and in the same manner* as individuals who do not need accessible rooms and that they must identify and describe *accessible features in the hotels and guest rooms* offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently whether a given hotel or guest room* meets *his or her accessibility needs.* 28 CFR § 36.302(e)(1)(i)-(ii)(*emphasis added*).

8.    The Final Rule on Nondiscrimination on the Basis of Disability by Public Accommodations, including the hotel reservations requirements above, was published on September 15, 2010 in the Federal Register.  While the Final Rule generally took immediate effect, the hotel reservations component did not.  The DOJ observed: "As with hotels, the Department believes that within the 18-month transition period these reservations services should be able to modify their systems to ensure that potential guests with disabilities who need accessible rooms can make reservations during the same hours and in the same manner as those who do not need accessible rooms."  Accordingly, to accommodate the needs of industry, the hotel reservations requirements of 28 CFR § 36.302(e)(1) did not become effective until after an 18-month transition period, or until

4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660

1 March 15, 2012. 28 CFR § 36.302(e)(3).

2     9.    The ADA's hotel reservations requirements were six years old on March 15, 2018.

3 Yet, the problem the DOJ sought to address through its reservations regulations is as bad as ever. So

4 bad, that in 2017 the private start-up company AbiliTrek launched. AbiliTrek describes its mission

5 as follows:

6         "AbiliTrek, like many other companies, began as an innovative idea; AbiliTrek is geared
7         toward bettering the travel experience for people with disabilities. **Currently, the travel
8         industry lacks the information needed for travelers with disabilities. This makes
        traveling a daunting and exhausting task for many in the disability community**.
9         AbiliTrek was created as a fundamental resource for any traveler with a disability.
        **AbiliTrek's goal is to counteract the current state of the travel industry** and make
10         traveling with a disability a fulfilling experience" AbiliTrek Updates posted December 31,
        2017. https://abilitrek.com/wrapping-up-2017-our-end-of-year-review-package/. (Emphasis
11         added).

12     10.    Defendant is part of the problem addressed by the hotel reservations provisions of the

13 ADA and private firms like AbiliTrek.

14     11.    As a result of Defendant's violations of law, and to correct them, Plaintiff seeks

15 statutory damages where available, declaratory relief and injunctive relief establishing that

16 Defendant has engaged in violations of the ADA and the Unruh Act and requiring Defendant to

17 comply with the Unruh Act by providing individuals with disabilities the ability to independently

18 make reservations for accessible guest rooms in the same manner as individuals who do not need

19 accessible rooms including the identification and description of the accessible features in the

20 Defendant's hotel and the guest rooms offered through Defendant's service sufficient to ensure that

21 individuals with disabilities receive the information they need to benefit from the services offered by

22 Defendant.

23 <u>**JURISDICTION AND VENUE**</u>

24     12.    This Court has subject matter jurisdiction over this action. This Court has personal

25 jurisdiction over Defendant because it conducted and continues to conduct substantial business and

26 Plaintiff's claims arose in the State of California and Defendant's offending website is available

27 throughout California. The access barriers described in this Complaint were experienced by Plaintiff

28 on his computer when he attempted to conduct a business transaction with Defendant and was then

denied equal access to the reservations service offered through Defendant's Website.

13. Venue is proper in this Court because Defendant conducts substantial business in this County. Venue is also proper because a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

14. Plaintiff JAMES RUTHERFORD is a Riverside County, California resident. Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects. As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate. At the time of Plaintiff's attempt to make room reservations at Defendant's hotel and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq..

15. As a result of Plaintiff's disability he requires an accessible room to utilize the goods, services and facilities provided by Defendant.

16. Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's good and services. Plaintiff is being deterred from patronizing the Defendant's hotel on particular occasions, but intends to return to the Website for the dual purpose of availing himself of the goods and services offered to the public and to ensure that Defendant ceases evading its responsibilities under federal and state law.

17. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is a business of unknown form with its Inn by the Sea La Jolla (the "Subject Property" and/or the "Hotel") located in La Jolla, California. Defendant's hotel location constitutes a place of public accommodation. Defendant's location provides to the public important goods and/or services. Defendant also provides to the public the Website. The Website provides access to the array of services, including descriptions of its hotel, rooms and services, the ability to make room reservations, and many other benefits related to these facilities and services. The hotel location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) and is

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

likewise a "business establishment" within the meaning of the Unruh Act. The Website is a service, privilege, and advantage of Defendant's hotel locations and services. The Website is a service that is by and integrated with this location.

## FACTUAL ALLEGATIONS

18. As part of its operations, Defendant provides the public access to reservations services, including but not limited to the ability to make reservations online at the Website.

19. Within the applicable limitations period, on or about December 8, 2018, Plaintiff visited the Website, to view the accessible features in the hotel and guest rooms of the Defendant's hotel.

20. Plaintiff desired to visit a hotel in the San Diego area, which he planned to visit on January 6, 2019 through January 8, 2019. As a result of his disabilities, Plaintiff required information about the features of the accessible rooms and the hotel to independently make a reservation. The information required by Plaintiff was unavailable so Plaintiff could not make a reservation for an accessible room or suite using the Website in the same manner as individuals who do not need accessible rooms.

21. Plaintiff was unable to independently identify the material accessible features of the hotel and guest rooms of the Subject Property owned and operated by Defendant. The description of the accessible rooms and features of the Subject Property is substantially limited to the following vague, ambiguous, cursory and inadequate (for Plaintiff's purposes) information:

    a. On the homepage of www.innbytheseaatlajolla.com, there is a general description of the Hotel's location and features; however, none of the information provided relates to accessibility as required by Disability Access Laws.

    b. There is a link labeled "Accommodations" which offers photos, a description, and a "Book Now" link for each of the Hotel's three room options. One option is labeled as "ADA-Accessible Rooms" and contains a description including some accessibility information; however, the information provided lacks specificity and is insufficient for Plaintiff to see if it meets his accessibility needs.

    c. There is a link labeled "Amenities" which lists the Hotel's various amenities;

however, none of the information provided relates to accessibility as required by Disability Access Laws.

d. There is an accessibility link that prompts Plaintiff to obtain accessibility info via contacting the Hotel instead of providing it on the Website.

e. Remaining links from the homepage do not contain information regarding accessibility as required by Disability Access Laws.

f. When attempting to make a reservation, Plaintiff was unable to book a room because he was unable to find any information or room option pertaining to accessibility as required by Disability Access Laws.

g. The Website, including the reservations aspect, does not indicate with any degree of detail whether the Subject Property offers accessible features, including but not limited to parking and/or accessible pathways to the accessible entrance(s), or accessible pathways to resort amenities.

h. The Website does not permit reservation of accessible rooms in the same manner as other rooms including the identification of accessible features of rooms and of the Subject Property in enough detail to reasonably permit Plaintiff to assess independently whether a given hotel or guest room meets their accessibility needs.

22. An investigation performed on Plaintiff's behalf confirmed the allegations made by Plaintiff above.

23. On information and belief, Plaintiff also alleges Defendant currently has no policy to ensure that:

a. Accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

b. Accessible guest rooms or specific types of guest rooms may be reserved on request and ensuring that the guest rooms requested are blocked and removed from all reservations systems;

c. The specific accessible guest room reserved through its reservations service is held

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

for the reserving customer, regardless of whether a specific room is held in response to reservations made by others; and

d.  The Subject Property provides the statutorily required minimum number of accessible rooms and accessible room types and that the accessible rooms available, if any, are distributed among the types of rooms available at the Subject Property so as to provide equal access to the Subject Property by persons with disabilities.

24.  Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to make reasonable modifications to its reservations policies practices and procedures applicable to its reservations service offered online on the Website so as to allow individuals with disabilities the ability to make reservations for accessible guest rooms in the same manner as individuals who do not need accessible rooms including the identification and description of the accessible features in the Defendant's hotel and the guest rooms sufficient to ensure that individuals with disabilities receive the information they need to benefit from the services offered by Defendant.

25.  Given the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that there are other violations of 28 CFR § 36.302(e), the ADA and the Unruh Act, that relate to Plaintiff's disabilities. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, after discovery. However, Defendant is hereby on notice that Plaintiff seeks to have all barriers related to their disabilities remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008).

# FIRST CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* (Injunctive Relief and Damages on Behalf of Plaintiff)

### (By Plaintiff Against All Defendants)

26.  Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

27.  California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities

4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

28.     The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

29.     Defendant through the Subject Property provides lodging to the general public in California is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the Unruh Act, California Civil Code §§ 51, et seq.

30.     The Unruh Act provides, inter alia, that a violation of the ADA, 42 U.S.C. §§ 12101, et seq., also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

31.     Defendant's discriminatory conduct alleged herein includes, inter alia, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

32.     The actions of Defendant were and are in violation of the Unruh Act, California Civil Code §§ 51, et seq. Plaintiff is aware of Defendant's unlawful actions, and this knowledge of discrimination has deterred Plaintiff from attempting to access and use Defendant's reservations service and hotel on several occasions. Therefore, Plaintiff is entitled to injunctive relief remedying the discrimination pursuant to California Civil Code § 52. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

33.     Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense in violation of the Unruh Act. Cal. Civ. Code § 52(a), and so Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION

### (Declaratory Relief on Behalf of Plaintiff)

34.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

35. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to provide a reservations service through the Website that allows persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and to independently reserve accessible rooms in the hotel Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

36. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that by failing to comply in all respects with 28 CFR § 36.302(e)(1) et seq. Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and California's Unruh Act, California Civil Code §§ 51-52.

37. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly and so Plaintiff requests relief as set forth below.

## **PRAYER**

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1. A preliminary and permanent injunction enjoining Defendant from further violations of the Unruh Act, Civil Code § 51 *et seq.* requiring Defendant to take the steps necessary to ensure that Defendant's maintain and implement policies and procedures:

   a. Allow persons with mobility impairments to independently identify accessible features of Defendant's hotel;

   b. Allow persons with mobility impairments to independently reserve accessible rooms in the hotel;

   c. Hold reserved accessible rooms for use by persons with mobility impairments;

   d. Block and remove reserved accessible rooms from all reservations systems;

   e. Guarantee that the specific accessible guest room reserved is held for that reserving customer, regardless of whether a specific room is held in response

to reservations made by others; and

    f.   Guarantee the Subject Property includes at least the minimum statutorily required number of accessible rooms and accessible room types and that those rooms are distributed throughout the Subject Property in compliance with applicable laws.

    g.   If any of the preceding conditions are not implemented within 120 days of service of the Summons and Complaint, Defendant shall cease accepting any and all reservations via the Website that are processed in an unlawful and discriminatory manner, including those that violate 28 CFR § 36.302 (e), until Defendant can show that its reservations service has been brought into compliance with applicable laws.

**Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disable Persons Act;**

2.    A declaration that since March 15, 2012, Defendant discriminated against persons with mobility impairments by failing to ensure that Defendant's reservations service offered through the Website allowed persons with mobility impairments to independently identify accessible features of Defendant's hotel and rooms and independently reserve accessible rooms in the hotel, and that Defendant did not comply with the requirements of 28 CFR § 36.302(e)(1) et seq. in violation of Title III of the ADA, 42 U.S.C. §§ 12181, et seq., 28 CFR § 36.302(e)(1) et seq., and California's Unruh Act, California Civil Code §§ 51-52.;

3.    Statutory damages pursuant to California Civil Code § 52(a), for each and every violation of law.

4.    For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Civil Code § 52(a);

5.    An order awarding Plaintiff's post-judgment interest; and

6.    For such other and further relief as this Court deems just and proper.

4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: January 24, 2019         **MANNING LAW, APC**

By: _____
Joseph R. Manning Jr., Esq.
Michael J. Manning, Esq.
Tristan P. Jankowski, Esq.
Craig G. Côté, Esq.
Osman M. Taher, Esq.
Attorneys for Plaintiff

Exhibit "Q"

Nadia P. Bermudez, Bar No. 216555
Patrick J. Goode II, Bar No. 299697
Charles E.H. Gulley III, Bar No. 314073
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
nbermudez@klinedinstlaw.com
pgoode@klinedinstlaw.com
cgulley@klinedinstlaw.com

Attorneys for Defendant
EVANS HOTELS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,

Plaintiffs,

v.

EVANS HOTELS, LLC, a California limited liability company and DOES 1 to 50,

Defendants.

Case No. 18-CV-00435-JLS (BGS)

**SECOND AMENDED NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE FOR ASSOCIATION 4 EQUAL ACCESS AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Judge: Janis L. Sammartino
Magistrate Judge: Bernard G. Skomal
Complaint Filed: 2/26/18
Trial Date: None set

TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to the provisions of Rule 30 of the Federal Rules of Civil Procedure, Defendant EVANS HOTEL, LLC will take the deposition of The Association 4 Equal Access on October 19, 2018 at 9:00 a.m. at KLINEDINST PC, located at Klinedinst, PC, 501 W. Broadway, Suite 600, San Diego, CA 92101, telephone 619-239-8131. As a deponent who is not a natural person, the above-named entity is to designate and produce those officers, directors, managing agents, employees, or agents who are most knowledgeable to testify on its behalf as to the extent of any information known or reasonably

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

available to the deponent regarding the following topics:

## **AREAS OF TESTIMONY**

1. Formation of The Association 4 Equal Access;

2. Organization, policies and procedures of The Association 4 Equal Access;

3. Changes to bylaws since formation of The Association 4 Equal Access;

4. Members of The Association 4 Equal Access;

5. Communications between The Association 4 Equal Access and Plaintiff James Rutherford;

6. Communications between The Association 4 Equal Access and Claimant Patricia Filardi as identified in Paragraph 16 of the Second Amendment Complaint;

7. Any assertion of damages in connection with the Second Amended Complaint filed on or around July 27, 2018 by YOU.

8. All facts related to the assertions in the Second Amended Complaint filed on or around July 27, 2018 by YOU;

9. All facts related to allegations contained in Paragraph 15 of the Second Amended Complaint filed on or around July 27, 2018 by YOU;

10. All facts related to allegations contained in Paragraph 20 of the Second Amended Complaint filed on or around July 27, 2018 by YOU;

11. All facts related to allegations contained in First Cause of Action in the Second Amended Complaint filed on or around July 27, 2018 by YOU;

12. All facts related to allegations contained in Second Cause of Action in the Second Amended Complaint filed on or around July 27, 2018 by YOU; and

13. All facts related to allegations contained in Third Cause of Action in the Second Amended Complaint filed on or around July 27, 2018 by YOU.

The deposition will take place before such notary public, judge, or other officer authorized to administer oaths, or such person appointed by the court who is present at the specified time and place. If the deposition is not completed on the date set out, the taking of the deposition will be continued from day to day

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

thereafter, except for Sundays and holidays, at the same place until completed.

NOTICE IS FURTHER GIVEN that if an interpreter is required to translate testimony, notice of the language and dialect must be provided to the noticing party at least five working days prior to the date of the scheduled deposition. Defendant reserves the right to videotape the deposition in addition to recording the testimony by stenographic method before a certified court reporter present at said time and place. Defendant reserves the right to use the video recording of this deposition testimony at trial.

## REQUEST FOR DOCUMENTS

Pursuant to the provisions of Rules 34, 30, and/or 45 of the Federal Rules of Civil Procedure, the Deponent is instructed to produce the following documents at deposition:

## PRELIMINARY STATEMENT

In responding to these document demands, you are required to make a diligent search for responsive documents in your and your agents' possession. After said search, you are required to state under oath whether responsive documents exist (and whether they will be produced, that such documents do not exist, and that you have conducted a diligent search for all responsive documents.

As to any responsive documents that you believe to be privileged or have otherwise withheld from production, please provide the following information in a privilege log identifying the following information for each withheld document:

(a) The title or a description of the document;

(b) The drafter(s) or signator(s) of the document and

(c) All recipients of the document at any time;

(d) The date of the document;

(e) The number of page(s) in the document; and

/ / /

(f) The basis in fact and law for the alleged privilege upon which the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

document is withheld.

## **PRIVILEGED CONTENT**

If any document requested is claimed to be privileged, pursuant to Federal Rule Civil Procedure 26b(5), you are required to specify the following for each document:

(a)     The name, occupation and capacity of the individual from whom the privileged document emanated;

(b)     The name, occupation and capacity of the individual(s) to whom the allegedly privileged document was directed;

(c)     The date the document bears;

(d)     The title of the document or subject line of the document claimed to be privileged, if not privileged content itself;

(e)     A brief description of the nature and contents of the document claimed to be privileged; and

(f)     The privilege claimed and its basis in law.

## **DEFINITIONS**

(a)     The terms "YOU," or "YOUR" means Plaintiff The Association 4 Equal Access, its agents, employees, insurance companies, agents, employees, attorneys, accountants, investigators, and anyone else acting on her behalf.

(b)     The term "DOCUMENT" or "DOCUMENTS" means both "DOCUMENT and other tangible things" and shall include, without limitation, originals and copies (carbon, photographic, microfilm, e-mail, computer generated, or otherwise) of all DOCUMENTS, correspondence, papers, agreements, licenses, minutes, memoranda, reports, notes (including laboratory and engineering notebooks and records), diaries, inter-office and/or intra-office corporate communications, messages, (including but not limited to, e-mail correspondence, and/or information stored on a hard drive), web site postings, telegrams, telex communications, books, letters, ledgers, photographs, pictures, drawings, sketches,

blueprints, analytical data, data sheets, motion pictures, video tapes, publications, catalog sheets or addenda, price lists, instructions, maintenance records, worksheets, time cards, time records, advertisements, brochures, pamphlets, recordings (electronic, tape, disk, belt, or any other type), invoices, work assignments, work records, shipping tickets or bills, samples, models, prototypes, devices, electronic documents (including, but not limited to, e-mails, text messages, and other electronically stored information) and any other writings, printed, electronic, and/or typewritten matter, including drafts, or other physical objects in YOUR custody, care or possession. However, production of duplicate copies of the same DOCUMENTS is requested only if the original or copies contain some material, handwritten or otherwise, that is not on the other copies or original.

(c)     "REFER" or "RELATE TO" mean and includes, without limitation, concerning, alluding to, referring to, responding to, discussing, characterizing, delineating, depicting, relating to, pertaining to, connected with, commenting on, in respect of, about, regarding, discussing, establishing, evidencing, showing, describing, mentioning, reflecting, analyzing, or constituting in any way.

## REQUESTS FOR PRODUCTION

1. DOCUMENTS that refer or relate to the formation of The Association 4 Equal Access;

2. DOCUMENTS that refer or relate to the organization, policies and procedures of The Association 4 Equal Access;

3. DOCUMENTS that refer or relate to the bylaws or policies since formation of The Association 4 Equal Access;

4. DOCUMENTS that refer or relate to or that show the membership of The Association 4 Equal Access;

5. DOCUMENTS that refer or relate to or that constitute communications between The Association 4 Equal Access and Plaintiff James Rutherford;

6. DOCUMENTS that refer or relate to or that constitute communications between The Association 4 Equal Access and Plaintiff James Rutherford related to Defendant Evans Hotel;

7. DOCUMENTS that refer or relate to damages in connection with the Second Amended Complaint filed on or around July 27, 2018 by YOU.

8. DOCUMENTS that refer or relate to the allegations contained in Paragraph 15 of the Second Amended Complaint filed on or around July 27, 2018 by YOU.

9. DOCUMENTS that refer or relate to the allegations contained in Paragraph 20 of the Second Amended Complaint filed on or around July 27, 2018 by YOU.

10. DOCUMENTS that refer or relate to any prior lawsuits or litigation that YOU have been a party to related to alleged violations of the Unruh Civil Rights Act or the Americans with Disabilities Act.

11. DOCUMENTS that refer or relate to or that constitute communications between The Association 4 Equal Access and Plaintiff James Rutherford.

12. DOCUMENTS that refer or relate to or that constitute communications between The Association 4 Equal Access and Claimant Patricia Filardi as identified in Paragraph 16 of the Second Amendment Complaint.

KLINEDINST PC

DATED: October 5, 2018

By: 

Nadia P. Bermudez
Patrick J. Goode II
Charles E.H. Gulley III
Attorneys for Defendant
EVANS HOTELS, LLC

17409303v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  Nadia P. Bermudez, Bar No. 216555
   Patrick J. Goode II, Bar No. 299697
2  Charles E.H. Gulley III, Bar No. 314073
   KLINEDINST PC
3  501 West Broadway, Suite 600
   San Diego, California 92101
4  (619) 239-8131/FAX (619) 238-8707
   nbermudez@klinedinstlaw.com
5  pgoode@klinedinstlaw.com
   cgulley@Klinedinstlaw.com
6
   Attorneys for Defendant
7  EVANS HOTELS, LLC

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 JAMES RUTHERFORD, an            Case No.
   individual, THE ASSOCIATION 4   18-CV-00435-JLS (BGS)
12 EQUAL ACCESS,
                                   **CERTIFICATE OF SERVICE**
13            Plaintiffs,,
                                   Judge:            Janis L. Sammartino
14       v.                        Magistrate Judge: Bernard G. Skomal
                                   Complaint Filed:  2/26/18
15 EVANS HOTELS, LLC, a California  Trial Date:       None set
   limited liability company and DOES 1
16 to 50,

17            Defendants.

18

19       I declare that:

20       I am and was at the time of service of the papers herein, over the age of eighteen
   (18) years and am not a party to the action. I am employed in the County of San Diego,
21 California, and my business address is 501 West Broadway, Suite 600, San Diego,
   California 92101.
22
         On **October 5, 2018**, I caused to be served the following documents:
23
              **SECOND AMENDED NOTICE OF DEPOSITION OF PERSON
24            MOST KNOWLEDGEABLE FOR ASSOCIATION 4 EQUAL
              ACCESS & REQUEST FOR PRODUCTION OF DOCUMENTS**
25

26

27

28

                                      1

1  ☒  **BY REGULAR MAIL:** I caused such envelopes to be deposited in the United
2  States mail, at San Diego, California, with postage thereon fully prepaid,
   individually, addressed to the parties as indicated. I am readily familiar with the
3  firm's practice of collection and processing correspondence in mailing. It is
   deposited with the United States postal service each day and that practice was
4  followed in the ordinary course of business for the service herein attested to. (Fed.
   R. Civ. P. 5(b)(2)(B).)

5  ☐  **BY OVERNIGHT SERVICE:** I caused such envelopes to be delivered by
   Overnight/Express Mail Delivery to the addressee(s) noted in this Certificate of
6  Service.

7  ☐  **BY FACSIMILE TRANSMISSION:** I caused a true copy of the foregoing
   document(s) to be transmitted (by facsimile # ) to each of the parties mentioned
8  above at the facsimile machine and as last given by that person on any document
   which he or she has filed in this action and served upon this office.
9

   ☐  **VIA ELECTRONIC TRANSMISSION:** Complying with an agreement with all
10 parties, I caused the document(s) to be sent to the person(s) at the e-mail
   address(es) listed below. I did not receive, within a reasonable time after
11 transmission, any electronic message or other indication that the transmission was
   unsuccessful. My electronic service address is fmcgee@klinedinstlaw.com. A
12 copy of the sent email will be maintained with the original document(s) in our
   office. (Code Civ. Proc. § 1010.6 and Cal. Rules of Court, Rule 2.251)
13

   ☐  **BY ELECTRONIC FILING SERVICE:** By electronically filing the foregoing
14 document(s) using the CM/ECF system. Service of an electronically filed
   document upon a CM/ECF User who has consented to electronic service is
15 deemed complete upon the transmission of the Notice of Electronic Filing
   ("NEF"). The NEF will be maintained with the original document(s) in our office.
16

   ☐  **BY PERSONAL SERVICE:** I served the person(s) listed below by leaving the
17 documents, in an envelope or package clearly labeled to identify the person being
   served, to be personally served via Cal Express Attorney Service on the parties
18 listed on the service list below at their designated business address.

19      ☐   By personally delivering the copies;

20      ☐   By leaving the copies at the attorney's office;

21          ☐   With a receptionist, or with a person having charge thereof; or

22          ☐   In a conspicuous place in the office between the hours of _____ in
                the morning and five in the afternoon;
23
        ☐   By leaving the copies at the individual's residence, a conspicuous place,
24          between the hours of eight in the morning, and six in the afternoon.

25      I declare that I am employed in the office of a member of the bar of this Court, at
   whose direction the service was made.
26

27

28

---

2

| Joseph R. Manning, Jr.<br>Michael J. Manning<br>Tristan P. Jankowski<br>Craig G. Cote<br>Manning Law, APC<br>4667 MacArthur Boulevard, Suite 150<br>Newport Beach, CA 92660 | Attorneys for Plaintiffs, JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS<br><br>949-200-8755 / FAX: 866-843-8308<br><br>adapracticegroup@manninglawoffice.com |
| --- | --- |
| Abbas Kazerounian, Esq.<br>Matthew M. Loker, Esq.<br>Elizabeth Wagner, Esq.<br>KAZEROUNI LAW GROUP, APC<br>245 Fischer Avenue, Unit D1<br>Costa Mesa, CA 92626 | Attorneys for Plaintiffs, JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS<br><br>Telephone: (800) 400-6808<br>Facsimile: (800) 520-5523<br><br>ak@kazlg.com / ml@kazlg.com / elizabeth@kazlg.com |
| Joshua B. Swigart, Esq.<br>HYDE & SWIGART<br>2221 Camino Del Rio South, Ste. 101<br>San Diego, CA 92108 | Attorneys for Plaintiffs, JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS<br><br>Telephone: (619) 233-7770<br>Facsimile: (619) 297-1022<br><br>josh@westcoastlitigation.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 5, 2018, at San Diego, California.

Lisa M. Grennon

17196805v1

3