**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**MANNING LAW, APC**
Joseph R. Manning, Jr. Esq. (223381)
joe@manninglawoffice.com
Michael J. Manning, Esq. (286879)
mike@manninglawoffice.com
4667 MacArthur Boulevard, Suite 150
Newport Beach, CA 92660
Telephone: (949) 200-8755
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*,
James Rutherford; and, The Association 4 Equal Access

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,<br><br>Plaintiffs,<br><br>v.<br><br>EVANS HOTELS, LLC, a California limited liability company, and Does 1 to 50,<br><br>Defendants. | Case No.: 18-cv-0435-JLS-BGS<br><br>**PLAINTIFFS' BRIEF REGARDING STANDING**<br><br>Date: July 1, 2019<br>Time: 9:00 a.m.<br>Courtroom: 4D<br><br>Hon. Janis L. Sammartino |

1

# I. Preliminary Statement

Plaintiffs filed the instant claims against the Defendant Evans Hotels, LLC ("EVANS") because Defendant discriminates against persons with disabilities through its online reservations systems (found at www.bahiahotel.com; www.catamaranresort.com; and, www.lodgetorreypines.com; collectively, the "Websites"). This discrimination is ongoing.

At the Evidentiary Hearing in this matter, the evidence will show that Plaintiff Rutherford is disabled and personally encountered discrimination by virtue of these discriminatory policies prior to filing the complaint and prior to his deposition session on October 16, 2018.

The evidence will also show that the reservations systems provided on the Websites were defective because they failed to provide necessary and material information about the hotel rooms and the hotels themselves to allow Plaintiff Rutherford to make a reservation. *See* 28 CFR 36.302(e). Additionally, the reservations systems were defective because they failed to allow persons with disabilities to reserve a room in the same manner as others; instead they impose additional burdens on persons with disabilities. *See* 28 CFR 36.302(e).

The evidence will also show that Rutherford is committed to return to the Websites to test their compliance with the law should he be informed that the Websites have ceased to discriminate and if accessible, to enjoy the goods and services offered. His declared and well documented status as a "tester" supports his asserted intent to return. His testimony and the testimony of his fiancé, and member of the Association for Equal Access, Patricia Filardi, will clearly establish these facts.

///
///
///
///

## II. Plaintiff Is Disabled Under The ADA And Suffered An Injury-In-Fact When He Encountered Barriers Related To His Disability

### A. Plaintiff is Disabled

Plaintiff Rutherford is disabled as defined by the Americans with Disabilities Act, 42 U.S.C. §12102(2) as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA") and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq. Rutherford testified at his deposition in detail regarding his physical impairments and resultant limitations giving rise to his status as a disabled person under the ADA, including doctors he has seen and the treatment he has received. Rutherford will present further testimony and medical records corroborating his testimony at the Evidentiary Hearing in this matter.[1]

Rutherford's testimony and the medical records will establish his diagnosis and treatment for degenerative conditions of the spine (and other ailments) since at least December of 2013 to the present date, including physical therapy, multiple outpatient surgical procedures and diagnoses of these chronic and degenerative conditions. See Joint Exhibit List, Plaintiff's Exhibit 1.

This testimony and medical records will confirm that Rutherford's impairments affect his musculoskeletal function and further place him at a disadvantage as compared to "most people in the general population," and without a doubt qualify as a substantial limitation on the major life activities of walking, standing, sleeping, ambulating, sitting and/or grabbing, twisting, and turning as alleged. This testimony will further describe how, when and why Plaintiff uses various mobility devices to assist him with mobility. Rutherford's disability is undeniable and even more so provided by the rules of construction adopted under the ADA Amendments Act of 2008 ("ADAAA") set out below.

---

[1] Rutherford will do so in an abundance of caution to establish his claim to Article III standing, despite the fact that Evans has never requested or sought such records in discovery including during the course of deposing Rutherford for two full days and now objects to the introduction of Rutherford's medical records.

According to the ADAAA, the primary issue in a case brought under the ADA should be whether an entity covered under the ADA has complied with its obligations and whether discrimination has occurred, not the extent to which the individual's impairment substantially limits a major life activity. CFR 36.105 (d)(1)(ii). In this case, overwhelming evidence establishes that Evans has not complied with its obligations, that discrimination has occurred and is ongoing.

In addition, in determining disability, the following definitions and rules of construction apply:

- The definition of "disability" ("substantially limits a major life activity") shall be construed broadly in favor of expansive coverage, to the maximum permitted by the terms of the ADA. 28 CFR § 36.105(d)(1)(i)

- Major life activities include, but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with other, and working; … 28 CFR § 36.105(c)(1)(i)

- The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard 28 CFR § 36.105(c)(1)(i)

- An impairment that is episodic or in remission is a disability if it would limit a major life activity when active 28 CFR § 36.105(d)(1)(iv)

The effects of one or more mitigating measures are ignored in determining if an impairment substantially limits a major life activity. *See* 28 CFR § 36.105 et seq. *See also*, e.g., 29 CFR § 1630.2(j)(1)(ii)("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."). Thus, under the ADA's definitions and rules of construction, it is undeniable that Rutherford suffers from a disability under the ADA.

///
///
///

### B. Plaintiff Suffered An Injury-In-Fact When He Encountered Barriers Related To His Disability

The *Chapman* court, sitting *en banc*, held that "encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes . . ..". *Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011). It is the **encounter** with the barrier, not whether the barrier precluded access that provides standing. In fact, the *Chapman* court could not have been clearer: "Where the barrier is related to the particular plaintiff's disability, however, an encounter with the barrier **necessarily injures** the plaintiff by depriving him of full and equal enjoyment of the facility." *Chapman*, 631 F.3d at 956-957.

In this case, it cannot be disputed that Rutherford meets this requirement. For example, and not by way of limitation, he testified to his requirement for accessible parking and accessible pathways and entrances to and from the hotel as well as the accessibility features he would like to know about inside the hotel rooms. Rutherford Depo.58:1-61:17; 93:11-94:14. He testified that he identified the Websites as deficient in terms of the required information and features as soon as he viewed them, as was his estimate in the latter part of 2017 although he could not provide the exact date. Rutherford Depo.74:25- 76:17.
Rutherford recalled that a relative of his fiancée Patricia Filardi had stayed at the Lodge at Torrey Pines in the past and spoke highly of it, and this was a reason he visited its website – she was interested in it as a result of the positive comments. Rutherford Depo.74:25- 77:2.

Rutherford testified that he could not book an accessible room using the Evans online reservations systems without assistance when he tried to prior to his October 16, 2018 deposition. Rutherford May 2019 Decl. ¶¶ 9. Rutherford's testimony regarding inadequate information on the Websites is borne out by the fact that *the Websites were devoid of accessibility information prior to the initiation of this*

*lawsuit*, and the Websites were then substantially augmented with accessibility information shortly *after* this action was first initiated on January 18, 2018.

Each of Rutherford's encounters with inaccessible content and features of the reservations system relates to Rutherford's mobility disability, and in each instance he was actually deprived of full and equal enjoyment of the facility and/or its services because there was no information about the accessibility of the Websites for Rutherford to learn whether Defendant's facilities could meet his accessibility needs as a person with a mobility disability, and as required by law,..

Plaintiff need not take extraordinary measures to overcome unlawful barriers to access, such as calling the hotel to overcome barriers presented by the online reservations system. The standard is not whether an illegal barrier *prohibits* access but is about *equality* of access. "The ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012). "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) Persons with disabilities are entitled to a certain quality of access. The ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 at fn. 4. (9th Cir. 2008).

Moreover, Evans may not impose extra steps to complete a reservation upon disabled persons, under the guise of providing them with additional assistance:

> Among the ADA's purposes however, is to eliminate the stereotype of the helpless disabled person completely reliant on the assistance of able-bodied persons to come to their rescue, not to reinforce it. The disabled community fought for, and earned, the right to have stores remove barriers so that disabled customers could use those facilities independently. This court will not reduce [plaintiff] to the need to beg for assistance or to rely upon the hoped-for existence of a kindly store clerk who happens to be in a mood to be

> helpful. Defendant's obligation is to ensure that the [property is accessible]. When it fails to do so, it is in violation of the ADA. It may not rely upon assertions that its store clerks are kind and helpful . . . .

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 870 F.Supp.2d 995, 1007 (E.D. Cal. 2012). "The standard cannot be *is access achievable in some manner*. We must focus on the equality of access. If a finding that ultimate access could have been achieved provided a defense, the spirit of the law would be defeated. It is clear, that the legislative purpose behind these disability access laws would not support such a finding." *Boemio v. Love's Restaurant*, 954 F.Supp. 204, 208 (S.D. CA 1997).

The evidence is clear that Rutherford has suffered injury-in-fact each time he sought to use Evans' online reservations system and it failed him.

## III. Plaintiff Has Standing To Obtain Injunctive Relief Because He Is Deterred From Accessing Evans' Online Reservations Services Until Made Accessible

The final issue before the court in this standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of future injury. *Chapman*, supra, 631 F.3d at 946-47. A disabled individual suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Chapman*, supra, 631 F.3d at 949. Further, he need not engage in the futile gesture of attempting to reserve a room and will not until he has been informed that the Evans reservations system is fully accessible.

Here, Rutherford has alleged his intent to return as a for the dual purposes of patronizing Evans properties and as a tester to confirm the Evans reservations system has become accessible - once he has been informed that it has become accessible. [Second Amended Complaint, ECF No. 21, ¶¶ 19, 20; *see also* ECF No. 45-2, Rutherford Jan. 2019 Decl.¶¶ 29-39; Rutherford May 2019 Decl.¶¶ 8-10].

Rutherford also declared his motivation and status as a tester at his deposition.

> Q   In the complaint that you filed against Evans Hotels, you indicated that you're tester in the litigation. Do you know what that means?
>
> A.  Yes, ma'am.
>
> Q.  Okay. What does that mean?
>
> A.  Well, that means I'm someone who would experience the barriers to access at a particular facility – yeah. I mean, I guess that's it in a nutshell.
>
> Q.  Do you have any understanding of what a tester is beyond that?
>
> A:  Yeah, I mean, I think it is a legal term, so I can't – you know, I can't – I mean, the whole idea is to try to gain compliance.

Rutherford Declaration dated May 10, 2019 (―Rutherford May 2019 Decl.‖) ¶ 5 Rutherford Depo.135:8-23; [Rutherford May 2019 Decl. ¶¶ 8-10].Rutherford's motivation behind his intent to return is not relevant to this inquiry only whether he is likely to return. *See Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*") (Affirming Order rejecting challenge to standing of individual plaintiffs in ADA class action against hotel chain operator where plaintiffs had never visited defendant's hotels and instead learned of discriminatory barriers via a single telephone call to various hotels operated by defendant, demonstrated no ―organic need to visit the individual hotels, and further held, in a case of first impression, that the Ninth Circuit along with the Tenth and Eleventh Circuits would permit ―tester standing in ADA cases and that the ―tester‖ motive was ―irrelevant‖ to issues of standing in cases filed under the ADA).

Evans will likely focus its arguments on Rutherford's litigation history arguing that this undermines his assertion that he will return to utilize its reservations system should it become compliant. Federal courts discourage this approach. *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) ("The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. *See, e.g., Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir. 1988). This is particularly true in the

ADA context where, as we recently explained, the law's provision for injunctive relief only "removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit.... As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.... For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir.2007)(citing Samuel R. Bagnestos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation,* 54 U.C.L.A. L.Rev. 1, 5 (2006)). Accordingly, we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation.")

The *D'Lil* court further cautions against the reference to litigation history to draw an adverse inference regarding a plaintiff's intent to return. *Id.* at 1038. ("The record contains no evidence of whether those places had been made accessible, such that *D'Lil* could have safely returned if she so wished."). Finally, *D'Lil* recognizes that intent to return for specific reasons should be considered independent of overall litigation history. *Id.* ("whether or not *D'Lil* visited the hotels in Redding says little about her intent to visit the Best Western Encina, considering that *D'Lil* identified specific reasons — including the presence of the Marshes and expected future work in Solvang — for returning to Santa Barbara."). *See also* Molski v. Price 224 F.R.D. 479, 483 (C.D. Cal. 2004) (Acknowledging the need to an individualized analysis of a plaintiff's intent to return)("Plaintiff's intent to return to other places of public accommodation is of minimal relevance to his intent to return to the service station at issue in this action.").

Rutherford in this case has expressed a particular desire and motivation to return to test the compliance of Evans, namely, Evans' rejection of its obligation to operate its online reservation system in accord with the regulations and requirements

promulgated by the Department of Justice under the ADA. The evidence will show that as a disabled person, as a dedicated advocate for the disabled, as the founder of the Association for Equal Access, and as the fiancé of a person with a profound disability, Rutherford has a personal stake in seeing this through.

## IV. Conclusion

Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972). The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).

Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as broadly as possible." *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006). "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates." *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1084 (N.D. Cal. 2015) (emphasis added).

Dated: June 20, 2019

                                               MANNING LAW, APC

                                        By: /s/ Joseph R. Manning Jr., Esq.
                                            Joseph R. Manning Jr., Esq.
                                            Attorney for Plaintiffs