EXHIBIT A

**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (Bar No. 91490)
David J. Darnell (Bar No. 210166)
Drew Harbur (Bar No. 279511)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants MANNING LAW APC, JOSEPH R.
MANNING, JR., MICHAEL J. MANNING, CRAIG COTE,
BABAK HASHEMI, and LAW OFFICES OF BABAK HASHEMI

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 12 2019

B VOTRUBA

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE

THE PEOPLE OF THE STATE OF
CALIFORNIA,

　　　　　　　　Plaintiff,

　　　v.

JAMES RUTHERFORD, an individual; THE
ASSOCIATION FOR EQUAL ACCESS, an
unincorporated entity; LAW OFFICES OF
BABAK HASHEMI; BABAK HASHEMI, an
individual; MANNING LAW APC; JOSEPH
R. MANNING JR., an individual; MICHAEL
J. MANNING, an individual; CRAIG COTE,
an individual; and DOES 1-25, inclusive,

　　　　　　　　Defendants.

**CASE NO.  RIC 1902577**

**NOTICE OF DEMURRER AND
DEMURRER BY DEFENDANTS TO
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

[Served concurrently with Declaration of Drew
Harbur; Request for Judicial Notice and
(Proposed) Order]

Judge:　Hon. Sunshine Sykes
Date:　　July 24, 2019
Time:　　8:30 a.m.
Dept.:　　6

**Reservation No. RES91827**

Complaint Filed:　April 24, 2019
Trial Date:　　　　Not set

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

　　　　PLEASE TAKE NOTICE that on July 24, 2019 at 8:30 a.m., in Department 6 of the above

referenced court located at 4050 Main Street, Riverside, California 92501, Defendants MANNING

LAW APC, JOSEPH R. MANNING, JR., MICHAEL J. MANNING, CRAIG COTE, BABAK

HASHEMI, and LAW OFFICES OF BABAK HASHEMI (collectively "Defendants") will demur

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

1  jointly and severally to the Complaint filed by Plaintiff THE PEOPLE OF THE STATE OF

2  CALIFORNIA ("Plaintiff") pursuant to California Code of Civil Procedure section 430.10(f) on

3  the grounds that the Complaint fails to state a cause of action because (1) all of the conduct alleged

4  therein constitutes protected petitioning activity under the First Amendment, as applicable through

5  the Noerr-Pennington doctrine, and (2) all of the conduct alleged therein is absolutely protected by

6  California's litigation privilege.  Additionally, the Second Cause of Action for alleged violations

7  of California Business and Professions Code Section 17500 et seq., fails to state a claim because

8  the conduct and statements alleged in the Complaint are not "advertising" as contemplated by the

9  false advertising statute.

10     This Demurrer is based upon this Notice of Demurrer and Demurrer, the attached

11  Memorandum of Points and Authorities, the attached Request for Judicial Notice, the arguments

12  of counsel at the hearing on this Demurrer, and upon such other evidence and materials as this

13  Court may consider.

14

15  Dated:  June 12, 2019                          CALLAHAN & BLAINE, APLC

16

17                                               By:  _____
                                                      David J. Darnell
18                                                    Drew Harbur
                                                      Attorneys for Defendants
19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF COMPLAINT................................................................... 2

III.    THE NECESSITY OF PRIVATE ENFORCEMENT OF THE ADA ............... 3

IV.     LEGAL STANDARD ON DEMURRER ........................................................ 4

V.      THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE CONDUCT
        ALLEGED IS PROTECTED BY THE FIRST AMENDMENT'S RIGHT TO
        PETITION AS APPLIED THROUGH THE NOERR-PENNINGTON DOCTRINE ...... 5

        A.      Courts Construe Petitioning Activity Very Broadly to Protect the First
                Amendment .................................................................................... 5

        B.      All of The Conduct Alleged in the Complaint Constitutes Protected
                Petitioning Activity Because it Relates Exclusively to the Filing of ADA
                Lawsuits ........................................................................................ 7

VI.     THE COMPLAINT ALSO FAILS TO STATE A CLAIM BECAUSE ALL OF
        THE CONDUCT ALLEGED IS PROTECTED BY CALIFORNIA'S
        LITIGATION PRIVILEGE ............................................................................ 9

        A.      The Litigation Privilege Applies to the Filing of Allegedly False Documents
                and to Alleged Attorney Misconduct in the Context of Litigation .................... 10

                1.      The Litigation Privilege Requires Dismissal of this Civil Complaint ...... 13

VII.    THE 17500 CLAIM IS BARRED BECAUSE THE CONDUCT ALLEGED IS
        NOT ADVERTISING................................................................................ 14

VIII.   CONCLUSION ..................................................................................... 15

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
  41 Cal.4th 1232 (2007) ................................................................................................9

*Blanchard v. DIRECTV,*
  123 Cal.App.4th 903 (2004) .......................................................................................11

*Cel-Tech Comms. Inc. v. Los. Angeles Cell Tel. Co.,*
  20 Cal.4th 163 ..............................................................................................................9

*Chapman v. Pier 1 Imports,*
  631 F.3d 939 (2010) .....................................................................................................3

*Chern v. Bank of America,*
  15 Cal.3d 866 (1976) ..................................................................................................15

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.,*
  867 F.3d 1093 (9th Cir. 2017) ......................................................................................4

*Colgan v. Leatherman Tool Group, Inc.,*
  135 Cal.App.4th 663 ...................................................................................................14

*Committee on Children's Television, Inc. v. General Foods Corp.,*
  35 Cal.3d 197 (1983) ..................................................................................................14

*D'Lil v. Best W. Encina Lodge & Suits,*
  538 F.3d 1031 (9th Cir. 2008) ..............................................................................1, 3

*Doctors' Company Ins. v. Superior Court*
  (1990) 225 Cal.App.3d. 1284 .....................................................................................10

*Feather River Trailer Sales, Inc. v. Sillas,*
  96 Cal.App.3d 234 (1979) ..........................................................................................15

*Flatley v. Mauro,*
  39 Cal.4th 299 (2006) .................................................................................................10

*Fletcher v. Security Pacific Nat'l Bank*
  23 Cal.3d 442 (1979) ..................................................................................................14

*Ford Dealers Ass'n v. Dept. of Motor Vehicles*
  32 Cal.3d 347 (1982) ..................................................................................................15

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*People ex rel. Gallegos v. Pacific Lumber Co.*,
  158 Cal.App.4th 950 ......................................................................................*passim*

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) (Gould, J., concurring) ................................................4

*Guardian N. Bay, Inc.v. Super. Ct.*,
  94 Cal. App. 4th 963 (2001)........................................................................................4

*Hagberg v. California Federal Bank FSB*
  (2004) 32 Cal.4th 350 ....................................................................10, 11, 14

*Herterich v. Peltner*,
  20 Cal.App.4th 1132 (2018)........................................................................10, 11, 13

*Home Ins. Co. v. Zurich Ins. Co.*,
  96 Cal.App.4th 17 (2002).............................................................................9

*Kachig v. Boothe*
  (1971) 22 Cal.App.3d 626............................................................................10

*Kashian v. Harriman*,
  98 Cal.App.4th 892 (2002)....................................................................10, 13, 14

*Knoell v. Petrovich*
  (1999) 76 Cal.App.4th 164 ...........................................................................10

*Lerette v. Dean Witter Org., Inc.*,
  60 Cal.App.3d 573 (1976)............................................................................11

*Ludwig v. Superior Court*
  37 Cal.App.4th 8 (1995) ...............................................................................5

*People v. Sup.Ct.*
  9 Cal.3d 283 (1973) ...................................................................................15

*Rubin v. Green*,
  4 Cal.4th 1187 (1993) ........................................................................11, 12, 14

*Rusheen v. Cohen*,
  37 Cal.4th 1048 (2006) ................................................................................9

*Silberg v. Anderson*,
  50 Cal.3d 205 (1990)...............................................................9, 11, 13, 14

*Sosa v. DIRECTV*,
  437 F.3d 923 (9th Cir. 2006)....................................................................5, 6, 7

*Steiner v. Eikerling*,
  181 Cal.App.3d 639 (1986)........................................................................11, 13

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

*Tichinin v. City of Morgan Hill*,
    177 Cal.App.4th 1049 (2009)..................................................................6, 7, 8

**Statutes**

29 Code of Federal Regulation section 1630.2(j)(1)(ii).............................................2

42 U.S.C. 12182(a) ....................................................................................1, 3

42 U.S.C. 12188(a)(1).......................................................................................3

Business and Professions Code section 6152 and 6153....................................12

Business and Professions Code section 17200............................................2, 9

Business and Professions Code section 17500............................................2, 9

Cal. Code. Civ. Proc. § 425.16(d)...................................................................4

Cal. Code Civ. Proc. § 430.30..........................................................................4

Civil Code section 47......................................................................................11

Civil Code section 47(b) ..................................................................................9

**Other Authorities**

*Brief for the United States as Amicus Curaie*, p. 2, *Chapman v. Pier 1 Imports*, 631
    F.3d 939 (2010) ......................................................................................3

Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case
of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 4 (2006)........................................3

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' DEMURRER TO COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

The Americans With Disabilities Act ("ADA") codifies a grand promise that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment" of "goods, services, facilities, privileges, advantages, or accommodations …."  42 U.S.C. 12182(a).  Courts and commentators have thus recognized that in order to fulfill that promise— and given the government's minimal resources to enforce the ADA—it is "necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."[1]  The Defendants are such a group of committed individuals.  They have successfully identified and facilitated the correction of hundreds of ADA violations over the years, many of which are right here in Riverside County.

When the Defendants identify ADA violations, they file lawsuits in either state or federal court, necessarily subjecting the basis for any claim to public and legal scrutiny.  In doing so, the businesses named in those lawsuits are able to respond and challenge the allegations with the vast array of options available to defendants in California state and federal court; namely, written discovery, law and motion practice, depositions and even sanctions should a defendant believe such a lawsuit is frivolous or that the plaintiff lacks standing.

But the DA's Complaint, ignoring the gatekeeping functions of state and federal courts, as well as the legal and procedural safeguards available to those who have violated the ADA, alleges that *every single lawsuit* filed by the Defendants was unsubstantiated and failed to meet federal constitutional standing requirements:  Incredibly, this would mean that even lawsuits where settlements were reached and ADA violations were cured, are somehow meritless.  In making these specious allegations the DA is effectively demanding that this Court re-litigate each and every ADA lawsuit filed by the Defendants in Riverside County, and further invites this Court to analyze whether or not the Defendants possessed Title III standing in and every each case.

The DA's Complaint ignores the fact that the parties (and judicial officers) in the best

---

[1] *D'Lil v. Best W. Encina Lodge & Suits*, 538 F.3d 1031, 1040 (9th Cir. 2008) (internal quotations omitted).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   position to assess the merits and Title III standing in each lawsuit were the original parties thereto

2   and the judicial officers before whom each case was litigated.  Moreover, the DA's Complaint (1)

3   fails to grasp the standing and legal principles applicable to the ADA, (2) ignores the First

4   Amendment's sweeping protections regarding the right-to-petition, and (3) ignores the absolute

5   protection afforded by California's litigation privilege.  As detailed below, the Defendants'

6   conduct, regardless of the DA's colorful and inaccurate allegations, is protected by multiple

7   doctrines, privileges and the public policies underlying each.  As such, the Defendants respectfully

8   request that the Court dismiss the DA's Complaint without leave to amend and decline the DA's

9   invitation to re-try 120 ADA lawsuits that were either successfully resolved or remain ongoing.

10   **II.   SUMMARY OF COMPLAINT**

11   The Complaint alleges violations of California Business and Professions Code Sections

12   17200 and 17500, as well as various "resultant violations."  But the Complaint can be reduced to a

13   single theory of liability:  The Defendants violated the law by filing allegedly unsubstantiated

14   ADA lawsuits.  The first "General Allegation" in the Complaint relates to the number of ADA

15   lawsuits filed by the Defendants.  Compl. ¶ 18.  The Complaint then focuses on alleged "core

16   misrepresentations" which formed the supposed basis of "each and every" ADA lawsuit the

17   Defendants filed.  *Id.* ¶ 21.  Nearly all of the 68 paragraphs in the Complaint contain a reference

18   the "federal ADA lawsuits" *filed* against Riverside County businesses.  The Complaint actually

19   defines the term "federal ADA lawsuits" and goes on to use that term 78 times.

20   Even the wholly irrelevant (and still inaccurate) allegations in the Complaint are nothing

21   more than an attempt to further the DA's singular theory.  For example, the DA goes to great

22   lengths to question if Defendant Rutherford has a "real" disability, pointing out that his ability to

23   occasionally walk without assistance somehow makes him a fraud.[2]  Compl. ¶¶ 28-32.  But those

24   allegations are only made with reference to the DA's singular theory.  Compl. ¶¶ 26, 64(d), 67(d).

---

[2] The DA simultaneously claims to "express no opinion as to whether [Defendant] Rutherford is or is not disabled" and then spends several pages implying that the disability is manufactured. *See, e .g.*, Compl. at p. 8-9.  Aside from making such contradictory allegations, the DA also fails to grasp the legal definition of a "disability" under the ADA. *See, e.g.,* 29 CFR § 1630.2(j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.")

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Thus, while the Complaint purports to outline grand schemes of "fraud" and "extortion," it

2    relates—exclusively—to the filing of ADA lawsuits.

3    **III.    THE NECESSITY OF PRIVATE ENFORCEMENT OF THE ADA**

4           The ADA constitutes a broad, sweeping statutory framework intended to, among other

5    things, provide equal access for all people.  To further that far-reaching remedial goal, Title III of

6    the ADA provides:

> [n]o individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of a place of
> public accommodation by any person who owns, leases (or leases
> to), or operates a place of public accommodation.

42 U.S.C. 12182(a).

           Private plaintiffs play a critical role in enforcing the ADA, particularly in the area of public

accommodations, which includes a large number of entities.  *See* 42 U.S.C. 12188(a)(1).  Even the

United States government acknowledges that its limited resources do not allow it to "investigate

every place of public accommodation in the country to determine if it is in compliance with the

ADA." *Brief for the United States as Amicus Curaie*, p. 2, *Chapman v. Pier 1 Imports*, 631 F.3d

939 (2010) "*Chapman Amicus*"; *see S*amuel R. Bagenstos, *The Perversity of Limited Civil Rights

Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 4 (2006) ("Indeed, the

U.S. Department of Justice has devoted only a small cadre of lawyers to disability rights

enforcement ....") (internal quotations and citations omitted) (attached to Defendants' Request for

Judicial Notice as Exhibits A and B respectively).

           Effective enforcement of Title III, therefore, requires "a combination of suits by the United

States and litigation by individuals with disabilities who are aware of and encounter violations in

their local communities." *Chapman Amicus*, at 2.  However, even though the ADA authorizes

private lawsuits, its "provision for injunctive relief only removes the incentive for most disabled

persons who are injured by inaccessible places of public accommodation to bring suit." *D'Lil v.

Best W. Encina Lodge & Suits*, 538 F.3d 1031, 1040 (9th Cir. 2008) (internal quotations omitted).

As a result, "most ADA suits are brought by a small number of private plaintiffs who view

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

themselves as champions of the disabled …." *Id.* While such plaintiffs have sometimes been disparaged—including by the DA here—as "serial" or "high-volume" litigants, they are in fact a necessary component of ADA enforcement. As courts in California have stated:

> For the ADA to yield its promise of equal access for the disabled, it may indeed be *necessary and desirable* for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

*Id.* (emphasis added); *see Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) ("We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA. The Named Plaintiffs' status as ADA testers thus does not deprive them of standing."); *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009) ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the [ADA], even if we suspect that such plaintiffs are hunting for violations just to file lawsuits.") (Gould, J., concurring). Commentators have noted that the activity of a relatively small number of high-volume litigants is the result of the "highly complex, detailed, and contextual" nature of the ADA's rules, and the need for lawyers to specialize in order to viably prosecute such cases. Bagenstos, at 13. Yet, even in light of the advocacy of so-called serial/high-volume litigants, "a strong consensus is emerging among experts that the ADA's public accommodations title is underenforced." Bagenstos at 4 ("The ADA's public accommodations title is massively underenforced ….")

## IV.   LEGAL STANDARD ON DEMURRER[3]

A party may demur to a complaint when the grounds for objection appear on the face of the complaint. Cal. Code Civ. Proc. § 430.30; *see Guardian N. Bay, Inc.v. Super. Ct.*, 94 Cal. App. 4th 963, 971-72 (2001). Furthermore, a court may properly dismiss a Section 17200/17500 claim on the basis of the Noerr-Pennington doctrine and California's litigation privilege—which are discussed in detail below—on demurrer. *See, e.g., People ex rel. Gallegos v. Pacific Lumber Co.*,

---

[3] Had this lawsuit been brought by *any* party other than the DA or other public prosecutor, it would have been subjected to California's powerful anti-SLAPP statute and dismissed for its failure to satisfy requisite evidentiary burdens. *See* Cal. Code. Civ. Proc. § 425.16(d).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   158 Cal.App.4th 950, 956, 971 (affirming trial court's sustaining of defendants' demurrer to

2   Attorney General's Section 17200 action based on application of California's litigation privilege

3   and the Noerr-Pennington doctrine).

4   **V.   THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE CONDUCT**

5   **ALLEGED IS PROTECTED BY THE FIRST AMENDMENT'S RIGHT TO**
    **PETITION AS APPLIED THROUGH THE NOERR-PENNINGTON DOCTRINE**

6

7          The Noerr–Pennington doctrine derives from the First Amendment's guarantee of "the

8   right of the people ... to petition the Government for a redress of grievances."  U.S. Const. amend.

9   I.  Under the Noerr–Pennington doctrine, "those who petition any department of the government

10  for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v.*

11  *DIRECTV*, 437 F.3d 923, 929 (9th Cir. 2006)*.*  In effect, the Noerr-Pennington doctrine

12  "preclude[s] virtually all civil liability for a defendant's petitioning activities before not just

13  courts, but also before administrative and other governmental agencies." *People ex rel. Gallegos*

14  *v. Pacific Lumber Co.*, 158 Cal.App.4th 950, 964-965 (2008) (citing *Cal. Trans. v. Trucking Unltd.*

15  404 U.S. 508, 510–511 (1972).  The Noerr-Pennington doctrine further relies on principles of

16  "comity," which the *Gallegos* court described as a policy of "noninterference on the part of the

17  courts" with "other governmental bodies ... and with efforts intended to influence such

18  bodies." *Gallegos*, at 964 (citing *Blank v. Kirwan*, 39 Cal.3d 311, 321 (1985))

19          While the Noerr-Pennington doctrine originally arose within antitrust cases, it has been

20  extended to protect petitioning activities in the context of alleged violations of Sections

21  17200/17500. *See Ludwig v. Superior Court* 37 Cal.App.4th 8, 21, fn. 17 (1995) (The Noerr-

22  Pennington doctrine "applies to virtually any tort, including unfair competition and interference

23  with contract" and "should be applied regardless of the underlying cause of action asserted by the

24  plaintiffs.") (internal quotations and citations omitted); *see, e.g.*, *Gallegos*, (applying Noerr-

25  Pennington and dismissing Section 17200 action brought by California Attorney General).

26  **A.    Courts Construe Petitioning Activity Very Broadly to Protect the First**

27  **Amendment**

28          Courts have taken a very expansive view of what constitutes protected petitioning activity

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEMURRER TO COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and that includes conduct far beyond the filing of legal pleadings with a court. *See Tichinin v.*

2  *City of Morgan Hill*, 177 Cal.App.4[th] 1049, 1066 (2009) (The "breathing space" necessary to

3  exercise one's right to petition is 'purposefully overbroad' and 'necessary to assure the freedoms

4  of speech and press ….'" (quoting *Gertz v. Welch, Inc.*, 418 U.S. 323, 342 (1974)). California

5  courts have held that even pre-litigation investigations, settlement discussions, and other activity

6  related to a *possible* lawsuit—even a lawsuit that is never filed—are protected petitioning activity.

7  *See, e.g., Tichinin*, at 1069-1070.

8      In *Tichinin*, an attorney ("Tichinin") hired a private investigator to surveil a local politician

9  in the City of Morgan Hill, believing he had been engaged in an inappropriate affair with another

10  official. *Tichinin*, at 1058. The private investigator went so far as to follow the local politician to

11  a hotel room, where he booked a nearby room and surveilled the politician with a camera. *Id.* The

12  City became aware of these surveillance efforts and after conducting their own investigation (into

13  Tichinin's investigation), passed a resolution condemning Tichinin's "surveillance activities." *Id.*

14  at 1059. In response, Tichinin sued the City, asserting that the City's resolution was retaliation for

15  the Tichinin lawfully exercising his right to petition. *Id.* at 1064-1068.

16      The Court of Appeal began its analysis of the Noerr-Pennington doctrine by

17  acknowledging that Tichinin's surveillance activities could not, in a technical sense, "fairly be

18  called petitioning the government." *Id.* at 1066. The court further acknowledged that Tichinin's

19  investigation actually revealed a "lack of evidence of an inappropriate relationship" and noted that

20  Tichinin never filed a lawsuit or sought removal of the officials involved. *Id.* However, the court

21  found that *even these* circumstances did not alter the conclusion that such activity was still

22  protected petitioning activity.

23      The court's reasoning was guided in part by the Ninth Circuit's decision in *Sosa*, which

24  held that DIRECTV was engaged in protected "petitioning activity" when it sent thousands of

25  demand letters to private individuals it suspected were pirating DIRECTV's services. This was

26  true even though the letters threatened to sue those individuals and allegedly contained

27  extortionate, "false representations of fact and law" that wrongfully induced certain individuals to

28  settle. *Sosa*, at 940. And though the demand letters were directed to private individuals (and not a

DEMURRER TO COMPLAINT

court), *Sosa* explained that the protection of First Amendment rights encompassed a "'breathing space' necessary for the effective exercise of" petitioning rights and that this "breathing space" was intended to be "overprotective." *Tichinin*, at 1066. The *Tichinin* court adopted the reasoning of *Sosa* and stated:

> [N]on-petitioning conduct is within the protected "breathing space" of the right of petition if that conduct is (1) incidental or reasonably related to an actual petition or actual litigation or to a claim that could ripen into a petition or litigation ....

*Id.* at 1068. The court ultimately reasoned that "the investigation of a potential claim is normally and reasonably part of effective litigation, if not an essential part of it." *Id.*

Finally, the court noted that the Noerr Pennington doctrine would not apply to a petitioning activity that is a sham. *Id.* Petitioning activity is considered a sham in narrow circumstances and *only* when the following two conditions are proven: "a petition or litigation must be objectively baseless, in that one could not reasonably expect it to succeed; and the person making the petition or pursuing the litigation must be motivated by an improper purpose." *Tichinin*, at 1072. The *Tichinin* court found that the petitioning activity was not a sham, even though the results of Tichinin's investigation actually undermined any potential claim he could have made. *Id.* at 1072 ("That the results of the investigation undermined the claim does not retrospectively render it objectively baseless.").

**B.     All of The Conduct Alleged in the Complaint Constitutes Protected Petitioning Activity Because it Relates Exclusively to the Filing of ADA Lawsuits**

The entire Complaint can be reduced to a single sentence: The Defendants allegedly *filed* unsubstantiated ADA lawsuits. *See, e.g.*, Compl. ¶¶ 18, 21, 26. Because the filing of a lawsuit is perhaps the most obvious example of petitioning conduct protected by the First Amendment, the Court should grant the Defendants' demurrer. *See Gallegos*, at 964 ("The Noerr-Pennington doctrine has been extended to preclude virtually all civil liability for defendant's petitioning activities before ... courts ....")

Even the wholly irrelevant (and inaccurate) allegations in the Complaint that relate to pre-litigation activity are properly considered protected, petitioning activity. For example, paragraph

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   42 alleges the Defendant Rutherford traveled to certain areas to "scout and surveil future targets

2   for Defendants' ADA lawsuits scheme."   Paragraph 39 alleges that Defendant Rutherford traveled

3   70 miles from his home to find a particular business even though there were branches of the same

4   business closer to his home.   Other paragraphs question whether Defendant Rutherford is disabled

5   enough to possess ADA standing.   Compl. ¶¶ 22, 28-32.   The DA has made such allegations

6   merely by reference to his singular theory that the Defendants' federal ADA lawsuits were

7   unsubstantiated.   And as the cases make clear, even the pre-litigation investigation alleged in the

8   Complaint is protected petitioning activity under Noerr-Pennington.  *Tichinin*, at 1069.   Here, the

9   Defendants' conduct is even more obviously petitioning activity than the defendant's conduct in

10  *Tichinin* since, by the DA's own admission, the Defendants actually *filed* lawsuits and achieved

11  settlements.  *See, e.g.,* Compl. ¶¶ 18, 47; *see Tichinin*, at 1066.

12      Additionally, none of the Defendants' petitioning activity can be considered objectively or

13  subjectively baseless (i.e., a "sham") because, as admitted by the Complaint, the Defendants

14  obtained the results and settlements they petitioned for.  *See, e.g.*, Compl. ¶ 47.   The DA's

15  allegations that the Defendants engaged in improper tactics does not convert their petitioning

16  activities into a sham.   The *Gallegos* court dealt with this very argument from a government

17  plaintiff who, like the DA here, argued against application of the privilege in a Section 17200

18  action:

19          [A]ccording to the State's own allegations, [the defendants] achieved the
            very outcome it petitioned for in the CEQA proceedings …. That [the
20          defendants are] alleged to have employed improper tactics in seeking
            that outcome does not render their efforts less genuine.
21

22  *Gallegos*, at 966 (citing *Blank*, at 325) ("For the purposes of the *Noerr-Pennington* doctrine,

23  however, impropriety and genuineness are not related.")

24      Finally, the Court should decline the DA's invitation to re-litigate nearly 120 ADA

25  lawsuits filed (and, per the Complaint, settled) based on the California Supreme Court's concern

26  for "comity" in the context of Noerr-Pennington.   As the reasoning in *Gallegos* makes clear, the

27  proper place to challenge ADA lawsuits and alleged standing issues regarding ADA lawsuits filed

28  by the Defendants was in the court in which those cases were filed and among the parties

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 8 -

1   involved. *See Gallegos*, at 969 ("Courts, we believe, should not lightly interfere with such []

2   proceedings ….").

3   **VI.   THE COMPLAINT ALSO FAILS TO STATE A CLAIM BECAUSE ALL OF THE**
    **CONDUCT ALLEGED IS PROTECTED BY CALIFORNIA'S LITIGATION**
4   **PRIVILEGE**

5         The Complaint also fails to state a claim because the conduct alleged therein is protected

6   by the safe harbor of California's litigation privilege found in California Civil Code § 47(b).  The

7   privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by

8   litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4)

9   that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205,

10  212 (1990).  While pleadings are viewed as privileged communications, "[t]he privilege 'is not

11  limited to statements made during a trial or other proceedings, but may extend to steps taken prior

12  thereto, or afterwards.'" *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232,

13  1241 (2007); *see Rusheen v. Cohen*, 37 Cal.4th 1048, 1058 (2006).

14        "The principal purpose of section [47(b)] is to afford litigants and witnesses the utmost

15  freedom of access to the courts without fear of being harassed subsequently by derivative tort

16  actions." *Silberg*, at 213 (internal citation omitted).  "To effectuate its vital purposes, the litigation

17  privilege is held to be absolute in nature." *Silberg*, at 215.  "Any doubt as to whether the privilege

18  applies is resolved in favor of applying it." *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal.App.4th 17,

19  23 (2002) (citation omitted).  "The only exception to application of section [47(b)] to tort suits has

20  been for malicious prosecution actions." *Silberg*, at 216.  The California Supreme Court has

21  acknowledged that application of the privilege to allegedly unlawful conduct "necessarily results

22  in some real injuries that go uncompensated" but acknowledged "that is the 'price that is paid for

23  witnesses who are free from intimidation by the possibility of civil liability for what they say…'"

24  *Silberg*, at 218 (quoting Prosser, Law of Torts (3d ed. 1964, p. 797).

25        Finally, the California Supreme Court has repeatedly held that the litigation privilege

26  applies to cases brought under Sections 17200 and 17500.  *Cel-Tech Comms. Inc. v. Los. Angeles*

27  *Cell Tel. Co.*, 20 Cal.4th 163, 182 ("A bar against an action 'may not be circumvented by recasting

28  the action as one under Business and Professions Code section 17200.'" (quoting *Rubin v. Green*,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 9 -

1 | 4 Cal.4th 1187, 1202 (1993)).

2 | **A.** **The Litigation Privilege Applies to the Filing of Allegedly False Documents**

3 | **and to Alleged Attorney Misconduct in the Context of Litigation**

4 | "The litigation privilege has been applied in 'numerous cases' involving 'fraudulent

5 | communication or perjured testimony.'" *Flatley v. Mauro*, 39 Cal.4th 299, 322 (2006) (quoting

6 | *Silberg*, at 218) (citing cases).  As such, the litigation privilege absolutely protects litigation-

7 | related communications that are indisputably unlawful.  *See*, e.g., *Hagberg v. California Federal*

8 | *Bank FSB*, (2004) 32 Cal.4th 350 (falsely reporting a crime to police); *Knoell v. Petrovich*, (1999)

9 | 76 Cal.App.4th 164, (privilege applied to allegations of extortion); *Kachig v. Boothe*, (1971) 22

10 | Cal.App.3d 626 (committing perjury); *Doctors' Company Ins. v. Superior Court*, (1990) 225

11 | Cal.App.3d. 1284 (suborning perjury).  As the California Court of Appeal has stated:

12 | 
13 | > We conclude from all this that communications made in connection
> with litigation do not necessarily fall outside the privilege *simply*
> *because they are, or are alleged to be, fraudulent, perjurious, unethical,*
14 | > *or even illegal.*

15 | *Kashian v. Harriman*, 98 Cal.App.4th 892, 920 (2002) (emphasis added).

16 | In *Herterich v. Peltner*, 20 Cal.App.4th 1132 (2018), the plaintiff sued the defendants

17 | based on alleged perjury committed by the defendants in prior probate proceeding.  Specifically,

18 | the plaintiff alleged that the defendants "made false representations of several material facts *that*

19 | *were crucial to the Court's adjudication of the petition* …." *Id.* at 1142 (emphasis in original).

20 | The plaintiff, in support of his argument on appeal that the defendants' conduct deceived the

21 | probate court, highlighted "statutes that require personal representatives and their attorneys to act

22 | ethically and truthfully disclose all material facts …." *Id.* at 1141.  However, the court held that

23 | the litigation privilege applied, even in spite of the plaintiff's allegations of perjury and attorneys

24 | acting unethically.

25 | The court began by recognizing that the "litigation privilege extends to fraudulent

26 | statements, even when made to a court, if they were made in furtherance of litigation." *Id.*  The

27 | court clarified that the "'furtherance' requirement was never intended as a test of a participant's

28 | motives, morals, ethics or intent." *Id.* (quoting *Silberg*).  In so holding, the court further

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

acknowledged the absolute nature of the litigation privilege:

> Even if [the plaintiff's] allegations are true, we join other courts that recognize the necessary harsh result in extending a privilege to false and fraudulent statements made in the course of a judicial proceeding. We accept that result, however, on account of the overriding importance of the competing public policy in favor of enhancing the finality of judgments and avoiding unending postjudgment derivative litigation—a policy which places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation. While we by no means condone intentionally deceptive conduct before the courts, the litigation privilege is absolute.

*Id.* at 1142 (internal quotations and citations omitted); *see also Steiner v. Eikerling*, 181 Cal.App.3d 639 (1986) (granting motion to strike claim of civil conspiracy based on presentation of forged document to court and concluding that preparation of the forged will constitute a privileged publication under Civil Code section 47). The court recited the facts of *Steiner*, *supra*, where the Court of Appeal stated: "lack of an effective remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." *Id.* at 1142 (internal quotations omitted).

Additionally, application of the litigation privilege extends well beyond statements made in a courtroom or through legal pleadings. The California Supreme Court has held that the privilege applies where conduct is in furtherance of the objects of the litigation or has some "logical relation" to a potential action. *Silberg*, at 218-219; *see Blanchard v. DIRECTV*, 123 Cal.App.4th 903 (2004) (holding that demand letters sent to thousands of potential DIRECTV piracy users was absolutely protected by the litigation privilege even where letters were allegedly deceptive, fraudulent, extortionate and thereby in violation of Section 17200); *see Hagberg v. California Fed. Bank FSB*, 32 Cal.4th 350, 361 (2004) (prelitigation communications); *Lerette v. Dean Witter Org., Inc.*, 60 Cal.App.3d 573, 577 (1976) (settlement proposals considered to contain a "threat"). As such, even allegations that attorneys violated criminal Business and Professions Code sections prohibiting attorney solicitation do not defeat the litigation privilege.

For example, in *Rubin*, *supra*, a resident of a mobilehome park, Green, and a law firm she hired mailed a notice of intention to commence action to the park's owner, Rubin. The notice alleged various defects with operation of the park. *Rubin*, at 1191. Rubin responded by suing

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Green and her lawyers under Section 17200.  *Id.*  Rubin's amended complaint was summarized by

2   the California Supreme Court as follows:

> 3   According to the amended complaint, the law firm had engaged in a pattern
>     of soliciting residents of several mobilehome parks for the purpose of
> 4   commencing litigation against park owners. Allegedly, the firm's modus
>     operandi was to arrange for an invitation to meet with park residents to help
> 5   negotiate a resolution of complaints regarding park conditions with the
>     owner; this, in turn, would lead to a promise by the firm to obtain
> 6   substantial monetary settlements for those residents who agreed to join in
>     litigation against the owner. A lawsuit, preceded by a "form" notice of suit,
> 7   followed. After filing suit, often on behalf of a hundred or more
>     mobilehome park residents, the law firm would seek an early trial
> 8   preference on the basis of the advanced age of some of the resident-
>     plaintiffs, thereby (according to the amended complaint) truncating the
> 9   defendant owner's opportunity for full discovery.  *Id.* at 1192.
> 10

11   The trial court granted the defendants' demurrer on grounds that the defendants' conduct

12   was privileged under the litigation privilege but the Court of Appeal reversed, finding that the

13   privilege did not apply for alternative reasons.  First, a majority of the Court of Appeal concluded

14   that the dominant characteristic of the law firm's actions were "noncommunicative" and thus not

15   protected by the litigation privilege.  Alternatively, the majority concluded that the Legislature had

16   established an exception to the litigation privilege on attorney solicitation by enacting Business

17   and Professions Code section 6152 and 6153, which makes it a misdemeanor "to act as an agent in

18   solicitation of business on behalf of attorneys."  *Id.* at 1193.

19   However, the California Supreme Court reversed and ordered the action dismissed.  The

20   Supreme Court held that all of the acts alleged in the amended complaint—including acts the

21   Court of Appeal construed as violations of Business and Professions Code 6152 and 6153—were

22   "within the scope of privilege and immunity from tort liability."  *Id.*  And even though the plaintiff

23   alleged that the lawyers' conduct was "malicious," "frivolous," and done solely to "profit

24   unjustly," the Supreme Court reasoned that such alleged conduct was still protected by the

25   litigation privilege:

> 26   In short, we can imagine few communicative acts more clearly within the
>     scope of the privilege than those alleged in the amended complaint, that is,
> 27   meeting and discussing with Cedar Village residents park conditions and
>     the merits of the proposed failure-to-maintain lawsuit, and filing the
> 28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

complaint and subsequent pleadings in the litigation. *Id.* at 1195.

**1.     The Litigation Privilege Requires Dismissal of this Civil Complaint**

All of the conduct alleged in the DA's Complaint logically relates to litigation activity—the investigation of, and filing of, ADA lawsuits. *See Kashian*, 920 ("The communications in this case were not only related to the litigation, they *were* the litigation, or more accurately the pleadings in the litigation.") (emphasis in original).   The DA's allegations that this litigation activity was fraudulent and perjurious, just like the allegations against the defendants in *Herterich, Steiner* and the cases cited above, does not defeat the litigation privilege. *See, e.g.,* Compl. ¶¶ 21, 26-27.   As the courts held in those cases, even allegations of perjury, fraud, extortion, or even illegal conduct in the furtherance of litigation, do not fall outside of the litigation privilege. *Herterich*, at 1141 (quoting *Silberg*) (the "'furtherance' requirement was never intended as a test of a participant's motives, morals, ethics or intent.")   The court in *Herterich* explicitly acknowledged the "harshness" of such a result, but noted the overriding policy concern regarding the finality of judgments and the "obligation on *parties* to ferret out the truth while they have the opportunity to do so during litigation." *Herterich*, at 1142 (emphasis added). [4]

Even the DA's allegations that the Defendants have violated criminal statutes in their pre-litigation conduct, including those related to attorney misconduct, do not take this case outside of the litigation privilege when made in the context of a civil lawsuit.   As noted by the California Supreme Court in *Silberg*:

> We observe, however, that in a good many cases of injurious communications, other remedies aside from a derivative suit for compensation will exist and may help deter injurious publications during litigation. Examples of these remedies include ***criminal prosecution*** for perjury (Pen. Code, § 118 et seq.) or subornation of perjury (Pen. Code, § 653f, subd. (a)); criminal prosecution under Business and Professions Code, section 6128; and State Bar disciplinary proceedings for violation of Business and Professions Code, section 6068, subdivision (d).

---

[4] The Defendants also note the public policy rationale outlined in *Herterich* that the proper place to challenge issues of standing and misrepresentations in pleadings40 is "during litigation" and among the "parties," to whom the full panoply of discovery, motion practice, sanctions and other means are available to "ferret out the truth." *Id.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Kashian*, at 920 (emphasis added); *see Rubin*, at 1196 (dismissal of Section 17200 claim proper based on litigation privilege even where "gravamen of plaintiff's complaint … is that the methods employed by the law firm … amounted to conduct the Legislature has made criminal.")

The policy considerations underlying the litigation privilege further the conclusion that application of the privilege is required. The DA's lawsuit is not a criminal proceeding in which the application of the privilege could differ. For example, the Defendants acknowledge that an individual criminally charged with perjury may not invoke the litigation privilege as an absolute defense. But this action is *not* a criminal proceeding; rather, it is a civil derivative tort claim against the Defendants based on protected litigation activity. Such derivative lawsuits are precisely what the litigation privilege is intended to prevent. *See Silberg*, at 213 ("The principal purpose of section [47(b)] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."); *see also Hagberg*, at 371 (the existence of alternative criminal sanctions supports an "expansive view of the privilege in civil actions."). For all of these reasons, the Complaint fails to state a cause of action because all of the conduct it alleges is protected by the litigation privilege.

## VII.   THE 17500 CLAIM IS BARRED BECAUSE THE CONDUCT ALLEGED IS NOT ADVERTISING

Section 17500 has come to be known as California's "False Advertising Law." It prohibits untrue or misleading advertising that is known, or which reasonably should be known, to be untrue or misleading. *See Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983) (application to marketing of sugary breakfast cereals to children); *Fletcher v. Security Pacific Nat'l Bank* 23 Cal.3d 442 (1979) (application to misrepresentations regarding per annum interest rates); *see Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 679 ("In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself.") (internal quotations omitted). The statute itself makes clear that the statements it exists to limit are those "connected with the proposed performance or disposition" of "real or personal property or … services …." which are disseminated "with the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

1   intent not to sell that personal property or those services … so advertised at the price stated

2   therein, or as so advertised."  Even under the most strained definition of "advertising," the

3   statements at issue must be made in connection with the sale of a product or service.  *See,*

4   *e.g., Chern v. Bank of America*, 15 Cal.3d 866, 875-876 (1976) (statements over telephone by loan

5   officers regarding interest rates being charged are "advertising.")

6          It should come as no surprise then that the case law interpreting and applying Section

7   17500 occur almost exclusively in the context of the sale of goods and services.  Consistent with

8   this, Defendants are not aware of any case law interpreting the filing of ADA lawsuits as

9   "advertising."  *See, e.g., Ford Dealers Ass'n v. Dept. of Motor Vehicles* 32 Cal.3d 347 (1982)

10  (one-on-one sales pitches by door-to-door sales solicitors are "advertising" within the meaning of

11  section 17500); *People v. Sup.Ct.* 9 Cal.3d 283 (1973) (oral representations regarding

12  encyclopedias by door-to-door salesmen are "advertising" within the meaning of section

13  17500); *Feather River Trailer Sales, Inc. v. Sillas*, 96 Cal.App.3d 234 (1979) (oral representations

14  by car salesman to potential customer constitute "advertising").

15         This case has nothing to do with any sort of false advertising.  Instead, the entire

16  Complaint relates to the filing of allegedly unsubstantiated ADA lawsuits.  As such, the DA's

17  Section 17500 must be dismissed for failure to state a claim.

18  **VIII.   CONCLUSION**

19         The Complaint fails to state a cause of action because all of the conduct alleged therein

20  constitutes protected petitioning activity and is further (and separately) protected by California's

21  litigation privilege.  Additionally, the Complaint fails to state a claim under Section 17500

22  because none of the conduct or statements are properly considered "advertising" for purposes of

23  the statute.  For these reasons, the Defendants' demurrer should be sustained without leave to

24  amend.

25  Dated:  June 12, 2019                                   **CALLAHAN & BLAINE, APLC**

26                                                                    By: _____

27                                                                           David J. Darnell
                                                                              Drew Harbur
28                                                                           Attorneys for Defendants

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**PROOF OF SERVICE**

(CODE CIV. PROC. § 1013A(3))

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is **3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707**.

    On June 12, 2019, I served the following document(s) described as

**NOTICE OF DEMURRER AND DEMURRER BY DEFENDANTS TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this action by placing: ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

Please see attached "Service List"

☒    **BY MAIL:**  I deposited such envelope in the mail at Santa Ana, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐    **BY PERSONAL SERVICE:**  I caused such envelope to be hand delivered by Nationwide Legal to the addressees below.

☐    **BY FEDERAL EXPRESS**:  I deposited such envelopes at Santa Ana, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express.  They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

☐    **BY EMAIL:**  I transmitted the foregoing documents by electronic mail to the party(s) identified on the attached service list by using the electronic mail as indicated.  Said electronic mail was verified as complete and without error.

    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

    Executed on June 12, 2019, at Santa Ana, California.

_____
Jane Nichols

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

<u>**SERVICE LIST**</u>

<u>**The People of the State of California v. Rutherford, et al.**</u>
**Case No. RIC1902577**

| | |
|---|---|
| MICHAEL A. HESTRIN<br>District Attorney<br>Riverside County<br>MICHAEL B. SILVERMAN<br>Chief Deputy District Attorney<br>KAMARIA A. HENRY<br>Managing Deputy District Attorney<br>TIMOTHY S. BROWN<br>Deputy District Attorney<br>3960 Orange Street<br>Riverside, CA 92501<br>(951) 955-5400 | Attorneys for Plaintiff |

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

Proof of Service