**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**MANNING LAW, APC**
Joseph R. Manning, Jr. Esq. (223381)
joe@manninglawoffice.com
Michael J. Manning, Esq. (286879)
mike@manninglawoffice.com
4667 MacArthur Boulevard, Suite 150
Newport Beach, CA 92660
Telephone: (949) 200-8755
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs,*
James Rutherford; and, The Association 4 Equal Access

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS, <br><br> Plaintiffs, <br><br> v. <br><br> EVANS HOTELS, LLC, a California limited liability company, and Does 1 to 50, <br><br> Defendants. | Case No.: 18-cv-0435-JLS-BGS <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING ARTICLE III STANDING** <br><br> Hon. Janis L. Sammartino |

1

2

# **TABLE OF CONTENTS**

3

I.    The July 1, 2019, Evidentiary Hearing…………………………………2

II.   Questions Presented……………………………………………………...2

III.  PageFreezer And The Admissibility Of Archived Websites………………3

   A.   PageFreezer's Website Archives
        Are Admissible Under Rule 901(a)………………………………4

   B.   PageFreezer's Website Archives
        Are Relevant Under Rule 401 ……………………………………6

   C.   Hearsay Exception Rule 803(6)
        Applies To The Website Archives……………………………...7

IV    CREEC And Spokeo Are In Accord Regarding ADA Standing ……….…...7

   A.   The CREEC Decision………………………………………………8

   B.   The Spokeo Decision…………………………………………...9

        1.   Plaintiffs Suffered Particular and Concrete Injury……………9

        2.   Plaintiffs' Encounter Of A Violation
             Of A Statutory Right Also Establishes
             Injury Sufficient for Article III Standing………………………13

             a.   The ADA Was Established To Protect
                  Persons With Disabilities' Concrete Interests
                  Of Full And Equal Access………………………………14

             b.   The Specific Violations Of 28 C.F.R. § 36.302(e)
                  Alleged In This Case Actually Harm, Or Present A
                  Material Risk Of Harm To Concrete Interests Of
                  Persons With Disabilities …………………………………16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.    Plaintiff Need Only Establish That He Intends to Return To The Websites
      And Not The Hotels, But He Has Established Both…………………………18

VI.   A4EA Has Standing……………………………………………………………19

      A.    A4EA's Members Mr. Rutherford
            And Ms. Filardi Have Standing……………………………………20

      B.    The Interests A4EA Seeks To Protect
            Are Germane To Its Purpose………………………………………20

      C.    A4EA Participate For Injunctive Relief Asserted By A4EA…………21

VII.  Conclusion………………………………………………………………...21

# TABLE OF AUTHORITIES

**Page(s)**

**U.S. Supreme Court Cases**

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982)..........................................................................................8

*Hunt v. Wash. State Apple Advertising Comm'n,*
   432 U.S. 333 (1977)......................................................................19, 20, 21, 22

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)........................................................................................18

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016)..............................................................................*passim*

**Other Federal Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
   643 F.3d 1165 (9th Cir. Cal. 2010)..................................................................8

*United States of America v. Bansal,*
   663 F.3d 634 (3rd Cir. 2011) ...................................................................4, 6, 7

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
   631 F.3d 939 (9th Cir. 2011) ...........................................................15, 16, 18

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust,*
   867 F.3d 1093 (9th Cir. 2017) ................................................................*passim*

*Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.,*
   901 F.2d 107 (D.C. Cir. 1990)........................................................................20

*Doran v. 7-Eleven, Inc.,*
   524 F.3d 1034 (9th Cir. 2008) .......................................................................22

*United States of America v. Gasperini,*
   Case No. 17-2479 (2nd Cir. July 2, 2018) (attached as **Exhibit 1** to
   Request for Judicial Notice) ....................................................................4, 5, 6

*Pickern v. Holiday Quality Foods Inc.,*
   293 F.3d 1133 (9th Cir. 2002) .......................................................................13

*Robins v. Spokeo, Inc.,*
   867 F.3d 1108 (9th Cir. 2017). ...................................................................*passim*

*Robles v. Domino's Pizza, LLC,*
   913 F.3d 898 (9th Cir. 2019) ...........................................................................18

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson,*
   573 F.3d 1186 (11th Cir. 2009) .........................................................................3

*Warth v. Seldin,*
   422 U. S. 490 (1975).........................................................................................21

**WestLaw Cases**

*Keystone Retaining Wall Sys., Inc. v. Basalite Concrete Prods., LLC,*
   2011 WL 6436210 (D. Minn. 2011).......................................................................3

*Mahmood v. Research in Motion Ltd.,*
   2012 WL 242836 (S.D.N.Y. 2012)..........................................................................4

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,*
   2004 WL 2367740 (N.D. Ill. 2004) .......................................................................4

**Statutes**

42 U.S.C. § 12101(b)(1) & (2)..........................................................................15, 17

42 U.S.C. § 12182(a) .....................................................................................15, 18

42 U.S.C. § 12188(a)(1).......................................................................................13

ADA ..........................................................................................................13, 15

Civil Code § 52(a)...............................................................................................21

Fair Housing Act ..................................................................................................8

FCRA .............................................................................................14, 15, 16, 17

**Internet Citations**

https://public3.pagefreezer.com/browse/Bahia%20Hotel%20-
   %2061919/19-06-2019T12:16/https://www.bahiahotel.com/.............................5

https://public3.pagefreezer.com/browse/Bahia%20Hotel/15-06-
   2018T17:40/http://bahiahotel.com/ .......................................................................5

https://public3.pagefreezer.com/browse/Bahia%20Hotel/18-01-
2018T14:55/http://bahiahotel.com/ ...................................................5

https://public3.pagefreezer.com/browse/Catamaran%20Resort/15-06-
2018T17:46/https://catamaranresort.com/ ..........................................6

https://public3.pagefreezer.com/browse/Catamaran%20Resort/18-01-
2018T15:04/https://catamaranresort.com/ ..........................................6

https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines%2
0-%2061919/19-06-2019T12:40/https://www.lodgetorreypines.com/ ...............6

https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines/15-
06-2018T17:53/https://www.lodgetorreypines.com/..........................................6

https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines/18-
01-2018T14:57/https://www.lodgetorreypines.com/..........................................6

PageFreezer, https://www.pagefreezer.com (last visited July 31, 2019)...................3

Wayback Machine: Frequently Asked Questions, INTERNET
ARCHIVE, http://www.archive.org/about/faqs.php (last visited July
31, 2019) ...................................................................................3

Wayback Machine, Internet Archive, http://archive.org/web/web.php
(last visited July 31, 2019)..................................................................3

**Other Authorities**

28 C.F.R. § 36.302(e)...............................................................7, 16, 17

Federal Rule of Evidence 401 ..........................................................6, 7

Federal Rule of Evidence 801(d)(2) .......................................................7

Federal Rule of Evidence 803(6) .........................................................7

Federal Rule of Evidence 901 ......................................................4, 5, 6, 7

S. Rep. No. 91-517 (1969) .............................................................14

## I.   The July 1, 2019, Evidentiary Hearing

On July 1, 2019, the Court held an Evidentiary Hearing wherein Plaintiffs offered testimonial and documentary evidence regarding Plaintiffs' Article III standing. Specifically, Plaintiffs submitted evidence that shows that:

- Plaintiff Rutherford and Claimant Filardi are disabled and they personally encountered discrimination by virtue of Defendant's discriminatory policies prior to filing the Complaint (Official Transcript of July 1, 2019, Evidentiary Hearing [Dkt No. 78] ("Evid. Hearing") at p. 6–150);

- Defendant's reservations systems provided on the websites www.bahiahotel.com; www.catamaranresort.com, and, www.lodgetorreypines.com (collectively, the "Websites") were defective because they failed to provide necessary and material information about hotel rooms and the hotels themselves to allow Plaintiff Rutherford to make a reservation (Evid. Hearing at p. 30–43; 102– 107; 108–112; 121– 127; 139–140; 144; 147–150; *Joint Exhibit List*, Exhibits 2–4; Exhibit 2: Declaration of Michiel Riedijk, PageFreezer's CEO and Custodian of Records ("Riedijk Decl."));

- Plaintiff Rutherford is committed to return to the Websites to both enjoy the goods and services offered at Defendant's hotels and to test Defendant's compliance with the law (Evid. Hearing at p. 30–43; 102–107; 147–150); and

- Plaintiff The Association 4 Equal Access ("A4EA") also has standing. (Evid. Hearing at p. 6–150).

## II.   Questions Presented

At the Hearing, the Court asked counsel additional questions about the admissibility of archived websites and Plaintiffs' standing, and ordered the parties to submit briefing on these issues.  The Questions Presented are as follows:

1.   What is PageFreezer and why are the archived documents submitted to the court admissible? (Evid. Hearing at 158:4-5)

2.   How does *Civil Rights Educ. and Enforcement Center v. Hospitality Props.*

1
2

*Trust*, 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*") change the law regarding standing for ADA Plaintiffs? (Evid. Hearing at 152:6-7; 157:4-6)

3.  Does Mr. Rutherford have to establish that he intends to return either to Defendant's websites, hotels, or both? (Evid. Hearing at 154:11-13; 157:21-22)

4.  Is there a scenario where Mr. Rutherford establishes standing but AE4A does not? (*Id.* at 156:25-157:3)

## III.   PageFreezer And The Admissibility Of Archived Websites

PageFreezer is a company that provides a service through PageFreezer.com[1] and WebPreserver.com that allows people to visit archived versions of websites. (Riedijk Decl. ¶ 1) The archived snapshots of web pages that PageFreezer takes are made at the time they are timestamped on each snapshot and are accurate digital copies of those web pages at the time they are archived. (Riedijk Decl. ¶¶ 1-2).

Similar to PageFreezer, the website archive service The Wayback Machine[2] is a service provided by the Internet Archive that also allows people to visit archived versions of websites,[3] and archived websites provided by the Internet Archive have been admissible in several federal district courts when authenticated by way of affidavit or declaration from an Internet Archive representative.[4]

---

[1] PageFreezer, https://www.pagefreezer.com (last visited July 31, 2019).

[2] The Wayback Machine, Internet Archive, http://archive.org/web/web.php (last visited July 31, 2019).

[3] The Wayback Machine: Frequently Asked Questions, INTERNET ARCHIVE, http://www.archive.org/about/faqs.php (last visited July 31, 2019)

[4] *See e.g., St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 2006 WL 1320242, at *2 (M.D.Fla. 2006) (holding that printouts from a website could be authenticated by "a statement or affidavit from an Internet Archive representative with personal knowledge of the contents of the Internet Archive website"), aff'd, 573 F.3d 1186 (11th Cir. 2009); *Keystone Retaining Wall Sys., Inc. v. Basalite Concrete Prods., LLC*, 2011 WL 6436210, at *9 n.9 (D. Minn. 2011) (citing cases that accepted

**A.      PageFreezer's Website Archives Are Admissible Under Rule 901(a)**

Fed. R. Evid. 901(a) requires that before evidence is admitted, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Rule 901(b)(1) requires that before evidence is admitted, its proponent must produce evidence "sufficient to support a finding that it is what it purports to be."

Application of Rule 901 and the admissibility of archived websites has been approved by at least two United States Circuit Courts of Appeals.  In *United States of America v. Bansal*, 663 F.3d 634 (3rd Cir. 2011), a witness testified "from personal knowledge" how the Wayback Machine worked and how reliable it was. (*Bansal*, 663 F.3d at 667.)  The *Bansal* court held that this provided "sufficient proof" that the archived web pages were authentic and rendered them admissible under Fed. R. Evid. 901(b)(1). (*Id.*)

More recently, in *United States of America v. Gasperini*, Case No. 17-2479 (2nd Cir. July 2, 2018) (attached as **Exhibit 1** to Request for Judicial Notice), the appellant challenged an evidentiary ruling that permitted introduction of screenshots of various websites taken by the Internet Archive. (*Gasperini* at 14.)  The court of appeals affirmed the district's finding that the archived screenshots had been sufficiently authenticated by an office manager of the Internet Archive, who "explained how the Archive captures and preserves evidence of the contents of the internet at a given time" and "testified that the screenshots were authentic and accurate copies of the Archive's records", and that the Federal Rule of Evidence

---

affidavits as sufficient to authenticate for the proposition that "[t]he Internet Archive has existed since 1996, and federal courts have regularly accepted evidence from the Internet Archive"); *Mahmood v. Research in Motion Ltd.*, 2012 WL 242836, at *4 n.2 (S.D.N.Y. 2012) (rejecting plaintiff's argument that the website snapshot is "'not authenticated'" by citing the affidavit of the Office Manager of the Internet Archive); *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 WL 2367740, at *6 (N.D. Ill. 2004) (admitting evidence from the Internet Archive as properly authenticated by an affidavit from the Internet Archive).

Rule 901(a) "standard was amply met." (*Id.* at 15.)

The archived websites and provided by PageFreezer and authenticated by PageFreezer's CEO and custodian of records likewise amply meets the Rule 901 standards.

Michiel Riedijk, the CEO and a custodian of records for PageFreezer (Riedijk Decl. ¶ 1), stated in his declaration made under penalty of perjury that: PageFreezer operates software that takes digital, authenticated snapshots of web pages and other digital assets that are published on the Internet (*Id.* ¶ 2); the archiving of accurate digital snapshots of web pages, are found in the business records of PageFreezer (*Id.* ¶ 3); the archived snapshots of web pages are made at the time they are timestamped on each snapshot, and are accurate digital copies of those web pages at the time they are archived, and are created by people with first-hand knowledge of those events and conditions (*Id.*); taking digital snapshots of web pages that are published on the Internet is a regular practice of PageFreezer's business activities (*Id.*); and Mr. Riedijk has personal knowledge of the facts and authenticity of the records attached to and referenced in his declaration. (*Id.*)

Further, Mr. Riedijk declared that the Uniform Resource Locators ("URL") of each of the Websites Hostname and their many Paths of the URLs were accurately preserved in digital format as each of those web pages existed on January 18, 2018, June 15, 2018, and June 19, 2019. (*Id.* ¶¶ 4-21).  Mr. Riedijk provided the URLs of each of the archived websites and attached printouts of each of them as Exhibits A – C thereto (*Id.*) (*Joint Exhibit List, Exhibits 2–4*).[5]

---

[5] The archived websites of each of the Websites on as they existed on January 18, 2018, June 15, 2018, and June 19, 2019, can be accessed here:
https://public3.pagefreezer.com/browse/Bahia%20Hotel/18-01-2018T14:55/http://bahiahotel.com/
https://public3.pagefreezer.com/browse/Bahia%20Hotel/15-06-2018T17:40/http://bahiahotel.com/
https://public3.pagefreezer.com/browse/Bahia%20Hotel%20-%2061919/19-06-2019T12:16/https://www.bahiahotel.com/

With identical authentication facts as *United States of America v. Gasperini* and *United States of America v. Bansal*, and the many district courts throughout the country, Plaintiff has met the standards of Rule 901 to authenticate the archived websites as the Websites existed on January 18, 2018, June 15, 2018, and June 19, 2019.

**B.    PageFreezer's Website Archives Are Relevant Under Rule 401**

These website archives are highly relevant under Rule 401 because on the date the archive was captured, if anything, the Websites would have only *added* accessibility-related content since the lawsuit was filed and not removed such content.  Furthermore, Defendant is in the best position to present evidence of accessibility-related content on the Websites prior to the filing of this lawsuit and has not done so. This is the *only* available documentary evidence that shows how the Websites have changed since the case was filed on January 18, 2018, through June 19, 2019.  The website archives recorded changes of descriptions of accessible features (or lack thereof) at the hotels and are cornerstone facts for this case. Accordingly, the archived websites are vital evidence that easily meets the standard of Rule 401 to have a tendency to make a fact more or less probable than it would be without the evidence – whether Defendant's online-reservation system contained descriptions of accessible features with sufficient specificity for Plaintiff to know

---

https://public3.pagefreezer.com/browse/Catamaran%20Resort/18-01-2018T15:04/https://catamaranresort.com/
https://public3.pagefreezer.com/browse/Catamaran%20Resort/15-06-2018T17:46/https://catamaranresort.com/
https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines/18-01-2018T14:57/https://www.lodgetorreypines.com/.
https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines/15-06-2018T17:53/https://www.lodgetorreypines.com/
https://public3.pagefreezer.com/browse/Lodge%20Torrey%20Pines%20-%2061919/19-06-2019T12:40/https://www.lodgetorreypines.com/.

whether the hotels met his accessibility needs (28 C.F.R. § 36.302(e)(1)) – and therefore also contain facts of consequence in determining the action.

### C. Hearsay Exception Rule 803(6) Applies To The Website Archives

To the extent the website archives might be hearsay as the Defense argued (Evid. Hearing at 111:12-23), Rule 803(6) creates a hearsay exception for business records that: "(1) Were made at or near the time of the event the record describes; (2) Were made by a person with knowledge of the record's contents; (3) Were kept in the regular course of business." Rule 803(6) further provides that the above prerequisites may be established by the testimony of a record custodian, either in person or by sworn declaration.  The hearsay exception of Rule 803(6) is unmistakably met for the same reasons that the website archives are authenticated by Mr. Riedijk.[6]  This Rule 803(6) hearsay exception was also applied by the *Bansal* court. (*Bansal*, 663 F.3d at 666.)

In sum, the declaration of CEO and custodian of records for PageFreezer, Mr. Riedijk, amply authenticates the website archives of the Websites under Fed. R. Evid. 901, they are highly relevant under Rule 401, and hearsay exceptions apply under Rule 803(6). The website archives of the Websites recorded by PageFreezer are therefore admissible.

### IV    *CREEC* **And** *Spokeo* **Are In Accord Regarding ADA Standing**

The Court asked counsel how the Ninth Circuit's 2017 decision in *CREEC* changed the law regarding standing for ADA plaintiffs. (Evid. Hearing at 152:6-7; 157:4-6)  Both counsel for Plaintiff and Defendant stated that *CREEC* did not. (*Id.* at

---

[6] Additional hearsay exceptions are available. For instance, courts reject hearsay objections to testimony generated by a machine, such as a screen read of a clock. (*See Christopher B. Mueller & Laird C. Kirkpatrick, Evidence Under The Rules 122* (7th ed. 2011).) Here, PageFreezer is archived screen shots taken by software on the date and time indicated on each screenshot, which meets the machine exception to hearsay.  Also, Fed. R. Evid. 801(d)(2) provides that an opposing party's statement offered against the opposing party is not hearsay, which applies because the contents of Defendant's Websites are Defendant's own statements offered against Defendant.

7

152:8-9; 157:7)

### A.   The *CREEC* Decision

The *CREEC* decision did not change the law regarding standing for ADA plaintiffs, but applied case law from the Tenth and Eleventh Circuits, along with the United States Supreme Court, that recognized that standing in ADA lawsuits does not require bona fide patron status, and that tester status suffices.[7]   The *CREEC* Court analogized tester status of plaintiffs under the ADA to United States Supreme Court precedent, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–74 (1982), in which the Supreme Court held that testers have standing to sue under the Fair Housing Act. (*CREEC*, 867 F.3d at 1096 (9th Cir. 2017)).

> "Accordingly, the court reasoned, a plaintiff's status as a tester does not deprive her of the right to sue for injunctive relief under § 12182(a). *Id.* at 1332–34. The Tenth Circuit has also held that tester standing is viable under Title III of the ADA. *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1210–11 (10th Cir. 2014). The *Colorado Cross* court noted that "Title III provides remedies for 'any person' subjected to illegal disability discrimination." *Id.* at 1211 (quoting 42 U.S.C. § 12188(a)). **Thus, it concluded that 'anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion.'** *Id.* We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA. The Named Plaintiffs' status as ADA testers thus does not deprive them of standing." (emphasis added)

(*Id.; See also Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. Cal. 2010).)

Nothing in the *CREEC* decision regarding bona fide or tester motivation status infringes on established case law or contradicts the concrete injury requirement of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and the defense has acknowledged as much.[8]

---

[7] Plaintiff Rutherford has established his status as both a bona fide customer and as a tester.  (Evid. Hearing at 106:20-107:9; 148:2-20)

[8] "<u>The Court</u>: Okay. Do you want to comment on *CREEC* and whether or not it changed the law regarding standing for the ADA.  <u>Ms. Bermudez</u>: It did not, your honor." (Evid. Hearing at 157:4-7)

### B.   The *Spokeo* Decision

At the Evidentiary Hearing, the defense argued that an injury has to be concrete, must be actual or imminent, and not be abstract, conjectural or hypothetical, and that Mr. Rutherford and Ms. Filardi suffered no such injury. (Evid. Hearing at 157:7-19).  The defense misstated Mr. Rutherford and Ms. Filardi's testimony at the Evidentiary Hearing and other evidence admitted, and misstated the full concrete injury inquiry of *Spokeo*, as elaborated on remand in the Ninth Circuit. (*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017). ("*Spokeo Remanded*")

### 1.   *Plaintiffs Suffered Particular and Concrete Injury*

Indeed, the Supreme Court held that to establish Article III standing, there must be an injury that is "real" and not "abstract" or merely "procedural" (*Spokeo, Inc.*, 136 S. Ct. at 1549).  Plaintiffs have suffered such real concrete injury as shown by the record of the examination of Mr. Rutherford.

<u>*Mr. Rutherford and Ms. Filardi wanted to stay at Evans' hotels*</u>:

Q:   Did you have a reason for looking into staying at an Evans property?
A:   Yes. I wanted to stay there.
(Evid. Hearing at 29:6-8)

Q:   Did you do this alone, or did you do this with someone else?
A:   [Patricia Filardi] looked at [the hotel websites] as well.
Q:   And why was that?
A:   Well, she was going to stay there with me.
(Evid. Hearing at 30:1-5)

<u>*Mr. Rutherford encountered access barriers on the Websites*</u>:

Q:   What information did you find regarding accessibility of the Catamaran website?
Q:   Nothing that would help me to be able to make a determination as to whether or not I wanted to stay there.
Q:   Is it your recollection – what's your best recollection specifically about the information regarding the accessible nature of the rooms at the Catamaran?
A:   I think they said they have accessible rooms.
Q:   And is that sufficient?  Was that sufficient for you?
A:    No.

9

Q:      And why not?

A:      Because it doesn't give me any detail about what is going to be in the room, if it's going to have a roll-in shower.  It says nothing.

Q:      And do you recall any information regarding the accessibility of the property itself.

Q:      I don't recall seeing anything regarding that.  I don't know.

(Evid. Hearing at 30:1-17)

*Because of the access barriers on the Websites, Plaintiff Rutherford could not make a reservation*:

Q:      As a result of investigating or visiting these websites, did you determine that you could or could not make a reservation for an accessible room at any of these hotels?

Q:      Unfortunately, I wasn't (pause) – I came to the conclusion that there was – it was devoid of any meaningful information that would allow me to make a decision on renting an accessible room for myself and Patty.

(Evid. Hearing at 36:7-13)

*Mr. Rutherford has returned to the Websites, encountered access barriers, and he could not make a reservation*:

Q:      Have you returned to any of the Evans Hotels' websites since filing this case?

A:      Yes.

Q:      Okay. And which ones?

A:      I believe all three, if I can recall correctly.

Q:      And what was the purpose of that?

A:      To reserve a room.

Q:      Okay.  Do you recall when that was?

A:      Yes.

Q:      When was it?

A:      Directly before my second deposition, or my, the second phase of my deposition in San Diego.

Q:      Okay.  And so it related to planned travel to San Diego for your deposition?

A:      Correct.

Q:      Did you reserve a room?

A:      No.

Q:      Why not?

A:      Because of these what I perceived as being obstacles to being able to reserve a room.

(Evid. Hearing at 41:24-42:18)[9]

*Mr. Rutherford visited the Websites because he wanted to stay at Evans' hotels as a customer*:

Court: For what particular reason did you wish to stay at the Catamaran Resort Hotel and Spa in January of 2018?

A:     Sure.  The Catamaran – these are resorts.  They're – They have a very good reputation.  They are places where you can go and have a good time, spend some time.  That was our intention.  Our intention was to go someplace where we could really enjoy ourselves, get away, spend a few days there and just enjoy being away from the desert, which is where we're from.  So that's, I guess the answer.

Q:     And for what particular reason did you wish to stay at the Bahia Resort Hotel?

A:     I think it's the same, same reason.

Q:     And my third question is: For what particular reason did you wish to go and stay at the lodge at Torrey Pines, Sir?

A:     Right, and the Lodge at Torrey Pines is what started it all.  My fiancée Patty's uncle had stayed there at one point, and he was effusive about how great it was to be there and how much he enjoyed himself, and so I guess the short answer is, you know, a recommendation, referral.

(Evid. Hearing at 148:2-20)

*Mr. Rutherford also visited the Websites as a tester*:

---

[9] Defendant has explicitly stated in its responses to discovery and deposition testimony, including but not limited to responses to requests for admission, that guests reserving rooms with accessible features through the Websites must wait for a second email confirming that an accessible room has been "hard blocked", and there is no policy with regard to how long a person with disabilities must wait for this second email. (*See* Plaintiff's January 1, 2019, *Motion to Certify Class*) [Dkt No. 45]; Plaintiffs' June 30, 2019, *Motion in Limine to Exclude Evidence*, [Dkt No. 73]) Rutherford became aware these additional policy barriers through his review of Defendant's various responses to discovery, but he was not allowed to testify regarding his knowledge of these barriers because he did not book a room and the defense objected based on a lack of personal knowledge. (Evid. Hearing 37:22-40:7)

This is contrary to the ruling in *CREEC* where class representative plaintiffs were permitted to testify regarding knowledge of barriers even though they did not book a room. (*CREEC*, 867 F.3d at 1101.)  Mr. Rutherford's testimony as to Defendant's other policy barriers should be permitted despite his knowledge due to its source and case law does not support exclusion of this testimony.

Q:      Mr. Rutherford, why is it that you filed this lawsuit against Evans Hotels?

A:      Well, two reasons. As a tester for the disabled. I file lawsuits on behalf of the disabled as a tester.

Q:      What is a tester?

A:      Someone who experiences the barriers to access, physical barriers to access. Sometimes, I guess, policy.

Court:  Sometimes what, sir?

A:      Policy. I'm sorry. Policy procedures, ma'm. Someone who experiences mainly the physical barriers to access a facility to determine if they're complying or not.

Q:      Okay. And in the case of Evans, what kind of barriers are you challenging.

A:      I'm challenging accessibility of their website.

(Evid. Hearing at 106:20-107:9)

*If the Websites' accessibility issues are addressed then Mr. Rutherford will stay at the hotels:*

Court:  Okay. Now, if the website accessibility issues that you've alleged in your complaint are addressed, do you intend to stay at the Catamaran?

A:      No question. Yes, ma'am.

Q:      Okay. The Bahia?

A:      Yes, I would like to stay at the Bahia.

Q:      The Lodge at Torrey Pines?

A:      Particularly the lodge at Torrey Pines.

(Evid. Hearing at 148:21-149:3)

*Mr. Rutherford has the means to visit all of the Evans' hotels:*

Court:  Okay. How many, approximately, nights per year can you afford overnight at a hotel in Southern California?

Q:      How many nights per year could we afford to stay overnight in Southern California? I don't know, but we could probably stay 30, 40, 50, 60 days if we wanted to, overnight.

(Evid. Hearing at 106:20-107:9)

*Mr. Rutherford has returned to other businesses as a customer and to check ADA compliance:*

Court:  I'm going to ask you the same question on an establishment or a hotel –

A:      Yes.

Q:      -- that you've sued for ADA compliance. Have you ever returned there?

A:      Yes, ma'am.

Q:     And given business to the establishment, or are you checking for ADA
       compliance?
A:     For both, ma'am.
(Evid. Hearing at 150:8-16)

  The record without a doubt shows that Plaintiff Rutherford (1) visited the Websites for the dual purposes of staying at Defendant's hotels as a bona fide customer and as a tester, (2) encountered barriers to access and discrimination that prevented him full and equal access, (3) visited the Websites *again* during the pendency of this action as a customer and as a tester, and again encountered barriers to access, (4) plans to stay at each of Defendant's hotels if the barriers to access are eliminated,[10] (5) can afford to stay at Evans' hotels in the future, (6) and he has revisited other businesses as a customer and to test access.  There is more than sufficient evidence of tangible, concrete, and repeated discrimination that prevented Mr. Rutherford from enjoying the services of Defendant's places of public accommodation on multiple occasions.[11] The record confirms that the danger of future harm is imminent and Plaintiff has suffered particular and concrete injury-in-fact sufficient to confer standing under *Spokeo*.

### 2.     *Plaintiffs' Encounter Of A Violation Of A Statutory Right Also Establishes Injury Sufficient for Article III Standing*

  Even if Plaintiff Rutherford suffered only a procedural and intangible harm

---

[10] "Harm is 'concrete and particularized,' and intent to visit the hotels once they provide equivalent [access] for the disabled renders their harm 'actual or imminent, not conjectural or hypothetical.'" (*CREEC*, 867 F.3d at 1099.) (*citing Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)) *(CREEC*, 867 F.3d at 1101.)("a plaintiff need not engage in a 'futile gesture' to establish Title III standing if she is on notice that the establishment 'does not intend to comply' with the ADA. 42 U.S.C. § 12188(a)(1).") (*See also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002).)("under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").

[11] Plaintiff Rutherford's testimony at the Evidentiary Hearing is consistent with his deposition and declaratory testimony. (*See* Plaintiff's June 20, 2019, *Trial Brief Evidentiary Hearing Brief* .) [Dkt. No. 69]

(his harm is not procedural or intangible, as evinced *supra*), congressional judgment still plays an important role in the concreteness inquiry, especially in cases in which the plaintiff suffered an intangible harm. *See Spokeo, Inc.*, 136 S. Ct. at 1549. The Supreme Court explained, "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "Because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is . . . instructive and important." *Id.* "Congress may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" (*Id.*) (alteration omitted) (*quoting Lujan*, 504 U.S. at 578 (1992)). And "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." (*Id.*)

In *Spokeo Remanded*, the Ninth Circuit evaluated "(1) whether the statutory provisions at issue [FCRA statute] were established to protect [Robin's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm, to such interests." (*Spokeo, Inc.*, 867 F.3d at 1113 (9th Cir. 2017).)

     a.     *The ADA Was Established To Protect Persons With Disabilities' Concrete Interests Of Full And Equal Access*

As to the first question, the *Spokeo Remanded* court "observed that FCRA 'was crafted to protect consumers from the transmission of inaccurate information about them' in consumer reports." (*Spokeo, Inc.*, 867 F.3d at 1113. (*quoting Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *citing Spokeo Inc.*, 136 S. Ct. at 1550 (Congress enacted FCRA to "curb the dissemination of false information"); S. Rep. No. 91-517, at 1 (1969) ("The purpose of the fair credit reporting bill is to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.") "'To achieve this end,' FCRA imposes on consumer-reporting agencies 'a host of [procedural] requirements

concerning the creation and use of consumer reports' and, as mentioned, allows individuals to sue those which are non-compliant." (*Spokeo, Inc.*, 867 F.3d at 1113 (*quoting Spokeo, Inc.*, 136 S. Ct. at 1545.))

The *Spokeo Remanded* court concluded that, "guided by both Congress's judgment and historical practice" … "the FCRA *procedures at issue in this case were crafted to protect consumers' (like Robins's) concrete interest in accurate credit reporting about themselves*." (*Spokeo, Inc.*, 867 F.3d at 1115.)(emphasis added).

Here, also guided by Congress' purpose of the ADA and historical practice, the *ADA and its regulations were crafted to protect persons with disabilities' concrete interests for the elimination of discrimination and barriers to access*. Congress enacted the ADA to provide, *inter alia*: (1) "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;" and (2) "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." (42 U.S.C. § 12101(b)(1) & (2).) Title III of the ADA advances that goal by providing: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

The ADA's "passage was premised on Congress's finding that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative animus.'" (*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (quotation omitted).) The concept of "discrimination" under the ADA extends not only to "obviously exclusionary conduct" but also "proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and

1  equal enjoyment' of places of public accommodation." (*Id.* at 945.)

2       Just as the FCRA's procedures were crafted to protect consumers, Congress

3  enacted the ADA and the Department of Justice promulgated specific enforceable

4  regulatory standards, including 28 C.F.R. § 36, to protect persons with disabilities'

5  and eliminate discrimination of civil rights and barriers to access.  Consequently, the

6  statutory provisions at issue were established to protect concrete interests (as

7  opposed to purely procedural rights) of persons with disabilities, like Mr.

8  Rutherford.

9            *b.*     *The Specific Violations Of 28 C.F.R. § 36.302(e)*

10                 *Alleged In This Case Actually Harm, Or Present A*
                *Material Risk Of Harm To Concrete Interests Of*

11                 *Persons With Disabilities*

12      In *Spokeo Remanded*, the Ninth Circuit grappled with whether "Spokeo's

13 alleged violation of Section 1681e(b) is enough to show harm to the statute's

14 underlying concrete interests" by preparing a report that contained inaccurate

15 information about Robins.  (*Spokeo, Inc.*, 867 F.3d at 1116.)  The court recognized

16 that this "requires examination of the *nature* of the reporting inaccuracies to ensure

17 that they raise a risk of harm to the concrete interests that FCRA protects." (*Id.*)

18      Unlike misinformation of an erroneous zip code, the *Spokeo Remanded* court

19 found that the plaintiff's "allegations relate facts that are substantially more likely to

20 harm his concrete interests." (*Id.*)  The court acknowledged that the inaccurate

21 reports on material facts about Robins' life could be deemed a real harm. (*Id.* at

22 1117.) ("Robins alleged that he is out of work and looking for a job, but that

23 Spokeo's inaccurate reports have 'caused actual harm to [his] employment

24 prospects' by misrepresenting facts that would be relevant to employers, and that he

25 suffers from 'anxiety, stress, concern, and/or worry about his diminished

26 employment prospects' as a result.")

27      The Ninth Circuit further rejected Spokeo's suggestion that Robins'

28 allegations of harm are too speculative to establish a concrete injury. (*Id.*)  "The

alleged intangible injury caused by that inaccurate report has also occurred. We have explained why, in the context of FCRA, this alleged intangible injury is itself sufficiently concrete. It is of no consequence how likely Robins is to suffer additional concrete harm as well (such as the loss of a specific job opportunity)." (*Id.* at 1118.)

In the instant case, this analysis is simpler.  28 C.F.R. § 36.302(e)(1) requires at the minimum that "A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to **reservations made by any means** …  (i) Modify its policies, practices, or procedures to <u>ensure that individuals with disabilities can make reservation</u>s for accessible guest rooms during the same hours and <u>in the same **manner** as individuals who do not need accessible rooms</u>" (Section 36.302(e)(1)(i)) (emphasis added).  Violation of this statute directly presents a material risk of harm to the concrete interests of the ADA, which are "the elimination of discrimination against individuals with disabilities" and the creation of "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." (42 U.S.C. § 12101(b)(1) & (2).)  A concrete harm under *Spokeo* therefore exists for <u>any</u> violation of Section 36.302(e)(1)(i) because (unlike an immaterial inaccuracy in violation of FRCA) the very *nature* of any violation of this section presents a material risk of harm to the concrete interests of the ADA. (*Spokeo, Inc.*, 867 F.3d at 1116.)

Regardless, Defendant's violation of the ADA has also demonstrably harmed Plaintiffs.  Plaintiff Rutherford has suffered actual *tangible* concrete injury-in-fact because he was discriminated against on multiple occasions, the discrimination prevented him full and equal access to Defendant's online reservation system and hotels, the discrimination is ongoing, and danger of future harm is imminent. (*See* Part IV.B.1. *supra*)

Plaintiffs have established that Defendant's violations of the ADA caused concrete and particularized injury to Plaintiffs that are both tangible and present

material risk of harm to the concrete interests for persons with disabilities, including Mr. Rutherford.  Plaintiffs have proven concrete injury-in-fact and standing under *Spokeo's* framework.

**V.     Plaintiff Need Only Establish That He Intends to Return To The Websites And Not The Hotels, But He Has Established Both**

Under Ninth Circuit precedent, an ADA plaintiff can show that harm is "actual or imminent, not conjectural or hypothetical" (*Lujan*, 504 U.S. at 560) by "demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return." (*Chapman*, 631 F.3d at 944.)  While deterrence is enough, courts have tended to also link deterrence with a general intent to return after plaintiff learns compliance is cured as sufficient to confer standing.  (*See CREEC*, 867 F.3d at 1099.)

The case *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) ("*Domino's Pizza*") is instructive as to whether Plaintiffs need to show intent to return to the Websites or Defendant's hotels.  The *Domino's Pizza* court of appeals held, in accordance with the statutory text, that the ADA protects against disability-based discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).  The court concluded that "[t]he alleged inaccessibility of Domino's website and app impedes access to the goods and services of its physical pizza franchises—which are places of public accommodation."   The court further clarified that "[t]he statute applies to the services **of** a place of public accommodation, not services **in** a place of public accommodation."  (*Robles*, 913 F.3d 898 at 905.)

The *Domino's Pizza* court's deduction is significant because the specific barriers to access are the online reservation services located on Defendant's Websites.  The ADA's general mandate applies to the Websites themselves, which are the services of Defendant's hotels.  Because this case involves barriers located

on the Websites (not services in or at the hotels), the "intent to return" requirement – after Plaintiff learns of the removal of barriers of the Websites – should naturally be a return only to the Websites and not necessarily the physical hotels.

Such a conclusion further makes sense given the text of the statute upon which Plaintiffs' claims are made.  (See 36.302(e)(1)(ii)) ("A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means …  (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service <u>in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs</u>" (emphasis added)

Plaintiff need not intend to (nor should he have to) go to Defendant's hotels if, in accordance with Section 36.302(e)(1)(ii), he learns that Defendant's hotels or guest rooms do not meet his accessibility needs.[12]  For that reason, the intent to return for standing purposes must only be an intent to return to the Websites after learning of compliance; not the hotels themselves.

Nonetheless, whether the intent to return is to the Websites or to Defendant's hotels is factually moot because Plaintiff Rutherford has shown that he intends to do both. (*See* Part IV.B.1. *supra*)

## VI.  <u>A4EA Has Standing</u>

For an organization to have standing to bring suit on behalf of its members, it must satisfy three requirements:  "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  (*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).)

---

[12] There is no violation of Section 36.302(e)(1)(ii) if the hotel or guest rooms do not meet Plaintiff's accessibility needs. This section of the statute only requires that there is sufficient detail for Plaintiff to make that determination.

### A.   A4EA's Members Mr. Rutherford And Ms. Filardi Have Standing

The record shows that both Plaintiff Rutherford and Claimant Filardi are members of A4EA. (Evid. Hearing 49:5-9) and A4EA has other members, Jerry Vasilatos, Fernando Aguilar, Margaret Wilson, and others (Evid. Hearing 49:22-25)

In Part IV of this Brief, Plaintiff Rutherford has shown that he has standing in his own right under *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), and is a plaintiff in this Action.

For the same reasons and as demonstrated by her testimony, Patricia Filardi, a member of A4EA, also has standing to bring the same ADA claim had she chosen to be a plaintiff. (*See* Evid. Hearing 119:21-120:9 (Filardi's visits to Websites); 121:1-12 (Filardi's status as an A4EA member); 121:23-128:1 (Barriers Filardi encountered on the Websites); 139:3-140:17 (why disability access is important to Filardi).

A4EA has standing to bring suit on behalf of its members because at least two of its members have standing to sue on their own right.  *Hunt,* 432 U.S. at 343.

### B.   The Interests A4EA Seeks To Protect Are Germane To Its Purpose

Courts agree that the benefits of associational standing are realized if the subject of the litigation is "central to the purpose" of the organization. "Germaneness is satisfied by a 'mere pertinence' between litigation subject and an organization's purpose." *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 111 (D.C. Cir. 1990).

The court in *Hunt* reasoned that "[i]f in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." (*Id*. at 343.)  Therefore, an organization has standing when its members have sustained a "direct and sufficient" injury, the organization is devoted to representing its members' interests, and the members are not needed individually for just adjudication. (*Id.* at 343–44.)

Plaintiff Rutherford testified as to activities A4EA conducts, including being a plaintiff in this action, that are germane to its purpose of educating and furthering rights for persons who are disabled:

Q:   Okay.  What other activities does A4EA conduct other than filing lawsuits?
A:   Well, we do an educational, a very informal educational program.  The association is a grass-roots association.  What I will do is, from time to time, I will speak with other people who are disabled and try to assist them in any way that I can with regards to the needs that they have regarding their disability, specifically with regards to their accessibility rights, and not only in California, more specifically with regard to the rights that they have in California.

(Evid. Hearing 49:5-9)

Accordingly, the interests of ADA compliance that A4EA seeks to protect through this lawsuit are germane to its purpose to educate and further disability rights.

### C.   A4EA Participate For Injunctive Relief Asserted By A4EA

*Hunt* held that "individual participation" is not normally necessary when an association seeks prospective or injunctive relief for its members, but indicated that such participation would be required in an action for damages to an association's members. (*See Hunt,* 432 U.S. at 343; *see also Warth v. Seldin*, 422 U. S. 490 (1975).)  Here, as delineated by *Hunt*, Plaintiff A4EA does not need members' participation for the injunctive relief to correct barriers to access, as set forth in the Prayer of Second Amended Complaint [Dkt No. 21], although Plaintiff Rutherford is also participating and is entitled to damages pursuant to Civil Code § 52(a).

## VII.  Conclusion

This supplemental brief has addressed the Court's additional questions posed at the July 1, 2019 Evidentiary Hearing.  Plaintiffs have established that the PageFreezer website archives of the Websites are adequately authenticated and admissible as evidence, Plaintiffs have demonstrated concrete and particularized injury sufficient under *Spokeo* and *CREEC* for Article III standing, that Plaintiff

Rutherford need only intend to revisit the Websites after being learning barriers to access have been corrected to maintain standing (although he still intends to visit both the Websites and the hotels), and that A4EA indeed has associative standing to bring suit on behalf of its members in satisfaction of the *Hunt* factors.

Plaintiffs has proven through testimony and admissible evidence that they have standing to bring their claims, especially since the Ninth Circuit's has expressly held that "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).

Dated: August 5, 2019

MANNING LAW, APC

By: /s/ Joseph R. Manning Jr., Esq.
     Joseph R. Manning Jr., Esq.
     Attorney for Plaintiffs