Nadia P. Bermudez, Bar No. 216555
Patrick J. Goode, Bar No. 299697
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707

Lindsay N. Casillas, Bar No. 269688
KLINEDINST PC
801 K Street, Suite 2100
Sacramento, California 95814
(916) 444-7573/FAX (916) 444-7544

Attorneys for Defendant EVANS
HOTELS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS,<br><br>            Plaintiffs,<br><br>      v.<br><br>EVANS HOTELS, LLC a California limited liability company and DOES 1 to 50,<br><br>            Defendants. | Case No. 18-CV-00435-JLS (MSB)<br><br>**DEFENDANT EVANS HOTELS, LLC'S POST EVIDENTIARY HEARING CLOSING COMMENTS**<br><br>Judge:            Hon. Janis L. Sammartino<br>Magistrate Judge:      Hon. Michael S. Berg<br>Complaint Filed:   2/26/18<br>Trial Date:      None set |

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1
2

# **TABLE OF CONTENTS**

**Page**

I.    DEFENDANT EVANS HOTELS, LLC'S CLOSING COMMENTS ............. 1

    A.    Introduction ......................................................................................... 1

    B.    Plaintiffs Have Not Demonstrated They Suffered An Injury In Fact As Required for Article III Standing ............................................. 2

        1.    Rutherford Has Not Been Deterred from Accessing the Evans Hotels' Websites. ................................................................. 2

        2.    Rutherford Did Not Access Any Evans Hotels' Reservation Systems ....................................................................... 3

        3.    The Deterrent Effect Doctrine Does Not Apply to Plaintiffs ........................................................................................ 5

        4.    Rutherford Has Not Been Thwarted From Any Actual Travel Plans ...................................................................................... 7

        5.    Rutherford Can Show No Threat of Future Injury ...................... 8

        6.    A4EA Also Has No Standing As the Alter Ego for Rutherford. ................................................................................... 10

    C.    Plaintiffs Cannot Meet the Remaining Two Factors of Article III Standing ................................................................................................ 11

    D.    Lacking Any Credibility or Other Legal Basis, the Court Must Find That There is No Standing ......................................................... 11

    E.    Plaintiffs Testimony Demonstrates They Cannot Show Any Violation of Title III of the ADA .......................................................... 13

II.   PAGEFREEZER RECORDS ARE INADMISSIBLE ................................. 14

    A.    PageFreezer's Website Archives Are Not Relevant ............................ 14

    B.    PageFreezer Website Archives Are Not Properly Authenticated ......... 15

    C.    The PageFreezer Documents Are Not the Best Evidence In their Present Condition ............................................................................... 18

    D.    The PageFreezer Documents Are Not Business Records Subject to the Fed. R. Evid. 803(6) Hearsay Exception. .................................. 18

    E.    There is No Record of PageFreezer Documents Being Admissible ............................................................................................ 19

    F.    CONCLUSION .................................................................................... 20

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

i

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*AMPAT/Midwest, Inc., v. Illinois Tool Works Inc*.
     896 F.2d 1035 (7th Cir. 1990)...........................................................................16

*Brooke v. Pac. Gateway Ltd., LP*,
     No. 3:17-CV-0796-CAB-(WVG), 2017 U.S.Dist.LEXIS 70957, *4
     (S.D.Cal. May 9, 2017) ........................................................................................7

*Brother v. Tiger Partner, LLC*,
     331 F. Supp. 2d 1368,(M.D. Fla. 2004) ............................................................9

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ...........10

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
     631 F.3d 939 (9th Cir. 2011)................................................................1, 3, 4, 8

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust* ("*CREEC*")
     867 F.3d 1093 (9th Cir. 2017)........................................................................5, 6

*DeLil v. El Torito Rest.*, 1997 U.S. Dist. LEXIS 22788, No. C93-3900, 1997
     WL 714866, at *3 (N.D. Cal. 1997)....................................................................9

*Deutsch v. Annis Enters.*,
     882 F.3d 169, 174 (2018) .....................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
     528 U.S. 167 (2000) .........................................................................................1, 6

*FW/PBS, Inc. v. Dallas*,
     493 U. S. 215, (1990) ...........................................................................................1

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
     497 F. Supp. 2d 627 (E.D. Pa. 2007) ...............................................................20

*Hoepfl v. Barlow*,
     906 F. Supp. 317 (E.D. Va. 1995)......................................................................9

*Kristoffersen v. RVS110, LLC*,
     2019 U.S. Dist. LEXIS 71126, *9, 2019 WL 1877183 (S.D. Cal. April
     26, 2019.)..............................................................................................................6

*Lujan v. Defenders of Wildlife*,
     504 U.S. 555 (1992) ........................................................................1, 2, 7, 11

*Molski v. Kahn Winery*,
     405 Supp. 2d 1160 (C.D. Cal. 2005)....................................................9, 12, 13

*Molski v. Mandarin Touch Restaurant*,
     385 F. Supp. 2d 1042 (2005)........................................................................8, 10

ii

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Pickern v. Holiday Quality Foods Inc.*,
   293 F.3d 1133 (9th Cir. 2002)................................................................5

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) .......................................................................4

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019)............................................................4, 5

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...................................................................1, 2

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*,
   76 F.Supp.2d 773 (S.D.Tex. 1999) ........................................................16

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
   576 F.3d 1040 (9th Cir. 2009).............................................................16

*United States of America v. Bansal*,
   409 F. Appx. 663 (4th Cir. January 26, 2011) ...........................................17

*United States of America v. Gasperini*,
   729 F. Appx. 112 (2nd Cir. July 2, 2018) ..........................................17, 18

*United States v. Valdovinos-Mendez*,
   641 F.3d 1031 (9th Cir. 201 ..............................................................18

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000)............................................................14

## STATUTES

28 C.F.R. § 36.302(e)(1)(i)...................................................................4, 5

28 C.F.R. § 36.303(c)(1).........................................................................5

42 U.S.C. § 12182.................................................................................13

42 U.S.C. § 12188(a)(1) ...........................................................................5

## OTHER AUTHORITIES

Fed R. Evid. 902(12) ............................................................................19

Fed. R. Evid. 1002 .........................................................................14, 18

Fed. R. Evid. 1102 ...............................................................................18

Fed. R. Evid. 401 ..........................................................................14, 15

Fed. R. Evid. 403 ...............................................................................14

iii

Fed. R. Evid. 801(c) ................................................................................................... 16

Fed. R. Evid. 802 ....................................................................................................... 14

Fed. R. Evid. 803 ....................................................................................................... 14

Fed. R. Evid. 803(6) ...................................................................................... 16, 18, 19

Fed. R. Evid. 804 ....................................................................................................... 14

Fed. R. Evid. 807 ....................................................................................................... 14

Fed. R. Evid. 901 ................................................................................................ 14, 16

Fed. R. Evid. 902 (11) ............................................................................................... 19

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# I.   DEFENDANT EVANS HOTELS, LLC'S CLOSING COMMENTS

## A.   Introduction

On July 1, 2019, this Court held an evidentiary hearing allowing Plaintiffs a third [1] opportunity to present evidence that they had met the requirements of Article III [2] standing at this stage of litigation.  Article III standing requires Plaintiffs to demonstrate they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). Plaintiffs bear the burden of establishing these elements. *Spokeo, supra,* 136 S. Ct. at 1547 citing *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231(1990).

The evidenced adduced at the hearing confirms that neither Rutherford nor Filardi could articulate any alleged barrier they encountered on the website related to their individual disabilities.  They could not identify when they visited the websites, how many times, what device they used, or what specific information they found to be deficient.  Both Rutherford and Filardi admitted the websites described

---

[1] On April 29, 2019, this Court issued an Order requesting Plaintiffs show cause why this matter should not be dismissed for lack of Article III standing which required briefing from Plaintiffs. [ECF 59.]

On May 24, 2019, this Court issued an Order scheduling an evidentiary hearing. [ECF 66.]  The purpose of the evidentiary hearing was for the Court to resolve genuine disputed factual issues concerning Plaintiffs ability to demonstrate their standing to sue at this stage of the litigation. Prior to the evidentiary hearing the Court again allowed Plaintiffs to present evidence that they had standing to pursue this action.

[2] "To invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports (U.S). Inc*., 631 F.3d 939, 946 (9th Cir. 2011).

1  elements of the hotels, including rooms, as accessible.[3]  Neither Rutherford nor

2  Filardi attempted to book a room through the third party online booking engine,

3  through the live-chat feature, or the phone reservations service.

4      Nor did Rutherford or Filardi provide credible evidence of concrete plans to

5  visit the San Diego area.  The actual evidence is to the contrary – despite having

6  sued nearly 350 hotels in the past three years, plaintiffs can only recall staying

7  overnight at one hotel.  (TR 82:23-83:9, 133:8-134:5.)

8      Based on the foregoing, Plaintiffs have not established that they encountered

9  any barrier traceable to Evans Hotels so as to have suffered an injury in fact as

10  required for Article III standing.  Moreover, Plaintiffs have established they were

11  not denied a full and equal opportunity to enjoy the services Evans Hotels' provides,

12  because they did not even attempt to access Evans Hotels' services.  The Court

13  should dismiss Plaintiffs' claims for lack of standing.

14      **B.  <u>Plaintiffs Have Not Demonstrated They Suffered An Injury In Fact</u>**

15         **<u>As Required for Article III Standing</u>**

16      For Plaintiffs to have suffered an 'injury in fact,' an invasion of a legally

17  protected interest must have occurred which is (a) concrete and particularized, and

18  (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'' *Lujan, supra,* 504 U.S.

19  at 560-561.  For an injury to be "concrete", it must actually exist. *Spokeo*, *supra*,

20  136 S. Ct. at 1548.

21      **1.  Rutherford Has Not Been Deterred from Accessing the**

22         **Evans Hotels' Websites.**

23      The evidence and testimony presented at the evidentiary hearing demonstrates

24

25  _____

26  [3] It must be noted that Evans Hotels *has already updated the website* to incorporate additional information on accessible features, and Mr. Rutherford struggled to

27  identify what additional information he believes should be incorporated into the website.  Ex.201.  Thus, it is unclear what specific language or injunctive relief

28  Plaintiffs are seeking.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

2

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

that neither Rutherford nor claimant Filardi were deterred from accessing the Evans Hotels' websites.  Though neither Rutherford nor claimant Filardi can recall any specifics regarding such events, both assert they have accessed each of the Evans Hotels' websites and looked for information concerning the accessibility of the Evans Hotels' properties. (TR 29:16-25, 30:12-18, 30:24-31:2, 33:3-4, 33:18-25, 34:20-35:5, 58:10-21, 121:16-122:18.)  When they were dissatisfied with the information they encountered, they did nothing. (TR 32:21-33:2, 34:1-11, 35:6-14, 36:7-21.)  They did not call the hotel for more information or utilize the online chat feature. (TR 137:21-138:4, 137:5-20.)  They simply did not book a room. (TR 36:14-18.)

"[A] 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Chapman v. Pier 1 Imps. (U.S.), Inc*., *supra*, 631 F.3d at 947.  Here, Plaintiffs have not presented any evidence demonstrating their use or enjoyment of the Evans Hotels' websites was first, impeded in any way, and second, that access to the website was minimized as a result of their mobility impairments[4]. (TR 29:16-25, 30:12-18, 30:24-31:2, 33:3-4, 33:18-25, 34:20-35:5, 58:10-21, 121:16-122:18, 8:15-21, 19:1, 46:8-24.)  Since, Plaintiffs have not demonstrated they encountered any barriers to accessing the Evans Hotels' websites or that the ability to access the Evans Hotels' websites was interfered with as a result of their mobility impairments, Plaintiffs' have failed to show they have Article III standing.

## 2.    Rutherford Did Not Access Any Evans Hotels' Reservation Systems

To the extent Plaintiffs purport to challenge the content on the Evans Hotels' websites - its marketing materials - Plaintiffs offer no legal authority regulating such

---

[4] Notably neither Rutherford nor Filardi claim to have visual or hearing impairments, the disabilities most often implicated, in disputes concerning full and equal access or enjoyment to websites.

3

content.  Moreover, any such content-based regulations are presumptively unconstitutional in the face of the First Amendment. *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2222 (2015).

Plaintiffs appear to assert in their Supplemental Brief Regarding Article III Standing ("Plaintiffs' Brief") that they have suffered an actual injury resulting from Evans Hotels' violation of Section 36.302(e)(1)(i). (Pl. Brief 17:6-12.)  However, this argument fails for two reasons; 1.) because Section 36.302(e)(1)(i) does not apply to general website content, and 2.) because Plaintiffs never attempted to utilized the reservations services to which Section 36.302(e)(1)(i) applies.  Section 36.302(e)(1)(i) is narrowly tailored to apply to the public accommodation's reservations services – not general website content.  Specifically, Section 36.302(e)(1)(i) requires a place of public accommodation, "*with respect to reservations made by any means"*, to modify its policies, practices or procedures to ensure individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.  Defendants have done this, but at this point that information is irrelevant because ***Plaintiffs never attempted to use any of Evans Hotels' properties reservation services***. (TR 36:14-18.)  Consequently, Plaintiffs have no standing to pursue such claims.  They do not have personal knowledge of what information was available through the on line booking engine, the live-chat feature of the website, or the phone based reservations service because they did not try to use any of those systems.  Again, a barrier is only an interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability and Plaintiffs cannot show they encountered any such barrier. *Chapman v. Pier 1 Imps. (U.S.), Inc*., *supra*, 631 F.3d at 947.

Plaintiffs citation to *Robles v. Domino's Pizza, LLC,* 913 F.3d 898 (9th Cir. 2019) is inapposite.  *Robles* involves the legal question of whether or not compliance with the Web Content Accessibility Guidelines (WCAG 2.0), which

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

4

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  provide guidelines for ensuring the content available on website and mobile

2  application platforms can be accessed by blind or visual-impaired persons, is

3  required by law.  These guidelines do not purport to regulate the *content* of the

4  website, only the *access to the content*. The Court in *Robles* examined 28 C.F.R.

5  Section 36.303(c)(1) – setting forth the standards for providing auxiliary aids to

6  ensure effective communication with individual with disabilities.  Plaintiffs do not

7  purport to have the visual-impairments to which these guidelines apply.  Plaintiffs

8  do not contend that they were unable to access content on the Evans Hotels'

9  websites or even need auxiliary aids to access the content.  This case relates to 28

10  C.F.R. 36302(e)(l)(i)- a different regulation with a different standard. *Compare* 28

11  C.F.R. 36.302(e)(l)(i), requiring "enough detail" to "reasonably permit individuals

12  with disabilities to assess independently" vs. 30.303(c)(1), requiring a public

13  accommodation to furnish "appropriate auxiliary aids".

14  ### 3.  The Deterrent Effect Doctrine Does Not Apply to Plaintiffs

15  To the extent Plaintiffs assert that based on insufficient content, they were

16  deterred from booking a room at the Evans Hotels' properties, deterrence from

17  booking based on inadequate content is not within the "deterrent effect doctrine"

18  described in *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*

19  ("*CREEC*") 867 F.3d 1093, 1098-1099 (9th Cir. 2017). In *CREEC*, the Court,

20  quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)

21  which was quoting 42 U.S.C. § 12188(a)(1) explained the deterrent effect doctrine's

22  use for establishing actual injury as "when a plaintiff who is disabled within the

23  meaning of the ADA has ***actual knowledge of illegal barriers at a public***

24  ***accommodation*** to which he or she desires access." 867 F.3d 1098-1099 (emphasis

25  added).  In that specific case, Plaintiffs need not "engage in the 'futile gesture' of

26  attempting to gain access in order to show actual injury." *Id*.  In Plaintiffs' Brief,

27  Plaintiffs argue based on the above principle and as testers, they should have been

28  permitted to testify regarding barriers in Evans Hotels' booking process even though

5

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  they did not engage in such a process because that's what happened in *CREEC*. (Pl.
2  Brief, p. 11, FN 9-10.)

3     First, as acknowledged by Evans Hotels in multiple prior pleadings,
4  Plaintiffs' motivation for desiring to visit the Evans Hotels' properties as testers is
5  irrelevant.  If Plaintiffs' purpose for visiting hotel websites was to check for
6  compliance, so be it – their motivation alone does not deprive them of standing.
7  However, *CREEC* does not negate Article III's requirement that a tester demonstrate
8  a concrete and particularized harm which Plaintiffs have failed to do as addressed
9  *infra* section I(B)(4).  *CREEC* 867 F.3d at 1102.

10     Second, Plaintiffs' Brief misconstrues *CREEC*.  In *CREEC*, Plaintiffs had an
11  actual injury because ***they had actual knowledge of illegal barriers present*** at the
12  hotel.  *CREEC*, 867 F.3d at 1097-1098.  Unlike this case, the *CREEC* Plaintiffs had
13  telephoned the facility and inquired about the transportation services available to
14  disabled guests. *Id*.  Through discussions with the hotels, Plaintiffs discovered
15  equivalent transportation systems were not in place for individuals who used
16  wheelchairs or scooters for mobility. *Id*.  They, therefore, were able to allege actual
17  knowledge of barriers they were informed they would encounter, even though they
18  did not book a room.  Furthermore, *CREEC* concerned whether a putative class
19  plausibly alleged standing at the class certification stage.  Thus, the Ninth Circuit's
20  inquiry was limited to the Named Plaintiffs' allegations in the pleadings, not
21  evidence offered at a hearing as in this matter. *CREEC*, 867 F.3d at 1099; see also,
22  *Kristoffersen v. RVS110, LLC*, 2019 U.S. Dist. LEXIS 71126, *9, fn. 3, 2019 WL
23  1877183 (S.D. Cal. April 26, 2019.)

24     In contrast, here, Plaintiffs had no actual knowledge of any illegal barriers at
25  the Evans Hotels' properties which deterred them from booking at the time they
26  chose not to book.  In fact, Plaintiffs recall that all three properties' websites stated
27  that elements of the hotels, including rooms, were accessible. (TR 30:24-31:2, 34:5-
28  9, 35:6-10.)  Plaintiffs conducted no investigation to determine if the properties

6

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

actually were inaccessible or contained illegal barriers.  Nor did Plaintiffs attempt to access the hotel reservation systems to see if additional information may be located there.  Instead, based on Plaintiffs' subjective belief that the website content supplied was not sufficient concerning the accessibility of the properties and available rooms, Plaintiffs chose not to book and sued. (TR 32:4-12, 34:10-15, 35:11-17.)  Plaintiffs' subjective belief does not equate to *actual knowledge of illegal barriers* so as to fall within the deterrent effect doctrine and demonstrate an injury in fact.

### 4. Rutherford Has Not Been Thwarted From Any Actual Travel Plans

At the evidentiary hearing, Rutherford testified he "wanted to stay" at an Evans Hotels' property. (TR 29:6-8.)  In fact, he testified that he and Ms. Filardi had been "desiring to go to San Diego for years." (TR 61:20-25.)  But, they did not make a plan. *Id.*  Plaintiffs' Brief argues that the combination of Rutherford's testimony expressing a desire to stay at the Evans Hotels' properties and plans to stay at each property if the barriers to access are eliminated is sufficient to establish standing. (Pl. Brief 13:4-16; TR 29:6-8; *compare* TR 148:21-149:3.)  Plaintiffs supposition is error.

"Someday" or "want to stay" intentions – without any description of concrete plans, or indeed even any specification of when the someday will be – do not support a finding of the 'actual or imminent' injury.  *Lujan, supra, 504 U.S.* at 565; see also *Brooke v. Pac. Gateway Ltd., LP*, No. 3:17-CV-0796-CAB-(WVG), 2017 U.S.Dist.LEXIS 70957, *4 (S.D.Cal. May 9, 2017) [finding Plaintiff's lack of concrete plans to visit the area, past or future, insufficient to confer standing.] Furthermore, a Plaintiff must show he has suffered an injury which was "'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan* at 565.  While Plaintiffs may "want to stay" many places, Plaintiffs testimony demonstrates they almost never actually stay anywhere.  In fact, despite having sued nearly 350 hotels in the past

7

three years, Plaintiffs can only recall actually visiting four hotels, and of those four, Plaintiffs only stayed overnight at one. (TR 82:23-83:9, 133:8-134:5.)  These facts demonstrate Plaintiffs' travel plans are merely conjectural or hypothetical.

### 5.    Rutherford Can Show No Threat of Future Injury

In the ADA context, where a disabled plaintiff has encountered a barrier violating the ADA, the plaintiff must have a "personal stake in the outcome of the controversy" to meet Article III standing. *Chapman v. Pier 1 Imports, supra*, 631 F.3d at 947 (internal citations omitted).  The case of *Molski v. Mandarin Touch Restaurant,* 385 F. Supp. 2d 1042, 1045 (2005) is instructive.  In *Molski v. Mandarin*, the Court looked to the factors such as (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant, to determine if an ADA plaintiff has established a likelihood of future injury.  Here, such factors demonstrate Plaintiffs have failed to demonstrate they have any personal stake in the outcome because they not established a likelihood of future injury.

First, neither Plaintiffs nor claimant have any definitive time plans to visit San Diego, thus they cannot show any real or immediate threat of future injury. (TR 134:10-12; TR Exhibit [Ex.] 200, Deposition of James Rutherford ["Rutherford Depo."] 72:21-23.)  Additionally, Plaintiffs' extensive litigation history undermines any professed intent to return.  During the evidentiary hearing, just as a small sampling, Rutherford testified to having filed lawsuits against the Caravan Hotel (TR Ex. 251 filed in 2017), the Pacifica Hotel Company dba Ramada Costa Mesa (TR Ex. 258 filed in 2017), the Quality Inn in Lake Forest (TR Ex. 261 filed in 2017), the Rodeway Inn in Indio, California (TR Ex. 290 filed in 2017), the Regency Inn and Suites in Moreno Valley (TR Ex. 323 filed in 2018) and the travel Lodge in Hemet (TR Ex. 346 filed in 2018). (TR 70:19-22, 71:15-23, 74:17-23, 76:9-17, 78:11-18, 79:20-80:4.)  When asked if he had stayed at any of these hotels,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

8

he testified that he did not. (TR 80:16-82:3.)  Rather, Plaintiffs have only returned to a "couple hotels" to check compliance, but not to stay at. (TR 149:18-21; 149:25-150:7.)

Where Plaintiffs' alleged intent to return is not genuine, Plaintiffs lack standing to pursue their action.  See *Molski v. Kahn Winery,* 405 Supp. 2d 1160, 1164 (C.D. Cal. 2005) (holding "[w]here a plaintiff has visited a restaurant only once, the lack of a "history of past patronage seems to negate the possibility of future injury at [that] particular location." (citations omitted)); see also *Deutsch v. Annis Enters.*, 882 F.3d 169, 174 (2018) (finding no evidence that Deutsch had any intent to return—nor any reason to believe that it was affected by Annis's alleged ADA violation in any way, let alone "some concrete way" where Deutsch had filed nearly 400 lawsuits in just over 300 days and could not remember a single establishment that he sued and then returned to.  Therefore, he had not shown any likelihood of future injury necessary to obtain equitable relief.)

If that were not enough to throw serious doubt on Plaintiffs' intent to return, Plaintiffs also are located over 140 miles away from any Evans Hotels' properties such that any professed intent to return would be an out of the way excursion.  As noted by the Court in *Molski v. Kahn, supra,* 405 F. Supp. 2d at 1163-1164, "[a]s the distance between a plaintiff's residence and a public accommodation increases, the likelihood of future harm decreases.  Where the distance between the two is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm. *E.g., DeLil v. El Torito Rest.*, 1997 U.S. Dist. LEXIS 22788, No. C93-3900, 1997 WL 714866, at *3 (N.D. Cal. 1997) (holding that plaintiff failed to establish likelihood of future harm in part because she lived over 100 miles from restaurant); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (finding plaintiff failed to establish likelihood of future harm in part because he lived 280 miles from hotel); *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995) (finding plaintiff failed to

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

9

1   establish likelihood of future harm where she had moved to a different state than

2   defendant doctor).

3       Consequently, when viewed in light of the factors employed in *Molski v.*

4   *Mandarin*, it is clear no real or immediate threat of repeat injury exists.  While

5   Plaintiffs have a lengthy history of filing lawsuits (348 and counting) against hotels,

6   even Plaintiffs acknowledge they have not returned to any hotel they have sued to

7   stay at. (TR 149:25-150:5.)  Thus, the evidence demonstrates that Plaintiffs have not

8   suffered an injury-in-fact and their claims are not ripe for adjudication. *Chandler v.*

9   *State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

10              **6.    A4EA Also Has No Standing As the Alter Ego for**

11                     **Rutherford.**

12      A4EA is completely devoid of credibility, and is merely a tool of deception

13  designed to extract higher statutory settlements from California businesses.  A4EA

14  is an ongoing fraud, preying on California businesses.  A4EA is an unincorporated

15  organization created and governed by James Rutherford. (TR 48:19-21, 49:2-4,

16  50:12-14; TR Ex. Rutherford Depo. 180:22-23; TR Ex. 201-A4EA Depo. 19:7-9,

17  30:3-11.)  The only other currently active member of A4EA is Filardi, though

18  exactly what makes one a member is unclear to Rutherford. (TR 49:5-50:9; TR Ex.

19  201-A4EA Depo. 27:8-21, 51:15-21.)  A4EA does not collect dues or hold regular

20  meetings. (TR Ex. 201-A4EA Depo. at 27:22-24, 29:23-25.)  Rutherford claims

21  A4EA interacts and engages with people to provide them information and education,

22  but he has no recollection of who he has interacted with on behalf of A4EA.  (TR

23  50:15-24, 51:8-10.)  Rutherford's testimony on interests or contacts with alleged

24  members is devoid of credibility.  (TR Ex. 201-A4EA Depo. 10:7-10; 26:23-27:21;

25  30:9-11; 96:19-21; 100:24-101:9.)  A4EA has a bank account and Rutherford is a

26  signatory on behalf of A4EA. (TR 48:24-49:1; TR Ex. 201-A4EA Depo. 181:10-11,

27  181:19-21.)  Rutherford does not know if A4EA files taxes, but he has not

28  personally filed a tax return on its behalf. (TR Ex. 201-A4EA Depo. 184:7-15.)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

10

A4EA has collected settlement funds for ADA litigation in the last two years on behalf of A4EA. He thinks he's collected less than $50,000, but it could be $80,000. (TR 52:16-21, 53:4-5, 55:4-11; TR Ex. 201-A4EA Depo. 37:22-38:5.)  A4EA has no business registrations, licenses, or other documents formally acknowledging its legal existence other than an employer ID number sought in 2011. (TR Ex. 201-A4EA Depo. 14:4-13.)  For all the foregoing reasons, it is clear the A4EA is a sham organization and an alter ego of James Rutherford.  As such, it should not be afforded associational standing in this matter.

Even if A4EA was a legitimate organization—and it is not—there is no evidence or legal theory to support a finding that A4EA could have standing independent from Mr. Rutherford. (TR 156:25-157-3.)  Neither Ms. Filardi, nor the other "inactive" members (living in Illinois) have visited the website, attempted to book a room through the reservations services, or shown any concrete intent to return.

### C.   Plaintiffs Cannot Meet the Remaining Two Factors of Article III Standing

Because Plaintiffs are unable to demonstrate an injury-in-fact, as discussed above, they have already failed to establish Article III standing under the Court's standards.  Plaintiffs also cannot satisfy the remaining two factors to demonstrate Article III standing, a "causal connection between the injury and the conduct complained of." *Lujan* at 560-61.  Because Plaintiffs have failed to demonstrate an injury, it is impossible for them to establish a connection with Evans Hotels' conduct.  Finally, Plaintiffs must also demonstrate that a favorable decision is "likely" to redress their injury. *Id*.  Again, because Plaintiffs have failed to demonstrate an injury-in-fact, the redressability analysis is moot.

### D.   Lacking Any Credibility or Other Legal Basis, the Court Must Find That There is No Standing

The court should carefully scrutinize Plaintiffs' credibility.  As in *Molski v.*

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

11

*Kahn Winery,* in which a district court held an evidentiary hearing on standing of an ADA plaintiff, Rutherford's lack of credibility was apparent during the Evidentiary Hearing.  *See, Molski v. Kahn Winery, supra,* 405 Supp. at 1168 ("Molski's attorney only asked leading questions that suggested the desired answer…")  Here, just as in *Molski v. Kahn Winery* the Plaintiffs were able to answer the question one they had a suggested, prompted answer from their attorneys.  (TR 12:4-5; 18:9-10; 19:12-13; 20:24-25; 29:13-14; 31:25-32:2; 33:15-16; 37:5-6; 37:13-17; 38:1-5 (counsel cautioned); 105:23-25; 119:18-19; 122:22-24; 125:6-7; 126:17-18; 138:14-15.)  In fact, Plaintiffs' counsel requested to be allowed to ask leading questions. (TR 106:1-6 ["**MR. JOS. MANNING:** YOUR HONOR, I BELIEVE IT WOULD BE VERY HELPFUL IF I CAN ASK LEADING QUESTIONS IN THE SENSE THAT WE'RE ON REDIRECT AND THESE ARE ISSUES THAT WERE EXPLORED BY COUNSEL. **THE COURT:** IT'S NOT A PERMISSIBLE BASIS FOR LEADING QUESTIONS, SIR."].)  Such conduct should be troubling to the court, as it casts into doubt the entirety of Rutherford and Filardi's testimony since they had already heard the desired testimony and were able to answer the question a second time with the suggested, prompted answer.

Plaintiffs' motivations are oriented towards weaponing the ADA for money. Neither Rutherford nor Filardi are employed. (TR 56:3, 132:15-17.)  Their only seeming sources of income would be from public benefits and the filing of ADA litigation.  Being unemployed, not having related business travel, and rarely ever visiting/staying at a place of lodging, it would seem far-fetched that they would be able or want to travel to all the hotels that they have sued or be able to afford to stay 30-60 nights in a hotel.[5] (TR 56:3, 132:15-17; *compare* TR 149:4-8.)

---

[5] The *Molski v. Kahn Winery* court encountered a similar plaintiff:

Molski regularly claims to be acting in the interest of the disabled community, describing himself as a "sheriff" out to improve access. His

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Finally, as demonstrated by the testimony offered at the Evidentiary Hearing, Plaintiffs encountered no barriers to accessibility of the Evans Hotels' websites nor were they deterred from accessing the Evans Hotels' websites.  Plaintiffs encountered no barriers in the reservation systems or booking process because Plaintiffs did not avail themselves of these services. Thus, Plaintiffs have failed to present any evidence demonstrating they have suffered an injury-in-fact so as to be in a position to move forward in this case.

### E.   Plaintiffs Testimony Demonstrates They Cannot Show Any Violation of Title III of the ADA.

The general rule of Title III states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. "The ordinary meaning of this language is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and

---

litigation tactics, however, belie this characterization. The record before the Court leads it to conclude that Molski's lawsuits are instead filed maliciously, thereby reducing his credibility.  The ADA is intended to achieve the prompt remediation of architectural and other barriers that impede access to places of public accommodation by the disabled community. By tacking on state law claims for Unruh damages to his federal ADA complaints, Molski reveals his true motive: to extort a cash settlement. Rather than further the prompt remedial purposes of the ADA, these Unruh state law claims for money damages lengthen the time it takes to settle disputes, add additional issues to a case, and increase the litigation costs of both parties to a dispute. As a result, access -- Molski's alleged purpose in bringing these claims -- is greatly delayed and rarely achieved.

*Molski v. Kahn Winery, supra,* 405 Supp. at 1166-1167.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

13

services.  This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).

There is no dispute that a hotel is a place of public accommodation covered by the ADA.  However, the services offered by Evans Hotels' are those of making available rooms for rent.  Plaintiffs testimony indicates that he intended to visit the website. (TR 29:16-25; 41:24-42:3.)  But the website only provides a description of the types of rooms available; it does not impede, in any way, Plaintiffs ability to access the hotel, or the rental services it offers.  Plaintiffs testimony further indicates he made no effort to access the rental services offered on the website or that he had any actual intention of booking a room at all. (TR 36:14-18, 41:21-23 .)

In order to move forward with this lawsuit, Plaintiffs would need to demonstrate they intended to visit a hotel to enjoy the Evans Hotels' services, not merely the website.  However, Plaintiffs testimony makes clear they did not have any genuine intend to visit any of the Evans Hotels' properties and therefore cannot show any violation of Title III of the ADA. (TR 61:20-25, 82:23-83:9, 133:8-134:5, 149:25-150:5.)

## II.   PAGEFREEZER RECORDS ARE INADMISSIBLE

At the evidentiary hearing, Plaintiffs sought to move into evidence Plaintiffs' Exhibits 2, 3, and 4, which they claim are archived copies of the Evans Hotels' properties websites printed out from the PageFreezer Company.  However, for documentary evidence to be admissible, it must be: 1) relevant, 2) properly authenticated, 3) meet requirements of, or fall within an exception, to the best evidence rule, and 4) not otherwise inadmissible.  *See*, Fed. R. Evid. 401, 901, 1002, 802, 803, 804, 807, 403.  Plaintiffs' Exhibits 2, 3 and 4 do not meet these requirements.

### A.    PageFreezer's Website Archives Are Not Relevant

In order for evidence to be admissible, it must be relevant to the issue before

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

the Court. Fed. R. Evid. 401.  The PageFreezer documents Plaintiffs seek to have admitted are purported digital snapshots of the Evans Hotels' properties websites from January 18, 2018; June 15, 2018; and June 19, 2019.  However, Plaintiffs presented no evidence they visited the Evans Hotels' properties websites on any of these dates.  In fact, Plaintiffs have repeatedly testified that they do not recall when they visited the websites and most recently that it may have occurred in late 2017. (TR 28:23-29:5, 58:10-21, 58:23-59:5.)  Consequently, the contents of the Evans Hotels' properties websites on subsequent dates is not relevant to whether or not Plaintiffs encountered any barriers when they visited the websites.

Furthermore, the PageFreezer snapshots allegedly from January 18, 2018; June 15, 2018; and June 19, 2019 are not relevant because they do not include snapshots from the Evans Hotels' properties online reservation systems.  Plaintiffs' Brief argues that the archived PageFreezer websites are vital evidence to demonstrate whether the Evans Hotels' properties online reservation systems contained descriptions of accessible features with sufficient specificity for Plaintiffs to know whether the hotels met their accessibility needs. (Pl. Brief 6:16-7:2.)  However, Plaintiffs never actually accessed the hotel reservation systems so as to encounter this content. (TR 36:14-18.)  Such hotel reservation systems were only accessed by clicking on "plan my stay" or "reserve" or "check availability" -- actions Plaintiffs did not take.  Second, the relevant hotel reservation system pages are not included in PageFreezer documentation.  If a person is to follow the PageFreezer links noted in the declaration of Michiel Riedijk and click on "plan my stay" or "reserve" or "check availability" to access the reservation system, a person will be prompted that they are leaving the PageFreezer archives.  Instead Plaintiffs' provide only the marketing materials for the hotels' offerings.  Consequently, the PageFreezer documentation is not relevant.

**B.**   <u>**PageFreezer Website Archives Are Not Properly Authenticated**</u>

Authentication requires the proponent of evidence to support a finding that

15

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

the evidence presented is what it purports to be. Fed. R. Evid. 901.  This is especially important in the case of internet-based information where "[a]nyone can put anything on the Internet" and "hackers can adulterate the content on any web-site from any location at any time." *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 775 (S.D.Tex. 1999).  And, even more important when the documents are prepared specifically for litigation.  "[D]ocuments prepared specifically for use in litigation are ...dripping with motivations to misrepresent." *AMPAT/Midwest, Inc., v. Illinois Tool Works Inc*. 896 F.2d 1035, 1045 (7th Cir. 1990) see also *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co*., 576 F.3d 1040, 1043-1044 (9th Cir. 2009) – allowing computer printouts prepared for litigation only because database from which compiled data originated was kept in ordinary course of business.

Plaintiffs present a declaration from Michiel Riedijk, the CEO of PageFreezer Software, Inc. to authenticate the presented website documents[6].  However, Mr. Riedijk's declaration is hearsay and unreliable.  Mr. Riedijk's declaration is hearsay because it is a classic out-of-court statement being offered for the truth of the matter asserted, i.e. that these archives are complete and accurate digital snapshot which do not show sufficient information for Plaintiffs to have determined if the Evans Hotels' provided sufficient accessibility content. Fed. R. Evid. 801(c).  Hearsay is inadmissible unless an exception applies.  Plaintiffs' argue that the business record exception codified at Fed. R. Evid. 803(6) applies in this case, but it does not as

---

[6] This declaration was not listed in the joint exhibit list of witnesses and exhibits filed by the parties on June 20, 2019 and is therefore in violation of the Court Order setting the evidentiary hearing which specified "any witnesses or exhibits not listed in the Parties' joint list ...shall not be admitted and considered at the hearing." [ECF. 66 and ECF 67.]  In fact, the declaration was not even provided to Evans Hotels  until June 28, 2019.  Then at the hearing, the declaration was suddenly inserted at the beginning of Plaintiffs' Ex. 2 as if it were part of it.  Since this evidence was submitted untimely in violation of the Court's Order, it should not be considered.

1  explained *infra* at section II(D).

2      Mr. Riedijk's declaration is unreliable because it fails to establish that Mr.

3  Riedijk himself has firsthand knowledge of the ways in which the records were

4  made and the circumstances of preparation indicate a lack of trustworthiness.

5  PageFreezer is a paid for archiving software which was hired by Plaintiffs' counsel

6  to collect digital images.  According to the declaration of Mr. Riedijk, such images

7  are "created by people with first-hand knowledge of those events and conditions."

8  (Riedijk Decl. ¶3.)  No further information is supplied concerning who the persons

9  with first-hand knowledge of events and conditions are, nor how they have such

10  knowledge, nor how the images were gathered.  Is Mr. Riedijk the one with first-

11  hand knowledge or did someone at Plaintiffs' counsel's office collect these images?

12  What was the scope of the request?  All pages?  Select pages?  Could the pages be

13  altered?  In paragraphs 4, 10 and 16 of Mr. Riedijk's declaration, he asserts that

14  "PageFreezer took accurate and digital snapshots of the [Uniform Resource Locator

15  ("URL")] of the Hostname [Bahia, Catamaran or Lodge Torrey Pines URL] and

16  several of its web pages found in different Paths of this URL" but it provides no

17  information concerning which pages were selected or if all pages were selected or if

18  all pages are even included.  Concerns of the authenticity of the documents are

19  further compounded by the manner in which the documents are produced.  Plaintiffs

20  have produced PageFreezer records that were printed by Plaintiffs' counsel (TR

21  112:13-15), are not certified, and contain handwritten notes and post-its from

22  unknown sources that Plaintiffs' counsel admitted "are not part of the record itself"

23  (TR 113:18-19), further contributing to concerns of authenticity.

24      In Plaintiffs' Brief, Plaintiffs argue that Mr. Riedijk's declaration contains

25  "identical authentication facts" to those in *United States of America v. Gasperini*,

26  729 F. Appx. 112 (2nd Cir. July 2, 2018) and *United States of America v. Bansal*,

27  409 F. Appx. 663 (4th Cir. January 26, 2011).  However, this is false and misleading

28  as both case involved live testimony, in court statements, from witnesses with

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

personal knowledge concerning how the collection of data occurred and how the evidence was preserved.  See, e.g., *Gasperini*, 729 F. Appx. 112 (defendant had opportunity to cross-examine witness from Internet Archive about nature and reliability of procedures for capturing and cataloguing Internet content at particular times, thus enabling jury to make its own decision about weight, if any, to be given to records).  Mr. Riedijk's out of court declaration is devoid of such information, and is not sufficiently reliable to authenticate the records at issue.

## C.      The PageFreezer Documents Are Not the Best Evidence In their Present Condition

The "best evidence rule" applies where secondary evidence is offered to prove the content of a writing. Fed. R. Evid. 1102; *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1035 (9th Cir. 2011).  The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing. Fed. R. Evid. 1002.

In this case, Plaintiffs have produced PageFreezer records which are not certified and contain handwritten notes and post-its by unknown sources which most certainly were not present when the documents were prepared.  Thus, the authenticity of the current records and the likely existence of unmarked up records make the records offered inadmissible.

## D.      The PageFreezer Documents Are Not Business Records Subject to the Fed. R. Evid. 803(6) Hearsay Exception.

While Fed. R. Evid. 803(6) creates a hearsay exception for business records, the PageFreezer records do not come within the business records exception.  The business records exception applies to:

A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

18

1       (C) making the record was a regular practice of that activity;

2       (D) all these conditions are shown by the testimony of the custodian or

3  another qualified witness, or by a certification that complies with Rule 902 (11) or (12) or with a statute permitting certification; and

4       (E) the opponent does not show that the source of information or the

5  method or circumstances of preparation indicate a lack of trustworthiness.

6  Fed. R. Evid. 803(6).  By contrast, the PageFreezer documents were made at

7  some date subsequent to when Plaintiffs viewed the Evans Hotels' properties

8  websites – not at or near in time to Plaintiffs' encounter with the websites, by some

9  unknown person – not someone with knowledge of Plaintiffs' encounter, and was

10  prepared specifically for litigation – as explained by counsel. (TR 109:12-15.)  The

11  records are not certified and contain handwritten notes and post-its by unknown

12  sources which most certainly were not present when the documents were prepared.

13  Plaintiffs have presented no *testimony* of a custodian of records to demonstrate the

14  Fed. R. Evid 803(6) criteria has been met or that the source of information, or

15  method or circumstances of preparation of the documents or storage of documents

16  so as to engender trustworthiness.  Quite the opposite, the declaration and

17  documents in their current state make the records highly untrustworthy and present

18  more questions than answers.  For these and all the foregoing reasons, these

19  documents should be deemed inadmissible.

20       **E.**     **There is No Record of PageFreezer Documents Being Admissible**

21  Contrary to Plaintiffs' representation in court that "there are records from

22  [PageFreezer] in many cases" (TR 116:12-20), Plaintiffs have not identified, and

23  Defendant has not located, a single case in which PageFreezer documents have been

24  admitted.  Attempting to quell the Court's concerns, Plaintiffs' have cited other

25  cases in which Internet Archive records have been admitted, but Internet Archive

26  offers a distinctly different service than PageFreezer. "[T]he Internet Archive is a

27  nonprofit organization that has created an online library of digital media in an effort

28  to preserve digital content for future reference.  Its digital database is equivalent to a

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

19

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

paper library, but is filled with digital media like websites instead of books.  The library includes a collection of chronological records of various websites which Internet Archive makes available at no cost to the public via the Wayback Machine." *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007).

Emphasizing the differences: the Internet Archive is a nonprofit, publicly available service accessible for free.  Whatever it has is available.  It is not tasked with gathering or preserving only specific content.  Rather, it has an explainable system for how it works to gather content and how gathered content is stored.  Declarations describing that process have been provided in cases to authenticate the records as demonstrated by the cases cited to by Plaintiffs. (Pl Brief 3-4, FN4.)  PageFreezer, on the other hand, is a private, paid for service which is purporting to gather specific documentation requested by its customers for litigation.  PageFreezer has provided no declaration describing the manner in which it gathers any such records, the process it utilized to do so or the a description of how the content is stored.

## F.     CONCLUSION

As demonstrated above, Plaintiffs lack standing and the PageFreezer documents (Exhibits 2, 3, 4) should be deemed inadmissible.

KLINEDINST PC

DATED:  August 19, 2019          By:          /s/ Nadia P. Bermudez
                                             Nadia P. Bermudez
                                             Patrick J. Goode
                                             Lindsey N. Casillas
                                             Attorneys for Defendant EVANS
                                             HOTELS, LLC

18051195.3