**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**MANNING LAW, APC**
Joseph R. Manning, Jr. Esq. (223381)
joe@manninglawoffice.com
Michael J. Manning, Esq. (286879)
mike@manninglawoffice.com
4667 MacArthur Boulevard, Suite 150
Newport Beach, CA 92660
Telephone: (949) 200-8755
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*,
James Rutherford; and, The Association 4 Equal Access

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual, THE ASSOCIATION 4 EQUAL ACCESS, <br><br> Plaintiffs, <br><br> v. <br><br> EVANS HOTELS, LLC, a California limited liability company, and Does 1 to 50, <br><br> Defendants. | Case No.: 18-cv-0435-JLS-BGS <br><br> **PLAINTIFFS' POST EVIDENTIARY HEARING CLOSING COMMENTS** <br><br> Hon. Janis L. Sammartino |

At the Evidentiary Hear of July 1, 2019, Plaintiffs established that:

(1) Plaintiffs experienced concrete and particularized injury sufficient under *Spokeo* and *CREEC* for Article III standing; Defendants have conceded this. (*See infra* section C.)

(2) Plaintiff Rutherford intends to visit both the Websites and the hotels themselves after learning that barriers to access have been corrected;

(3) A4EA has associative standing to bring suit on behalf of its members; and

(4) The PageFreezer website archives of the Websites are authenticated, highly relevant, and admissible as evidence on several separate evidentiary grounds.

## A. Defendant Is Wrong That Section 36.302(e)(1) Does Not Apply To Its Online Reservation System - That Is Its Website

Defendant incorrectly argues for the first time in its closing argument that that 28 C.F.R. § 36.302(e)(1) does not apply to website content. (Def. Closing Statement at 3:8-10.) Reading the plain text of 28 C.F.R. § 36.302(e)(1) shows Defendant is wrong. Section 36.302(e)(1) requires places of public accommodation to make certain information available and adjust its policies to ensure reservations made by *any method* to reserve rooms are accessible to persons with disabilities. "(1) Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by ***any means**, including by telephone, in-person, or through a third party*…" (Section 36.302(e)(1)) (emphasis added).

Defendant does not dispute that it offers room reservations to the general public through its Websites and Section 36.302(e)(1) plainly requires its rules to apply to reservation systems made by any method and any means, including telephone, in-person, or through a third party. Defendant does not explain why its Websites – a means that is definitively used to describe its hotels and rooms, and book rooms at Defendant's hotel – are excluded as a reservation system. This is especially significant because online reservation systems are so commonly used to

book hotel rooms nowadays, including by Defendant.

A plain reading of Section 36.302(e)(1) requires that Defendant's Websites (unmistakably reservations systems under this section) are subject to the policy and procedure requirements of subsections (i) through (v) and Defendant's assertions to the contrary have no legal or factual basis. Consistent with this common sense reading of the statute, Defendant can cite no case law supporting its position.

### B. Defendant Is Wrong That Plaintiffs Did Not Access Defendant's Online Reservation System And Were Not Deterred

In its Closing Statement [Dkt. 84] Defendant incorrectly claims that Plaintiff Rutherford and claimant Filardi were not deterred from accessing the Websites after they tried and were unable to find adequate descriptions concerning the accessibility of the hotels because they did not "call the hotel for more information or utilize the online chat feature" and that "they simply did not book a room." (Def. Closing Statement at 3:8-10). Defendant is wrong and the language of Section 36.302(e)(1) applied to Rutherford and Filardi's testimony explains why.

Defendant offers an exclusive method of reserving rooms through its Websites and the law requires that "with respect to reservations made by *any means*…[Defendant must] (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same **manner** as individuals who do not need accessible rooms." (Section 36.302(e)(1)(i)) (emphasis added).

"***Any means***" and the "*same manner as individuals who do not need accessible rooms*" does not mean that Plaintiffs must call the hotel for more information or utilize an online chat feature before they are denied full and equal access or deterred from access. There is no duty for Plaintiffs to first exhaust other means to reserve a room or to learn if a room meets their accessibility needs by doing anything different from able-bodied persons who reserve a room.[1] Able-

---

[1] Subsection (ii) of 36.302(e)(1) makes this even more obvious.

2

bodied persons need <u>not</u> take additional steps to reserve a room on Defendant's online reservation system but Defendant asserts that persons with disabilities must. (Def. Closing Statement at 3:8-10). Defendant misses the point that such additional steps are facially discriminatory and a *per se* violation of law.

Plaintiffs tried to learn about and reserve rooms using Defendant's exclusive online reservation system – its Websites – and were denied full and equal access, in violation of section 36.302(e)(1). By the nature of being denied access from Defendant's hotel reservation system because its discriminatory policies and procedures, Plaintiffs were also denied access to Defendant's physical hotels. (*Chapman v. Pier 1 Imps. (US.), Inc.*, 631 F.3d 939, 947.) (*See also Americans with Disabilities Act Title III Regulations*, September 15, 2010, at p. 980.) (The DOJ rejected requests that "in the same manner" be changed to "in a substantially similar manner.")

Such denial of access and deterrence conferred Article III standing and testimonial evidence proves it: Plaintiff Rutherford and claimant Filardi visited the Websites for the dual purposes of staying at Defendant's hotels as bona fide customers and as testers (Evid. Hearing at 148:2-20; 106:20-107:9), they encountered barriers to access and discrimination that prevented full and equal access on the Websites,(*Id.* at 30:1-17), and visited the Websites *again* during the pendency of this action as customers and as testers, and again encountered barriers to access. (*Id.* at 41:24-42:18).[2]

There ample evidence of tangible, concrete, and repeated discrimination that prevented Plaintiffs from enjoying the services of Defendant's places of public accommodation on multiple occasions, and that Plaintiffs have suffered particular and concrete injury-in-fact sufficient to confer standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

---

[2] Policy barriers persist on Defendant's online reservation system even after Defendant claims it has updated its website (Def. Closing Comments, p.11, fn 3.).

### C. Defendant Concedes that Plaintiffs Encountered Barriers to Access on the Websites Giving Rise to Article III Standing

Defendant concedes its violation of Sections 36.302(e)(1)(i) and (ii) when it acknowledged that its online reservation system only disclosed that certain rooms were "accessible" with no additional information. (Def. Closing Comments at 6.). Common sense dictates that conclusorily stating that its rooms are "accessible" is not enough detail for Plaintiffs to assess whether a hotel or guest room meets their particular accessibility needs. Indeed, Plaintiff Rutherford and claimant Filardi testified what information needs to be described to provide sufficient detail, those were the types of features Plaintiffs specifically looked for when they visited the Websites, and that the Websites did not include any such detail which is why there is violation of law. (See Evid. Hearing at 25:3-28:22; 123:14-124:25.).

Defendant fails to distinguish *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093 (9th Cir. 2017) ("CREEC") by claiming that "Plaintiffs had no actual knowledge of any illegal barriers at the Evans Hotels' properties which deterred them from booking" while plaintiffs in *CREEC* had knowledge of illegal barriers. (Def. Closing Comments at 6.). Defendant asserts that "Plaintiff conducted no investigation to determine if the properties actually were inaccessible or contained illegal barriers" so the deterrence doctrine discussed in *CREEC* does not apply (*Id.*). Defendant is wrong and again misses the point. The regulation at issue requires Defendant to provide information for the benefit of persons with disabilities. The burden is not placed on persons with disabilities to "investigate" and sleuth out the accessible characteristics and features of the rooms and properties offered by Defendant. This is an absurd and disingenuous interpretation of the regulation and it is directly contradicted by Ninth Circuit authority. (*See Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F. 3d 1001 (2015). ("DOJ commentaries — and the ADA itself — refer to an obligation that defendant bears," and the ADA was intended "to eliminate the stereotype of the helpless disabled

person completely reliant on the assistance of able-bodied persons to come to their rescue.").

This is not a physical access claim where Plaintiffs need to have knowledge of physical barriers to access (e.g. curb ramps, accessible routes, walk-in bathtubs, etc.), and Plaintiffs make no such physical barrier claims. This is a case that surrounds Defendant's *policy and procedures* to have an accessible reservation system (its Website) and Defendant's failure to comply with the requirements set forth in the regulations to provide such a system.

The violation or barrier here is that Defendant's policy and reservation system do not, among other things, ensure that persons with disabilities can make reservations for accessible guest rooms *during the same hours and in the same manner* as individuals who do not need accessible rooms and *describes accessible features in the hotels and guest rooms in enough detail* to reasonably permit persons with disabilities to assess whether a given hotel or guest room meets accessibility needs. (Sections 36.302(e)(1)(i) and (ii).)  This is established because Plaintiffs found that no descriptions of accessible features were present when they tried to identify a room to reserve and, accordingly, they could not reserve a room using the Websites, and thus ***Plaintiffs had actual knowledge of the illegal barriers in violation sections 36.302(e)(1)***.

Plaintiff Rutherford also has actual knowledge of a second, independent barrier to access he learned through review of Defendant's responses to discovery in this case, that all potential guests reserving rooms with accessible features through the Websites are required to complete additional steps and take additional time to reserve an accessible room, over and above those required for other guests.  The additional steps include, that disabled reservations system users must wait for a second email confirming that an accessible room has been "hard blocked."  In connection with this policy, Defendant's employees have confirmed through testimony and written discovery responses (including Defendant's admission which

places this issue beyond any dispute) that there is no policy with regard to how long a person with disabilities must wait for this second email. This policy of differential treatment is a clear violation of Section 36.302(e)(1)(i), (iv), and (v). (See Pl. Supp. Brief at 11, fn 9.) (Evid. Hearing 37:22-40:7).

Rutherford has been aware of the discriminatory reservations policy based upon his knowledge of Defendants discovery responses.  Plaintiff Rutherford has previously offered testimony supporting this fact and if allowed he would have done so at the Evidentiary Hearing. (Evid. Hearing 37:22-40:7) Consistent with the binding authority of *CREEC*, the source of Rutherford's knowledge need not be firsthand experience of the subject barrier and this testimony should be allowed. (*See CREEC*, 867 F.3d at 1100.)

In *CREEC*, plaintiffs learned of barriers to access without personally experiencing them or booking a room, and the deterrence doctrine applied. (*See CREEC*, 867 F.3d at 1099.). For the same reasons as *CREEC*, the deterrence doctrine applies here to barriers to access that Plaintiff later learned about but had not personally experienced (here the "extra step" barrier), in addition to the ones that he had both actual knowledge and personally experienced (Websites "information deficit" barrier).

Plaintiffs here had both actual knowledge *and* experienced the policy and procedure barriers firsthand (actual injury) while the *CREEC* plaintiffs only had knowledge of barriers.  Regardless, *CREEC* is analogous because Plaintiffs here have actual knowledge of barriers to fall within the deterrent effect doctrine, and demonstrates yet another avenue of injury in fact.[3] (*See also Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (once a plaintiff encounters a barrier he or she has standing to remove all barriers related to the disability regardless of if personally encountered).)

---

[3]*See also* Pl. Supp. Brief, Part IV for complete analysis regarding injury in fact and Article III standing in the contexts of the *CREEC*, *Spokeo*, and *Spokeo Remanded* decisions.

### D. **Defendant Is Wrong That Plaintiffs Have Shown No Threat to Future Injury**

The record shows that Plaintiff Rutherford and claimant Filardi have plans to stay at each of Defendant's hotels if the barriers to access are eliminated (Evid. Hearing at 148:21-149:3), will return as bona-fide customers and to check ADA compliance (*Id.* at 150:8-16), and can afford to stay at Evans' hotels in the future (*Id.* at 106:20-107:9). (*See* Supp. Brief p. 9-13 for full relevant quotes.)

Binding case law in the 9th Circuit and U.S. Supreme Court supports that Plaintiffs' above reasons and plans for returning to both the Websites and the physical hotels are sufficient (although not necessary[4]) to establish Article III standing. "Harm is 'concrete and particularized,' and intent to visit the hotels once they provide equivalent [access] for the disabled renders their harm 'actual or imminent, not conjectural or hypothetical.'" (*CREEC*, 867 F.3d at 1099.) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (*CREEC*, 867 F.3d at 1101.) ("a plaintiff need not engage in a 'futile gesture' to establish Title III standing if she is on notice that the establishment 'does not intend to comply' with the ADA. 42 U.S.C. § 12188(a)(1).") (*See also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002).)("under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").

Defendant focuses its arguments on Plaintiff Rutherford's litigation history arguing that this undermines his assertion that he will return to utilize its reservations system should it become compliant. Federal courts discourage this

---

[4] Plaintiff need not intend to (nor should he have to) go to Defendant's hotels if, in accordance with Section 36.302(e)(1)(ii), he learns that Defendant's hotels or guest rooms do not meet his accessibility needs. For that reason, the intent to return for standing purposes must only be an intent to return to the Websites after learning of compliance; not the hotels themselves.

7

approach. (*D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) ("The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. *See, e.g., Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir. 1988).) This is particularly true in the ADA context where, the law's provision for injunctive relief only "removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit.... As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.... For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." (*Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir.2007)(citing Samuel R. Bagnestos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation,* 54 U.C.L.A. L.Rev. 1, 5 (2006)). Accordingly, we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation.

The *D'Lil* court further cautions against the reference to litigation history to draw an adverse inference regarding a plaintiff's intent to return. (*Id.* at 1038.) ("The record contains no evidence of whether those places had been made accessible, such that *D'Lil* could have safely returned if she so wished."). Finally, *D'Lil* recognizes that intent to return for specific reasons should be considered independent of overall litigation history. (*Id.*) ("whether or not *D'Lil* visited the hotels in Redding says little about her intent to visit the Best Western Encina, considering that *D'Lil* identified specific reasons — including the presence of the Marshes and expected future work in Solvang — for returning to Santa Barbara.").(*See also Molski v. Price* 224 F.R.D. 479, 483 (C.D. Cal. 2004).) (Acknowledging the need to an individualized analysis of a plaintiff's intent to return) ("Plaintiff's intent to return to other places of public accommodation is of minimal relevance to his intent to return to the service station

at issue in this action.").

Plaintiffs have expressed a particular desire and motivation to return to test the compliance of Defendant, namely, Defendant's rejection of its obligation to operate its online reservation system in accord with the regulations and requirements promulgated by the Department of Justice under the ADA. (Evid. Hearing at 106:20-107:9; 148:21-149:3; 150:8-16). As a disabled person, as a dedicated advocate for the disabled, as the founder of the Association 4 Equal Access, and as the fiancé of a person with a profound disability, Plaintiff Rutherford has a personal stake in seeing this through, and the record confirms it.

### E. PageFreezer Records Are Admissible And Highly Relevant

Defendant has *never* provided documents depicting the Websites at the time Plaintiffs visited them, despite Plaintiff having requested them through the discovery process and Defendant being in the best position (as controller and operator of the Websites) to provide them. (*See* Def. Responses to Request For Production (Set One) No. 6, 7, 9, 14, and 15). To accomplish this, Plaintiff has engaged the services of a technology company to compile authenticated archives of the Websites - accurate digital copies of those web pages at the time they are archived. Defendants' objections to the Website Archives on every possible ground are misplaced. (*See* Pl. Supp. Brief, Part III for complete analysis.)

These website archives are highly relevant under Fed. R. Evid. Rule 401 because on the date the archive was captured, if anything, the Websites would have only added accessibility-related content since the lawsuit was filed and not removed such content, and because this is the only available evidence. They are also the *best* evidence under Rule 1002 for the same reason that they are the *only* evidence.[5]

Defendant is wrong that the Website Archives are not authenticated. The

---

[5] Additionally, Defendant has to-date proffered no evidence that contradicts the barriers to access Plaintiff Rutherford and claimant Filardi encountered on the Websites when they encountered them, despite Defendant presumably having access to all documentation related to the Websites.

Riedjik declaration is sufficient and in accord with courts throughout the country that have held that printouts of a website could be authenticated by affidavits. (*See* Pl. Supp. Brief, fn 4.). Moreover, Plaintiff has not submitted to evidence just printouts, but the Archived Websites URLs themselves. (*See Id.* fn 5.)

Defendant is wrong that hearsay exceptions do not exist. As set forth in Plaintiffs' Supplemental Brief, numerous hearsay exceptions also apply, including Rules 803(6) (PageFreezer created the Website Archives on the dates the records describe, by a persons with knowledge of the contents and creation, and kept in the regular course of PageFreezer's business), 801(d)(2) (the Archived Websites are Defendant's own statements), and because it is testimony generated by a machine.

The PageFreezer Website Archives are properly authenticated, relevant, and admissible, and, if Defendant contends they are in any way inaccurate, Defendant is uniquely capable of making that argument, being in control of the Websites at all relevant times, including its content and any and all changes. Tellingly, Defendant has never made that argument.

**G.     Conclusion**

Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as broadly as possible." *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal.2006). "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates." *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073,1084 (N.D. Cal. 2015) (emphasis added). Plaintiffs have met their burden to show that Article III standing exists and this matter should proceed to be decided on the merits

Dated: August 26, 2019         MANNING LAW, APC
                               By: /s/ Joseph R. Manning Jr., Esq.
                               Joseph R. Manning Jr., Esq.