UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD and THE ASSOCIATION 4 EQUAL ACCESS,<br><br>Plaintiffs,<br><br>v.<br><br>EVANS HOTELS, LLC, and DOES 1 to 50,<br><br>Defendants. | Case No.: 18-CV-435 JLS (MSB)<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES**<br><br>(ECF No. 103) |

Presently before the Court is Defendant Evans Hotels, LLC's ("Defendant") Motion for Attorneys' Fees or in the Alternative for Sanctions ("Mot.," ECF No. 103). Plaintiffs James Rutherford and the Association 4 Equal Access (the "Association" or "A4EA") (collectively, "Plaintiffs") filed a Response in opposition to the Motion ("Resp.," ECF No. 104), and Defendant filed a Reply in support of the Motion ("Reply," ECF No. 106). The Court vacated the hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 105. Having carefully reviewed the Parties' arguments, the record, and the relevant law, the Court **GRANTS IN PART** Defendant's Motion, as set forth below.

/ / /

/ / /

## BACKGROUND

The Parties are intimately familiar with the procedural and factual background of this case, and accordingly the Court incorporates by reference the detailed background set forth in its September 3, 2020 Order. *See* ECF No. 102 (the "Order") at 2–19. To summarize the relevant background briefly, however:

On January 18, 2018, Plaintiffs filed a complaint against Defendant for violations of the California Unruh Act and Title III of the Americans with Disabilities Act (the "ADA"). *See generally* ECF No. 1-2 ("Compl."). Plaintiffs filed their complaint in the Superior Court of California, County of San Diego, claiming that Defendant's hotel reservation system denied Plaintiffs and those similarly situated full and equal access. *See generally* Compl. On February 26, 2018, the case was removed to this Court. *See generally* ECF No. 1.

Following the filing of the operative Second Amended Complaint ("SAC," ECF No. 21) and Plaintiffs' Motion to Certify Class (ECF No. 45), on April 29, 2019, this Court ordered Plaintiffs to show cause why this action should not be dismissed for lack of Article III standing and subject-matter jurisdiction, noting that "it would appear that Plaintiffs cannot establish an intent to return or deterrence and therefore lack standing to assert their ADA claims." ECF No. 59 ("OSC") at 3:4–5. The parties submitted responses to the OSC, *see* ECF Nos. 62, 63, and, in order to resolve issues of credibility and disputed material facts, the Court scheduled an evidentiary hearing for July 1, 2019, *see* ECF Nos. 66, 74, 78.

After the evidentiary hearing and a thorough review of the record in the case, including significant briefing addressing the standing and subject-matter jurisdiction issues, the Court issued an Order determining that Plaintiffs failed to establish standing through either an injury-in-fact or intent-to-return theory. *See generally* Order. The Order relied in significant part on determinations of Plaintiffs' credibility. *See id.* Thus, the Court dismissed Plaintiffs' ADA claim for lack of standing and remanded Plaintiffs' Unruh Act claim to the Superior Court of California. *See id.*

Subsequently, Defendant filed the instant Motion, which Plaintiffs oppose.

## LEGAL STANDARDS

### I. Attorneys' Fees Under 42 U.S.C. § 12205

The ADA provides that "the court in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205. When the prevailing party is the defendant, attorneys' fees should be awarded only if "the plaintiff's action was frivolous, unreasonable, or without foundation." *Brown v. Lucky Stores*, 246, F.3d 1182, 1190 (9th Cir. 2001). The purpose of awarding fees to a prevailing defendant is "'to deter the bringing of lawsuits without foundation.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1652 (2016) (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 420 (1978)). "The Court, therefore, has interpreted the statute to allow prevailing defendants to recover when plaintiff's "claim was frivolous, unreasonable, or groundless." *Id.* (quoting *Christiansburg*, 434 U.S. at 421).

### II. Sanctions Under 28 U.S.C. § 1927

Section 1927 of title 28 of the United States Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred for such conduct." Under this section, the sanctions only apply to "subsequent filing and tactics which multiply the proceedings." *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996). To award sanctions under section 1927, the court must make a finding of recklessness or bad faith. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

### III. The Court's Inherent Power to Sanction

A federal court has the inherent power "to levy sanctions, including attorneys' fees, for willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink*, 239 F.3d at 992 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see also Chambers v. NASCO*, 501 U.S. 32, 44–45 (1991) (stating that, as an "appropriate sanction for conduct that abuses the

judicial process," "an assessment of attorney's fees is undoubtedly within the court's inherent power.").

## ANALYSIS

Defendant requests that the Court award it its attorneys' fees and costs as a prevailing party under 42 U.S.C. § 12205 or, in the alternative, as a sanction pursuant to 28 U.S.C. § 1927 and/or this Court's inherent powers. *See* ECF No. 103-1 ("Mot. Mem.") at 1:2–7.

**I.   Defendant's Entitlement to Attorneys' Fees**

Defendant seeks attorneys' fees in the amount of $205,067.50 and costs totaling $12,615.73 as the "prevailing party" under the ADA. Mot. Mem. at 18:2–4. As previously noted, when the prevailing party is the defendant, attorneys' fees should be awarded only if "the plaintiff's action was frivolous, unreasonable, or without foundation." *Brown*, 246 F.3d at 1190. Accordingly, to determine whether Defendant is entitled to an award of attorneys' fees under the ADA, the court must first determine whether Defendant is a prevailing party and second whether Plaintiffs' lawsuit was frivolous, unreasonable, or groundless.

### *A.   Defendant's Prevailing Party Status*

In *CRST Van Expedited Incorporated*, the United States Supreme Court held that "a favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed" under a statutory attorneys' fees provision. 136 S. Ct. at 1646. In applying *CRST Van Expedited Incorporated*, the Ninth Circuit has held that a defendant may be considered a prevailing party even if the case is dismissed for lack of subject-matter jurisdiction. *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 856 F.3d 696, 709 (9th Cir. 2017) (holding that dismissing a case for lack of subject-matter jurisdiction is "a significant victory and permanently changes the legal relationship of the parties").

Plaintiffs argue first that Defendant is not a prevailing party because the dismissal for lack of standing "has not materially altered the legal relationship between the parties." Resp. at 12, 24–25. Additionally, Plaintiffs argue that Defendant is not a prevailing party because the dismissal was "not an adjudication on the merits and it was not dispositive of

Plaintiffs' claims," given that the Unruh Act claim was remanded to the California Superior Court. *Id.* at 13, 24–25. However, as noted above, the Ninth Circuit has rejected the argument that a defendant is not the prevailing party merely because a case was dismissed for jurisdictional reasons. *Amphastar Pharmaceuticals Inc.*, 856 F.3d at 709. Here, the Court dismissed Plaintiffs' ADA claim for lack of subject-matter jurisdiction. Order at 51:22–23. Thus, the fact that the Unruh Act claim was remanded to the California Superior Court is irrelevant for purposes of deciding whether Defendant is the prevailing party, as Defendant brings its request for attorneys' fees based solely on the dismissed ADA claim. Thus, the dismissal of the ADA claim effectively changed the legal relationship of the parties, and accordingly, Defendant is a prevailing party.

Plaintiffs further argue that the ADA "contains no independent grant of jurisdiction to entertain a fee motion after this Court determined it does not have jurisdiction over the action." Resp. at 13. Plaintiffs' argument, however, is without merit. The Ninth Circuit held in *Amphastar Pharmaceuticals Incorporated* that "[t]o rule that a district court cannot award attorneys' fees even when it determines that a [plaintiff] brought a frivolous suit just because the jurisdictional bar applies would undermine one of the key purposes . . . to discourage 'parasitic' suits." 856 F.3d at 710. The Ninth Circuit went on to state: "It is consistent with the statutory scheme that [the defendant] can receive attorneys' fees from [the plaintiff] if its claim was frivolous, given the immense amount of resources and time this action has cost everyone." *Id.* The Ninth Circuit's reasoning is reflective of the goals and structure of the ADA; therefore, Plaintiffs' claim that this Court lacks jurisdiction to "entertain a fee motion" is unfounded. Resp. at 13; *see Strojnik v. 1017 Coronado, Inc.*, Case No. 19-cv-02210-BAS-MSB, 2021 WL 120899 (S.D. Cal. Jan. 13, 2021) (awarding attorneys' fees to a prevailing defendant under an ADA claim after dismissing complaint with prejudice); *see also Vogel v. Sym Properties LLC*, No. CV 15-09855-AB (ASX), 2017 WL 4586348, at *2 (C.D. Cal. Aug 4, 2017) ("Given the "trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted.").

### B.     *Frivolous, Unreasonable, or Groundless Action*

Next the Court must determine whether Plaintiffs' lawsuit was "frivolous, unreasonable or groundless." *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646. "Frivolous means 'lacking in legal basis or legal merit.'" *Strojnik*, 2021 WL 120899, at *3 (quoting Black's Law Dictionary 738 (9th ed. 2009)). The court may find a claim frivolous if it determines that the plaintiff had no reasonable or credible foundation to bring the suit or was aware the court would not have jurisdiction. *See Amphastar Pharm. Inc.*, 856 F.3d at 710 (finding the plaintiff's claim to be frivolous because the plaintiff "had no reasonable foundation on which to bring the suit" and "knew or should have known that the Court would not have jurisdiction"). This standard is also met if "the plaintiff continued to litigate after" his claim "clearly became" groundless or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 15 (1980). While bad faith in bringing the lawsuit is not required, a showing of bad faith could support a finding that the lawsuit was "frivolous, unreasonable or groundless." *Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*, No. CV-16-01969-PHX-NVW, 2018 WL 3545291, at *11 (D. Ariz. July 24, 2018).

This Court previously determined that Mr. Rutherford has failed to establish standing under an injury-in-fact or intent-to-return theory. *See generally* Order. It is true that dismissal for lack of standing does not by itself make a claim frivolous or unreasonable. *See Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. EDCV-09-0023 MJG, 2017 WL 10543563, at *8 (C.D. Cal. Nov. 20, 2017) ("The Court is mindful that it must 'resist the understandable temptation to engage in post hoc reasoning by concluding that, because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'") (quoting *Christiansburg*, 434 U.S. at 421–22) (emphasis in original). But the Court may also take into consideration facts as they became known to the court, the litigation history of the plaintiff, and litigation tactics in the present matter to make a determination as to whether the plaintiff had a reasonable foundation to bring the suit or has in some other way acted unreasonably or in bad faith. *Id.* ("The Court does not find Amphastar's claim frivolous because it did not prevail, but rather because, as the facts

became known to the Court, it became clear that Amphastar had no reasonable foundation on which to bring the suit."); *see also Strojnik*, 2021 WL 120899, at *4 (considering the plaintiff's extensive litigation history and use of misrepresentations and other tactics in previous settlements and the current litigation in determining whether to award attorneys' fees to the defendant). Thus, in its determination, the Court will consider Plaintiffs' litigation history, litigation tactics, use of the Association, and behavior throughout this case to determine whether this action was frivolous or unreasonable.

Since 2013 and as of the date of the Order, Mr. Rutherford had filed 313 lawsuits in this District and the Central District of California. *See* Order at 12:21. And, by the Court's count, including this case, Mr. Rutherford has filed at least twenty-four cases against hotels in this District alone as of August 1, 2020.[1] While many of Mr. Rutherford's lawsuits have been settled outside of court, he also has had suits dismissed for lack of standing in the past, before issuance of this Court's Order. *See, e.g.*, *Rutherford v. JC Resorts, LLC*, No.

---

[1] *See Rutherford v. Mandira Invs., LLC*, No. 20-CV-826 AJB (BGS) (S.D. Cal. filed May 1, 2020); *Rutherford v. Mehul Hospitality, LLC*, No. 20-CV-348 H (JLB) (S.D. Cal. filed Feb. 25, 2020); *Rutherford v. Chang*, No. 19-CV-2350 JAH (NLS) (S.D. Cal. filed Dec. 9, 2019); *Rutherford v. Korol Capital LLC*, No. 19-CV-1862 BAS (KSC) (S.D. Cal. filed Sept. 26, 2019); *Rutherford v. 1440 Mission Ave., LLC*, No. 19-CV-1861 WQH (MDD) (S.D. Cal. filed Sept. 26, 2019); *Rutherford v. Palm Tree Hospitality Corp.*, No. 19-CV-1569 JLS (WVG) (S.D. Cal. filed Aug. 20, 2019); *Rutherford v. La Jolla Riviera Apartment House LLC*, No. 19-CV-1349 JM (MDD) (S.D. Cal. removed July 19, 2019); *Rutherford v. JC Resorts, LLC*, No. 19-CV-665 BEN (NLS) (S.D. Cal. removed Apr. 9, 2019); *Rutherford v. Gurudev Enters. LLC*, No. 19-CV-251 JLS (NLS) (S.D. Cal. filed Feb. 4, 2019); *Rutherford v. Rodeway Inn*, No. 18-CV-2276 AJB (MDD) (S.D. Cal. filed Sept. 28, 2018); *Rutherford v. Day's Inn El Centro*, No. 18-CV-2275 GPC (AGS) (S.D. Cal. filed Sept. 28, 2018); *Rutherford v. Motel 6*, No. 18-CV-2210 GPC (WVG) (S.D. Cal. filed Sept. 24, 2018); *Rutherford v. Econo Lodge Inn & Suites*, No. 18-CV-2026 GPC (LL) (S.D. Cal. filed Aug. 29, 2018); *Rutherford v. Pacifica Diamond LLC*, No. 18-CV-1801 CAB (JLB) (S.D. Cal. removed Aug. 2, 2018); *Rutherford v. Pacifica S. Inn LLC*, No. 18-CV-1798 JLS (BLM) (S.D. Cal. removed Aug. 2, 2018); *Rutherford v. Comfort Inn & Suites El Centro I-8*, No. 18-CV-1768 WQH (KSC) (S.D. Cal. filed July 31, 2018); *Rutherford v. Ams. Best Value Inn*, No. 18-CV-1734 CAB (BGS) (S.D. Cal. filed July 27, 2018); *Rutherford v. Best W.*, No. 18-CV-1733 KSC (S.D. Cal. filed July 27, 2018); *Rutherford v. Holiday Inn*, No. 18-CV-1730 LAB (JMA) (S.D. Cal. filed July 27, 2018); *Rutherford v. Royal Motel*, No. 18-CV-1501 LAB (RBB) (S.D. Cal. filed June 29, 2018); *Rutherford v. Econolodge*, No. 18-CV-1471 LAB (LL) (S.D. Cal. filed June 27, 2018); *Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB) (S.D. Cal. removed Feb. 26, 2018); *Peterson v. Watkins*, No. 17-CV-1078 BAS (JLB) (S.D. Cal. filed May 24, 2017); and *Rutherford v. La Quinta Holdings*, No. 17-CV-819 DMS (JLB) (S.D. Cal. filed Apr. 24, 2017).

19-CV-00665-BEN-NLS, 2020 WL 4227558 (S.D. Cal. July 23, 2020) (granting defendant summary judgment as to Mr. Rutherford's ADA claim due to lack of standing, declining to exercise supplemental jurisdiction over Unruh Act claim, and remanding to state court), *appeal dismissed*, No. 20-55878, 2020 WL 8618016 (9th Cir. Nov. 25, 2020); *Rutherford v. Los Charros*, No. 19-CV-379 LAB (WVG) (S.D. Cal. filed Feb. 26, 2019), ECF No. 7 (April 5, 2019 order to show cause why case should not be dismissed for lack of jurisdiction noting: "Plaintiff James Rutherford has filed numerous complaints in this District, and this Court has pointed out to him the necessity of pleading facts to establish standing."); *Rutherford v. Econolodge*, No. 18-CV-1471 LAB (LL) (S.D. Cal. filed June 27, 2018), ECF No. 14 (February 27, 2019 order granting motion to dismiss ADA claim for lack of jurisdiction).

Defendant's Motion also cites multiple cases filed by Mr. Rutherford in the Central District of California that similarly were rejected for lack of standing. *See* Mot. Mem. at 15–16.[2] Judge Otis D. Wright summarized Mr. Rutherford's litigation history as follows:

> Rutherford has filed more than 10 cases within the last twelve months, and is considered a high-frequency litigant under California law. . . . Rutherford's cases include nearly identical complaints and subsequent filings, with billing records that reflect the use of templates. Notably, Rutherford's attorneys have filed thousands of ADA cases in this district using "carbon-copy complaints and 'entirely boilerplate' litigation."

*Rutherford v. JJ's Mkt. & Liquor*, Case No. 5:18-cv-02656-ODW (SHKx), 2020 WL 883220, at *6 (C.D. Cal. Feb. 21, 2020). Mr. Rutherford has a history of failing to allege specifically what injury he has suffered and what barriers affect that disability—shortfalls that have been pointed out to him on many occasions—yet Mr. Rutherford continued to file complaints lacking sufficient substance to establish standing. This history shows that Mr. Rutherford is aware of the standing requirements for ADA claims and repeatedly has

---

[2] *James Rutherford v. JJ's Mkt. & Liquor*, 2020 U.S. Dist. LEXIS 31164 (C.D. Cal. Feb. 21, 2020); *James Rutherford v. Boman*, 2020 U.S. Dist. LEXIS 129044 (C.D. Cal. May 6, 2020); *Rutherford v. Dinh*, 2020 U.S. Dist. LEXIS 129798 (C.D. Cal. May 6, 2020).

failed to satisfy those requirements in the past. This conduct weighs in favor of finding the present claim both frivolous and unreasonable. *See Strojnik*, 2021 WL 120899, at *4 ("The fact remains that Mr. Strojnik files lawsuits with broad, non-specific allegations that he knows will be dismissed for lack of standing.").

The Court is also troubled by Mr. Rutherford's unflinching continued pursuit of what may have been a moot controversy. *See* Order at 37:22–23; *see also* ECF No. 49 at 9–10. After Plaintiffs filed their initial complaint, Defendant notified Plaintiffs that, as of February 27, 2018, "Defendant had taken steps necessary to ensure that Defendant's online reservation services . . . allowed persons with mobility impairments to independently identify accessible feature[s] of Defendant's hotels and independently reserve accessible rooms." Mot. Mem. at 3:8–12 (citing Declaration of Nadia P. Bermudez ("Bermudez Decl.," ECF No. 103-3) ¶¶ 6–8; *id.* Exs. B and C). Thus, the lawsuit accomplished its remedial goals in February 2018, shortly after it was filed in January of that year. In its Order, this Court noted that, "[r]ather than close the book on a job well done and move on, Mr. Rutherford has required the Parties and this Court to expend valuable resources so that he may 'extort [his] cash settlement.'" Order at 36:8–9. Mr. Rutherford's profit motive is further exemplified by his numerous filings and his "tacking on state law claims for Unruh damages to his federal ADA complaints." Order at 37:20–23 (citing *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042 (C.D. Cal. 2005)). This is the exact type of behavior that courts juggling overburdened dockets seek to curtail.

Of significant concern to the Court is Mr. Rutherford's use of the Association as an additional plaintiff in a number of his suits, including this one.[3] After reviewing the lack

---

[3] *See, e.g.*, *Rutherford, A4EA v. Pac. W. Bank*, 2019 U.S. Dist. LEXIS 28752 (S.D. Cal. Feb. 22, 2019); *Rutherford, A4EA v. Carl's Jr.*, 2018 U.S. Dist. LEXIS 213050 (C.D. Cal. Dec. 18, 2018); *Rutherford, A4EA v. Bhakta*, 2017 U.S. Dist. LEXIS 190076 (C.D. Cal. Nov. 15, 2017); *Rutherford, A4EA v. Cho-Park LLC*, 2017 U.S. Dist. LEXIS 206083 (C.D. Cal. Dec. 14, 2017); *Rutherford, A4EA v. Hazit Mkt.*, 2019 U.S. Dist. LEXIS 42880 (C.D. Cal. Mar. 15, 2019); *Rutherford, A4EA v. Coast to Coast Commer., LLC*, 2017 U.S. Dist. LEXIS 189267 (C.D. Cal. Nov. 15, 2017); *Rutherford, A4EA v. Elite Hospitality, Inc.*, 2018 U.S. Dist. LEXIS 57014 (C.D. Cal. Apr. 3, 2018); *Rutherford, A4EA v. Jack in the Box, Inc.*,

of credibility in Mr. Rutherford's testimony about the Association, including the lack of evidence detailing membership, regular meetings, educational programs, polices or procedures, or bylaws, the Court concluded in its Order that the "Association is not a legitimate organization, but rather serves as the alter ego of Mr. Rutherford and/or Ms. Filardi." Order at 50:10-11.  Mr. Rutherford has not only commingled settlement funds with the Association's, but also has used the Association to further his own interests. *Id.* Such tactics of "using misrepresentations to encourage small business defendants into quick settlements" weigh strongly in favor of finding Plaintiffs' behavior and this action unreasonable. *Strojnik*, 2021 WL 120899, at *4.

Also relevant is the fact that Plaintiffs' credibility has been called into question on multiple occasions.  For example, in the Order, the Court determined that it could not take Mr. Rutherford at his word given his "litigation history, coupled with a contradictory factual record," and stated that, "while the Court acknowledges Mr. [Rutherford's] right to file ADA lawsuits to remedy denial of access violations, the reality is he has sued so many different establishments that it is impossible to believe he routinely visits the same establishments on each of his visits to San Diego." Order at 35:23–36:4 (citing *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, 1213 (S.D. Cal. 2007) (collecting cases)).  With regard to the many ADA cases Mr. Rutherford has brought, he "does not know how many are pending or whom he has sued," and he "has also entered into an unknown number of settlements with entities he has not formally filed an ADA lawsuit against." *Id.* at 12:25, 15:10–11.  The Order went on to list "other factual considerations in the record that call into question Plaintiff's credibility," including "factual contradictions" in Mr. Rutherford's testimony, Mr. Rutherford's tendency to "exaggerate or understate his testimony to his advantage," the inclusion of "simply implausible" testimony, leading questions asked by Mr. Rutherford's own counsel, and finally the

---

2018 U.S. Dist. LEXIS 6906 (C.D. Cal. Jan. 16, 2018); and *Rutherford, A4EA v. Popeyes La. Kitchen, Inc.*, 2018 U.S. Dist. LEXIS 10835 (C.D. Cal. Jan. 23, 2018).

allegations from the Riverside County District Attorney's Office. *See generally* Order at 38–39. These misrepresentations and credibility concerns add further credence to the Court's determination that the behavior of Plaintiffs in filing this suit was frivolous, unreasonable, and groundless.

Plaintiffs contend the action was not frivolous, unreasonable, or groundless because the testimony provided by Mr. Rutherford and Ms. Filardi "supports finding of injury-in-fact under 36.302(e)(1)." Resp. at 14:11–12. Plaintiffs' Response argues at length why Mr. Rutherford "has standing" to challenge the illegal barriers, and how he has suffered an injury-in-fact, suggesting the Court should have adopted a different standard for "standing for the tester" from the Middle District of Florida. *Id.* at 21–23.

The Court already conducted an evidentiary hearing addressing the standing issue and had the opportunity to listen to live testimony during the hearing; Plaintiffs also had the opportunity to object to the evidence. Order at 19:18–19 ("[T]he Court ruled on a vast majority of the Parties' evidentiary objections at the hearing."). Following the hearing and on a full evidentiary record, the Court concluded that Mr. Rutherford lacked Article III standing to pursue his claims for injunctive relief. *Id.* at 29. Given Plaintiffs' failure to file a timely motion for reconsideration and in light of the law of the case,[4] there is nothing for the Court to reconsider at this time regarding the issues of standing, Mr. Rutherford's intent to return, whether Mr. Rutherford suffered an injury-in-fact, Mr. Rutherford's knowledge of the alleged barriers, or Mr. Rutherford's particular disability. Thus,

---

[4] Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir. 1993). The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. *Arizona v. California,* 460 U.S. 605, 618 (1983) (citations omitted). A court may depart from the law of the case where: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Thomas*, 983 F.2d at 155 (citation omitted). Failure to abide by the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. *Id.* Mr. Rutherford advances no conditions that would merit departure from the law of the case, and the Court finds that none exist here.

1  Plaintiffs' additional factual arguments for standing do not meaningfully contribute to the
2  Court's analysis of whether the litigation was "frivolous, unreasonable, or groundless."

3        Based on Plaintiffs' litigation history, including past dismissals for standing on
4  similar claims; Plaintiffs' questionable conduct and credibility throughout the proceedings;
5  Plaintiffs' litigation tactics, including the use of the Association to increase profits; and
6  Plaintiffs' dogged pursuit of what may have been a moot claim, the Court finds that
7  Plaintiffs' ADA claim was unreasonable and warrants an award of attorneys' fees under
8  the ADA. Because the Court finds that attorneys' fees are justified under the ADA, it does
9  not reach the issue of sanctions.

## II. Amount of Attorneys' Fees and Costs

Defendant seeks to recover attorneys' fees in the amount of $205,067.50, as well as $12,615.73 in costs incurred in connection with this lawsuit. Mot. Mem. at 12:10–11.

The Court calculates a reasonable fee award using a two-step process. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* [*v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992),] factors that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).

### A. The Lodestar Figure

"'The lodestar determination has emerged as the predominate element of the analysis' in determining a reasonable attorney's fee award." *Morales*, 96 F.3d at 363 (quoting *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended

/ / /

on the litigation by a reasonable hourly rate." *Id.* (citing *McGrath v. Cty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)).

### 1. Reasonableness of the Hourly Rates

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.2d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The Court may also consider cases setting reasonable rates during the time period in which the fees in the present action were incurred. *See Camacho*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003)); *Bell*, 341 F.3d at 869 (holding that district court abused its discretion in applying "market rates in effect more than two years *before* the work was performed") (emphasis in original). "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *Phelps Dodge Corp.*, 896 F.2d at 407).

Here, Defendant's counsel seek approval of the following hourly rates, which are themselves discounted by Defendant's insurer from the attorneys' standard rates: $250 per hour for Nadia Bermudez, a shareholder with 19 years of experience, and Andrea Oxman, a shareholder with 14 years of experience; $225 per hour for Lindsey Casillas as an associate until January 1, 2020, then $250 per hour thereafter as a shareholder with 10 years of experience; $225 per hour for Charles Gulley, an associate with 4 years of experience, and Patrick Goode, an associate with 7 years of experience; and $100 per hour for Cam

Picano, a paralegal with 30 years of experience. Bermudez Decl. ¶¶ 14–21; Declaration of Lindsey N. Casillas ("Casillas Decl.," ECF No. 103-2) ¶ 3. As described in the Bermudez and Casillas Declarations, both shareholders' rates were discounted significantly for this matter from their regular rates of $450 per hour and $350 per hour, respectively. *Id.*

Plaintiffs did not object to the reasonableness of these rates in their Response, and the Court concludes that the hourly rates requested for Defendant's counsel are more than reasonable in light of their experience and the prevailing market rates in this District for the relevant time period.

### 2. *Reasonableness of the Hours Expended*

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 434. "The district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Id.* "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath*, 67 F.3d at 255 (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)). "Overlitigation deemed excessive does not count towards the reasonable time component of a lodestar calculation," *Puccio v. Love*, No. 16-CV-02890 W (BGS), 2020 WL 434481, at *6 (S.D. Cal. Jan. 28, 2020) (citing *Tomovich v. Wolpoff & Abramson, LLP*, No. 08cv1428-JM (BLM), 2009 WL 2447710, at *4–5 (S.D. Cal. Aug. 7, 2009)), although the Ninth Circuit has also instructed that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, Defendant seeks to recover for 867.1 hours billed over a period beginning in January 2018 and spanning more than two and one-half years; these hours include analyzing and answering the pleadings; preparing the Rule 68 offer; opposing at least three substantive motions filed by Plaintiffs; preparing for, defending, and taking multiple depositions; engaging in expert discovery; preparing and responding to various discovery

motions; participating in conferences with opposing counsel and the Court; propounding and responding to discovery requests; preparing for and participating in the evidentiary hearing regarding Plaintiffs' standing; and preparing the instant Motion for attorneys' fees. *See* Bermudez Decl. ¶ 20; *id.* Ex. G.  Defendant's counsel have provided the Court with more than forty pages of redacted account statements for this matter detailing the billing entries for the hours claimed.  *See generally id.* Ex. G.  The total on the invoices reflects 867.1 hours of work, totaling $203,667.50.[5]  *See id.*

Defendant also seeks fees for an additional 9.0 hours of Ms. Bermudez's time, for a total of $2,250.00, for the anticipated drafting of the reply brief in support of (5.0 hours) and preparation for the hearing on (4.0 hours) the Motion.  *See id.* ¶ 24.

Plaintiffs raise no objections to the number of hours worked by Defendant's counsel. Having reviewed Defendant's counsel's billing statements, the Court finds them devoid of clerical and duplicative work and finds the hours worked reasonable in light of the length and complexity of the litigation.  The Court also finds the requested 5.0 hours of Ms. Bermudez's time for preparation of the reply brief in support of the instant Motion reasonable.[6]  Accordingly, the Court calculates the lodestar figure as follows:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[5] Defendant claims that the total fees requested for work completed as of the filing of the Motion total $202,817.50.  *See* Bermudez Decl. ¶ 21.  The Court arrived at a slightly different figure of $203,667.50. Given that, as Defendant argues, rates in excess of the insurance-adjusted rates would be reasonable here, the Court finds it appropriate to go with the slightly higher figure.

[6] As no hearing was held on the present Motion, the Court finds no need to award the additional 4.0 hours of time requested for preparation for the hearing.

| Timekeeper | Reasonable Rate | Reasonable Hours | Fee |
|---|---|---|---|
| N. Bermudez | $250 | 400.5 + 5.0 = 405.5 | $101,375.00 |
| L. Casillas | $225 | 268.7 | $60,457.50 |
| L. Casillas | $250 | 3.2 | $800.00 |
| A. Oxman | $250 | 17.6 | $4,400.00 |
| P. Goode | $225 | 6.8 | $1,530.00 |
| C. Gulley | $225 | 154.6 | $34,785.00 |
| C. Picano | $100 | 15.7 | $1,570.00 |
| **Total** | | 867.1 | **$204,917.50** |

### 3. Adjustment to the Lodestar Figure

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr*." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by Dague*, 505 U.S. 557). The *Kerr* factors are:

> (1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases.

526 F.2d at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622 (citing *D'Emanuele*, 904 F.3d at 1383). While the court may rely on any of these factors to increase or decrease the lodestar figure, there is a "'strong presumption' that the lodestar is the reasonable fee."

*Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009) (quoting *City of Burlington*, 505 U.S. at 562); *accord Harman v. City & Cty. of San Francisco*, 158 Cal. App. 4th 407, 416 (2007).

Neither party seeks any adjustment to the lodestar figure here. Nonetheless, while "[c]ourts are not required to generate arguments to oppose the merits of a fee request when the litigants themselves did not provide such argument[,] . . . Ninth Circuit precedent . . . highlights the Court's duty to review the reasonableness of a fee request." *Douzat v. Saul*, No. 2:17-CV-01740-NJK, 2020 WL 3408706, at *1 (D. Nev. June 11, 2020) (citations omitted). Accordingly, here, the Court finds it necessary to consider the eighth factor, the results obtained.

As the Ninth Circuit has recognized, "[i]n *Hensley* the Supreme Court noted that the 'results obtained' was one factor that might lead the district court to adjust the presumptively reasonable lodestar calculation and that this factor 'is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded only on some of his claims for relief.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) (quoting *Hensley*, 461 U.S. at 434). "[Courts within the Ninth Circuit] have applied *Hensley*'s degree of success principles to a variety of fee-shifting statutes, including civil rights claims, Americans With Disability Act claims, and even state claims." *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1119 (9th Cir. 2006). Further, following *Hensley*, courts have adjusted fee awards to prevailing defendants on a theory of limited or partial success. *See, e.g.*, *Valencia v. City of Stockton*, No. 2:16-CV-2081-JAM-AC, 2018 WL 4008771, at *6 (E.D. Cal. Aug. 20, 2018) (adjusting fee award to prevailing defendants based on limited success); *League of United Latin Am. Citizens Inc v. Eureste*, No. 13-CV-04725-JSC, 2014 WL 5473560, at *2–3 (N.D. Cal. Oct. 28, 2014) (reducing mandatory fee award to defendants who partially prevailed on special motion to strike).

A court adjusting fees to account for a party's partial or limited success engages in a two-part analysis: first, it asks whether the successful and unsuccessful claims are related; if so, the court evaluates the significance of the overall relief obtained compared to the

17
18-CV-435 JLS (MSB)

hours reasonably expended. *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 901–02 (9th Cir. 1995) (citations omitted). If the overall relief obtained was "excellent," "full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive." *Id.* at 902 (citations omitted). In cases finding the prevailing party's success to be limited, courts often reduce the lodestar by a percentage reflective of the prevailing party's degree of success. *See, e.g.*, *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 724–26 (S.D. Cal. 2014) (reducing lodestar by fifty percent in light of prevailing party's limited success and collecting cases applying or affirming similar percentage-based reductions), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x 920 (9th Cir. 2016).

While this Court has determined that Defendant was, in fact, a prevailing party, *see supra* Section I.A, the Court nonetheless finds Defendant's success to be limited given that the Court only dismissed the ADA claim, remanding the Unruh Act claim—premised on the same conduct allegedly violating the ADA and therefore clearly related—to the state court. Accordingly, while Defendant successfully eliminated one of Plaintiffs' two claims from the litigation, Defendant did not eliminate its need to continue to litigate the merits of the conduct underlying both claims in a different forum. *See* Resp. at 13 (noting that "[t]his case was remanded to the California Superior Court where it will continue to be litigated and decided on its merits"). In light of the limited nature of success achieved by Defendant, the Court concludes that an award of the full lodestar figure would be excessive. Accordingly, the Court finds a fifty percent reduction of the lodestar figure appropriate to account for Defendant's limited success, and the Court therefore adjusts the lodestar figure from $204,917.50 to $102,458.75.

### B. Costs

Defendant also requests costs in the amount of $12,615.73. *See* Mot. Mem. at 12:9–11. Defendant provides the Court with a detailed invoice of costs incurred for the entirety of the matter, including such items as filing fees, copies, transportation costs, transcript fees, conference call costs, postage, and meals. *See* Bermudez Decl. Ex. H; *see also id.*

¶ 23. No objections have been made to these costs, which the Court finds typical and reasonable. The Court therefore awards Defendant $12,615.73 in costs incurred in connection with this lawsuit.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Defendant's Motion (ECF No. 103). Plaintiffs **SHALL PAY** Defendant the total sum of $115,074.48, consisting of $102,458.75 in attorneys' fees and $12,615.73 in costs.

**IT IS SO ORDERED.**

Dated: May 14, 2021

Hon. Janis L. Sammartino
United States District Judge